IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUREWICK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | **Redacted - Public Version** |
| | ) | |
| v. | ) | C.A. No. 22-102-MN |
| | ) | |
| SAGE PRODUCTS, LLC, | ) | ██████████████ |
| | ) | |
| Defendant. | ) | |
| | ) | |

**LETTER TO HONORABLE JENNIFER L. HALL FROM JOHN W. SHAW IN SUPPORT OF PUREWICK'S MOTION FOR A PROTECTIVE ORDER**

OF COUNSEL:
Steven C. Cherny
Raymond Nimrod
Brian P. Biddinger
Nicola R. Felice
Jason C. Williams
Bianca Fox
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
(212) 849-7000

Dated: December 28, 2022

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff*

Dear Judge Hall:

PureWick respectfully moves for a protective order precluding Sage from pursuing discovery on issues barred by collateral estoppel and/or res judicata. This is not the first litigation between the parties involving the asserted patents. *See PureWick Corp. v. Sage Products, LLC*, C.A. No. 19-cv-1508-MN (D. Del.) ("*PureWick I*"). In *PureWick I*, Sage had fifteen months of fact discovery and a full and fair opportunity to contest the validity and enforceability of the claims asserted both there and here. At the March 2022 trial, the jury found that Sage failed to prove the asserted claims invalid, and that Sage willfully infringed based on its sale of the PrimaFit product. Sage also contended that the asserted patents were unenforceable but did not press that defense at trial. Following the jury's verdict, the Court entered judgment in PureWick's favor on Sage's defenses, including "as to Defendant's invalidity counterclaims and defenses based on prior public use and prior public sale." *PureWick I*, D.I. 320.

Three months before the *PureWick I* trial, Sage commercially released a "redesigned" PrimaFit "2.0" product. That product, which is the subject of this action, also infringes the asserted claims but, given the short time before the trial in *PureWick I*, it was infeasible to include the PrimaFit 2.0 in that trial and PureWick was forced to bring this second action.

Despite having lost on its invalidity defenses and failing to maintain its unenforceability defenses in *PureWick I*, Sage is trying to relitigate the validity and enforceability of the asserted claims in this action in violation of the doctrines of collateral estoppel and res judicata. PureWick has moved the Court for judgment on that basis. (D.I. 13). Because the Court has not yet ruled, Sage now is seeking vast discovery, including through service of fifteen third-party subpoenas, that indisputably is only potentially relevant to validity and enforceability. If allowed to proceed, PureWick and third parties will be forced to expend considerable resources on issues Sage already has tried or that it had an opportunity to try and chose not to advance in *PureWick I*. PureWick thus moves this Court for a protective order barring that discovery or at least focusing it so that PureWick will not have to re-litigate issues already resolved in the first trial. Alternatively, the Court should at least stay this discovery pending the Court's disposition of PureWick's pending motion, which could render the issue moot.

I.      **"Good Cause" Exists to Grant PureWick's Motion for a Protective Order**

Rule 26(c)(1) empowers a trial court, upon a showing of good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See also* Fed. R. Civ. P. 45 Notes of Advisory Committee on Rules – 1991 Amendment on Subdivision (b) ("The purpose of such notice is to afford other parties an opportunity to object to the production or inspection . . ."); *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 252 (S.D. Ohio 2011) (same) (citing cases). In this Circuit, four factors guide the evaluation of good cause: "relevance, need, confidentiality and harm." *Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002). Each of those factors weigh in favor of granting PureWick's motion for a protective order.

A.      **The Discovery Sage Seeks Is Not Relevant, Nor Is It Needed**

The validity and enforceability of the asserted patents was already litigated to a judgment by the parties in *PureWick I*. Sage, however, is attempting to use this case to relitigate these failed defenses and has served fifteen subpoenas on ten third parties seeking information relating

to its continued assertion that the asserted claims are invalid based on an alleged use or sale before the asserted patents' filing dates. That discovery should be precluded because it pertains only to issues barred by collateral estoppel and res judicata. Sage also cannot show a unique need for such discovery where it already obtained, or had ample opportunity to pursue, the discovery in *PureWick I. See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990) ("*Even if relevant*, discovery is not permitted where no need is shown.").

In *PureWick I*, PureWick sued Sage for infringement of the '376 and '989 patents based on Sage's PrimaFit product. *PureWick I*, D.I. 1. Sage asserted defenses and counterclaims that the asserted patents were, *inter alia*, "invalid under 35 U.S.C. §§ 102 and 103 in view of the prior art" and "unenforceable under principles of equity including waiver, estoppel, unclean hands, and/or acquiescence." *Id.* at D.I. 53, ¶¶ 133, 135; *id.* at ¶¶ 45-51, 53, 68-74, 76; *id.* at D.I. 308 (Pre-Trial Order), ¶¶ 58-61, 65. At the center of the dispute between the parties was the same theory Sage asserts here: that the inventions claimed in the asserted patents were purportedly in public use or on sale more than one year before their filing dates. D.I. 303, ¶ 8.

In an effort to support its invalidity defense in *PureWick I*, Sage sought and received numerous documents that referenced Ray and Camille Newton, Lorena Eckert, Kate Pawlik, Michael Jackson, Tri-City Medical Center, First Quality, Molnycke, Deloitte, and Medline (all of whom Sage has subpoenaed in the current action). For example, Sage subpoenaed documents and testimony in *PureWick I* from Ray and Camille Newton related to "any demonstration, experiment, offer for sale, sale, public or experimental use, or disclosure to any third party of any PureWick Product." Exs. 1-2. Pursuant to those subpoenas, Sage received thousands of pages of documents and over a dozen hours of deposition testimony. Sage never approached the Court for an Order seeking additional discovery. Despite the extensive discovery Sage received in *PureWick I*, however, Sage's defense and counterclaim were so weak it ultimately accepted entry of JMOL on that defense at trial. *PureWick I*, D.I. 312 at 2. Thereafter, the jury upheld the validity of the '376 and '989 patents on the remaining grounds Sage advanced at trial and found that Sage's PrimaFit product willfully infringed all asserted claims. *Id.*, D.I. 316.

Although this case concerns Sage's re-designed PrimaFit 2.0 product, PureWick asserts that the product infringes ***the same two patents at issue in in PureWick I***: the '376 and '989 patents. As articulated in PureWick's pending motion for judgment on the pleadings, Sage's current defenses of invalidity and unenforceability are thus barred by collateral estoppel and res judicata based on the judgment in *PureWick I*. Despite this, Sage now seeks the same discovery it sought and received—or discovery it could have sought and received—in *PureWick I*. Because that discovery relates solely to barred defenses (e.g., "[d]ocuments reflecting the public disclosure, sale, or offer for sale" of a female external catheter (Exs. 3-17)), it is not relevant to any claim or defense properly asserted in this action.

Moreover, Sage was aware during *PureWick I* of every one of the entities and individuals from whom it now seeks third-party discovery in this action. Indeed, Sage already obtained discovery from Ray and Camille Newton in *PureWick I* pursuant to largely identical subpoenas to those served in this action. It also obtained dozens of emails between, for example, the Newtons and Ms. Pawlik, Ms. Eckert, Mr. Jackson, and individuals at Deloitte. In fact, one of Sage's exhibits at trial in *PureWick I* was an email chain between Dr. Newton, Mr. Newton, Mr. Jackson, and Ms. Pawlik. *See* Ex. 18. Pursuant to the Scheduling Order entered in this case, all that discovery is available to Sage in this action. *See* D.I. 20, ¶ 8.

Sage will likely argue that the discovery sought relates to inequitable conduct, an issue not tried in *PureWick I*. As PureWick explained in its motion for judgment on the pleadings, however, collateral estoppel also bars re-litigation of facts essential to a judgment, even when the claim asserted is different. D.I. 13 at 9-16. The facts underlying Sage's inequitable conduct defense concern alleged prior use and sale. Because the parties actually litigated those facts in *PureWick I* as part of Sage's invalidity defense, Sage's inequitable conduct defense is barred (at least) by collateral estoppel. *Id.* Collateral estoppel prevents Sage from repackaging its failed invalidity defense as an inequitable conduct defense.

### B.     The Discovery Sage Seeks Would Cause Substantial Harm

PureWick's motion should also be granted because the discovery Sage seeks here would be unduly burdensome and cause PureWick and third parties substantial harm. *See Mannington Mills*, 206 F.R.D. at 529. In negotiating the schedule for the present case, the parties recognized that discovery should be streamlined given the prior litigation and agreed to limited deposition hours, a short six-month fact discovery period, and that all document production and interrogatories from *PureWick I* are available in the current action. D.I. 20, ¶ 8. Permitting Sage to proceed with its fifteen subpoenas issued over the final two months of the fact discovery period will greatly increase the time and cost to complete fact discovery, completely undermining the schedule agreed to by both parties.  Sage's subpoenas are especially wasteful and burdensome considering that Sage was aware of each of the subpoenaed entities and individuals in *PureWick I*, and thus had ample opportunity to (and in some cases already did) get all the discovery it now seeks.

## II.    Alternatively, Sage's Discovery Should Be Stayed

As this Court has explained, a stay of discovery pending a dispositive motion "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Coastal States Gas Corp.* v. *Department of Energy,* 84 F.R.D. at 282 (D. Del. 1979); *see also Kaavo Inc. v. Cognizant Tech. Sols. Corp*., No. 1:14-cv-01192-LPS-CJB, 2015 WL 1737476, at *1 (D. Del. Apr. 9, 2015). Thus, if the Court does not grant PureWick's motion for a protective order, third-party discovery should at least be stayed pending resolution of PureWick's motion for judgment on the pleadings because, if granted, Sage's third-party discovery would be futile.

 Sage will suffer no prejudice from such a stay pending the outcome of PureWick's motion. Specifically, Sage has already received extensive documents and testimony on these same issues in *PureWick I*. There is no reason to believe these third parties are in possession of anything new or different from what Sage already previously discovered. Beyond that, even if relevant discovery is in the possession of third parties, there is no reason why this discovery cannot wait until the pending motion is resolved. Specifically, Sage's invalidity report is not due until May 19, 2023. Thus, there is still sufficient time in the schedule to undertake third-party discovery should PureWick's dispositive motion be denied.

For the foregoing reasons, PureWick respectfully requests that the Court grant a protective order or, alternatively, stay third-party discovery relating to invalidity or unenforceability pending the Court's resolution of PureWick's Motion for Judgment on the Pleadings.

Respectfully submitted,

*/s/ John W. Shaw*

John W. Shaw (No. 3362)

cc:    Clerk of the Court (by CM/ECF and Hand Delivery)
       All counsel of record (by CM/ECF & Email)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUREWICK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-102-MN |
| | ) | |
| SAGE PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **[PROPOSED] ORDER**

This _____ day of _____, 2023, upon consideration of Plaintiff PureWick Corporation's ("PureWick") Motion for a Protective Order, and all Responses thereto, and having determined that good cause exists for the requested relief;

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED.

_____
United States District Judge

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PUREWICK CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | C.A. No. 19-1508-MN |
| v. | ) | |
| | ) | |
| SAGE PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

**RESPONSES AND OBJECTIONS TO DEFENDANT SAGE'S
SUBPOENA DIRECTED TO CAMILLE NEWTON**

Pursuant to Rules 26, 30, and 45 of the Federal Rules of Civil Procedure, Camille Newton

("Dr. Newton") hereby responds to Sage Products, LLC's ("Sage" or "Defendant") Subpoena for

documents and testimony dated February 11, 2021 (the "Subpoena") in the above-captioned action

(the "Action"), and the document requests (the "Requests" and each a "Request") contained therein.

**GENERAL OBJECTIONS TO REQUESTS**

Dr. Newton makes the following objections to the Requests, which form a part of Dr.

Newton's response to each and every Request, and are set forth here to avoid repetition and

duplication. Although Dr. Newton may specifically invoke some or all of these General

Objections in a response to a specific Request, failure to mention a General Objection specifically

shall not be construed as a waiver of any General Objection with respect to any specific Request.

1.     Dr. Newton objects to the date and place set for production on the grounds that it is

unduly burdensome. The time period provided is insufficient for Dr. Newton to locate, review and

produce documents responsive to the broad and numerous Requests contained in the subpoena.

Subject to her objections, Dr. Newton will produce documents at a time and place that is mutually

convenient and provides Dr. Newton sufficient time to collect and review the documents sought.

2.      Dr. Newton objects to the Requests because they are overbroad, unduly burdensome and not proportional to the needs of this litigation in that they seek the production of "[a]ll Documents and Communications" relating to broadly defined subjects, beyond what is relevant or appropriate for production in connection with the Action.  To the extent Defendant has requested documents from Dr. Newton that fall within the proper scope of discovery, Dr. Newton will provide the documents to the Defendant for production.

3.      Dr. Newton objects to the Requests for production of email as overly broad, unduly burdensome and not proportional to the needs of this litigation to the extent it would require Dr. Newton to conduct a timely and expensive review of a large number of emails over a long period of time.  Dr. Newton will cooperate with counsel for Sage to identify a reasonable number of narrowly tailored search terms to aid in the review and production of email, consistent with the local rules and procedures in the District of Delaware, the parties Stipulation Regarding Discovery ESI, and Delaware Default Standard for Discovery.

4.      Dr. Newton objects to the Requests because they seek the production of documents protected from disclosure by applicable privileges or immunities, including the attorney-client privilege, the work product doctrine, and/or the common interest privilege.  To the extent permitted by the Federal Rules of Civil Procedure, Dr. Newton intends to and does assert such privileges with respect to all such documents, and will not produce such documents.  To the extent that Dr. Newton produces any protected document(s), this production is inadvertent and shall not be deemed a waiver of:  (a) any applicable protection from disclosure; (b) any ground for objection to discovery with respect to such document or information, the subject matter thereof, or the information contained therein; or (c) Dr. Newton's right to object to the use of any such document(s) or information during any proceeding.  Dr. Newton reserves the right to require the

return of any inadvertently produced privileged documents.  Dr. Newton also reserves the right to redact the documents produced in response to the Requests on the basis of any applicable privilege or immunity.

5.      Dr. Newton objects to the Requests to the extent that they seek disclosure of any document or information that is confidential, proprietary, or otherwise sensitive, including information of third parties.  Dr. Newton will only produce confidential, proprietary, or otherwise sensitive documents or information subject to an appropriate confidentiality order.  Dr. Newton reserves the right to designate as confidential, pursuant to such confidentiality order, any document or other information produced and further reserves the right to seek modification of any such confidentiality order or an order providing additional protections from disclosure.  In addition, any response by Dr. Newton stating that she will produce documents is subject to compliance with the terms of any applicable third-party confidentiality agreements.  Dr. Newton will take reasonable steps to produce documents after complying with third-party confidentiality agreements and will inform the parties if she withholds any documents pending compliance with third-party confidentiality agreements.

6.      Dr. Newton objects to the Requests because they purport to require Dr. Newton to produce documents not within her possession, custody, or control.  Dr. Newton will not undertake to collect or search the documents of any other person or entity.

7.      Dr. Newton objects to the Requests to the extent that they seek documents that are already in the possession of a party to the litigation, are equally available to a party to the litigation, or are available from a less burdensome source.

8.      Dr. Newton objects to the Requests to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation on the grounds that each such Request is overly broad and unduly burdensome and is not proportional to the needs of the case.

9.      Any response stating that Dr. Newton will produce documents is not a representation that such documents exist.  To the contrary, any such response is subject to the existence of such documents.

10.     Dr. Newton's responses to the Requests are not intended to be, nor shall be deemed, an admission of matters stated, implied, or assumed by any or all of the Requests.  Unless expressly stated, Dr. Newton does not admit, adopt, or acquiesce in any factual or legal contention, assertion, assumption, characterization, or implication contained in the Requests.

11.     Dr. Newton is providing these responses, and will produce documents or information, without waiver of, or prejudice to, Dr. Newton's right at any later time to raise objections to the competence, relevance, materiality, privilege, or admissibility of: (a) the Requests or any part thereof; (b) statements made in connection with Dr. Newton's responses to the Requests or any part thereof; (c) any document produced pursuant to  Dr. Newton's responses to the Requests; or (d) any other demand for discovery involving or relating to the matters raised in the Requests or the documents or information produced in response to the Requests.

12.     Dr. Newton hereby objects and responds to the Requests to the best of her present knowledge.  Dr. Newton reserves the right to amend, limit, supplement, and correct the objections and responses as it learns further information.  Dr. Newton reserves the right to rely on, at any time, subsequently discovered information of which Dr. Newton  is currently unaware, as well as information omitted from these responses as a result of mistake, error, oversight, or inadvertence.

## OBJECTIONS AND RESPONSES TO DEFINITIONS AND INSTRUCTIONS

1.      Dr. Newton objects to the definition of "document" and "documents" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody of control of the subpoenaed individual."

2.      Dr. Newton objects to the definition of "PureWick Product" as overly broad and unduly burdensome to the extent that it includes "any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by Robert Sanchez.

3.      Dr. Newton objects to the definition of "Plaintiff" or "PureWick" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or

attorneys thereof" and to the extent it includes "any former employee or agent" of Becton, Dickinson and Company and C.R. Bard, Inc.

3.      Dr. Newton objects to the definition of "Becton Dickinson" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof."

4.      Dr. Newton objects to the definition of "C.R. Bard" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof."

5.      6.      Dr. Newton objects to the definition of "External Urine Management Patents and Applications" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "any and all U.S. or foreign patents or patent applications relating to urine collection, disposal, or management outside or external to the urethra (male or female) including, but not limited to, the Asserted Patents and Related Patents or Applications."

7.      8.      Dr. Newton objects to the definition of "person" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such 'person.'"

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents and files relating to the Asserted Patents or any Related Patents or Applications. This includes all documents relating to ownership, assignments, and financial analysis.

**ANSWER TO REQUEST NO. 1:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine, or any other privilege or protection afforded by law.  Dr. Newton also objects to this Request to the extent that it seeks to impose any other obligation inconsistent with the Federal Rules of Civil Procedure, the Local Rules of this Court, or the Scheduling Order.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 2:**

To the extent not previously requested, all documents and files relating to the conception, reduction to practice, research, design, or development of any invention claimed in the Asserted Patents or any Related Patents or Applications. This includes laboratory notebooks relating to the subject matter of the 508 patent, the 376 patent, the 989 patent, the 407 patent, or any Related Patents or Applications.

**RESPONSE TO REQUEST NO. 2:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents," including documents that are not relevant to any product, claim, or defense in this

action, and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton also objects to this Request to the extent it is not limited in time or the time period is vague and ambiguous. Dr. Newton additionally objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 3:**

All documents and files relating to any PureWick Product including documents relating to the development, structure, function, operation, or marketing of each iteration or model of any PureWick Product. This request includes instructions for use, product specifications, advertisements, product announcements, brochures, catalogs, catalog sheets, price lists, descriptive literature, articles in trade or technical journals, and packaging.

**RESPONSE TO REQUEST NO. 3:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality

agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 4:**

All documents relating to Robert Sanchez or his family members prior to December 31, 2016, that involve urine collection or a urine collection product, device, or method. This includes all communications and agreements with Robert Sanchez or his family members, any products provided by either of them to you, and any evaluations relating to Robert Sanchez's intellectual property.

**RESPONSE TO REQUEST NO. 4:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Dr. Newton further objects to this Request to the extent that it seeks documents and things subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents and things. Dr. Newton also objects to this Request as overly broad, unduly burdensome, vague, ambiguous and not proportional to the needs of the case to the extent that it seeks "all documents" and "all communications," including documents and communications with or concerning Dr. Sanchez's family members, that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents relating to Dr. Robert Sanchez prior to December 31, 2016, that involve urine collection or a urine collection product, device, or method located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 5:**

To the extent not previously requested, documents sufficient to establish any all meetings between you and Robert Sanchez or his family members prior to December 31, 2009.

**RESPONSE TO REQUEST NO. 5:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Dr. Newton also objects to this Request as overly broad, unduly burdensome, vague, ambiguous and not proportional to the needs of the case to the extent that it seeks documents relating to "any and all" and meetings between Dr. Newton and Mr. Sanchez's and/or his family that are not relevant to any product, claim, or defense in this action, and not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents and things.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents concerning meetings with Dr. Sanchez prior to December 31, 2009 relating to the subject matter of the patents-in-suit or external urine collection devices located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 6:**

All communications (including with potential investors) regarding PureWick, external urine collection products, or any PureWick Product prior to December 31, 2015. This includes any Facebook or other social media posts and any communications (including email communications) between you and Hilltop Country Estate (including patients testing PureWick Products), C.R. Bard, Sage, Biomed Ventures including Bruce Steel or Nancy Hong, Medical Device and Diagnostic Industry magazine (including regarding the 2014 Dare-to-Dream MedTech Design Challenge), or Connect (including regarding the 2015 CONNECT Most Innovative New Product Award).

**RESPONSE TO REQUEST NO. 6:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "[a]ll communications . . . . regarding PureWick external urine collection products, or any PureWick Product prior to December 31, 2015," including communications that are not relevant to any product, claim, or defense in this action, and communications not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

11

**REQUEST NO. 7:**

To the extent not previously requested, all documents including communications with SCIMALS.

**RESPONSE TO REQUEST NO. 7:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents including communications with SCIMALS," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence.  Dr. Newton also objects to this Request as vague and ambiguous to the extent that it seeks "all documents including communications with SCIMALS." Dr. Newton will interpret this Request to cover communications between herself and SCIMALS. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 8:**

To the extent not previously requested, all documents relating to any demonstration, experiment, offer for sale, sale, public or experimental use, or disclosure to any third party of any

PureWick Product (including Sanchez products) prior to December 31, 2015 or any subject matter claimed in the Asserted Patents or any Related Patents or Applications prior to December 31, 2015. This request includes any documents that reflect any offer for sale, sale, demonstration, public use, or public disclosure of any PureWick Product including testing with patients.

**RESPONSE TO REQUEST NO. 8:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Dr. Newton also objects to this Request as vague and ambiguous to the extent that it seeks documents concerning "Sanchez products." Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" and documents regarding "any demonstration, experiment, offer for sale, sale, public or experimental use, or disclosure to any third party of *any* PureWick Product (including Sanchez products)" including products that are not relevant to any product, claim, or defense in this action, and documents, products, and other information not calculated to lead to the discovery of admissible evidence. Dr. Newton also objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources, such as publicly available documents. Dr. Newton additionally objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 9:**

To the extent not previously requested, all documents relating to the 2014 Dare-to- Dream MedTech Design Challenge and the 2015 CONNECT Most Innovative New Product Award including all submissions and communications relating thereto.

**RESPONSE TO REQUEST NO. 9:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents relating to the 2014 Dare-to- Dream MedTech Design Challenge and the 2015 CONNECT Most Innovative New Product Award," including documents that are not relevant to any product, claim, or defense in this action. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 10:**

To the extent not previously requested, all documents relating to testing of any PureWick Product on third parties prior to August 29, 2015, including testing at Hilltop Country Estates or any other facility (including testing in Oceanside, Escondido, Fallbrook, or Vista).

**RESPONSE TO REQUEST NO. 10:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Dr. Newton also objects to this Request as overly broad,

14

unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents," including documents that are not relevant to any product, claim, or defense in this action. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 11:**

To the extent not previously requested, all communications or agreements relating to any PureWick intellectual property, any intellectual property or designs of Robert Sanchez, any PureWick Product, or development of any PureWick Product.

**RESPONSE TO REQUEST NO. 11:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents," including documents that are not relevant to any product, claim, or defense in this action. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton

15

also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control or that are available from a party to the litigation.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 12:**

To the extent not previously requested, all PureWick press releases and website materials prior to August 29, 2016.

**RESPONSE TO REQUEST NO. 12:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all PureWick press releases and website materials," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton also objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources, such as publicly available documents.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 13:**

Photographs of any PureWick Product (including any Sanchez product) prior to December 31, 2015.

**RESPONSE TO REQUEST NO. 13:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as vague and ambiguous to the extent that it seeks documents concerning "Sanchez products."  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "photographs of any PureWick product (including any Sanchez product)," including information that is not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 14:**

All documents that were considered, studied, or referred to in connection with preparation and/or prosecution of the 508 patent, the 376 patent, the 989 patent, the 407 patent, or any Related Patents or Applications.

**RESPONSE TO REQUEST NO. 14:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein.  Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" and documents regarding "Related Patents and Applications," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated

17

to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources. Dr. Newton also objects to this Request to the extent it is not limited in time or the time period is vague and ambiguous. Plaintiff additionally objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 15:**

To the extent not already requested, all publications and presentations relating to External Urine Management dated, published, or publicly available prior to December 31, 2015.

**RESPONSE TO REQUEST NO. 15:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all publications and presentations relating to External Urine Management," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent it is not limited in time or the time period is vague and ambiguous. Dr. Newton also objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources, including publicly available documents. Dr. Newton also objects

18

to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 16:**

All documents concerning any Omni Medical urine collection device (including the AMXD or AMXDmax product) or communications with Mark Harvie.

**RESPONSE TO REQUEST NO. 16:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" and "any Omni Medical urine collection device," including documents that are not relevant to any product, claim, or defense in this action. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton further objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources, including as publicly available documents. Dr. Newton also objects to this request to the extent it seeks information from outside a reasonable time period or from a point other than a reasonable time. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 17:**

All documents relating to any PureWick intellectual property (including Sanchez intellectual property) including any offers to purchase PureWick, evaluations or offers to evaluate PureWick intellectual property, or any evaluations or offers to evaluate PureWick technology.

**RESPONSE TO REQUEST NO. 17:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" relating to "any PureWick intellectual property," including documents that are not relevant to any product, claim, or defense in this action, not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 18:**

All documents regarding whether any PureWick Product is covered by an Asserted Patent or Related Patents or Applications.

**RESPONSE TO REQUEST NO. 18:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Dr. Newton objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton also objects to this Request to the extent it is not limited in time or the time period is vague and ambiguous.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 19:**

All documents relating to the validity or invalidity, infringement or noninfringement, enforceability or unenforceability, scope, interpretation, or construction of any claim of the Asserted Patents or Related Patents or Applications. This request includes any opinion, request for opinion, evaluation, analysis, investigation, or search concerning the validity or invalidity, infringement or noninfringement, enforceability or unenforceability, scope, interpretation, or construction of any of the claims of the Asserted Patents or Related Patents or Applications.

**RESPONSE TO REQUEST NO. 19:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad,

unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" regarding "Related Patents or Applications," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 20:**

All PureWick Products in your possession and any urine collection product from Robert Sanchez or his family members.

**RESPONSE TO REQUEST NO. 20:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "any urine collection product from Robert Sanchez or his family members," including products that are not relevant to any product, claim, or defense in this action, and that are not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks items subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton

also objects to this Request to the extent that it seeks items that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, products responsive to this Request located after a reasonable search have been or will be made available for inspection to the extent any exist.

**REQUEST NO. 21:**

All documents relating to any actual or potential acquisition of PureWick or its technology or intellectual property. This request includes documents sufficient to show entities with whom PureWick signed disclosure agreements or with which PureWick exchanged information and all documents relating to any analysis, investigation, evaluation, or consideration of PureWick's patents or patent applications by either PureWick, Becton Dickinson, C.R. Bard, or Sage.

**RESPONSE TO REQUEST NO. 21:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" and information relating to "any actual or potential acquisition of PureWick," including documents and communications that are not relevant to any product, claim, or defense in this action, and communications not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 22:**

All documents relating to Sage, the Asserted Patents, or Related Patents or Applications including during any due diligence process before C.R. Bard acquired PureWick.

**RESPONSE TO REQUEST NO. 22:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents relating to . . . Related Patents or Applications," including documents that are not relevant to any product, claim, or defense in this action, and communications not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 23:**

All documents relating to the assignment, licensing, or ownership of the Asserted Patents, any Related Patents or Applications, any PureWick Product, or any technology related to External Urine Management.

**RESPONSE TO REQUEST NO. 23:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "[a]ll documents relating to the assignment, licensing, or ownership of . . . any Related Patents or Applications" and "any PureWick Product or any technology related to External Urine Management," including documents that are not relevant to any product, claim, or defense in this action, and communications not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 24:**

All documents relating to Sage including, to the extent not previously requested, any evaluation, review, or analysis of any Sage patent or any Sage product and communications with any person regarding Sage and External Urine Management.

**RESPONSE TO REQUEST NO. 24:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "[a]ll documents relating to Sage," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 25:**

All documents relating to the External Urine Management market or competitors or entities in the market, including any agreements and communications relating thereto.

**RESPONSE TO REQUEST NO. 25:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad,

unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents relating to the External Urine Management market or competitors or entities in the market," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources, including as publicly available documents.  Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 26:**

All documents relating to this Lawsuit. This request includes agreements and communications with PureWick, C.R. Bard, Becton Dickinson, or any law firm.

**RESPONSE TO REQUEST NO. 26:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that it seeks information that is equally available to Defendant. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 27:**

To the extent not already requested, all agreements between you and PureWick, C.R. Bard, or Becton Dickinson.

**RESPONSE TO REQUEST NO. 27:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all agreements" between Dr. Newton and PureWick, C.R. Bard, and/or Becton Dickson, including agreements that are not relevant to any product, claim, or defense in this action, and communications not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 28:**

Documents relating to the formation of PureWick Corporation.

**RESPONSE TO REQUEST NO. 28:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "documents relating to the formation of PureWick Corporation," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents. Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 29:**

To the extent not already requested, documents sufficient to show any compensation received, including the amount of compensation received, by you from PureWick, C.R. Bard, or Becton Dickinson.

**RESPONSE TO REQUEST NO. 29:**

Dr. Newton incorporates by reference all of her General Objections as if fully set forth herein. Dr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad,

unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "documents sufficient to show any compensation received," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Dr. Newton is required to protect or maintain the confidentiality of any such documents.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

Respectfully submitted,

/s/  Brian P Biddinger
_____
John W. Shaw (No.  3362)
Karen E. Keller (No.  4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com

Steven C. Cherny
Brian P Biddinger
Matthew A. Traupman
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
(212) 849-7000

Amanda K. Antons

QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400

Dated:  March 5, 2021                    *Attorneys for Camille Newton*

## CERTIFICATE OF SERVICE

I, Amanda K. Antons, hereby certify that on March 5, 2021, this document was served on

the persons listed below in the manner indicated:

**BY EMAIL**

Anne Shea Gaza
Samantha G. Wilson
YOUNG, CONAWAY, STARGATT &
TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6727
agaza@ycst.com
swilson@ycst.com

Robert A. Surrette
Sandra A. Frantzen
Christopher M. Scharff
Bryce R. Persichetti
MCANDREWS, HELD & MALLOY, LTD
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
cscharff@mcandrews-ip.com
bpersichetti@mcandrews-ip.com

/s/  Amanda K. Antons
Amanda K. Antons
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400

Steven C. Cherny
Brian P. Biddinger
Matthew A. Traupman
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiff*

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PUREWICK CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | C.A. No. 19-1508-MN |
| v. | ) | |
| | ) | |
| SAGE PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

**RESPONSES AND OBJECTIONS TO DEFENDANT SAGE'S
SUBPOENA DIRECTED TO RAYMOND NEWTON**

Pursuant to Rules 26, 30, and 45 of the Federal Rules of Civil Procedure, Raymond Newton ("Mr. Newton") hereby responds to Sage Products, LLC's ("Sage" or "Defendant") Subpoena for documents and testimony dated February 11, 2021 (the "Subpoena") in the above-captioned action (the "Action"), and the document requests (the "Requests" and each a "Request") contained therein.

**<u>GENERAL OBJECTIONS TO REQUESTS</u>**

Mr. Newton makes the following objections to the Requests, which form a part of Mr. Newton's response to each and every Request, and are set forth here to avoid repetition and duplication. Although Mr. Newton may specifically invoke some or all of these General Objections in a response to a specific Request, failure to mention a General Objection specifically shall not be construed as a waiver of any General Objection with respect to any specific Request.

1.      Mr. Newton objects to the date and place set for production on the grounds that it is unduly burdensome. The time period provided is insufficient for Mr. Newton to locate, review and produce documents responsive to the broad and numerous Requests contained in the subpoena. Subject to his objections, Mr. Newton will produce documents at a time and place that is mutually convenient and provides Mr. Newton sufficient time to collect and review the documents sought.

1

2.      Mr. Newton objects to the Requests because they are overbroad, unduly burdensome and not proportional to the needs of this litigation in that they seek the production of "[a]ll Documents and Communications" relating to broadly defined subjects, beyond what is relevant or appropriate for production in connection with the Action.  To the extent Defendant has requested documents from Mr. Newton that fall within the proper scope of discovery, Mr. Newton will provide the documents to the Defendant for production.

3.      Mr. Newton objects to the Requests for production of email as overly broad, unduly burdensome and not proportional to the needs of this litigation to the extent it would require Mr. Newton to conduct a timely and expensive review of a large number of emails over a long period of time.  Mr. Newton will cooperate with counsel for Sage to identify a reasonable number of narrowly tailored search terms to aid in the review and production of email, consistent with the local rules and procedures in the District of Delaware, the parties Stipulation Regarding Discovery ESI, and Delaware Default Standard for Discovery.

4.      Mr. Newton objects to the Requests because they seek the production of documents protected from disclosure by applicable privileges or immunities, including the attorney-client privilege, the work product doctrine, and/or the common interest privilege.  To the extent permitted by the Federal Rules of Civil Procedure, Mr. Newton intends to and does assert such privileges with respect to all such documents, and will not produce such documents.  To the extent that Mr. Newton produces any protected document(s), this production is inadvertent and shall not be deemed a waiver of:  (a) any applicable protection from disclosure; (b) any ground for objection to discovery with respect to such document or information, the subject matter thereof, or the information contained therein; or (c) Mr. Newton's right to object to the use of any such document(s) or information during any proceeding.  Mr. Newton reserves the right to require the

return of any inadvertently produced privileged documents.  Mr. Newton also reserves the right to redact the documents produced in response to the Requests on the basis of any applicable privilege or immunity.

5.      Mr. Newton objects to the Requests to the extent that they seek disclosure of any document or information that is confidential, proprietary, or otherwise sensitive, including information of third parties.  Mr. Newton will only produce confidential, proprietary, or otherwise sensitive documents or information subject to an appropriate confidentiality order.  Mr. Newton reserves the right to designate as confidential, pursuant to such confidentiality order, any document or other information produced and further reserves the right to seek modification of any such confidentiality order or an order providing additional protections from disclosure.  In addition, any response by Mr. Newton stating that he will produce documents is subject to compliance with the terms of any applicable third-party confidentiality agreements.  Mr. Newton will take reasonable steps to produce documents after complying with third-party confidentiality agreements and will inform the parties if he withholds any documents pending compliance with third-party confidentiality agreements.

6.      Mr. Newton objects to the Requests because they purport to require Mr. Newton to produce documents not within his possession, custody, or control.  Mr. Newton will not undertake to collect or search the documents of any other person or entity.

7.      Mr. Newton objects to the Requests to the extent that they seek documents that are already in the possession of a party to the litigation, are equally available to a party to the litigation, or are available from a less burdensome source.

8.     Mr. Newton objects to the Requests to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation on the grounds that each such Request is overly broad and unduly burdensome and is not proportional to the needs of the case.

9.     Any response stating that Mr. Newton will produce documents is not a representation that such documents exist.  To the contrary, any such response is subject to the existence of such documents.

10.    Mr. Newton's responses to the Requests are not intended to be, nor shall be deemed, an admission of matters stated, implied, or assumed by any or all of the Requests.  Unless expressly stated, Mr. Newton  does not admit, adopt, or acquiesce in any factual or legal contention, assertion, assumption, characterization, or implication contained in the Requests.

11.    Mr. Newton is providing these responses, and will produce documents or information, without waiver of, or prejudice to, Mr. Newton's right at any later time to raise objections to the competence, relevance, materiality, privilege, or admissibility of: (a) the Requests or any part thereof; (b) statements made in connection with Mr. Newton's responses to the Requests or any part thereof; (c) any document produced pursuant to  Mr. Newton's responses to the Requests; or (d) any other demand for discovery involving or relating to the matters raised in the Requests or the documents or information produced in response to the Requests.

12.    Mr. Newton hereby objects and responds to the Requests to the best of his present knowledge.  Mr. Newton reserves the right to amend, limit, supplement, and correct the objections and responses as it learns further information.  Mr. Newton reserves the right to rely on, at any time, subsequently discovered information of which Mr. Newton  is currently unaware, as well as information omitted from these responses as a result of mistake, error, oversight, or inadvertence.

**OBJECTIONS AND RESPONSES TO DEFINITIONS AND INSTRUCTIONS**

1.      Mr. Newton objects to the definition of "document" and "documents" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody of control of the subpoenaed individual."

2.      Mr. Newton objects to the definition of "PureWick Product" as overly broad and unduly burdensome to the extent that it includes "any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by Robert Sanchez."

3.      Mr. Newton objects to the definition of "Plaintiff" or "PureWick" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or

attorneys thereof" and to the extent it includes "any former employee or agent" of Becton, Dickinson and Company and C.R. Bard, Inc.

3.      Mr. Newton objects to the definition of "Becton Dickinson" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof."

4.      Mr. Newton objects to the definition of "C.R. Bard" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof."

6.      Mr. Newton objects to the definition of "External Urine Management Patents and Applications" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "any and all U.S. or foreign patents or patent applications relating to urine collection, disposal, or management outside or external to the urethra (male or female) including, but not limited to, the Asserted Patents and Related Patents or Applications."

8.      Mr. Newton objects to the definition of "person" as overly broad, unduly burdensome, vague, and ambiguous to the extent it includes "acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such 'person.'"

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents and files relating to the Asserted Patents or any Related Patents or Applications. This includes all documents relating to ownership, assignments, and financial analysis.

**ANSWER TO REQUEST NO. 1:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine, or any other privilege or protection afforded by law.  Mr. Newton also objects to this Request to the extent that it seeks to impose any other obligation inconsistent with the Federal Rules of Civil Procedure, the Local Rules of this Court, or the Scheduling Order.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 2:**

To the extent not previously requested, all documents and files relating to the conception, reduction to practice, research, design, or development of any invention claimed in the Asserted Patents or any Related Patents or Applications. This includes laboratory notebooks relating to the subject matter of the 508 patent, the 376 patent, the 989 patent, the 407 patent, or any Related Patents or Applications.

**RESPONSE TO REQUEST NO. 2:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents," including documents that are not relevant to any product, claim, or defense in this

action, and documents not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent it is not limited in time or the time period is vague and ambiguous. Mr. Newton additionally objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 3:**

All documents and files relating to any PureWick Product including documents relating to the development, structure, function, operation, or marketing of each iteration or model of any PureWick Product. This request includes instructions for use, product specifications, advertisements, product announcements, brochures, catalogs, catalog sheets, price lists, descriptive literature, articles in trade or technical journals, and packaging.

**RESPONSE TO REQUEST NO. 3:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality

agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 4:**

All documents relating to Robert Sanchez or his family members prior to December 31, 2016, that involve urine collection or a urine collection product, device, or method. This includes all communications and agreements with Robert Sanchez or his family members, any products provided by either of them to you, and any evaluations relating to Robert Sanchez's intellectual property.

**RESPONSE TO REQUEST NO. 4:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Mr. Newton further objects to this Request to the extent that it seeks documents and things subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents and things. Mr. Newton also objects to this Request as overly broad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case to the extent that it seeks "all documents," and "all communications," including documents and communications with or concerning Dr. Sanchez's family members that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents relating to Dr. Robert Sanchez prior to December 31, 2016, that involve urine collection or a urine collection product, device, or method located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 5:**

To the extent not previously requested, documents sufficient to establish any all meetings between you and Robert Sanchez or his family members prior to December 31, 2009.

**RESPONSE TO REQUEST NO. 5:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Mr. Newton also objects to this Request as overly broad, unduly burdensome, vague, ambiguous, and not proportional to the needs of the case to the extent that it seeks documents relating to "any and all" and meetings between Mr. Newton and Mr. Sanchez's and/or his family that are not relevant to any product, claim, or defense in this action, and not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents and things.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents concerning meetings with Dr. Sanchez prior to December 31, 2009 relating to the subject matter of the patents-in-suit or external urine collection devices located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 6:**

All communications (including with potential investors) regarding PureWick, external urine collection products, or any PureWick Product prior to December 31, 2015. This includes any Facebook or other social media posts and any communications (including email communications) between you and Hilltop Country Estate (including patients testing PureWick Products), C.R. Bard, Sage, Biomed Ventures including Bruce Steel or Nancy Hong, Medical Device and Diagnostic Industry magazine (including regarding the 2014 Dare-to-Dream MedTech Design Challenge), or Connect (including regarding the 2015 CONNECT Most Innovative New Product Award).

**RESPONSE TO REQUEST NO. 6:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "[a]ll communications . . . . regarding PureWick external urine collection products, or any PureWick Product prior to December 31, 2015," including communications that are not relevant to any product, claim, or defense in this action, and communications not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 7:**

To the extent not previously requested, all documents including communications with SCIMALS.

**RESPONSE TO REQUEST NO. 7:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents including communications with SCIMALS," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence.  Mr. Newton also objects to this Request as vague and ambiguous to the extent that it seeks "all documents including communications with SCIMALS." Mr. Newton will interpret this Request to cover communications between himself and SCIMALS. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 8:**

To the extent not previously requested, all documents relating to any demonstration, experiment, offer for sale, sale, public or experimental use, or disclosure to any third party of any

PureWick Product (including Sanchez products) prior to December 31, 2015 or any subject matter claimed in the Asserted Patents or any Related Patents or Applications prior to December 31, 2015. This request includes any documents that reflect any offer for sale, sale, demonstration, public use, or public disclosure of any PureWick Product including testing with patients.

**RESPONSE TO REQUEST NO. 8:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Dr. Newton also objects to this Request as vague and ambiguous to the extent that it seeks documents concerning "Sanchez products."  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" and documents regarding "any demonstration, experiment, offer for sale, sale, public or experimental use, or disclosure to any third party of *any* PureWick Product (including Sanchez products)" including products that are not relevant to any product, claim, or defense in this action, and documents, products, and other information not calculated to lead to the discovery of admissible evidence. Mr. Newton also objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources, such as publicly available documents. Mr. Newton additionally objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

13

**REQUEST NO. 9:**

To the extent not previously requested, all documents relating to the 2014 Dare-to- Dream MedTech Design Challenge and the 2015 CONNECT Most Innovative New Product Award including all submissions and communications relating thereto.

**RESPONSE TO REQUEST NO. 9:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents relating to the 2014 Dare-to-Dream MedTech Design Challenge and the 2015 CONNECT Most Innovative New Product Award" including documents that are not relevant to any product, claim, or defense in this action. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 10:**

To the extent not previously requested, all documents relating to testing of any PureWick Product on third parties prior to August 29, 2015, including testing at Hilltop Country Estates or any other facility (including testing in Oceanside, Escondido, Fallbrook, or Vista).

**RESPONSE TO REQUEST NO. 10:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Mr. Newton also objects to this Request as overly broad,

unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents," including documents that are not relevant to any product, claim, or defense in this action. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 11:**

To the extent not previously requested, all communications or agreements relating to any PureWick intellectual property, any intellectual property or designs of Robert Sanchez, any PureWick Product, or development of any PureWick Product.

**RESPONSE TO REQUEST NO. 11:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents," including documents that are not relevant to any product, claim, or defense in this action. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton

also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control or that are available from a party to the litigation.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 12:**

To the extent not previously requested, all PureWick press releases and website materials prior to August 29, 2016.

**RESPONSE TO REQUEST NO. 12:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all PureWick press releases and website materials," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Mr. Newton also objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources, such as publicly available documents. Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 13:**

Photographs of any PureWick Product (including any Sanchez product) prior to December 31, 2015.

**RESPONSE TO REQUEST NO. 13:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as vague and ambiguous to the extent that it seeks documents concerning "Sanchez products."  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "photographs of any PureWick product (including any Sanchez product)," including information that is not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 14:**

All documents that were considered, studied, or referred to in connection with preparation and/or prosecution of the 508 patent, the 376 patent, the 989 patent, the 407 patent, or any Related Patents or Applications.

**RESPONSE TO REQUEST NO. 14:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein.  Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" and documents regarding "Related Patents and Applications," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated

to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources.  Mr. Newton also objects to this Request to the extent it is not limited in time or the time period is vague and ambiguous. Plaintiff additionally objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 15:**

To the extent not already requested, all publications and presentations relating to External Urine Management dated, published, or publicly available prior to December 31, 2015.

**RESPONSE TO REQUEST NO. 15:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all publications and presentations relating to External Urine Management," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent it is not limited in time or the time period is vague and ambiguous. Mr. Newton also objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources, including publicly available documents. Mr. Newton also objects

18

to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 16:**

All documents concerning any Omni Medical urine collection device (including the AMXD or AMXDmax product) or communications with Mark Harvie.

**RESPONSE TO REQUEST NO. 16:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" and "any Omni Medical urine collection device," including documents that are not relevant to any product, claim, or defense in this action. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton further objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources, including as publicly available documents. Mr. Newton also objects to this request to the extent it seeks information from outside a reasonable time period or from a point other than a reasonable time. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 17:**

All documents relating to any PureWick intellectual property (including Sanchez intellectual property) including any offers to purchase PureWick, evaluations or offers to evaluate PureWick intellectual property, or any evaluations or offers to evaluate PureWick technology.

**RESPONSE TO REQUEST NO. 17:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" relating to "any PureWick intellectual property," including documents that are not relevant to any product, claim, or defense in this action, and not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 18:**

All documents regarding whether any PureWick Product is covered by an Asserted Patent or Related Patents or Applications.

**RESPONSE TO REQUEST NO. 18:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law. Mr. Newton objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Mr. Newton also objects to this Request to the extent it is not limited in time or the time period is vague and ambiguous.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 19:**

All documents relating to the validity or invalidity, infringement or noninfringement, enforceability or unenforceability, scope, interpretation, or construction of any claim of the Asserted Patents or Related Patents or Applications. This request includes any opinion, request for opinion, evaluation, analysis, investigation, or search concerning the validity or invalidity, infringement or noninfringement, enforceability or unenforceability, scope, interpretation, or construction of any of the claims of the Asserted Patents or Related Patents or Applications.

**RESPONSE TO REQUEST NO. 19:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad,

unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" regarding "Related Patents or Applications," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiver of the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 20:**

All PureWick Products in your possession and any urine collection product from Robert Sanchez or his family members.

**RESPONSE TO REQUEST NO. 20:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "any urine collection product," including products that are not relevant to any product, claim, or defense in this action, and that are not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks items subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent that it seeks items that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, products responsive to this Request located after a reasonable search have been or will be made available for inspection to the extent any exist.

**REQUEST NO. 21:**

All documents relating to any actual or potential acquisition of PureWick or its technology or intellectual property. This request includes documents sufficient to show entities with whom PureWick signed disclosure agreements or with which PureWick exchanged information and all documents relating to any analysis, investigation, evaluation, or consideration of PureWick's patents or patent applications by either PureWick, Becton Dickinson, C.R. Bard, or Sage.

**RESPONSE TO REQUEST NO. 21:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents" and information relating to "any actual or potential acquisition of PureWick," including documents and communications that are not relevant to any product, claim, or defense in this action, and communications not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 22:**

All documents relating to Sage, the Asserted Patents, or Related Patents or Applications including during any due diligence process before C.R. Bard acquired PureWick.

**RESPONSE TO REQUEST NO. 22:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents relating to . . . Related Patents or Applications," including documents that are not relevant to any product, claim, or defense in this action, and communications not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 23:**

All documents relating to the assignment, licensing, or ownership of the Asserted Patents, any Related Patents or Applications, any PureWick Product, or any technology related to External Urine Management.

**RESPONSE TO REQUEST NO. 23:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "[a]ll documents relating to the assignment, licensing, or ownership of . . . any Related Patents or Applications" and "any PureWick Product or any technology related to External Urine Management," including documents that are not relevant to any product, claim, or defense in this action, and communications not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 24:**

All documents relating to Sage including, to the extent not previously requested, any evaluation, review, or analysis of any Sage patent or any Sage product and communications with any person regarding Sage and External Urine Management.

**RESPONSE TO REQUEST NO. 24:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that

are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "[a]ll documents relating to Sage," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 25:**

All documents relating to the External Urine Management market or competitors or entities in the market, including any agreements and communications relating thereto.

**RESPONSE TO REQUEST NO. 25:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all documents relating to the External Urine Management market or competitors or entities in the market, "including documents that are not relevant to any product, claim, or defense in this action,

26

and documents not calculated to lead to the discovery of admissible evidence. Dr. Newton further objects to this Request as unduly burdensome to the extent it seeks documents that are readily accessible to Defendant from other sources, including as publicly available documents.  Dr. Newton also objects to this Request to the extent that it seeks documents that are outside of Dr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 26:**

All documents relating to this Lawsuit. This request includes agreements and communications with PureWick, C.R. Bard, Becton Dickinson, or any law firm.

**RESPONSE TO REQUEST NO. 26:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case, particularly to the extent that it seeks information that is equally available to Defendant. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 27:**

To the extent not already requested, all agreements between you and PureWick, C.R. Bard, or Becton Dickinson.

**RESPONSE TO REQUEST NO. 27:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all agreements" between Mr. Newton and PureWick, C.R. Bard, and/or Becton Dickson, including agreements that are not relevant to any product, claim, or defense in this action, and communications not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 28:**

Documents relating to the formation of PureWick Corporation.

**RESPONSE TO REQUEST NO. 28:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege,

immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "documents relating to the formation of PureWick Corporation," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Mr. Newton further objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents. Mr. Newton also objects to this Request to the extent that it seeks documents that are outside of Mr. Newton's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

**REQUEST NO. 29:**

To the extent not already requested, documents sufficient to show any compensation received, including the amount of compensation received, by you from PureWick, C.R. Bard, or Becton Dickinson.

**RESPONSE TO REQUEST NO. 29:**

Mr. Newton incorporates by reference all of his General Objections as if fully set forth herein. Mr. Newton objects to this Request to the extent it seeks the production of documents that are protected by the attorney-client privilege, work-product doctrine, and/or any other privilege, immunity, or protection afforded by law.  Mr. Newton also objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "all communications" and information relating to "documents sufficient to show any compensation received," including documents that are not relevant to any product, claim, or defense in this action, and documents not calculated to lead to the discovery of admissible evidence. Mr. Newton further

29

objects to this Request to the extent that it seeks documents subject to confidentiality agreements, protective orders, or any other obligation pursuant to which Mr. Newton is required to protect or maintain the confidentiality of any such documents.

Subject to and without waiving the foregoing general and specific objections, non-privileged documents responsive to this Request located after a reasonable search have been or will be produced to the extent any exist.

Respectfully submitted,

/s/  Brian P Biddinger
_____
John W. Shaw (No.  3362)
Karen E. Keller (No.  4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com

Steven C. Cherny
Brian P Biddinger
Matthew A. Traupman
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
(212) 849-7000

Amanda K. Antons
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400

Dated:  March 5, 2021                    *Attorneys for Raymond Newton*

## CERTIFICATE OF SERVICE

I, Amanda K. Antons, hereby certify that on March 5, 2021, this document was served on

the persons listed below in the manner indicated:

**BY EMAIL**

Anne Shea Gaza
Samantha G. Wilson
YOUNG, CONAWAY, STARGATT &
TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6727
agaza@ycst.com
swilson@ycst.com

Robert A. Surrette
Sandra A. Frantzen
Christopher M. Scharff
Bryce R. Persichetti
MCANDREWS, HELD & MALLOY, LTD
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
cscharff@mcandrews-ip.com
bpersichetti@mcandrews-ip.com

/s/  Amanda K. Antons
Amanda K. Antons
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400

Steven C. Cherny
Brian P. Biddinger
Matthew A. Traupman
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiff*

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PUREWICK CORPORATION, | ) |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | ) C.A. No. 22-102-MN |
| | ) |
| SAGE PRODUCTS, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT SAGE PRODUCTS, LLC'S NOTICE OF
## SUBPOENA DUCES TECUM TO DELOITTE CORPORATE FINANCE LLC

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure,

Defendant Sage Products, LLC shall cause a subpoena for the production of documents,

electronically stored information, or objects to be served on Deloitte Corporate Finance LLC.  A

true and correct copy of the subpoena is attached as Exhibit 1.

Of Counsel:
Robert A. Surrette
Sandra A. Frantzen
Christopher M. Scharff
Ryan J. Pianetto
MCANDREWS, HELD
& MALLOY, LTD
500 West Madison Street, 34th Floor
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
cscharff@mcandrews-ip.com
rpianetto@mcandrews-ip.com

Dated: December 6, 2022

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Sage Products, LLC*

# EXHIBIT 1

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

### District of Delaware

| | |
|---|---|
| Purewick Corporation | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.   22-102-MN |
| Sage Products, LLC | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Deloitte Corporate Finance LLC
c/o The Corporation Trust Company, Corporation Trust Center 1209 Orange St, Wilmington, DE 19801

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule A.

| Place: Young Conaway Stargatt & Taylor s/o S. Wilson<br>Rodney Square, 1000 North King Street<br>Wilmington, DE 19801 | Date and Time:<br><br>12/16/2022 1:00 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      12/06/2022

CLERK OF COURT

OR

_____          _Chistpr Scharf_
_Signature of Clerk or Deputy Clerk_                    _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Sage Products, LLC_____ , who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 22-102-MN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $        0.00        .

I declare under penalty of perjury that this information is true.

Date: _____                    _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction   which may include lost earnings and reasonable attorney's fees   on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises   or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required   and also, after a motion is transferred, the issuing court   may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

As used herein:

1.      The requests for production contained herein seek all documents available to the subpoenaed party and each of the subpoenaed party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

2.      The term "document" or "documents" includes documents and things as broadly defined by the Federal Rules of Civil Procedure, including Rule 34, and includes papers of all kinds and non-paper information storage means, including, by way of example and without limitation, originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody or control of the subpoenaed individual or party or each of the subpoenaed individual or party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

3.      The term "**Patents-in-Suit**" or "**Asserted Patents**" means U.S. Patent Nos. 10,226,376 and 10,390,989.

4.      "**Related Patents or Applications**" means any and all U.S. or foreign patents or patent applications that claim priority to the 376 patent or the 989 patent, or any other patent or patent application to which any Asserted Patent claims priority including, but not limited to, all patents earlier and later in a prosecution chain, all child, parent, and sibling patents, patent applications, continuations, divisionals, continuations-in-part, foreign counterparts, and all patents and applications relying on any of the same priority dates as any of the Asserted Patents. For example, this includes application Nos. 15/260,103, 151171,968, 14/952,591, 14/947,759, and No. 14/625,469. .

5.      "**Intellectual Property**" includes patents, patent applications, inventions, invention disclosure statements, trade secrets, trademarks, copyrights, know-how, or proprietary information.

1

6.     "**PureWick Product**" means each model or iteration of any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by PureWick including any PureWick female external catheter.

7.     "**PureWick**" means PureWick Corporation, and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof. PureWick includes Robert A. Sanchez, Camille R. Newton, Joseph M. Forehand, Raymond J. Newton, Becton Dickinson and Company, and C.R. Bard, Inc.

8.     "**Sage**" means Sage Products, LLC and the directors, officers, employees, agents, or attorneys thereof.

9.     "**Deloitte**" means any Deloitte Corporate Finance LLC  and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof including Douglas Bolt, Eric Steinberg, Samuel Arnie, or Masan Stankovic or others in the Charlotte, North Carolina office.

10.     "**This Lawsuit**" means the following lawsuit filed in the District of Delaware: *PureWick Corporation v. Sage Products, LLC*, D. Del., 22-102-MN. A copy of the Protective Order in this Lawsuit is attached.

11.     "**Communications**" means the transmittal of information in any form, including, but not limited to, transmittals of facts, ideas, inquiries or otherwise.

12.     The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.  Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

13.     "Including" and "include(s)" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include(s)" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

14.     The phrases "relate(s) to" or "relating to" include: relate(s) to or relating to, concern(s) or concerning, constitute(s) or constituting, contain(s) or containing, embod(ies) or embodying, reflect(s) or reflecting, refer(s) to or referring to, identif(ies) or identifying, state(s) or stating, evidence(s) or evidencing, mention(s) or mentioning, discuss(es) or discussing, deal(s) with or dealing with, comment(s) on or commenting on, respond(s) to or responding to, allude(s) to or alluding to, describe(s) or describing, analyze(s) or analyzing, contradict(s) or contradicting, summarize(s) or summarizing, and review(s) or reviewing.

15.     The use of the singular form of any word includes the plural and vice-versa.

16.     With respect to any claim of a privilege regarding any information, document, or communication sought, individually identify each such communication, information, or document withheld on grounds of an alleged privilege, and specifically set forth: (a) the nature of the

privilege claimed, (b) the author(s), (c)the addressee(s), (d) the person(s) who received copies, (e) the date of the communication, document, or information, and (f) the subject matter of the communication, document, or information. Any purportedly privileged document containing non-privileged matter must be produced, with the purportedly privileged portion redacted.

17.   Please feel free to contact us if you have questions about this document.

## REQUESTS FOR PRODUCTION

1.      All documents relating to Deloitte's representation of or association with PureWick. This includes documents relating to the attempted purchase, sale, acquisition, or exchange of any PureWick assets including documents reflecting communications, meetings, negotiations, presentations, or due diligence with or involving any third party (other than Sage Products), including all reports, summaries, agreements, proposals, presentations, or deliverables.

2.      To the extent not already requested, all documents including communications between Deloitte and any third party (other than Sage Products) regarding PureWick, any PureWick Product, or any PureWick Intellectual Property (including any issued patents or pending or contemplated patent applications).

3.      To the extent not already requested, all documents and communications from prior to June 1, 2017 regarding any external urine collection product made, sold, or demonstrated by any entity other than PureWick or Sage Products including reference to any product that may compete with or be in the same market as any PureWick Product.

4.      All documents relating to PureWick, the PureWick Product, or any PureWick Intellectual Property (including issued patents and any and all pending or contemplated patent applications), including:

- Documents relating to any valuation of PureWick, any PureWick Product, or any PureWick Intellectual Property;

- Documents commenting on or discussing any PureWick Intellectual Property or the lack thereof or commenting on or discussing the need to obtain intellectual property or the coverage or lack of coverage of any PureWick patents or patent applications;

- Any proposals, offers, letters of intent, or negotiations from third parties relating to PureWick, PureWick Products, or PureWick Intellectual Property;

- Due diligence reports;

- Documents or communications that relate to valuations, sales, offer for sales, projections, testing, use, or demonstration of any PureWick Product, including sales or financial records, spreadsheets, balance sheets, or invoice records;

- Documents reflecting or requesting testing or demonstration of any PureWick Product;

- Documents, including photographs or notes, describing the structure, function, and operation of any PureWick Product;

- All literature or marketing materials for each PureWick Product such as press releases, advertisements, new product announcements, brochures, catalogs, catalog sheets, price lists, descriptive literature, articles in trade or technical journals, and packaging;

4

- Patient instructions and patient materials for any PureWick Product, whether formal or informal;

- Records of orders or requests for any PureWick Products whether for sale or for testing;

- Documents showing any offer for sale or order of any PureWick Product;

- Documents relating to patient or user feedback on any PureWick Product; and

- Documents discussing or relating to the validity or invalidity, infringement or noninfringement, enforceability or unenforceability, scope, strength, interpretation, or construction of any PureWick Intellectual property, including  any opinion, request for opinion, evaluation, analysis, investigation, or search concerning PureWick Intellectual property.

5.      Communications between anyone at Deloitte (including but not limited to Douglas Bolt, Eric Steinberg, Samuel Arnie, or Masan Stankovic or others in the Deloitte Charlotte, North Carolina office) and any PureWick employee (including but not limited to Camille Newton, Raymond Newton, Mike Jackson, Joe Forehand, Lori Hennessey).  This includes all emails to or from purewick.com email addresses as well as emails to or from docnewton@att.net, drnewtonoffice@att.net, mjackson@purewick.com, mjackson@luma-lite.com or any other email address used by any PureWick employee or representative.

6.      To the extent not previously requested, all communications with any PureWick attorney or legal representative including but not limited to individuals at Cooley LLP (including Scott Talbot, Brook Matney, or Cheryl Doty) relating to PureWick, any PureWick Product, any PureWick Intellectual Property, or any other aspect of Deloitte's work involving PureWick.

7.      To the extent not previously requested, all communications with any third parties interested in a potential business relationship, potential acquisition, potential asset or intellectual property exchange or acquisition, or any potential other business arrangement with PureWick, including communications with Becton Dickinson, C.R. Bard, First Quality, Molnlycke, or Medline.

8.      To the extent not previously requested, all agreements with or involving PureWick including any representation, nondisclosure, confidentiality, ownership, stock purchase, investment, or other agreements.

9.      To the extent not previously requested, documents sufficient to show fees invoiced to and compensation received by Deloitte relating to its dealings with PureWick.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| PUREWICK CORPORATION, | |
| Plaintiff, | |
| v. | C.A. No. 22-102-MN |
| SAGE PRODUCTS, LLC, | |
| Defendant. | |

**DEFENDANT SAGE PRODUCTS, LLC'S NOTICE OF**
**SUBPOENA DUCES TECUM TO MICHAEL JACKSON**

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendant Sage Products, LLC shall cause a subpoena for the production of documents, electronically stored information, or objects to be served on Michael Jackson.  A true and correct copy of the subpoena is attached as Attachment A.

1

# ATTACHMENT A

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### District of Delaware

| | | |
|---|---|---|
| Purewick Corporation | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   22-102-MN |
| Sage Products, LLC | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          Michael Jackson
                    1210 Loma Portal Drive, El Cajon, CA 92020
                    *(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule A.

| Place: Fed. Ex. Office Print & Ship Center 171 Jamacha Road, El Cajon, CA 92019 | Date and Time: 12/12/2022 1:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    11/29/2022

CLERK OF COURT

                                                    OR    *Christopher Scharff*
_____                        _____
*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Sage Products, LLC                                    , who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   22-102-MN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                      *Server's signature*

                                                      _____
                                                      *Printed name and title*

                                                      _____
                                                      *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction   which may include lost earnings and reasonable attorney's fees   on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises   or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required   and also, after a motion is transferred, the issuing court   may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

As used herein:

1.       The requests for production contained herein seek all documents available to the subpoenaed party and each of the subpoenaed party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

2.       The term "document" or "documents" includes documents and things as broadly defined by the Federal Rules of Civil Procedure, including Rule 34, and includes papers of all kinds and non-paper information storage means, including, by way of example and without limitation, originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, letters, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody or control of the subpoenaed individual or party or each of the subpoenaed individual or party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

3.       The term "**Patents-in-Suit**" or "**Asserted Patents**" means U.S. Patent Nos. 10,226,376 and 10,390,989.

4.       "**PureWick Product**" means each model or iteration of any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by PureWick including any PureWick female external catheter.

5.       "**PureWick**" means PureWick Corporation, and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof. PureWick includes Robert A. Sanchez, Camille R. Newton, Joseph M. Forehand, Raymond J. Newton, Becton Dickinson and Company, and C.R. Bard, Inc.

6.       "**Sage**" means Sage Products, LLC and the directors, officers, employees, agents, or attorneys thereof.

1

7.    "**This Lawsuit**" means the following lawsuit filed in the District of Delaware: *PureWick Corporation v. Sage Products, LLC*, D. Del., 22-102-MN. A copy of the Protective Order in this Lawsuit is attached.

8.    "**Communications**" means the transmittal of information in any form, including, but not limited to, transmittals of facts, ideas, inquiries or otherwise.

9.    "**Person**" embraces both natural persons and corporations, firms, associations, organizations, joint ventures, trusts, partnerships, or other collective organizations or entities, including Sage and PureWick, and the acts and knowledge of a "person" as used herein are defined to include acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such "person."

10.    The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.  Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

11.    "Including" and "include(s)" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include(s)" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

12.    The phrases "relate(s) to" or "relating to" include: relate(s) to or relating to, concern(s) or concerning, constitute(s) or constituting, contain(s) or containing, embod(ies) or embodying, reflect(s) or reflecting, refer(s) to or referring to, identif(ies) or identifying, state(s) or stating, evidence(s) or evidencing, mention(s) or mentioning, discuss(es) or discussing, deal(s) with or dealing with, comment(s) on or commenting on, respond(s) to or responding to, allude(s) to or alluding to, describe(s) or describing, analyze(s) or analyzing, contradict(s) or contradicting, summarize(s) or summarizing, and review(s) or reviewing.

13.    The use of the singular form of any word includes the plural and vice-versa.

14.    With respect to any claim of a privilege regarding any information, document, or communication sought, individually identify each such communication, information, or document withheld on grounds of an alleged privilege, and specifically set forth: (a) the nature of the privilege claimed, (b) the author(s), (c) the addressee(s), (d) the person(s) who received copies, (e) the date of the communication, document, or information, and (f) the subject matter of the communication, document, or information. Any purportedly privileged document containing non-privileged matter must be produced, with the purportedly privileged portion redacted.

15.    Please feel free to contact us if you have questions about this document.

## REQUESTS FOR PRODUCTION

1.      All documents relating to any PureWick Product including documents relating to the marketing, promotion, voice-of-the customer feedback, sale, offer for sale, research, design, development, structure, function, operation, demonstration, and/or testing of each iteration or model of any PureWick Product.

2.      All communications (including with potential investors) regarding PureWick, external urine management, or any PureWick Product prior to June 1, 2017, including any communications with Kate Pawlik, Lorena Eckert, SCIMALS, Deloitte Corporate Finance (including Eric Steinberg, Douglas Bolt, Samuel Arnie, or Masan Stankovic), Hilltop Country Estate, Tri-City Medical Center, BioMed Ventures including Bruce Steel or Nancy Hong, Medical Device and Diagnostic Industry magazine, or the Connect Foundation.

3.      All documents and files relating to the Asserted Patents or any related patents or applications including all documents and files relating to the conception, reduction to practice, research, design, development, assignment, licensing, or ownership of any invention claimed in the Asserted Patents or any related patents or applications.

4.      To the extent not already requested, all documents regarding whether any PureWick Product is covered by an Asserted Patent or related patents or applications.

5.      To the extent not already requested, all documents relating to the validity or invalidity, infringement or noninfringement, enforceability or unenforceability, scope, interpretation, or construction of any claim of the Asserted Patents or any related patents or applications. This request includes any opinion, request for opinion, evaluation, analysis, investigation, or search concerning the validity or invalidity, infringement or noninfringement, enforceability or unenforceability, scope, interpretation, or construction of any of the claims of the Asserted Patents or related patents or applications, including any prepared by or commissioned by Deloitte Corporate Finance.

6.      To the extent not already requested, all publications and presentations relating to external urine management dated, published, or publicly available prior to June 1, 2017.

7.      To the extent not previously requested, all documents relating to any demonstration, experiment, offer for sale, sale, public or experimental use, or disclosure to any third party of any PureWick Product prior to June 1, 2017.

8.      All documents relating to urine collection products available after January 1, 2021 other than Sage or PureWick products.

9.      To the extent not previously requested, all PureWick press releases and website materials prior to June 1, 2017.

10.      All documents relating to any actual or potential acquisition of PureWick or its technology or intellectual property, including the Asserted Patents or any related patents or applications. This request includes documents showing persons with whom PureWick exchanged information and all documents relating to any analysis, investigation, evaluation, or consideration

of PureWick's patents or patent applications by either PureWick, Becton Dickinson, C.R. Bard, Sage, Deloitte Corporate Finance, First Quality, Molnlycke, or Medline.

11.     All documents relating to Sage, the Asserted Patents, or related patents or applications including during any due diligence process before C.R. Bard acquired PureWick.

12.     To the extent not previously requested, all communications or agreements relating to any PureWick intellectual property, any intellectual property or designs of Robert Sanchez, or any PureWick Product.

13.     All documents relating to the external urine management market or competitors or entities in the market, including any agreements and communications relating thereto.

14.     All documents relating to Sage, PureWick patents, or any lawsuit between PureWick or Sage. This request includes agreements and communications with PureWick or any law firm.

15.     All documents referring, relating, or reflecting any ownership interest or investment in PureWick by you or anyone you know.

16.     To the extent not already requested, documents sufficient to show any compensation received, including the amount of compensation received, by you from PureWick, C.R. Bard, or Becton Dickinson.

17.     To the extent not already requested, all agreements between you and PureWick, C.R. Bard, or Becton Dickinson.

18.     All PureWick Products in your possession and any urine collection product from Robert Sanchez or his family members.

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PUREWICK CORPORATION, | |
| Plaintiff, | |
| v. | C.A. No. 22-102-MN |
| SAGE PRODUCTS, LLC, | |
| Defendant. | |

**DEFENDANT SAGE PRODUCTS, LLC'S NOTICE OF
<u>SUBPOENA DUCES TECUM TO KATE PAWLIK</u>**

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure,

Defendant Sage Products, LLC shall cause a subpoena for the production of documents,

electronically stored information, or objects to be served on Kate Pawlik.  A true and correct copy

of the subpoena is attached as Attachment A.

YOUNG  CONAWAY  STARGATT  &
TAYLOR, LLP

*/s/ Samantha G. Wilson*

Of Counsel:

Robert A. Surrette
Sandra A. Frantzen
Christopher M. Scharff
Ryan J. Pianetto
McAndrews, Held & Malloy, Ltd
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
cscharff@mcandrews-ip.com
rpianetto@mcandrews-ip.com

Dated: November 18, 2022

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys   for   Defendant
Sage Products, LLC*

1

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on November 18, 2022, a copy of the foregoing

document was served on the persons listed below in the manner indicated:

<u>**BY E-MAIL**</u>

| | |
|---|---|
| John W. Shaw | Steven C. Cherny |
| Andrew E. Russell | Brian P. Biddinger |
| Shaw Keller LLP | Matthew A. Traupman |
| I.M. Pei Building | Raymond Nimrod |
| 1105 North Market Street, 12th Floor | Jason C. Williams |
| Wilmington, DE 19801 | Nicola R. Felice |
| jshaw@shawkeller.com | Bianca Fox |
| arussell@shawkeller.com | Quinn Emanuel Urquhart & Sullivan, LLP |
| | 51 Madison Avenue, 22nd Floor |
| Athena Dalton | New York, NY 10010 |
| Quinn Emanuel Urquhart & Sullivan, LLP | stevencherny@quinnemanuel.com |
| 191 N. Wacker Drive, Suite 2700 | brianbiddinger@quinnemanuel.com |
| Chicago, IL 60606 | matthewtraupman@quinnemanuel.com |
| athenadalton@quinnemanuel.com | raynimrod@quinnemanuel.com |
| | jasonwilliams@quinnemanuel.com |
| | nicolafelice@quinnemanuel.com |
| | biancafox@quinnemanuel.com |

YOUNG CONAWAY STARGATT
& TAYLOR, LLP


*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Sage Products, LLC*

# Attachment A

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### District of Delaware

| | | |
|---|---|---|
| Purewick Corporation | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   22-102-MN |
| Sage Products, LLC | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Kate Pawlik
5645 Lake Vista Dr., Bonsall, CA 92003
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule A.

| Place:  Fed. Ex. Office Print & Ship Center | Date and Time: |
|---|---|
| 620 Hacienda Dr., Suite 108 Vista, CA 92081 | 12/05/2022 1:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     11/18/2022

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Sage Products, LLC _____ , who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 22-102-MN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction   which may include lost earnings and reasonable attorney's fees   on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises   or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required   and also, after a motion is transferred, the issuing court   may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS AND INSTRUCTIONS**

As used herein:

1.      The requests for production contained herein seek all documents available to the subpoenaed party and each of the subpoenaed party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

2.      The term "document" or "documents" includes documents and things as broadly defined by the Federal Rules of Civil Procedure, including Rule 34, and includes papers of all kinds and non-paper information storage means, including, by way of example and without limitation, originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, letters, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody or control of the subpoenaed individual or party or each of the subpoenaed individual or party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

3.      The term "**Patents-in-Suit**" or "**Asserted Patents**" means U.S. Patent Nos. 10,226,376 and 10,390,989.

4.      "**PureWick Product**" means each model or iteration of any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by PureWick including any PureWick female external catheter.

5.      "**PureWick**" means PureWick Corporation, and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof. PureWick includes Robert A. Sanchez, Camille R. Newton, Joseph M. Forehand, Raymond J. Newton, Becton Dickinson and Company, and C.R. Bard, Inc.

6.      "**Sage**" means Sage Products, LLC and the directors, officers, employees, agents, or attorneys thereof.

7.      "**This Lawsuit**" means the following lawsuit filed in the District of Delaware: *PureWick Corporation v. Sage Products, LLC*, D. Del., 22-102-MN. A copy of the Protective Order in this Lawsuit is attached.

8.      "**Communications**" means the transmittal of information in any form, including, but not limited to, transmittals of facts, ideas, inquiries or otherwise.

9.      "**Person**" embraces both natural persons and corporations, firms, associations, organizations, joint ventures, trusts, partnerships, or other collective organizations or entities, including Sage and PureWick, and the acts and knowledge of a "person" as used herein are defined to include acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such "person."

10.     The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.  Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

11.     "Including" and "include(s)" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include(s)" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

12.     The phrases "relate(s) to" or "relating to" include: relate(s) to or relating to, concern(s) or concerning, constitute(s) or constituting, contain(s) or containing, embod(ies) or embodying, reflect(s) or reflecting, refer(s) to or referring to, identif(ies) or identifying, state(s) or stating, evidence(s) or evidencing, mention(s) or mentioning, discuss(es) or discussing, deal(s) with or dealing with, comment(s) on or commenting on, respond(s) to or responding to, allude(s) to or alluding to, describe(s) or describing, analyze(s) or analyzing, contradict(s) or contradicting, summarize(s) or summarizing, and review(s) or reviewing.

13.     The use of the singular form of any word includes the plural and vice-versa.

14.     With respect to any claim of a privilege regarding any information, document, or communication sought, individually identify each such communication, information, or document withheld on grounds of an alleged privilege, and specifically set forth: (a) the nature of the privilege claimed, (b) the author(s), (c)the addressee(s), (d) the person(s) who received copies, (e) the date of the communication, document, or information, and (f) the subject matter of the communication, document, or information. Any purportedly privileged document containing non-privileged matter must be produced, with the purportedly privileged portion redacted.

15.     Please feel free to contact us if you have questions about this document.

## REQUESTS FOR PRODUCTION

1.      All documents relating to PureWick or the PureWick Product from prior to June 1, 2017, including:

- Documents including communications such as emails that relate to testing, use, demonstration, sale, or offer for sale of any PureWick Product. This includes information on testing and demonstration of any PureWick female urine collection product.

- Documents, including photographs or notes, describing the structure, function, and operation of any PureWick Product.

- All literature or marketing materials for each PureWick Product such as press releases, advertisements, new product announcements, brochures, catalogs, catalog sheets, price lists, descriptive literature, articles in trade or technical journals, and packaging.

- Patient instructions and patient materials for any PureWick Product, whether formal or informal.

- Records of orders or requests for any PureWick Products whether for sale or for testing.

- Documents showing the first offer for sale or order of any PureWick Product by you or any Person you know.

2.      Communications with Camille Newton (e.g., docnewton@att.net or cnewton@purewick.com), Raymond Newton (e.g., drnewtonsoffice@att.net or rnewton@purewick.com) Mike Jackson (e.g., mjackson@purewick.com or mjackson@luma-lite.com), Joe Forehand (jforehand@purewick.com), Lori Hennessey (lhennessey@purewick.com) or any PureWick employee relating to PureWick, urine collection, any urine collection product or system, product testing, product offerings, product features, and patient feedback.  This includes all emails to purewick.com email addresses as well as emails to docnewton@att.net, drnewtonoffice@att.net, mjackson@purewick.com, mjackson@luma-lite.com, or any other email address used by any PureWick employee or representative.

3.      All agreements with PureWick including any such agreements signed by you or any person you know, including any sales, nondisclosure, confidentiality, advertising, licensing, informed consent, ownership, stock purchase, investment, or other agreements, including a May 29, 2015 Non-Exclusive use Licensing Agreement, 2015 sales orders, and any agreements relating to a 2016 Private Placement offering of PureWick stock.

4.      All documents relating to the May 2015 letter attached as Attachment A.

5.      Any communications between you and any third party regarding PureWick or a PureWick product, including the persons referenced in the May 2015 letter attached as Attachment A.

6.      Any advertisements or marketing featuring you or any person you know, including family members, and all communications relating to those advertisements.

7.     All documents including communications regarding the photograph attached as Exhibit B and any other similar photographs provided to PureWick.

8.     All documents relating to Sage, PureWick patents, or any lawsuit between PureWick or Sage. This request includes agreements and communications with PureWick or any law firm.

9.     All documents referring, relating, or reflecting any ownership interest or investment in PureWick by you or anyone you know.

10.    To the extent not already requested, documents sufficient to show any compensation received, including the amount of compensation received, by you from PureWick, C.R. Bard, or Becton Dickinson.

# Attachment A

May 21, 2015

Kate Duffy Pawlik
5645 Lake Vista Dr.
Bonsall, CA 92003
katepawlik@gmail.com

Dear PureWick,

I am writing this letter to express our complete satisfaction with your remarkable product. I am the caregiver for my 90-year-old mother, who lives with us at home. Until a few months ago, she was able to get up and use the bedside commode without assistance 3 or 4 times a night. After her last procedure in April, she was weak and could get up only with my help. This meant that I had to sleep in her room or check in every hour or so to make sure she wasn't getting up on her own and inviting a fall.

As her congestive heart failure progressed, she started sleeping more deeply and didn't wake up to urinate. Even when she did, it was difficult to get her up and on the commode safely because she was so weak. The result was nights of soaked nightgowns and sheets. We often had to change her and her bed a few times a night. This was hard on her as well as on my husband and me. We couldn't leave her wet for long, as she has a stage 4 pressure ulcer on her coccyx, closed now but always a danger.

When Dr. Newton suggested the PureWick device, I was skeptical but willing to try anything to keep my mom safe and as healthy as possible. The learning curve was surprisingly short! My mother is very thin, so we had to make a few adjustments in positioning the wick for maximum absorption. Other than that, it was very easy to use, and we have now been using it with consistent success for over 5 weeks.

Some of the benefits are obvious. She sleeps through the night and is much more rested in the morning. She is on hospice now, but has actually improved, partly I'm sure due to the better night's sleep. Her briefs stay almost completely dry, meaning that her wound is safe from moisture. My husband and I sleep better, knowing she is sleeping better and not in danger of soaking herself. An unexpected benefit is her utter delight in seeing the full canister of urine in the morning. She loves being part of trying a new product, and she is excited about others being able to benefit as she has.

I have two cousins who are nurses, and both were visiting here in the early weeks of trying the PureWick. They both commented on what this could mean for patients on home health as well as those in the hospital. Anyone we tell about it has had a family member or friend with an unpleasant (or serious) experience with a typical invasive catheter.

Thank you, PureWick, for making our quality of life better.

Sincerely,

Kate Duffy Pawlik (daughter/caregiver)

CONFIDENTIAL                                                                                                  PureWick_0015966

# Attachment B



# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PUREWICK CORPORATION, | |
| Plaintiff, | |
| v. | C.A. No. 22-102-MN |
| SAGE PRODUCTS, LLC, | |
| Defendant. | |

**DEFENDANT SAGE PRODUCTS, LLC'S NOTICE OF
SUBPOENA DUCES TECUM TO LORENA ECKERT**

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure,

Defendant Sage Products, LLC shall cause a subpoena for the production of documents,

electronically stored information, or objects to be served on Lorena Eckert. A true and correct

copy of the subpoena is attached as Attachment A.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Samantha G. Wilson*

Of Counsel:

Robert A. Surrette
Sandra A. Frantzen
Christopher M. Scharff
Ryan J. Pianetto
McAndrews, Held & Malloy, Ltd
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
cscharff@mcandrews-ip.com
rpianetto@mcandrews-ip.com

Dated: November 18, 2022

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant
Sage Products, LLC*

1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 18, 2022, a copy of the foregoing

document was served on the persons listed below in the manner indicated:

### <u>BY E-MAIL</u>

John W. Shaw
Andrew E. Russell
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
arussell@shawkeller.com

Athena Dalton
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
athenadalton@quinnemanuel.com

Steven C. Cherny
Brian P. Biddinger
Matthew A. Traupman
Raymond Nimrod
Jason C. Williams
Nicola R. Felice
Bianca Fox
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
stevencherny@quinnemanuel.com
brianbiddinger@quinnemanuel.com
matthewtraupman@quinnemanuel.com
raynimrod@quinnemanuel.com
jasonwilliams@quinnemanuel.com
nicolafelice@quinnemanuel.com
biancafox@quinnemanuel.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Sage Products, LLC*

# Attachment A

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### District of Delaware

| | |
|---|---|
| Purewick Corporation | ) |
| _Plaintiff_ | ) |
| v. | ) |
| Sage Products, LLC | ) |
| | ) |
| _Defendant_ | ) |

Civil Action No.   22-102-MN

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  
Lorena Eckert  
1445 Grandview Road, Vista, CA 92084  

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule A.

| Place: FedEx Office Print & Ship Center<br>620 Hacienda Dr., Suite 108<br>Vista, CA 92081 | Date and Time:<br><br>12/05/2022 1:00 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  11/18/2022

CLERK OF COURT

_____  OR  _____
_Signature of Clerk or Deputy Clerk_            _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Sage Products, LLC _____, who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  22-102-MN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction   which may include lost earnings and reasonable attorney's fees   on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises   or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required   and also, after a motion is transferred, the issuing court   may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS AND INSTRUCTIONS**

As used herein:

1.      The requests for production contained herein seek all documents available to the subpoenaed party and each of the subpoenaed party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

2.      The term "document" or "documents" includes documents and things as broadly defined by the Federal Rules of Civil Procedure, including Rule 34, and includes papers of all kinds and non-paper information storage means, including, by way of example and without limitation, originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody or control of the subpoenaed individual or party or each of the subpoenaed individual or party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

3.      The term "**Patents-in-Suit**" or "**Asserted Patents**" means U.S. Patent Nos. 10,226,376 and 10,390,989.

4.      "**PureWick Product**" means each model or iteration of any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by PureWick including any PureWick female external catheter.

5.      "**PureWick**" means PureWick Corporation, and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof. PureWick includes Robert A. Sanchez, Camille R. Newton, Joseph M. Forehand, Raymond J. Newton, Becton Dickinson and Company, and C.R. Bard, Inc.

6.      "**Sage**" means Sage Products, LLC and the directors, officers, employees, agents, or attorneys thereof.

1

7.     "**This Lawsuit**" means the following lawsuit filed in the District of Delaware: *PureWick Corporation v. Sage Products, LLC*, D. Del., 22-102-MN. A copy of the Protective Order in this Lawsuit is attached.

8.     "**Communications**" means the transmittal of information in any form, including, but not limited to, transmittals of facts, ideas, inquiries or otherwise.

9.     "**Person**" embraces both natural persons and corporations, firms, associations, organizations, joint ventures, trusts, partnerships, or other collective organizations or entities, including Sage and PureWick, and the acts and knowledge of a "person" as used herein are defined to include acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such "person."

10.     The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.  Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

11.     "Including" and "include(s)" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include(s)" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

12.     The phrases "relate(s) to" or "relating to" include: relate(s) to or relating to, concern(s) or concerning, constitute(s) or constituting, contain(s) or containing, embod(ies) or embodying, reflect(s) or reflecting, refer(s) to or referring to, identif(ies) or identifying, state(s) or stating, evidence(s) or evidencing, mention(s) or mentioning, discuss(es) or discussing, deal(s) with or dealing with, comment(s) on or commenting on, respond(s) to or responding to, allude(s) to or alluding to, describe(s) or describing, analyze(s) or analyzing, contradict(s) or contradicting, summarize(s) or summarizing, and review(s) or reviewing.

13.     The use of the singular form of any word includes the plural and vice-versa.

14.     With respect to any claim of a privilege regarding any information, document, or communication sought, individually identify each such communication, information, or document withheld on grounds of an alleged privilege, and specifically set forth: (a) the nature of the privilege claimed, (b) the author(s), (c)the addressee(s), (d) the person(s) who received copies, (e) the date of the communication, document, or information, and (f) the subject matter of the communication, document, or information. Any purportedly privileged document containing non-privileged matter must be produced, with the purportedly privileged portion redacted.

15.     Please feel free to contact us if you have questions about this document.

## REQUESTS FOR PRODUCTION

1.      All documents relating to PureWick or the PureWick Product from prior to June 1, 2017, including:

- Documents including communications such as emails that relate to testing, use, demonstration, sale, or offer for sale of any PureWick Product. This includes information on testing and demonstration of any PureWick female urine collection product by you or anyone you know or to you.

- Documents, including photographs or notes, describing the structure, function, and operation of any PureWick Product.

- All literature or marketing materials for each PureWick Product such as press releases, advertisements, new product announcements, brochures, catalogs, catalog sheets, price lists, descriptive literature, articles in trade or technical journals, and packaging.

- Patient instructions and patient materials for any PureWick Product, whether formal or informal.

- Records of orders or requests for any PureWick Products whether for sale or for testing.

- Documents showing the first offer for sale or order of any PureWick Product by you or any Person you know.

2.      Communications with Camille Newton (e.g., docnewton@att.net or cnewton@purewick.com), Raymond Newton (e.g., drnewtonsoffice@att.net or rnewton@purewick.com) Mike Jackson (e.g., mjackson@purewick.com or mjackson@luma-lite.com), Joe Forehand (jforehand@purewick.com), Lori Hennessey (lhennessey@purewick.com) or any PureWick employee relating to PureWick, urine collection, any urine collection product or system, product testing, product offerings, product features, and patient feedback.  This includes all emails to purewick.com email addresses as well as emails to docnewton@att.net, drnewtonoffice@att.net, mjackson@purewick.com, mjackson@luma-lite.com, or any other email address used by any PureWick employee or representative.

3.      All agreements with PureWick including any such agreements signed by you or any person you know, including any sales, nondisclosure, confidentiality, advertising, licensing, informed consent, ownership, stock purchase, investment, or other agreements.

4.      Any communications between you and any third party regarding PureWick or a PureWick product.

5.      Any documents or communications relating to articles, posters, or other presentations by you about any PureWick Product or any other urine collection device including documents and communications relating to the article and poster entitled "Reducing the Risk of Indwelling Catheter-Associated Urinary Tract Infection in Female Patients by Implementing an Alternative Female External Urinary Catheter" and "Innovation in Reducing CAUTIs," attached

as Attachments A and B.

6.      Documents relating to urine collection products available after January 1, 2021 other than Sage or PureWick products.

7.      Any advertisements or marketing featuring you or any person you know, including family members, and all communications relating to those advertisements.

8.      All documents relating to Sage, PureWick patents, or any lawsuit between PureWick or Sage. This request includes agreements and communications with PureWick or any law firm.

9.      All documents referring, relating, or reflecting any ownership interest or investment in PureWick by you or anyone you know.

10.     To the extent not already requested, documents sufficient to show any compensation received, including the amount of compensation received, by you from PureWick, C.R. Bard, or Becton Dickinson.

**Continence Care**

J Wound Ostomy Continence Nurs. 2020;47(1):50-53.
Published by Lippincott Williams & Wilkins

# Reducing the Risk of Indwelling Catheter–Associated Urinary Tract Infection in Female Patients by Implementing an Alternative Female External Urinary Collection Device

## *A Quality Improvement Project*

Lorena Eckert ◆ Lisa Mattia ◆ Shilla Patel ◆ Rowena Okumura ◆ Priscilla Reynolds ◆ Ingrid Stuiver

**ABSTRACT**

**PURPOSE**: The purpose of this quality improvement project was to reduce catheter-associated urinary tract infection (CAUTI) risk for female patients by implementing a female external urinary collection (FEUC) device with suction as an alternative to indwelling catheter (IDC).

**PARTICIPANTS AND SETTING**: Participants were female patients admitted to our 386-bed community hospital in Southern California and who required urinary management.

**APPROACH**: We implemented a comprehensive CAUTI prevention program in 2014 that was in place for 1.5 years before this project was started. The CAUTI prevention program was based on the US Center for Disease Control and Prevention's CAUTI prevention recommendations. To supplement our CAUTI prevention efforts in our female patients, we implemented the FEUC device in our intensive care, telemetry, medical-surgical, orthopedic, and acute rehabilitations inpatient care units. Indwelling catheter use and CAUTI cases were identified by our Infection Prevention department.

**OUTCOMES**: Prior to introduction of the FEUC device, in 2015, the baseline female IDC utilization rate was 31.7% (7181 IDC device-days/22,656 patient-days) and the female CAUTI rate was 1.11 (8 cases/7181 IDC device-days) per 1000 days. Following introduction of the device, both rates declined. In 2016, the IDC utilization rate was 29.7% ($P$ = .000) and the CAUTI rate was 0% ($P$ =.005). We continued to observe a reduction in 2017 IDC utilization rates of 26% ($P$ = .000); the 2017 CAUTI rate of 0.90 was not significantly different to our prior year rate ($P$ = .726).

**IMPLICATIONS FOR PRACTICE**: We found that the introduction of the FEUC device reduced the risk for CAUTI. We will continue to prioritize the use of external devices for urinary management to help reduce the risk of our patients developing CAUTI.

**KEY WORDS**: Catheter-associated urinary tract infection, CAUTI prevention, External collection device, External wicking device, Female external urinary catheter, Urinary management.

## INTRODUCTION

Approximately 12% to 16% of adult hospital inpatients will have an indwelling (urinary) catheter (IDC) at some time during their hospitalization.[1,2] The risk of bacteriuria is 3% to

**Lorena Eckert, MSN, RN, WOC Nurse,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

**Lisa Mattia, BSN, RN, CIC,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

**Shilla Patel, OD, CIC, FAPIC,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

**Rowena Okumura, BSN, RN, CIC,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

**Priscilla Reynolds, MSN, RN, PCCN,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

**Ingrid Stuiver,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

*Lorena Eckert and Shilla Patel are stock holders of PureWick female external catheter. Ingrid Stuiver was a short-term consultant for PureWick. For the remaining authors, no potential conflicts of interest are present.*

**Correspondence:** *Lorena Eckert, MSN, RN, WOC Nurse, Tri-City Medical Center, 4002 Vista Way, Oceanside CA 92056 (EckertLR@TCMC.com).*

*DOI: 10.1097/WON.0000000000000601*

7% in patients each day a catheter remains indwelling.[1,2] Hospitals risk decreased reimbursement based on the Centers for Medicare & Medicaid Services (CMS) Hospital Value Based Purchasing Program if patients experience never events (preventable outcomes) including catheter-associated urinary tract infection (CAUTI).[3] Most hospitals have adapted the 2014 CAUTI prevention guidelines[2] to help lower CAUTI rates and improve patient outcomes. These guidelines include inserting an IDC only when clinically indicated, along with daily review of its necessity and prompt removal when no longer clinically indicated. The guidelines also recommend use of aseptic technique and using sterile equipment during catheterization, as well as maintenance of the closed drainage system and unobstructed urine flow. In addition to these recommendations, the guidelines support securing the catheter to the patient's leg or abdomen to prevent movement and prevent shearing forces against the urethra, along with routine cleansing of the meatus. All of these recommendations were implemented by our staff, but we continued to have patients develop CAUTI; most were females.

In order to reduce CAUTI risk in our female patients, we sought a noninvasive urinary management device and elected to trial a novel female external urinary collection (FEUC)

Copyright © 2020 by the Wound, Ostomy and Continence Nurses Society™

Copyright © 2020 Wound, Ostomy and Continence Nurses Society™. Unauthorized reproduction of this article is prohibited.

device with suction (PureWick Bard, Covington, Georgia). This FEUC device is designed for female patients; it is placed between the labia majora, and uses wall suction to wick urine away into a collection vessel. The FEUC device adds another option for urinary management in our female patients before an IDC is considered or upon its removal when no longer indicated.

This project aimed to determine if introduction of the FEUC device benefited female patients in terms of preventing CAUTI cases and decreasing IDC device use among hospitalized females. We used baseline data from 2015 and compared them to 2016 and 2017 data following introduction of the FEUC device.

### APPROACH

The setting for this quality improvement (QI) project was a 386-bed acute care hospital in Southern California. The project was deemed QI, and not research, and exempted from institutional review board review and approval. We initially evaluated the FEUC device in one inpatient care unit (telemetry unit) to determine if the product met expectations regarding ease of use, reliable urine output measurement, protecting skin from moisture, and comfort. Female inpatients who required urinary management were the population focus and included in our project. We utilized the PDCA (Plan, Do, Check, Act) method to guide and implement this project.

### Plan

The FEUC device was trialed September 2015 through December 2015 in our 60-bed telemetry unit. With an average daily census of 50 patients, it serves as a "step-down" unit, providing an intermediate level of care between the intensive care unit and the general medical-surgical unit. During this initial trial period, we used 60 FEUC devices on 30 female patients.

Initial education of the use of the FEUC device was provided by a representative of the product manufacturer to the telemetry unit manager, the nurse educator, and the WOC care nurse along with one-on-one education for RNs on the unit. To ensure proper use and consistency of the device, indications/contraindications for use given in Table 1 were followed. The educator ensured that all staff members had been given the same education for use of the device. The company representative for the device and the wound care nurse provided ongoing educational support to the staff during the trial.

### Do

At the end of the trial period, each nurse on the unit who used the device was given a survey for feedback. The survey results were reviewed and discussed at our January 2016 Shared Governance meeting. This professional practice group is made up of frontline nurse representatives and unit-based educators who meet regularly and discuss practice concerns.

We received positive feedback from this initial trial and elected to expand the evaluation project to other hospital units (intensive care, medical-surgical, orthopedic/neurology, and rehabilitation units). Because postpartum vaginal discharge is a contraindication for use, the Mother-Baby unit was excluded. Our progressive care unit that provides care to incarcerated patients was also excluded. It primarily cares for male patients.

Nurses from the Shared Governance group volunteered to be "champions," enabling implementation of this practice change on their units. They provided education and demonstration of application and use of the FEUC device to RNs and nursing assistants on each of the units. Nursing assistants were able to place or remove the FEUC device to help support the nurses' workload. A physician's order was not required for this device; this decision was made because the device was noninvasive and sufficiently similar to practice related to the use of condom catheters in male patients, which do not require a provider's order. Eligible patients were identified via regular (daily rounds) of female inpatients on the participating units.

### Check and Act

Following data collection for 1 year after using the FEUC device, Infection Prevention staff reviewed data to compare 2015 and 2016 IDC utilization and CAUTI rates in female patients. Based on these findings, we elected to expand use of the FEUC device hospital-wide. We observed that the relatively rapid hospital-wide adoption of this practice change was facilitated by Infection Prevention sharing data regarding CAUTI occurrences with regular use of the FEUC device and ongoing encouragement of device use by unit-based educators. We also ensured that new staff members were educated about device use.

### OUTCOMES ANALYSIS

Diagnosis of a CAUTI was based on evaluation of all female patients with positive urine cultures to determine if they met US Center for Disease Control and Prevention/National

**TABLE 1.**
**Indications/Contraindications for Use of Female External Urinary Catheter**

| Indications for Use | Contraindications for Use |
|---|---|
| Female patients | Female patients with urinary retention |
| Patients requiring urine output monitoring who do not meet indications for indwelling urinary catheterization | Patients with male genitalia |
| Urinary incontinence and/or frequent urination | Agitated, combative, or uncooperative and might remove device |
| Difficulty walking from the bed or chair to toilet | Frequent episodes of stool incontinence without a fecal management system |
| Difficulty using bedpan | Experiencing preexisting skin breakdown at the site |
| Postsurgical or procedure immobility | Experiencing moderate/heavy menstruation and cannot use a tampon |
| Skin injury or irritation related to urinary incontinence or diapers | Postpartum patients with vaginal discharge |
| Bed rest orders | Patients who are mobile and able to safely ambulate to the restroom |

Copyright © 2020 Wound, Ostomy and Continence Nurses Society™. Unauthorized reproduction of this article is prohibited.

Healthcare Safety Network (CDC NHSN) criteria.[4] An initial report was completed on monthly basis identifying the number of patients who had an IDC noted in the chart; this list was edited to include only female patients. Data Support staff then provided an annual report of the number of female patients managed by an IDC.

The yearly female IDC device-days were divided by the yearly female patient-days to determine the IDC device utilization rate. The yearly number of CAUTI cases for female patients was divided by the number of female IDC device-days to determine the CAUTI rate. The software program used for statistical analysis was the CDC NHSN statistical calculator that uses SAS Macros (SAS, Cary, North Carolina). We compared baseline data, obtained from calendar year 2015, to calendar 2016 data (obtained after FEUC device introduction) to determine any differences. We also compared 2016 and 2017 data to determine if outcomes persisted over an additional 12-month follow-up period.

## OUTCOMES

Findings revealed 7181 female IDC device-days out of 22,656 female patient-days among participating units (31.7% IDC utilization rate). During 2016, the IDC utilization rate was 6849 female IDC device-days out of 23,076 female patient-days (29.7% IDC utilization rate), reflecting a decline in IDC utilization ($P = .0000$). To determine sustainability of this outcome, we calculated our 2017 IDC utilization rate; it was 5558 female IDC device-days out of 21,345 female patient-days (IDC utilization of 26.0%); this rate was also lower than the 2015 baseline utilization rate of 31.7% ($P = .0000$) (Table 2).

Due to limitations with our data collection tools, we were not able to calculate the number of days female patients had an FEUC device. We were only able to rely on data from our Purchasing department to determine the use of the FEUC device. In 2015, we were given 60 counts of product to trial, then in 2016 we purchased 6695, and in 2017 we purchased 13,219. This increase in product purchase by our supply chain suggests the product was being used and correlated with our decrease in IDC utilization.

We also evaluated CAUTI occurrences following introduction of the FEUC device. During 2015, 8 female patients experienced CAUTI out of 7181 IDC device-days, yielding an incidence of 1.11 CAUTIs per 1000 IDC device-days. In 2016, the CAUTI rate was 0 out of 6849 IDC device-days ($P = .0047$). In 2017, 5 female patients met CDC NHSN criteria for CAUTI out of 5558 IDC device-days, yielding an

incidence of 0.90 CAUTIs per 1000 IDC device-days. These incidence rates did not significantly differ from 2015 baseline incidence rates ($P = .7262$).

## DISCUSSION

Catheter-associated urinary tract infection prevention has become a major focus for many hospitals.[5,6] The latest guidelines for CAUTI prevention have been adopted by many facilities in order to achieve this goal. Adherence to CDC NHSN CAUTI prevention components has been shown to reduce CAUTI rates in many studies.[2] We reviewed the literature and found a multiple case series that described experiences with a similar device in 3 female patients.[7] Based on these experiences, they concluded that the FEUC device is a feasible alternative to an IDC for managing urinary incontinence. Data related to CAUTI prevention or reduced IDC utilization were not discussed. During the Association of Professionals in Infection Control and Epidemiology 46th Annual Educational Conference in June 2019, 3 oral abstracts were presented that also used the FEUC device.[8-10] All compared IDC utilization and CAUTI rates; one reported a significant reduction in IDC utilization but no significant changes in CAUTI rates.[8] Two abstracts found significant reductions in CAUTI and IDC utilization rates.[9,10]

Based on our experiences, we believe that educating both RNs and nursing assistants contributed to project outcomes and rapid use of the product in all of the units we studied. In addition, our Infection Prevention department was already collecting CAUTI and IDC utilization data, which enhanced our ability to determine rates in female patients on participating units.

The limitations to our QI project include our data systems not being set up in time to collect the number of days the FEUC device was used. Instead, we are only able to report changes in the number of products purchased within data collection periods. We therefore recommend creating electronic data collection systems before starting a project.

We did not perform any compliance audits for the CAUTI bundle as they were considered standard practice. It is possible that there may have been an improvement with CAUTI bundle compliance during the postintervention period that contributed to improved rates, but these data were not tracked. We recommend auditing your facility's CAUTI bundle compliance before and following introduction of an FEUC device to ensure ongoing adherence and strengthen the correlation between device introduction and changes in IDC utilization rates. Although we observed a decrease in CAUTI cases in the first year following introduction of the FEUC device, this reduction was

| TABLE 2. | | | | | |
|---|---|---|---|---|---|
| **Data for IDC Utilization and CAUTI Rates (Female Only)** | | | | | |
| | **2015** | **2016** | **P** | **2017** | **P** |
| CAUTI cases | 8 | 0 | | 5 | |
| IDC device-days | 7,181 | 6,849 | | 5,558 | |
| Patient-days | 22,656 | 23,076 | | 21,345 | |
| IDC utilization rate | 31.7% | 29.7%[a] | .000 | 26%[a] | .000 |
| CAUTI rate per 1000 IDC device-days | 1.11 | 0.00[a] | .005 | 0.90 | .726 |
| FEUC product (count) | 60 | 6,695 | | 13,219 | |

Abbreviations: CAUTI, catheter-associated urinary tract infection; FEUC, female external urinary catheter; IDC, indwelling urinary catheter.
[a]Statistically significant decrease with $P$ value of less than .05.

Copyright © 2020 Wound, Ostomy and Continence Nurses Society™. Unauthorized reproduction of this article is prohibited.

not sustained during year 2. This variability in CAUTI incidence rates may be attributed to a number of factors including difference in IDC rates in individual patients and changes in the application of other CAUTI preventive interventions.

## CONCLUSION

We introduced an FEUC device and were able to reduced IDC utilization days in female patients over a period of 2 years. Our CAUTI incidence declined over the first year following device use, but the incidence rose during year 2 following introduction. Findings of our QI project suggest that a consistent, comprehensive, interdisciplinary approach to assess CAUTI bundle compliance that included a FECU device may reduce both IDC utilization and CAUTI rates.

## REFERENCES

1. McGuckin M. *The patient Survival Guide: 8 Simple Solutions to Prevent Hospital and Healthcare-Associated Infections*. New York, NY: Demos Medical Publishing; 2012.
2. Lo E, Nicolle LE, Coffin SE, et al. Strategies to prevent catheter-associated urinary tract infections in acute care hospitals: 2014 update. *Infect Control Hosp Epidemiol*. 2014;35(suppl 2):S32-S47.
3. Centers for Medicare & Medicaid Services. The Hospital Value-Based Purchasing Program. https://www.cms.gov/Medicare/Quality-Initiatives-Patient-Assessment-Instruments/Value-Based-Programs/HVBP/Hospital-Value-Based-Purchasing.html. Accessed June 19, 2019.
4. Centers for Disease Control and Prevention. Catheter-associated urinary tract infection (CAUTI) and non-catheter-associated urinary tract infection (UTI) and other urinary system infection (USI). https://www.cdc.gov/nhsn/acute-care-hospital/cauti. Published 2018. Accessed July 22, 2019.
5. Saint S, Chenoweth CE. Biofilms and catheter-associated urinary tract infections. *Infect Dis Clin North Am*. 2003;17:411-432.
6. Weber DJ, Sickbert-Bennett EE, Gould CV, Brown VM, Huslage D, Rutala WA. Incidence of catheter-associated and non-catheter-associated urinary tract infections in a healthcare system. *Infect Control Hosp Epidemiol*. 2011;32:822-823.
7. Beeson T, Davis C. Urinary management with an external female collection device. *J Wound Ostomy Continence Nurs*. 2018;45(2):187-189.
8. Mueller C. Finally! An external female catheter device for women! *Am J Infect Control*. 2019;47:S13.
9. Beeson T. Chasing zero catheter-associated urinary tract infections (CAUTIs) through implementing a novel female external urine collection device in a tertiary academic surgical intensive care unit (SICU). *Am J Infect Control*. 2018;46:S8.
10. Dublynn T, Episcopia B. Female external catheter use: a new bundle element to reduce CAUTI. *Am J Infect Control*. 2019;47:S39.

### Call for Authors: Continence Care

Original research, case studies and case series addressing, in particular:

- Urinary or fecal stream diversion: indwelling urethral, suprapubic catheters or fecal/bowel management system.
- Pelvic floor muscle rehabilitation protocols for stress, urge and mixed urinary incontinence in men or women.
- Current state of the science presented in systematic reviews and/or meta analyses.
- Evidence based management of incontinence associated dermatitis or moisture associated skin damage.
- Incidence and prevalence of incontinence in understudied populations.
- Quality of life issues associated within continence, care-giving, catheter management, prevention of incontinence.

Copyright © 2020 Wound, Ostomy and Continence Nurses Society™. Unauthorized reproduction of this article is prohibited.



# Innovation in Reducing CAUTIs

Lisa Mattia, RN, BSN, CIC; Rowena Okumura, RN, BSN, CIC; Rachael Garcia BSN, MBA; Pricilla Reynolds RN, MSN/ED, PCCN
and Lorena Eckert RN, MSN, WOC Nurse

Pressure Ulcer Prevention & Infection Prevention,
Tri-City Medical Center 4002 Vista Way, Oceanside, CA 92056

## INTRODUCTION

Female urinary incontinence (UI) is a "loss of bladder control, resulting in the accidental loss of urine" (NIDDK, 2016). There are multiple causes and types of female urinary incontinence. According to NIDDK (2016) research women ages 20 to 39 have some degree of UI and women 60 years and older UI daily. Urinary incontinence is a widespread problem and prevalence estimates are near 46% for the adult population (Moulin et al. 2008). Urinary incontinence has been managed mostly by using invasive urinary catheters, external condom catheters for men or diapers/pads. Invasive urinary catheters are able to do a great job containing urine and keeping the skin dry, but have added risk of the patient developing a Catheter Associated Urinary Tract Infection (CAUTI). Diapers/pads are less invasive but put the patient at risk for skin damage related to the moisture. Male patients have also had a 3rd option of using an external condom catheter, which until now, was not available for the female anatomy.

## BACKGROUND

Tri-City Medical Center is a 300 bed Community Hospital in San Diego, CA. The hospital implemented a novel external urinary catheter device (PureWick®) for women in an effort to reduce CAUTI in female patients and give patient care staff more urinary management options for this population.

## METHODS

A novel external female urinary catheter (PureWick®) was trialed and approved for use on all inpatient units starting Jan 2016. It is the first external female urinary management system with a wicking device available on the market. It works outside of the body to manage female urinary incontinence, moisture associated skin damage, contact dermatitis and interrupted sleep. PureWick is comprised of a soft wicking material on one side used to wick urine away from the patient. The other side of wicking material that is not in contact with the patient's labia is encased in a plastic material.

Nurse champions were used to train and promote use of the device on all urinary incontinent female patients who either had an indwelling urinary catheter or required diapers/pads. When indicated, indwelling urinary catheter or diapers/pads were replaced with the PureWick. A survey was also conducted to determine nursing acceptance of the product. Number of CAUTI for women were compared for the pre intervention phase of calendar year 2015 to the post intervention phase of calendar year 2016. CAUTIs were defined by using the current CDC NHSN definition for those years. Product usage was also tracked.

## RESULTS

During 2015, a total of 6 CAUTIs were identified in female patients compared to zero CAUTI in 2016 (Figure 1). Product usage was also tracked showing the product was being used significantly in 2016 resulting in less female patients with Foley catheters in place (Figure 2). All survey results from 15 RNs were extremely positive (Figure 3).

## GRAPHS

Tri-City Medical Center PureWick CAUTI Prevention Trial 2015-2016

**Figure 1:** Number of CAUTIs at TCMC during 2015-2016. Once PureWick was implemented in November 2015, no CAUTIs have been seen at TCMC in women.

2016 Supply Usage Comparison

**Figure 2:** A steady decrease of product associated with incontinence was observed in 2016 while the use of PureWick increased. In the absence of CAUTIs in patients we anticipate the product usage to decrease further along with the cost of those materials.

## RESULTS



**PUREWICK... TCMC Hospital Survey Results (n = 15)**

**Figure 3:** TCMC Hospital Survey results for 15 RNs that used PureWick on more than 5 patients.

## CONCLUSIONS

TCMC saw a significant reduction in female CAUTIs with the implementation of PureWick. They were able to prevent ALL CAUTIs in their female patients once the product was implemented. Nursing staff who wanted to share their personal experience with the product scored high on all questions in the survey. Due to limited options for managing urinary incontinence for female patients, this product was able to offer a less invasive option with the ease of use that is often associated with invasive internal Foley catheters. But also reduces the patients' risk of a CAUTI infection.

## REFERENCES

1. The National Institute of Diabetes, Digestive, and Kidney Disease Health Information Center (NIDDK). (2016). Bladder control problems in women (urinary incontinence). Retrieved from https://www.niddk.nih.gov/health-information/urologic-diseases/bladder-control-problems-women
2. PureWick (2016). Female external catheter for women: How does it work? Retrieved from http://www.purewick.com/how-does-purewick-work
3. PureWick Corp. (2016. April). Instructions for use in female population.
4. PureWick Corp. (n.d.). Successful incontinence management for women. Retrieved from http://www.purewick.com/
5. Guideline For Prevention of Catheter-Associated Urinary Tract Infections 2009. https://www.cdc.gov/hicpac/pdf/CAUTI/CAUTIguideline2009final.pdf
6. Carr, H., (2014). Urinary Tract Infection. In: APIC Text of Infection Control and Epidemiology (4th ed. Vol 2, 33-1 to 33-13). Washington DC: APIC
7. Du Moulin MFT, Hamers JP, Ambergan AW, Janssen MA, Halfens RJ. (2008). Prevalence of urinary incontinence among community-dwelling adults receiving home care. Res Nurs Health. Dec;31(6):604-12.
8. Tri-City Medical Center (TCMC). (2017). PureWick female urinary incontinence management procedure.

## ACKNOWLEDGMENT

Thank you to Ingrid Stauver, Ph.D. for data analysis and poster creation.

## PRODUCT INFORMATION



Figure 4. PureWick shown in diagram 1 and attachment to vacuum line in diagram 2.

### When to Use

PureWick urine management system may be used for female patients with all types of urinary incontinence, during surgery and post procedure. A physician order is not required
The PureWick may be implemented by staff for the following:
- Urinary incontinence
  - Pressure ulcers or contact dermatitis associated skin injuries related to urine
  - Frequent urination at night
- Strict intake and output orders
- High risk for fall with toileting
- Patients with bedrest orders
- Patients with cognitive impairment
- Post-surgical or procedure immobility
- Have only minimal or moderate leakage
- Urine specimen. If a specimen cannot be obtained from a clean catch
Contraindications
- Urinary retention or neurogenic bladder
- Easily toilet without assistance
- Manage their urinary incontinence without assistance
- Uncooperative or combative patients
- Bowel incontinence with frequent episodes

### How to Use

- Provide peri-care to patient
- Gently tuck the bottom end of the wick between the labia and buttocks allowing the wick to be snugly positioned between the anus and the pubic bone. The wick should touch the perineum between the anus and the pubic bone.
- Attach the plastic connector on the end of the PureWick® into the connector on the suction tubing and set the suction pressure to 40mmHg continuous suction
- Document PureWick application and urine output in the Electronic Health Record (EHR).

PureWick_0016010

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PUREWICK CORPORATION, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | C.A. No. 22-102-MN |
| | ) | |
| SAGE PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT SAGE PRODUCTS, LLC'S NOTICE OF
### SUBPOENA DUCES TECUM TO TRI-CITY MEDICAL CENTER

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure,

Defendant Sage Products, LLC shall cause a subpoena for the production of documents,

electronically stored information, or objects to be served on Tri-City Medical Center.  A true and

correct copy of the subpoena is attached as Exhibit 1.

Of Counsel:
Robert A. Surrette
Sandra A. Frantzen
Christopher M. Scharff
Ryan J. Pianetto
MCANDREWS, HELD
& MALLOY, LTD
500 West Madison Street, 34th Floor
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
cscharff@mcandrews-ip.com
rpianetto@mcandrews-ip.com

Dated:  November 30, 2022

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Sage Products, LLC*

# EXHIBIT 1

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Delaware

| | | |
|---|---|---|
| Purewick Corporation | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   22-102-MN |
| Sage Products, LLC | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Tri-City Medical Center, 4002 Vista Way
                       Oceanside, CA 92056
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule A.

| Place:  FedEx Office Print & Ship Center<br>2444 Vista Way, Oceanside, CA 92054 | Date and Time:<br><br>12/12/2022 1:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       11/30/2022

                *CLERK OF COURT*

                                                                    OR       *Chwdges Schuf*
_____                                        _____
*Signature of Clerk or Deputy Clerk*                                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Sage Products, LLC _____ , who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  22-102-MN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction   which may include lost earnings and reasonable attorney's fees   on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises   or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required   and also, after a motion is transferred, the issuing court   may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS AND INSTRUCTIONS**

As used herein:

1.      The requests for production contained herein seek all documents available to the subpoenaed party and each of the subpoenaed party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

2.      The term "document" or "documents" includes documents and things as broadly defined by the Federal Rules of Civil Procedure, including Rule 34, and includes papers of all kinds and non-paper information storage means, including, by way of example and without limitation, originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody or control of the subpoenaed individual or party or each of the subpoenaed individual or party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

3.      The term "**Patents-in-Suit**" or "**Asserted Patents**" means U.S. Patent Nos. 10,226,376 and 10,390,989.

4.      "**PureWick Product**" means each model or iteration of any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by PureWick including any PureWick female external catheter.

5.      "**PureWick**" means PureWick Corporation, and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof. PureWick includes Robert A. Sanchez, Camille R. Newton, Joseph M. Forehand, Raymond J. Newton, Becton Dickinson and Company, and C.R. Bard, Inc.

6.      "**Sage**" means Sage Products, LLC and the directors, officers, employees, agents, or attorneys thereof.

7.    "**This Lawsuit**" means the following lawsuit filed in the District of Delaware: *PureWick Corporation v. Sage Products, LLC*, D. Del., 22-102-MN. A copy of the Protective Order in this Lawsuit is attached.

8.    "**Communications**" means the transmittal of information in any form, including, but not limited to, transmittals of facts, ideas, inquiries or otherwise.

9.    "**Person**" embraces both natural persons and corporations, firms, associations, organizations, joint ventures, trusts, partnerships, or other collective organizations or entities, including Sage and PureWick, and the acts and knowledge of a "person" as used herein are defined to include acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such "person."

10.    The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.  Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

11.    "Including" and "include(s)" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include(s)" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

12.    The phrases "relate(s) to" or "relating to" include: relate(s) to or relating to, concern(s) or concerning, constitute(s) or constituting, contain(s) or containing, embod(ies) or embodying, reflect(s) or reflecting, refer(s) to or referring to, identif(ies) or identifying, state(s) or stating, evidence(s) or evidencing, mention(s) or mentioning, discuss(es) or discussing, deal(s) with or dealing with, comment(s) on or commenting on, respond(s) to or responding to, allude(s) to or alluding to, describe(s) or describing, analyze(s) or analyzing, contradict(s) or contradicting, summarize(s) or summarizing, and review(s) or reviewing.

13.    The use of the singular form of any word includes the plural and vice-versa.

14.    "**Tri-City**" includes Tri-City Medical Center and any employees, officers, or agents thereof, including Lorena Eckert, Priscilla Reynolds, Heather Hunter, Lisa Mattia, Rowena Okumura, Rachael Garcia, and Bernie Szabad,

15.    With respect to any claim of a privilege regarding any information, document, or communication sought, individually identify each such communication, information, or document withheld on grounds of an alleged privilege, and specifically set forth: (a) the nature of the privilege claimed, (b) the author(s), (c) the addressee(s), (d) the person(s) who received copies, (e) the date of the communication, document, or information, and (f) the subject matter of the communication, document, or information. Any purportedly privileged document containing non-privileged matter must be produced, with the purportedly privileged portion redacted.

16.    Please feel free to contact us if you have questions about this document.

2

## <u>REQUESTS FOR PRODUCTION</u>

1.      All documents relating to the PureWick Product from prior to June 1, 2017, including:

- Documents that relate to testing, use, demonstration, sale, or offer for sale of any PureWick Product. This includes information on testing of any PureWick female urine collection product by any patient or staff member at Tri-City and/or demonstration of any PureWick female urine collection product to any patient or staff member.

- Communications relating to the testing, use, demonstration, sale, or offer for sale of any PureWick Product.

- Documents, including photographs or notes, describing the structure, function, and operation of any PureWick Product.

- All literature or marketing materials for each PureWick Product such as press releases, advertisements, new product announcements, brochures, catalogs, catalog sheets, price lists, descriptive literature, articles in trade or technical journals, and packaging.

- Patient instructions and patient materials for any PureWick Product, whether formal or informal.

- Records of orders or requests for any PureWick Products whether for sale or for testing.

2.      To the extent not already requested, documents sufficient to show the first offer for sale or order of any PureWick Product to Tri-City.

3.      Communications with Camille Newton, Raymond Newton, Mike Jackson, or any PureWick employee relating to urine collection, any urine collection product or system, product testing, product offerings, product features, and patient feedback.

4.      All confidentiality, nondisclosure, or other agreements with PureWick including any such agreements signed by Tri-City or any staff or employees of Tri-City.

5.      Documents sufficient to show any vacuum-assisted urine collection products used or tested by patients at Tri-City prior to June 1, 2017.

6.      Any documents or communications relating to articles, posters, or other presentations by any employee of Tri-City about any PureWick Product or any other urine collection device including documents and communications relating to the article and poster entitled "Reducing the Risk of Indwelling Catheter-Associated Urinary Tract Infection in Female Patients by Implementing an Alternative Female External Urinary Catheter" and "Innovation in Reducing CAUTIs," attached as Attachments A and B.

7.      Documents relating to urine collection products available after January 1, 2021 other than Sage or PureWick products.

8.      All documents relating to this Lawsuit or the Asserted Patents. This request includes agreements and communications with PureWick or any law firm.

# ATTACHMENT A

**Continence Care**

J Wound Ostomy Continence Nurs. 2020;47(1):50-53.
Published by Lippincott Williams & Wilkins

Downloaded from https://journals.lww.com/jwocnonline by BhDMf5ePHKav1zEoum1tQfN4a+kJLhEZgbsIHo4XMi0hCywCX1AWnYQp/IlQrHD3i3D0OdRyi7TvSFl4Cf3VC4/OAVpDDa8K2+Ya6H515kE= on 04/26/2020

# Reducing the Risk of Indwelling Catheter–Associated Urinary Tract Infection in Female Patients by Implementing an Alternative Female External Urinary Collection Device

## *A Quality Improvement Project*

Lorena Eckert ◆ Lisa Mattia ◆ Shilla Patel ◆ Rowena Okumura ◆ Priscilla Reynolds ◆ Ingrid Stuiver

**ABSTRACT**

**PURPOSE:** The purpose of this quality improvement project was to reduce catheter-associated urinary tract infection (CAUTI) risk for female patients by implementing a female external urinary collection (FEUC) device with suction as an alternative to indwelling catheter (IDC).

**PARTICIPANTS AND SETTING:** Participants were female patients admitted to our 386-bed community hospital in Southern California and who required urinary management.

**APPROACH:** We implemented a comprehensive CAUTI prevention program in 2014 that was in place for 1.5 years before this project was started. The CAUTI prevention program was based on the US Center for Disease Control and Prevention's CAUTI prevention recommendations. To supplement our CAUTI prevention efforts in our female patients, we implemented the FEUC device in our intensive care, telemetry, medical-surgical, orthopedic, and acute rehabilitations inpatient care units. Indwelling catheter use and CAUTI cases were identified by our Infection Prevention department.

**OUTCOMES:** Prior to introduction of the FEUC device, in 2015, the baseline female IDC utilization rate was 31.7% (7181 IDC device-days/22,656 patient-days) and the female CAUTI rate was 1.11 (8 cases/7181 IDC device-days) per 1000 days. Following introduction of the device, both rates declined. In 2016, the IDC utilization rate was 29.7% ($P = .000$) and the CAUTI rate was 0% ($P = .005$). We continued to observe a reduction in 2017 IDC utilization rates of 26% ($P = .000$); the 2017 CAUTI rate of 0.90 was not significantly different to our prior year rate ($P = .726$).

**IMPLICATIONS FOR PRACTICE:** We found that the introduction of the FEUC device reduced the risk for CAUTI. We will continue to prioritize the use of external devices for urinary management to help reduce the risk of our patients developing CAUTI.

**KEY WORDS:** Catheter-associated urinary tract infection, CAUTI prevention, External collection device, External wicking device, Female external urinary catheter, Urinary management.

## INTRODUCTION

Approximately 12% to 16% of adult hospital inpatients will have an indwelling (urinary) catheter (IDC) at some time during their hospitalization.[1,2] The risk of bacteriuria is 3% to 7% in patients each day a catheter remains indwelling.[1,2] Hospitals risk decreased reimbursement based on the Centers for Medicare & Medicaid Services (CMS) Hospital Value Based Purchasing Program if patients experience never events (preventable outcomes) including catheter-associated urinary tract infection (CAUTI).[3] Most hospitals have adapted the 2014 CAUTI prevention guidelines[2] to help lower CAUTI rates and improve patient outcomes. These guidelines include inserting an IDC only when clinically indicated, along with daily review of its necessity and prompt removal when no longer clinically indicated. The guidelines also recommend use of aseptic technique and using sterile equipment during catheterization, as well as maintenance of the closed drainage system and unobstructed urine flow. In addition to these recommendations, the guidelines support securing the catheter to the patient's leg or abdomen to prevent movement and prevent shearing forces against the urethra, along with routine cleansing of the meatus. All of these recommendations were implemented by our staff, but we continued to have patients develop CAUTI; most were females.

In order to reduce CAUTI risk in our female patients, we sought a noninvasive urinary management device and elected to trial a novel female external urinary collection (FEUC)

**Lorena Eckert, MSN, RN, WOC Nurse,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

**Lisa Mattia, BSN, RN, CIC,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

**Shilla Patel, OD, CIC, FAPIC,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

**Rowena Okumura, BSN, RN, CIC,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

**Priscilla Reynolds, MSN, RN, PCCN,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

**Ingrid Stuiver, PhD,** *Pressure Ulcer Prevention, Infection Prevention and Clinical Research, Tri-City Medical Center, Oceanside, California.*

*Lorena Eckert and Shilla Patel are stock holders of PureWick female external catheter. Ingrid Stuiver was a short-term consultant for PureWick. For the remaining authors, no potential conflicts of interest are present.*

**Correspondence:** *Lorena Eckert, MSN, RN, WOC Nurse, Tri-City Medical Center, 4002 Vista Way, Oceanside CA 92056 (EckertLR@TCMC.com).*

*DOI: 10.1097/WON.0000000000000601*

Copyright © 2020 by the Wound, Ostomy and Continence Nurses Society™

Copyright © 2020 Wound, Ostomy and Continence Nurses Society™. Unauthorized reproduction of this article is prohibited.

JWOCN ◆ Volume 47 ◆ Number 1

device with suction (PureWick Bard, Covington, Georgia). This FEUC device is designed for female patients; it is placed between the labia majora, and uses wall suction to wick urine away into a collection vessel. The FEUC device adds another option for urinary management in our female patients before an IDC is considered or upon its removal when no longer indicated.

This project aimed to determine if introduction of the FEUC device benefited female patients in terms of preventing CAUTI cases and decreasing IDC device use among hospitalized females. We used baseline data from 2015 and compared them to 2016 and 2017 data following introduction of the FEUC device.

## APPROACH

The setting for this quality improvement (QI) project was a 386-bed acute care hospital in Southern California. The project was deemed QI, and not research, and exempted from institutional review board review and approval. We initially evaluated the FEUC device in one inpatient care unit (telemetry unit) to determine if the product met expectations regarding ease of use, reliable urine output measurement, protecting skin from moisture, and comfort. Female inpatients who required urinary management were the population focus and included in our project. We utilized the PDCA (Plan, Do, Check, Act) method to guide and implement this project.

### Plan

The FEUC device was trialed September 2015 through December 2015 in our 60-bed telemetry unit. With an average daily census of 50 patients, it serves as a "step-down" unit, providing an intermediate level of care between the intensive care unit and the general medical-surgical unit. During this initial trial period, we used 60 FEUC devices on 30 female patients.

Initial education of the use of the FEUC device was provided by a representative of the product manufacturer to the telemetry unit manager, the nurse educator, and the WOC care nurse along with one-on-one education for RNs on the unit. To ensure proper use and consistency of the device, the indications/contraindications for use given in Table 1 were followed. The educator ensured that all staff members had been given the same education for use of the device. The company representative for the device and the wound care nurse provided ongoing educational support to the staff during the trial.

### Do

At the end of the trial period, each nurse on the unit who used the device was given a survey for feedback. The survey results were reviewed and discussed at our January 2016 Shared Governance meeting. This professional practice group is made up of frontline nurse representatives and unit-based educators who meet regularly and discuss practice concerns.

We received positive feedback from this initial trial and elected to expand the evaluation project to other hospital units (intensive care, medical-surgical, orthopedic/neurology, and rehabilitation units). Because postpartum vaginal discharge is a contraindication for use, the Mother-Baby unit was excluded. Our progressive care unit that provides care to incarcerated patients was also excluded. It primarily cares for male patients.

Nurses from the Shared Governance group volunteered to be "champions," enabling implementation of this practice change on their units. They provided education and demonstration of application and use of the FEUC device to RNs and nursing assistants on each of the units. Nursing assistants were able to place or remove the FEUC device to help support the nurses' workload. A physician's order was not required for this device; this decision was made because the device was non-invasive and sufficiently similar to practice related to the use of condom catheters in male patients, which do not require a provider's order. Eligible patients were identified via regular (daily rounds) of female inpatients on the participating units.

### Check and Act

Following data collection for 1 year after using the FEUC device, Infection Prevention staff reviewed data to compare 2015 and 2016 IDC utilization and CAUTI rates in female patients. Based on these findings, we elected to expand use of the FEUC device hospital-wide. We observed that the relatively rapid hospital-wide adoption of this practice change was facilitated by Infection Prevention sharing data regarding CAUTI occurrences with regular use of the FEUC device and ongoing encouragement of device use by unit-based educators. We also ensured that new staff members were educated about device use.

## OUTCOMES ANALYSIS

Diagnosis of a CAUTI was based on evaluation of all female patients with positive urine cultures to determine if they met US Center for Disease Control and Prevention/National

### TABLE 1.
**Indications/Contraindications for Use of Female External Urinary Catheter**

| Indications for Use | Contraindications for Use |
|---|---|
| Female patients | Female patients with urinary retention |
| Patients requiring urine output monitoring who do not meet indications for indwelling urinary catheterization | Patients with male genitalia |
| Urinary incontinence and/or frequent urination | Agitated, combative, or uncooperative and might remove device |
| Difficulty walking from the bed or chair to toilet | Frequent episodes of stool incontinence without a fecal management system |
| Difficulty using bedpan | Experiencing preexisting skin breakdown at the site |
| Postsurgical or procedure immobility | Experiencing moderate/heavy menstruation and cannot use a tampon |
| Skin injury or irritation related to urinary incontinence or diapers | Postpartum patients with vaginal discharge |
| Bed rest orders | Patients who are mobile and able to safely ambulate to the restroom |

Copyright © 2020 Wound, Ostomy and Continence Nurses Society™. Unauthorized reproduction of this article is prohibited.

www.jwocnonline.com

Healthcare Safety Network (CDC NHSN) criteria.[4] An initial report was completed on monthly basis identifying the number of patients who had an IDC noted in the chart; this list was edited to include only female patients. Data Support staff then provided an annual report of the number of female patients managed by an IDC.

The yearly female IDC device-days were divided by the yearly female patient-days to determine the IDC device utilization rate. The yearly number of CAUTI cases for female patients was divided by the number of female IDC device-days to determine the CAUTI rate. The software program used for statistical analysis was the CDC NHSN statistical calculator that uses SAS Macros (SAS, Cary, North Carolina). We compared baseline data, obtained from calendar year 2015, to calendar 2016 data (obtained after FEUC device introduction) to determine any differences. We also compared 2016 and 2017 data to determine if outcomes persisted over an additional 12-month follow-up period.

## OUTCOMES

Findings revealed 7181 female IDC device-days out of 22,656 female patient-days among participating units (31.7% IDC utilization rate). During 2016, the IDC utilization rate was 6849 female IDC device-days out of 23,076 female patient-days (29.7% IDC utilization rate), reflecting a decline in IDC utilization ($P = .0000$). To determine sustainability of this outcome, we calculated our 2017 IDC utilization rate; it was 5558 female IDC device-days out of 21,345 female patient-days (IDC utilization of 26.0%); this rate was also lower than the 2015 baseline utilization rate of 31.7% ($P = .0000$) (Table 2).

Due to limitations with our data collection tools, we were not able to calculate the number of days female patients had a FEUC device. We were only able to rely on data from our Purchasing department to determine the use of the FEUC device. In 2015, we were given 60 counts of product to trial, then in 2016 we purchased 6695, and in 2017 we purchased 13,219. This increase in product purchase by our supply chain suggests the product was being used and correlated with our decrease in IDC utilization.

We also evaluated CAUTI occurrences following introduction of the FEUC device. During 2015, 8 female patients experienced CAUTI out of 7181 IDC device-days, yielding an incidence of 1.11 CAUTIs per 1000 IDC device-days. In 2016, the CAUTI rate was 0 out of 6849 IDC device-days ($P = .0047$). In 2017, 5 female patients met CDC NHSN criteria for CAUTI out of 5558 IDC device-days, yielding an

incidence of 0.90 CAUTIs per 1000 IDC device-days. These incidence rates did not significantly differ from 2015 baseline incidence rates ($P = .7262$).

## DISCUSSION

Catheter-associated urinary tract infection prevention has become a major focus for many hospitals.[5,6] The latest guidelines for CAUTI prevention have been adopted by many facilities in order to achieve this goal. Adherence to CDC NHSN CAUTI prevention components has been shown to reduce CAUTI rates in many studies.[2] We reviewed the literature and found a multiple case series that described experiences with a similar device in 3 female patients.[7] Based on these experiences, they concluded that the FEUC device is a feasible alternative to an IDC for managing urinary incontinence. Data related to CAUTI prevention or reduced IDC utilization were not discussed. During the Association of Professionals in Infection Control and Epidemiology 46th Annual Educational Conference in June 2019, 3 oral abstracts were presented that also used the FEUC device.[8-10] All compared IDC utilization and CAUTI rates; one reported a significant reduction in IDC utilization but no significant changes in CAUTI rates.[8] Two abstracts found significant reductions in CAUTI and IDC utilization rates.[9,10]

Based on our experiences, we believe that educating both RNs and nursing assistants contributed to project outcomes and rapid use of the product in all of the units we studied. In addition, our Infection Prevention department was already collecting CAUTI and IDC utilization data, which enhanced our ability to determine rates in female patients on participating units.

The limitations to our QI project include our data systems not being set up in time to collect the number of days the FEUC device was used. Instead, we are only able to report changes in the number of products purchased within data collection periods. We therefore recommend creating electronic data collection systems before starting a project.

We did not perform any compliance audits for the CAUTI bundle as they were considered standard practice. It is possible that there may have been an improvement with CAUTI bundle compliance during the postintervention period that contributed to improved rates, but these data were not tracked. We recommend auditing your facility's CAUTI bundle compliance before and following introduction of an FEUC device to ensure ongoing adherence and strengthen the correlation between device introduction and changes in IDC utilization rates. Although we observed a decrease in CAUTI cases in the first year following introduction of the FEUC device, this reduction was

**TABLE 2.**
**Data for IDC Utilization and CAUTI Rates (Female Only)**

| | 2015 | 2016 | P | 2017 | P |
|---|---|---|---|---|---|
| CAUTI cases | 8 | 0 | | 5 | |
| IDC device-days | 7,181 | 6,849 | | 5,558 | |
| Patient-days | 22,656 | 23,076 | | 21,345 | |
| IDC utilization rate | 31.7% | 29.7%[a] | .000 | 26%[a] | .000 |
| CAUTI rate per 1000 IDC device-days | 1.11 | 0.00[a] | .005 | 0.90 | .726 |
| FEUC product (count) | 60 | 6,695 | | 13,219 | |

Abbreviations: CAUTI, catheter-associated urinary tract infection; FEUC, female external urinary catheter; IDC, indwelling urinary catheter.
[a]Statistically significant decrease with P value of less than .05.

Copyright © 2020 Wound, Ostomy and Continence Nurses Society™. Unauthorized reproduction of this article is prohibited.

not sustained during year 2. This variability in CAUTI incidence rates may be attributed to a number of factors including difference in IDC rates in individual patients and changes in the application of other CAUTI preventive interventions.

## CONCLUSION

We introduced an FEUC device and were able to reduced IDC utilization days in female patients over a period of 2 years. Our CAUTI incidence declined over the first year following device use, but the incidence rose during year 2 following introduction. Findings of our QI project suggest that a consistent, comprehensive, interdisciplinary approach to assess CAUTI bundle compliance that included a FECU device may reduce both IDC utilization and CAUTI rates.

## REFERENCES

1. McGuckin M. *The patient Survival Guide: 8 Simple Solutions to Prevent Hospital and Healthcare-Associated Infections*. New York, NY: Demos Medical Publishing; 2012.
2. Lo E, Nicolle LE, Coffin SE, et al. Strategies to prevent catheter-associated urinary tract infections in acute care hospitals: 2014 update. *Infect Control Hosp Epidemiol*. 2014;35(suppl 2):S32-S47.
3. Centers for Medicare & Medicaid Services. The Hospital Value-Based Purchasing Program. https://www.cms.gov/Medicare/Quality-Initiatives-Patient-Assessment-Instruments/Value-Based-Programs/HVBP/Hospital-Value-Based-Purchasing.html. Accessed June 19, 2019.
4. Centers for Disease Control and Prevention. Catheter-associated urinary tract infection (CAUTI) and non-catheter-associated urinary tract infection (UTI) and other urinary system infection (USI). https://www.cdc.gov/nhsn/acute-care-hospital/cauti. Published 2018. Accessed July 22, 2019.
5. Saint S, Chenoweth CE. Biofilms and catheter-associated urinary tract infections. *Infect Dis Clin North Am*. 2003;17:411-432.
6. Weber DJ, Sickbert-Bennett EE, Gould CV, Brown VM, Huslage D, Rutala WA. Incidence of catheter-associated and non-catheter-associated urinary tract infections in a healthcare system. *Infect Control Hosp Epidemiol*. 2011;32:822-823.
7. Beeson T, Davis C. Urinary management with an external female collection device. *J Wound Ostomy Continence Nurs*. 2018;45(2):187-189.
8. Mueller C. Finally! An external female catheter device for women! *Am J Infect Control*. 2019;47:S13.
9. Beeson T. Chasing zero catheter-associated urinary tract infections (CAUTIs) through implementing a novel female external urine collection device in a tertiary academic surgical intensive care unit (SICU). *Am J Infect Control*. 2018;46:S8.
10. Dublynn T, Episcopia B. Female external catheter use: a new bundle element to reduce CAUTI. *Am J Infect Control*. 2019;47:S39.

### Call for Authors: Continence Care

Original research, case studies and case series addressing, in particular:

- Urinary or fecal stream diversion: indwelling urethral, suprapubic catheters or fecal/bowel management system.
- Pelvic floor muscle rehabilitation protocols for stress, urge and mixed urinary incontinence in men or women.
- Current state of the science presented in systematic reviews and/or meta analyses.
- Evidence based management of incontinence associated dermatitis or moisture associated skin damage.
- Incidence and prevalence of incontinence in understudied populations.
- Quality of life issues associated within continence, care-giving, catheter management, prevention of incontinence.

Copyright © 2020 Wound, Ostomy and Continence Nurses Society™. Unauthorized reproduction of this article is prohibited.

# ATTACHMENT B



# Innovation in Reducing CAUTIs

Lisa Mattia, RN, BSN, CIC; Rowena Okumura, RN, BSN, CIC; Rachael Garcia BSN, MBA; Pricilla Reynolds RN, MSN/ED, PCCN
and Lorena Eckert RN, MSN, WOC Nurse

Pressure Ulcer Prevention & Infection Prevention,
Tri-City Medical Center 4002 Vista Way, Oceanside, CA 92056

## INTRODUCTION

Female urinary incontinence (IUI) is a "loss of bladder control, resulting in the accidental loss of urine" (NIDDK, 2016). There are multiple causes and types of female urinary incontinence. According to NIDDK (2016) research women ages 20 to 39 have some degree of UI and women 60 years and older UI daily. Urinary incontinence is a widespread problem and prevalence estimates are near 48% for the adult population (Moulin et al. 2008). Urinary incontinence has been managed mostly by using invasive urinary catheters, external condom catheters for men or diapers/pads. Invasive urinary catheters are able to do a great job of keeping urine dry and keeping the skin dry, but have added risk of the patient developing a Catheter Associated Urinary Tract Infection (CAUTI). Diapers/pads are less invasive but put the patient at risk for skin damage related to the moisture. Male patients have also had a 3rd option of using an external condom catheter, which until now, was not available for the female anatomy.

## BACKGROUND

Tri-City Medical Center is a 300 bed Community Hospital in San Diego, CA. The hospital implemented a novel external urinary catheter device (PureWick®) for women in an effort to reduce CAUTI in female patients and give patient care staff more urinary management options for this population.

A novel external female urinary catheter (PureWick®) was trained and approved for use on all inpatient units starting Jan 2016. It is the first external female urinary management system with a wicking device available on the market. It works outside of the body to manage female urinary incontinence, moisture associated skin damage, contact dermatitis and intertrigo. PureWick is comprised of a cloth wicking material on one side used to wick urine away from the patient. The other side of wicking material that is not in contact with the patient's labia is encased in a plastic material.

## METHODS

Nurse champions were used to train and promote use of the device on all urinary incontinent female patients who either had a indwelling, indwelling catheter or required diapers/pads. When indicated, indwelling catheter or diapers/pads were replaced with the PureWick. A survey was also conducted to determine nursing acceptance of the product. Number of CAUTI for women were compared for the pre intervention phase of calendar year 2015 to the post intervention phase of calendar year 2016. CAUTIs were defined by using the current CDC NHSN definition for those years. Product usage was also tracked.

## RESULTS

During 2015, a total of 6 CAUTIs were identified in female patients compared to zero CAUTI in 2016 (Figure 1). Product usage was also tracked showing the product was being used significantly in 2016 resulting in less female patients with Foley catheters in place (Figure 2). All survey results from 15 RNs were extremely positive (Figure 3).

### GRAPHS



**Figure 1:** Number of CAUTIs at TCMC during 2015-2016. Once PureWick was implemented in November 2015, no CAUTIs have been seen at TCMC in women.

**Figure 2:** A steady decrease of product associated with incontinence was observed in 2016 while the product was being used. In the absence of CAUTIs in patients we anticipate the product usage to decrease further along with the cost of those materials.

## RESULTS



**Figure 3:** TCMC Hospital Survey results for 15 RNs that used PureWick on more than 5 patients.

## CONCLUSIONS

TCMC saw a significant reduction in female CAUTIs with the implementation of PureWick. They were able to prevent ALL CAUTIs in their female patients once the product was implemented. Nursing staff who want to share their personal experience with the product scored high on all questions in the survey. Due to limited options for managing urinary incontinence for female patients, this product was able to offer a less invasive option with the ease of use that is often associated with invasive internal Foley catheters. But also reduces the patients risk of a CAUTI infection.

## REFERENCES

1. The National Institute of Diabetes, Digestive, and Kidney Disease Health Information Center (NIDDK). (2016). Bladder control problems in women (urinary incontinence). Retrieved from https://www.niddk.nih.gov/health-information/urologic-diseases/bladder-control-problems-women
2. PureWick (2015). Female external catheter for women: How does it work? Retrieved from http://www.purewick.com/how-does-purewick-work
3. PureWick Corp. (2016 April). Instructions for use in female. Oceanside, CA.
4. PureWick Corp. (n.d.). Successful incontinence management for women. Retrieved from http://www.purewick.com/
5. Guidelines For Prevention of Catheter-Associated Urinary Tract Infections 2009. https://www.cdc.gov/hicpac/pdf/CAUTI/CAUTIguideline2009final.pdf
6. Carr, H., (2014). Urinary Tract Infection. In: APIC Text of Infection Control and Epidemiology (4th ed. Vol 2, 33-1 to 33-15). Washington DC: APIC
7. Du Moulin MFI, Hamers JP, Ambergen AW, Janssen MA, Halfens RJ (2008). Prevalence of urinary incontinence among community-dwelling adults receiving home care. Res Nurs Health. Dec;31(6):604-12.
8. Tri-City Medical Center (2017). PureWick female urinary incontinence management procedure.

## ACKNOWLEDGMENT

Thank you to Ingrid Stuiver, Ph.D. for data analysis and poster creation.

## PRODUCT INFORMATION



**Figure 4.** PureWick shown in diagram 1 and attachment to vacuum line in diagram 2.

### When to Use

- PureWick urine management system may be used for female patients with all types of urinary incontinence, during surgery and post procedure. A physician order is not required
- The PureWick may be implemented by staff for the following:
  - Urinary incontinence
  - Pressure ulcers or contact dermatitis associated skin injuries related to urine
  - Frequent urination at night
  - Strict intake and output orders
  - High risk for fall with toileting
  - Patients with bedrest orders
  - Patients with cognitive impairment
  - Post-surgical or procedure immobility
  - Have only minimal or moderate leakage
- Contraindications
  - Urinary retention or neurogenic bladder
  - Easily toilet without assistance
  - Manage their urinary incontinence without assistance
  - Uncooperative or combative patients
  - Bowel incontinence with frequent episodes

### How to Use

- Provide peri-care to patient
- Gently tuck the bottom end of the wick between the labia and buttocks allowing the wick to be snugly positioned between the anus and the pubic bone.
- Attach the plastic connector on the end of the PureWick® into the connector on the suction tubing and set the suction pressure to 40mmHg continuous suction.
- Document PureWick application and urine output in the Electronic Health Record (EHR).

PureWick_0016010

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 30, 2022, a copy of the foregoing

document was served on the persons listed below in the manner indicated:

**<u>BY E-MAIL</u>**

John W. Shaw
Andrew E. Russell
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
arussell@shawkeller.com

Athena Dalton
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
athenadalton@quinnemanuel.com

Steven C. Cherny
Brian P. Biddinger
Matthew A. Traupman
Raymond Nimrod
Jason C. Williams
Nicola R. Felice
Bianca Fox
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
stevencherny@quinnemanuel.com
brianbiddinger@quinnemanuel.com
matthewtraupman@quinnemanuel.com
raynimrod@quinnemanuel.com
jasonwilliams@quinnemanuel.com
nicolafelice@quinnemanuel.com
biancafox@quinnemanuel.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Sage Products, LLC*

# EXHIBIT 8

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Delaware

| | | |
|---|---|---|
| Purewick Corporaion | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   22-102-MN |
| Sage Products, LLC | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Camille Newton
c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor New York, NY 10010
*(Name of person to whom this subpoena is directed)*

☒ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Esquire Deposition Solutions<br>402 West Broadway, Suite 750<br>San Diego, CA 92109 | Date and Time:<br>01/06/2023 9:00 am |
|---|---|

The deposition will be recorded by this method:   stenographically and videotaped

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/07/2022

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Sage Products, LLC
_____ , who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   22-102-MN

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*   Camille Newton

on *(date)*   12/07/2022   .

☑ I served the subpoena by delivering a copy to the named individual as follows:  served by counsel via email

by agreement: Camille Newton, c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor

New York, NY 10010                                          on *(date)*   12/07/2022   ; or

☐ I returned the subpoena unexecuted because:

.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$   .

My fees are $                for travel and $                for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:   12/07/2022

*Server's signature*

Samantha G. Wilson, Esquire

*Printed name and title*

Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street,
Wilmington DE 19801

*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 9

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| Purewick Corporation | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   22-102-MN |
| Sage Products, LLC | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Camille Newton
c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor New York, NY 10010

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule A.

| Place: Esquire Deposition Solutions<br>402 West Broadway, Suite 750, San Diego, CA 92101 | Date and Time:<br><br>12/21/2022 11:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    12/07/2022

*CLERK OF COURT*

                               OR      *Christopher Scharff*

*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Sage Products, LLC _____ , who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

## Notice to the person who issues or requests this subpoena

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   22-102-MN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Camille Newton

on *(date)*          12/07/2022          .

☑ I served the subpoena by delivering a copy to the named person as follows:   served by counsel via email

by agreement: Camille Newton, c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor

New York, NY 10010                                           on *(date)*          12/07/2022          ; or

☐ I returned the subpoena unexecuted because:

                                                                                                                                                 .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$                                          .

My fees are $                              for travel and $                         for services, for a total of $          0.00          .

I declare under penalty of perjury that this information is true.

Date:          12/07/2022

                                                              _____
                                                                               *Server's signature*

                                                                         Samantha G. Wilson, Esq.
                                                              _____
                                                                            *Printed name and title*
                                                                    Young Conaway Stargatt & Taylor, LLP
                                                                      Rodney Square, 1000 North King St.
                                                                           Wilmington, DE 19801
                                                              _____
                                                                               *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction   which may include lost earnings and reasonable attorney's fees   on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
 **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises   or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
 **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
 **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
 **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
 **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required   and also, after a motion is transferred, the issuing court   may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

As used herein:

1.      The requests for production contained herein seek all documents available to the subpoenaed party and each of the subpoenaed party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

2.      The term "document" or "documents" includes documents and things as broadly defined by the Federal Rules of Civil Procedure, including Rule 34, and includes papers of all kinds and non-paper information storage means, including, by way of example and without limitation, originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody or control of the subpoenaed individual or party or each of the subpoenaed individual or party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

3.      The term "**Patents-in-Suit**" or "**Asserted Patents**" means U.S. Patent Nos. 10,226,376 and 10,390,989.

4.      "**Related Patents or Applications**" means any and all U.S. or foreign patents or patent applications that claim priority to the 376 patent or the 989 patent, or any other patent or patent application to which any Asserted Patent claims priority including, but not limited to, all patents earlier and later in a prosecution chain, all child, parent, and sibling patents, patent applications, continuations, divisionals, continuations-in-part, foreign counterparts, and all patents and applications relying on any of the same priority dates as any of the Asserted Patents. For example, this includes but is not limited to application Nos. 61/955,537, 14/625,469, 62/082,279, 14/947,759, 62/084,078, 14/952,591, 15/171,968, PCT/US2016/049274, 15/260,103, 15/611,587, 62/414,963, 62/485,578, 29/624,661, PCT/US2017/035625, 16/245,726, 16/369,676, 17/088,272, 17/330,657, 16/452,145,  17/179,116, 17/378,015, and any other application that claims priority to U.S. Pat. App. No. 15/260,103 (hereinafter, "**the Omnibus application**") and/or 15/171,968.

5.      "**Intellectual Property**" includes patents, patent applications, inventions, invention disclosure statements, trade secrets, trademarks, copyrights, know-how, or proprietary information.

6.      "**PureWick Product**" means each model or iteration of any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by PureWick including any PureWick female external catheter including the "thousands" and "hundreds and hundreds" of products referenced by you at trial.

7.      "**PureWick**" means PureWick Corporation, and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof. PureWick includes Robert A. Sanchez, Camille R. Newton, Joseph M. Forehand, Raymond J. Newton, Becton Dickinson and Company, and C.R. Bard, Inc.

8.      "**Sage**" means Sage Products, LLC and the directors, officers, employees, agents, or attorneys thereof.

9.      "**Deloitte**" means any Deloitte Corporate Finance LLC  and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof including Douglas Bolt, Eric Steinberg, Samuel Arnie, or Masan Stankovic or others in the Charlotte, North Carolina office.

10.     "**This Lawsuit**" means the following lawsuit filed in the District of Delaware: *PureWick Corporation v. Sage Products, LLC*, D. Del., 22-102-MN.

11.     "**Communications**" means the transmittal of information in any form, including, but not limited to, transmittals of facts, ideas, inquiries or otherwise.

12.     The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.  Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

13.     "Including" and "include(s)" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include(s)" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

14.     The phrases "relate(s) to" or "relating to" include: relate(s) to or relating to, concern(s) or concerning, constitute(s) or constituting, contain(s) or containing, embod(ies) or embodying, reflect(s) or reflecting, refer(s) to or referring to, identif(ies) or identifying, state(s) or stating, evidence(s) or evidencing, mention(s) or mentioning, discuss(es) or discussing, deal(s) with or dealing with, comment(s) on or commenting on, respond(s) to or responding to, allude(s) to or alluding to, describe(s) or describing, analyze(s) or analyzing, contradict(s) or contradicting, summarize(s) or summarizing, and review(s) or reviewing.

15.     The use of the singular form of any word includes the plural and vice-versa.

16.     With respect to any claim of a privilege regarding any information, document, or communication sought, individually identify each such communication, information, or document withheld on grounds of an alleged privilege, and specifically set forth: (a) the nature of the privilege claimed, (b) the author(s), (c)the addressee(s), (d) the person(s) who received copies, (e) the date of the communication, document, or information, and (f) the subject matter of the communication, document, or information. Any purportedly privileged document containing non-privileged matter must be produced, with the purportedly privileged portion redacted.

17.     Your search should include searches of PureWick.com email addresses (e.g., cnewton@purewick.com or rnewton@purewick.com, as applicable) emails as well as "docnewton@att.net", "drnewtonsoffice@att.net", or any other email or messaging system used by you.

18.     You need not reproduce the documents that were provided pursuant to the subpoena in *PureWick Corp. v. Sage Products, LLC.*, No. 19-1508-MN (D. Del.).

# REQUESTS FOR PRODUCTION

1.      All documents and files relating to the Asserted Patents or any Related Patents or Applications. This includes all documents relating to ownership, assignments, financial analysis, communications with third parties relating to any PureWick patent application including the "omnibus" application, and documents regarding the decision to file the Omnibus Application.

2.      To the extent not requested herein, all documents and files relating to the conception, reduction to practice, research, design, or development of any invention claimed in the Asserted Patents or any Related Patents or Applications.

3.      To the extent not requested herein, all documents, including communications, relating to, referring to, or concerning preparation and/or prosecution of the Patents-in-Suit and Related Patents and Applications, including but not limited to communications with counsel regarding what patent applications to file and what information should be provided to the Patent Office.  This includes all communications relating to the Omnibus Application.

4.      To the extent not requested herein, all documents and files relating to any PureWick Product including documents relating to the development, structure, function, operation, or marketing of each iteration or model of any PureWick Product. This request includes instructions for use, product specifications, advertisements, product announcements, brochures, catalogs, catalog sheets, price lists, descriptive literature, articles in trade or technical journals, and packaging.

5.      To the extent not requested herein, all documents related to any version of the PureWick Product, including the "thousand, maybe more" and/or "hundreds and hundreds" of products referenced at trial in the case *PureWick Corp. v. Sage Products, LLC.*, No. 19-1508-MN (D. Del.).

6.      To the extent not requested herein, all documents, including all communications with any third parties relating to a potential business relationship, potential acquisition, potential asset or intellectual property exchange or acquisition, or any potential other business arrangement, with PureWick, and including all such documents including communications with or related to First Quality, Molnlycke, or Medline (including as referenced at trial).

7.      All documents including communications related to PureWick's email and document server that was located at PureWick's facility in El Cajon, California, and any backup to such server. This request also includes all documents including communications relating to PureWick's allegedly misplaced, lost, or destroyed server or hard-drive, and any backup, and including all emails and other communications related to efforts by you or PureWick to locate or recovery any such server, hard-drive, or backup.

8.      To the extent not requested herein, all communications between you and PureWick (including C.R. Bard or Becton Dickinson), or any agent of the foregoing and including counsel for any of the foregoing, dated after April 15, 2021, regarding Sage, any PureWick Product including marketing, testing, or sale thereof, any PureWick intellectual property, any of your patients (including Doris Duffy), Kate Pawlik, your testimony, disclosures to the Patent Office,

CONNECT, any prior art or potential prior art, and/or any allegations or statements made by Sage.

9.      To the extent not requested herein, all documents, including communications, concerning your deposition or trial testimony in the case *PureWick Corp. v. Sage Products, LLC.*, No. 19-1508-MN (D. Del.).  This request includes but is not limited to any communication by you regarding your deposition and trial testimony in the prior case.

10.      To the extent not requested herein, all documents, including communications, not previously produced, relating to any testing, offer for sale, sale, public use, disclosure to any third party, or any experimental use of any PureWick Product prior to June 1, 2017. This includes all documents relating to any demonstration, experiment, offer for sale, sale, public or experimental use, or disclosure to any third party of any PureWick Product prior to June 1, 2017 and any documents that reflect any offer for sale, sale, demonstration, public use, or public disclosure of any PureWick Product including testing with patients.

11.      To the extent not requested herein, all documents dated prior to June 1, 2017, relating to any product provided to Fairwinds Ivey Ranch (as raised in your deposition), Kate Pawlik, or Doris Duffy.

12.      All documents reflecting compliance with FDA requirements for product testing including communications and registrations with the FDA regarding any PureWick Product or testing of any PureWick Product.

13.      To the extent not requested herein, all documents relating to any demonstration, experiment, offer for sale, sale, public or experimental use, or disclosure to any third party of any PureWick Product prior to June 1, 2017, or any subject matter claimed in the Asserted Patents or any Related Patents or Applications prior June 1, 2017.

14.      To the extent not requested herein, all communications (including with potential investors) regarding PureWick, any PureWick products, or any PureWick Product. This includes any Facebook or other social media posts, public interviews, and any communications (including email communications) between you and C.R. Bard, Biomed Ventures including Bruce Steel or Nancy Hong, Medical Device and Diagnostic Industry magazine, Connect, Tri-City Hospital, SCIMALS, Lorena Eckert, Priscilla Reynolds, Heather Hunter, Lisa Mattia, Rowena Okumura, Rachael Garcia, Bernie Szabad, Kate Pawlik, Deloitte Corporate Finance, Douglas Bolt, Eric Steinberg, Samuel Arnie, and Masan Stankovic.

15.      To the extent not already requested herein, all documents relating to the 2014 Dare-to-Dream MedTech Design Challenge and the 2015 CONNECT Most Innovative New Product Award including all submissions and communications relating thereto. This includes the videotaping by Connect that you disclosed at trial as well as the sale of the product.

16.      To the extent not already requested herein, all documents including communications or agreements relating to any PureWick intellectual property (including pending patent applications such as the Omnibus Application), any intellectual property or designs of Robert Sanchez, any PureWick Product, or development of any PureWick Product.

17.    To the extent not already requested herein, all documents relating to any actual or potential acquisition of PureWick or its technology or intellectual property. This request includes documents sufficient to show entities with whom PureWick exchanged information and all documents relating to any analysis, investigation, evaluation, or consideration of PureWick's patents or patent applications by either PureWick, Becton Dickinson, C.R. Bard, or any other third party including the parties identified by you at trial.

18.    To the extent not previously requested herein, all PureWick press releases and website materials prior to June 1, 2017.

19.    To the extent not already requested herein, all photographs of any PureWick Product prior to June 1, 2017.

20.    To the extent not already requested herein, all documents including communications regarding any external urine collection product for women made, sold, demonstrated, or made available after 2020 by any entity other than PureWick or Sage.

21.    To the extent not already requested herein, all documents relating to any PureWick intellectual property (including Sanchez intellectual property) including any offers to purchase PureWick, evaluations or offers to evaluate PureWick intellectual property, or any evaluations or offers to evaluate PureWick technology.

22.    To the extent not already requested herein, all documents regarding whether any PureWick Product is covered by an Asserted Patent or Related Patents or Applications.

23.    To the extent not already requested herein, all documents relating to the validity or invalidity, infringement or noninfringement, enforceability or unenforceability, scope, interpretation, or construction of any claim of the Asserted Patents or Related Patents or Applications. This request includes any opinion, request for opinion, evaluation, analysis, investigation, or search concerning the validity or invalidity, infringement or noninfringement, enforceability or unenforceability, scope, interpretation, or construction of any of the claims of the Asserted Patents or Related Patents or Applications.

24.    All PureWick Products in your possession and any urine collection product you acquired prior to June 1, 2017.

25.    To the extent to requested herein, all documents relating to the assignment, licensing, or ownership of the Asserted Patents, any Related Patents or Applications, any PureWick Product, or any technology related to urine management.

26.    To the extent not requested herein, all documents relating to any Sage patent or, after November 2019, any Sage female urine collection product.

27.    To the extent not requested herein, all documents relating to any lawsuit, *inter partes* review, or dispute between PureWick (including C.R. Bard or Becton Dickinson) and Sage or Stryker Corporation, including this Lawsuit and the case *PureWick Corp. v. Sage Products, LLC.*, No. 19-1508-MN (D. Del.). This request includes but is not limited to agreements and communications with PureWick, C.R. Bard, Becton Dickinson, or any law firm.

28.     To the extent not requested herein, all agreements between you (or any entity owned or controlled by you) and PureWick, C.R. Bard, or Becton Dickinson.

29.     To the extent not already requested, documents sufficient to show any compensation received, including the amount of compensation received, by you (including any entity owned or controlled by you) from PureWick, C.R. Bard, or Becton Dickinson.

# EXHIBIT 10

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

District of Delaware

| | | |
|---|---|---|
| Purewick Corporaion | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   22-102-MN |
| Sage Products, LLC | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                              Raymond Newton
c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor New York, NY 10010
*(Name of person to whom this subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| | |
|---|---|
| Place:  Esquire Deposition Solutions<br>402 West Broadway, Suite 750<br>San Diego, CA 92109 | Date and Time:<br><br>01/05/2023 9:00 am |

The deposition will be recorded by this method:   stenographically and videotaped

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/07/2022

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | *Attorney's signature* |
| *Signature of Clerk or Deputy Clerk* | | |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Sage Products, LLC
_____ , who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 22-102-MN

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Raymond Newton

on *(date)* 12/07/2022 .

☑ I served the subpoena by delivering a copy to the named individual as follows: served by counsel via email

by agreement: Raymond Newton, c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor

New York, NY 10010                                      on *(date)*     12/07/2022     ; or

☐ I returned the subpoena unexecuted because:                                                              .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$                              .

My fees are $                      for travel and $                      for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date:     12/07/2022

_____
*Server's signature*

Samantha G. Wilson, Esquire
_____
*Printed name and title*
Young Conaway Stargatt & Taylor, LLP
1000 North King Street, Wilmington DE 19801

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction    which may include lost earnings and reasonable attorney's fees    on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises    or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required    and also, after a motion is transferred, the issuing court    may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 11

# UNITED STATES DISTRICT COURT
for the
District of Delaware

| | |
|---|---|
| Purewick Corporation | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   22-102-MN |
| Sage Products, LLC | ) |
| | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                 Raymond Newton
c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor New York, NY 10010

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule A.

| Place: Esquire Deposition Solutions<br>402 West Broadway, Suite 750, San Diego, CA 92101 | Date and Time:<br><br>12/21/2022 11:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

Case 1:22-cv-00102-MN   Document 61   Filed 01/04/23   Page 162 of 242 PageID #: 998

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      12/07/2022

*CLERK OF COURT*

                                  OR      *[signature]*

_____           _____
*Signature of Clerk or Deputy Clerk*             *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Sage Products, LLC _____, who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 22-102-MN

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Raymond Newton

on *(date)*     12/07/2022     .

☑ I served the subpoena by delivering a copy to the named person as follows:     served by counsel via emai

by agreement: Raymond Newton, c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor

New York, NY 10010                          on *(date)*     12/07/2022     ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date:     12/07/2022

_____
*Server's signature*

Samantha G. Wilson, Esquire

_____
*Printed name and title*
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

As used herein:

1.      The requests for production contained herein seek all documents available to the subpoenaed party and each of the subpoenaed party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

2.      The term "document" or "documents" includes documents and things as broadly defined by the Federal Rules of Civil Procedure, including Rule 34, and includes papers of all kinds and non-paper information storage means, including, by way of example and without limitation, originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody or control of the subpoenaed individual or party or each of the subpoenaed individual or party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

3.      The term "**Patents-in-Suit**" or "**Asserted Patents**" means U.S. Patent Nos. 10,226,376 and 10,390,989.

4.      "**Related Patents or Applications**" means any and all U.S. or foreign patents or patent applications that claim priority to the 376 patent or the 989 patent, or any other patent or patent application to which any Asserted Patent claims priority including, but not limited to, all patents earlier and later in a prosecution chain, all child, parent, and sibling patents, patent applications, continuations, divisionals, continuations-in-part, foreign counterparts, and all patents and applications relying on any of the same priority dates as any of the Asserted Patents. For example, this includes but is not limited to application Nos. 61/955,537, 14/625,469, 62/082,279, 14/947,759, 62/084,078, 14/952,591, 15/171,968, PCT/US2016/049274, 15/260,103, 15/611,587, 62/414,963, 62/485,578, 29/624,661, PCT/US2017/035625, 16/245,726, 16/369,676, 17/088,272, 17/330,657, 16/452,145,  17/179,116, 17/378,015, and any other application that claims priority to U.S. Pat. App. No. 15/260,103 (hereinafter, "**the Omnibus application**") and/or 15/171,968.

5.      "**Intellectual Property**" includes patents, patent applications, inventions, invention disclosure statements, trade secrets, trademarks, copyrights, know-how, or proprietary information.

6.      "**PureWick Product**" means each model or iteration of any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by PureWick including any PureWick female external catheter including the "thousands" and "hundreds and hundreds" of products referenced at trial.

7.      "**PureWick**" means PureWick Corporation, and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof. PureWick includes Robert A. Sanchez, Camille R. Newton, Joseph M. Forehand, Raymond J. Newton, Becton Dickinson and Company, and C.R. Bard, Inc.

8.      "**Sage**" means Sage Products, LLC and the directors, officers, employees, agents, or attorneys thereof.

9.      "**Deloitte**" means any Deloitte Corporate Finance LLC  and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof including Douglas Bolt, Eric Steinberg, Samuel Arnie, or Masan Stankovic or others in the Charlotte, North Carolina office.

10.      "**This Lawsuit**" means the following lawsuit filed in the District of Delaware: *PureWick Corporation v. Sage Products, LLC*, D. Del., 22-102-MN.

11.      "**Communications**" means the transmittal of information in any form, including, but not limited to, transmittals of facts, ideas, inquiries or otherwise.

12.      The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.  Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

13.      "Including" and "include(s)" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include(s)" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

14.      The phrases "relate(s) to" or "relating to" include: relate(s) to or relating to, concern(s) or concerning, constitute(s) or constituting, contain(s) or containing, embod(ies) or embodying, reflect(s) or reflecting, refer(s) to or referring to, identif(ies) or identifying, state(s) or stating, evidence(s) or evidencing, mention(s) or mentioning, discuss(es) or discussing, deal(s) with or dealing with, comment(s) on or commenting on, respond(s) to or responding to, allude(s) to or alluding to, describe(s) or describing, analyze(s) or analyzing, contradict(s) or contradicting, summarize(s) or summarizing, and review(s) or reviewing.

15.      The use of the singular form of any word includes the plural and vice-versa.

16.     With respect to any claim of a privilege regarding any information, document, or communication sought, individually identify each such communication, information, or document withheld on grounds of an alleged privilege, and specifically set forth: (a) the nature of the privilege claimed, (b) the author(s), (c)the addressee(s), (d) the person(s) who received copies, (e) the date of the communication, document, or information, and (f) the subject matter of the communication, document, or information. Any purportedly privileged document containing non-privileged matter must be produced, with the purportedly privileged portion redacted.

17.     Your search should include searches of PureWick.com email addresses (e.g., cnewton@purewick.com or rnewton@purewick.com, as applicable) emails as well as "docnewton@att.net", "drnewtonsoffice@att.net", or any other email or messaging system used by you.

18.     You need not reproduce the documents that were provided pursuant to the subpoena in *PureWick Corp. v. Sage Products, LLC.*, No. 19-1508-MN (D. Del.).

## REQUESTS FOR PRODUCTION

1.      All documents and files relating to the Asserted Patents or any Related Patents or Applications. This includes all documents relating to ownership, assignments, financial analysis, communications with third parties relating to any PureWick patent application including the "omnibus" application, and documents regarding the decision to file the Omnibus Application.

2.      To the extent not requested herein, all documents and files relating to the conception, reduction to practice, research, design, or development of any invention claimed in the Asserted Patents or any Related Patents or Applications.

3.      To the extent not requested herein, all documents, including communications, relating to, referring to, or concerning preparation and/or prosecution of the Patents-in-Suit and Related Patents and Applications, including but not limited to communications with counsel regarding what patent applications to file and what information should be provided to the Patent Office.  This includes all communications relating to the Omnibus Application.

4.      To the extent not requested herein, all documents and files relating to any PureWick Product including documents relating to the development, structure, function, operation, or marketing of each iteration or model of any PureWick Product. This request includes instructions for use, product specifications, advertisements, product announcements, brochures, catalogs, catalog sheets, price lists, descriptive literature, articles in trade or technical journals, and packaging.

5.      To the extent not requested herein, all documents related to any version of the PureWick Product, including the "thousand, maybe more" and/or "hundreds and hundreds" of products referenced at trial in the case *PureWick Corp. v. Sage Products, LLC.*, No. 19-1508-MN (D. Del.).

6.      To the extent not requested herein, all documents, including all communications with any third parties relating to a potential business relationship, potential acquisition, potential asset or intellectual property exchange or acquisition, or any potential other business arrangement, with PureWick, and including all such documents including communications with or related to First Quality, Molnlycke, or Medline (including as referenced at trial).

7.      All documents including communications related to PureWick's email and document server that was located at PureWick's facility in El Cajon, California, and any backup to such server. This request also includes all documents including communications relating to PureWick's allegedly misplaced, lost, or destroyed server or hard-drive, and any backup, and including all emails and other communications related to efforts by you or PureWick to locate or recovery any such server, hard-drive, or backup.

8.      To the extent not requested herein, all communications between you and PureWick (including C.R. Bard or Becton Dickinson), or any agent of the foregoing and including counsel for any of the foregoing, dated after April 15, 2021, regarding Sage, any PureWick Product including marketing, testing, or sale thereof, any PureWick intellectual property, any of Camille Newton's patients (including Doris Duffy), Kate Pawlik, your testimony, disclosures to the Patent

Office, CONNECT, any prior art or potential prior art, and/or any allegations or statements made by Sage.

9. To the extent not requested herein, all documents, including communications, concerning your deposition or trial testimony in the case *PureWick Corp. v. Sage Products, LLC.*, No. 19-1508-MN (D. Del.). This request includes but is not limited to any communication by you regarding your deposition and trial testimony in the prior case.

10. To the extent not requested herein, all documents, including communications, not previously produced, relating to any testing, offer for sale, sale, public use, disclosure to any third party, or any experimental use of any PureWick Product prior to June 1, 2017. This includes all documents relating to any demonstration, experiment, offer for sale, sale, public or experimental use, or disclosure to any third party of any PureWick Product prior to June 1, 2017 and any documents that reflect any offer for sale, sale, demonstration, public use, or public disclosure of any PureWick Product including testing with patients.

11. To the extent not requested herein, all documents dated prior to June 1, 2017, relating to any product provided to Fairwinds Ivey Ranch, Kate Pawlik, or Doris Duffy.

12. All documents reflecting compliance with FDA requirements for product testing including communications and registrations with the FDA regarding any PureWick Product or testing of any PureWick Product.

13. To the extent not requested herein, all documents relating to any demonstration, experiment, offer for sale, sale, public or experimental use, or disclosure to any third party of any PureWick Product prior to June 1, 2017, or any subject matter claimed in the Asserted Patents or any Related Patents or Applications prior June 1, 2017.

14. To the extent not requested herein, all communications (including with potential investors) regarding PureWick, any PureWick products, or any PureWick Product. This includes any Facebook or other social media posts, public interviews, and any communications (including email communications) between you and C.R. Bard, Biomed Ventures including Bruce Steel or Nancy Hong, Medical Device and Diagnostic Industry magazine, Connect, Tri-City Hospital, SCIMALS, Lorena Eckert, Priscilla Reynolds, Heather Hunter, Lisa Mattia, Rowena Okumura, Rachael Garcia, Bernie Szabad, Kate Pawlik, Deloitte Corporate Finance, Douglas Bolt, Eric Steinberg, Samuel Arnie, and Masan Stankovic.

15. To the extent not already requested herein, all documents relating to the 2014 Dare-to-Dream MedTech Design Challenge and the 2015 CONNECT Most Innovative New Product Award including all submissions and communications relating thereto. This includes the videotaping by Connect disclosed at trial as well as the sale of the product.

16. To the extent not already requested herein, all documents including communications or agreements relating to any PureWick intellectual property (including pending patent applications such as the Omnibus Application), any intellectual property or designs of Robert Sanchez, any PureWick Product, or development of any PureWick Product.

17.     To the extent not already requested herein, all documents relating to any actual or potential acquisition of PureWick or its technology or intellectual property. This request includes documents sufficient to show entities with whom PureWick exchanged information and all documents relating to any analysis, investigation, evaluation, or consideration of PureWick's patents or patent applications by either PureWick, Becton Dickinson, C.R. Bard, or any other third party including the parties identified by Camille Newton at trial.

18.     To the extent not previously requested herein, all PureWick press releases and website materials prior to June 1, 2017.

19.     To the extent not already requested herein, all photographs of any PureWick Product prior to June 1, 2017.

20.     To the extent not already requested herein, all documents including communications regarding any external urine collection product for women made, sold, demonstrated, or made available after 2020 by any entity other than PureWick or Sage.

21.     To the extent not already requested herein, all documents relating to any PureWick intellectual property (including Sanchez intellectual property) including any offers to purchase PureWick, evaluations or offers to evaluate PureWick intellectual property, or any evaluations or offers to evaluate PureWick technology.

22.     To the extent not already requested herein, all documents regarding whether any PureWick Product is covered by an Asserted Patent or Related Patents or Applications.

23.     To the extent not already requested herein, all documents relating to the validity or invalidity, infringement or noninfringement, enforceability or unenforceability, scope, interpretation, or construction of any claim of the Asserted Patents or Related Patents or Applications. This request includes any opinion, request for opinion, evaluation, analysis, investigation, or search concerning the validity or invalidity, infringement or noninfringement, enforceability or unenforceability, scope, interpretation, or construction of any of the claims of the Asserted Patents or Related Patents or Applications.

24.     All PureWick Products in your possession and any urine collection product you acquired prior to June 1, 2017.

25.     To the extent to requested herein, all documents relating to the assignment, licensing, or ownership of the Asserted Patents, any Related Patents or Applications, any PureWick Product, or any technology related to urine management.

26.     To the extent not requested herein, all documents relating to any Sage patent or, after November 2019, any Sage female urine collection product.

27.     To the extent not requested herein, all documents relating to any lawsuit, *inter partes* review, or dispute between PureWick (including C.R. Bard or Becton Dickinson) and Sage or Stryker Corporation, including this Lawsuit and the case *PureWick Corp. v. Sage Products, LLC.*, No. 19-1508-MN (D. Del.). This request includes but is not limited to agreements and communications with PureWick, C.R. Bard, Becton Dickinson, or any law firm.

28.     To the extent not requested herein, all agreements between you (or any entity owned or controlled by you) and PureWick, C.R. Bard, or Becton Dickinson.

29.     To the extent not already requested, documents sufficient to show any compensation received, including the amount of compensation received, by you (including any entity owned or controlled by you) from PureWick, C.R. Bard, or Becton Dickinson.

# EXHIBIT 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PUREWICK CORPORATION, | ) |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | )   C.A. No. 22-102-MN |
| | ) |
| SAGE PRODUCTS, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT SAGE PRODUCTS, LLC'S NOTICE OF
SUBPOENA DUCES TECUM TO FIRST QUALITY ENTERPRISES, INC.**

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure,

Defendant Sage Products, LLC shall cause a subpoena for the production of documents,

electronically stored information, or objects to be served on First Quality Enterprises, Inc.  A true

and correct copy of the subpoena is attached as Exhibit 1.

Of Counsel:                                      YOUNG CONAWAY STARGATT
Robert A. Surrette                            & TAYLOR, LLP
Sandra A. Frantzen
Christopher M. Scharff
Ryan J. Pianetto                              _/s/ Samantha G. Wilson_
MCANDREWS, HELD                        Anne Shea Gaza (No. 4093)
& MALLOY, LTD                             Samantha G. Wilson (No. 5816)
500 West Madison Street, 34th Floor     Rodney Square
Chicago, IL 60661                           1000 North King Street
(312) 775-8000                               Wilmington, DE 19801
bsurrette@mcandrews-ip.com              (302) 571-6600
sfrantzen@mcandrews-ip.com             agaza@ycst.com
cscharff@mcandrews-ip.com              swilson@ycst.com
rpianetto@mcandrews-ip.com

                                                    _Attorneys for Sage Products, LLC_

Dated: December 7, 2022

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 7, 2022, a copy of the foregoing

document was served on the persons listed below in the manner indicated:

### <u>BY E-MAIL</u>

John W. Shaw
Andrew E. Russell
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
arussell@shawkeller.com

Athena Dalton
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
athenadalton@quinnemanuel.com

Steven C. Cherny
Brian P. Biddinger
Matthew A. Traupman
Raymond Nimrod
Jason C. Williams
Nicola R. Felice
Bianca Fox
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
stevencherny@quinnemanuel.com
brianbiddinger@quinnemanuel.com
matthewtraupman@quinnemanuel.com
raynimrod@quinnemanuel.com
jasonwilliams@quinnemanuel.com
nicolafelice@quinnemanuel.com
biancafox@quinnemanuel.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Sage Products, LLC*

# EXHIBIT 1

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
District of Delaware

| | | |
|---|---|---|
| Purewick Corporation | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 22-102-MN |
| Sage Products, LLC | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: First Quality Enterprises, Inc.
c/o CT Corporation System, 28 Liberty St., New York, NY 10005

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule A.

| Place: FedEx Office Print & Ship Center 110 William St, New York, NY 10038 | Date and Time: 12/19/2022 1:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/07/2022

CLERK OF COURT

OR _____
*Signature of Clerk or Deputy Clerk*      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Sage Products, LLC _____, who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  22-102-MN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____            _____
                                              *Server's signature*

                                 _____
                                              *Printed name and title*

                                 _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction   which may include lost earnings and reasonable attorney's fees   on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises   or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required   and also, after a motion is transferred, the issuing court   may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## <u>SCHEDULE A</u>

## DEFINITIONS AND INSTRUCTIONS

As used herein:

1.      The requests for production contained herein seek all documents available to the subpoenaed party and each of the subpoenaed party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

2.      The term "document" or "documents" includes documents and things as broadly defined by the Federal Rules of Civil Procedure, including Rule 34, and includes papers of all kinds and non-paper information storage means, including, by way of example and without limitation, originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody or control of the subpoenaed individual or party or each of the subpoenaed individual or party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

3.      The term "**Patents-in-Suit**" or "**Asserted Patents**" means U.S. Patent Nos. 10,226,376 and 10,390,989.

4.      "**Intellectual Property**" includes patents, patent applications, inventions, invention disclosure statements, trade secrets, trademarks, copyrights, know-how, or proprietary information.

5.      "**PureWick Product**" means each model or iteration of any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by PureWick including any PureWick female external catheter.

6.      "**PureWick**" means PureWick Corporation, and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof. PureWick includes Robert A. Sanchez, Camille R. Newton, Joseph M. Forehand, Raymond J. Newton, Becton Dickinson and Company, and C.R. Bard, Inc.

1

7.    "**Sage**" means Sage Products, LLC and the directors, officers, employees, agents, or attorneys thereof.

8.    "**First Quality**" means First Quality Enterprises, Inc., and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof.

9.    "**This Lawsuit**" means the following lawsuit filed in the District of Delaware: *PureWick Corporation v. Sage Products, LLC*, D. Del., 22-102-MN. A copy of the Protective Order in this Lawsuit is attached.

10.   "**Communications**" means the transmittal of information in any form, including, but not limited to, transmittals of facts, ideas, inquiries or otherwise.

11.   The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.  Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

12.   "Including" and "include(s)" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include(s)" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

13.   The phrases "relate(s) to" or "relating to" include: relate(s) to or relating to, concern(s) or concerning, constitute(s) or constituting, contain(s) or containing, embod(ies) or embodying, reflect(s) or reflecting, refer(s) to or referring to, identif(ies) or identifying, state(s) or stating, evidence(s) or evidencing, mention(s) or mentioning, discuss(es) or discussing, deal(s) with or dealing with, comment(s) on or commenting on, respond(s) to or responding to, allude(s) to or alluding to, describe(s) or describing, analyze(s) or analyzing, contradict(s) or contradicting, summarize(s) or summarizing, and review(s) or reviewing.

14.   The use of the singular form of any word includes the plural and vice-versa.

15.   With respect to any claim of a privilege regarding any information, document, or communication sought, individually identify each such communication, information, or document withheld on grounds of an alleged privilege, and specifically set forth: (a) the nature of the privilege claimed, (b) the author(s), (c) the addressee(s), (d) the person(s) who received copies, (e) the date of the communication, document, or information, and (f) the subject matter of the communication, document, or information. Any purportedly privileged document containing non-privileged matter must be produced, with the purportedly privileged portion redacted.

16.   Please feel free to contact us if you have questions about this document.

## REQUESTS FOR PRODUCTION

1.      All communications with PureWick (including Camille Newton) or any other third party communicating on behalf of PureWick including Deloitte Corporate Finance, Douglas Bolt, Eric Steinberg, Samuel Arnie, or Masan Stankovic.

2.      To the extent not already requested, all documents relating to PureWick or any PureWick asset, including documents relating to a potential, considered, or attempted purchase, sale, acquisition, or exchange of PureWick or any PureWick asset including all agreements, proposals, offers, letters of intent, presentations, reports, summaries, valuations, or projections or documents reflecting communications, meetings, negotiations, presentations, or due diligence with or involving PureWick.

3.      To the extent not already requested, all documents including communications relating to any PureWick Product including documents reflecting the structure, operation, marketing, use, offer for sale, sale, or market of the product or any awards purportedly won by the product or problems with the product.

4.      To the extent not already requested, all documents relating to any PureWick Intellectual Property (including any issued patents, pending or contemplated patent applications, or Related Patents or Applications).

5.      Documents sufficient to show any First Quality product available after 2020 that is in the same market as, or is an alternative to, any PureWick Product or Sage's PrimaFit product.

6.      Documents reflecting the public disclosure, sale, or offer for sale prior to June 1, 2017 of any vacuum-assisted urine collection product or publications prior to June 1, 2017 regarding such a product.

# EXHIBIT 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PUREWICK CORPORATION, | ) |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | )  C.A. No. 22-102-MN |
| | ) |
| SAGE PRODUCTS, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT SAGE PRODUCTS, LLC'S NOTICE OF
SUBPOENA DUCES TECUM TO MOLNLYCKE HEALTH CARE US, LLC**

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure,

Defendant Sage Products, LLC shall cause a subpoena for the production of documents,

electronically stored information, or objects to be served on Molnlycke Health Care US, LLC.  A

true and correct copy of the subpoena is attached as Exhibit 1.

Of Counsel:
Robert A. Surrette
Sandra A. Frantzen
Christopher M. Scharff
Ryan J. Pianetto
MCANDREWS, HELD
& MALLOY, LTD
500 West Madison Street, 34th Floor
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
cscharff@mcandrews-ip.com
rpianetto@mcandrews-ip.com

Dated: December 7, 2022

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Sage Products, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 7, 2022, a copy of the foregoing

document was served on the persons listed below in the manner indicated:

**BY E-MAIL**

John W. Shaw
Andrew E. Russell
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
arussell@shawkeller.com

Athena Dalton
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
athenadalton@quinnemanuel.com

Steven C. Cherny
Brian P. Biddinger
Matthew A. Traupman
Raymond Nimrod
Jason C. Williams
Nicola R. Felice
Bianca Fox
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
stevencherny@quinnemanuel.com
brianbiddinger@quinnemanuel.com
matthewtraupman@quinnemanuel.com
raynimrod@quinnemanuel.com
jasonwilliams@quinnemanuel.com
nicolafelice@quinnemanuel.com
biancafox@quinnemanuel.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Sage Products, LLC*

# EXHIBIT 1

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | | |
|---|---|---|
| Purewick Corporation | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   22-102-MN |
| Sage Products, LLC | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:            Molnlycke Health Care US, LLC
            c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule A.

| Place: Young Conaway Stargatt & Taylor s/o S. Wilson Rodney Square, 1000 North King Street Wilmington, DE 19801 | Date and Time: 12/19/2022 1:00 pm |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      12/07/2022

CLERK OF COURT

            OR

_____            _____
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

Sage Products, LLC                                    , who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   22-102-MN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction   which may include lost earnings and reasonable attorney's fees   on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises   or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required   and also, after a motion is transferred, the issuing court   may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS AND INSTRUCTIONS**

As used herein:

1.      The requests for production contained herein seek all documents available to the subpoenaed party and each of the subpoenaed party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

2.      The term "document" or "documents" includes documents and things as broadly defined by the Federal Rules of Civil Procedure, including Rule 34, and includes papers of all kinds and non-paper information storage means, including, by way of example and without limitation, originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody or control of the subpoenaed individual or party or each of the subpoenaed individual or party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

3.      The term "**Patents-in-Suit**" or "**Asserted Patents**" means U.S. Patent Nos. 10,226,376 and 10,390,989.

4.      "**Related Patents or Applications**" means any and all U.S. or foreign patents or patent applications that claim priority to the 376 patent or the 989 patent, or any other patent or patent application to which any Asserted Patent claims priority including, but not limited to, all patents earlier and later in a prosecution chain, all child, parent, and sibling patents, patent applications, continuations, divisionals, continuations-in-part, foreign counterparts, and all patents and applications relying on any of the same priority dates as any of the Asserted Patents. For example, this includes application Nos. 15/260,103, 151171,968, 14/952,591, 14/947,759, and No. 14/625,469.

5.      "**Intellectual Property**" includes patents, patent applications, inventions, invention disclosure statements, trade secrets, trademarks, copyrights, know-how, or proprietary information.

6.    "**PureWick Product**" means any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by PureWick including any PureWick female external catheter.

7.    "**PureWick**" means PureWick Corporation, and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof. PureWick includes Camille R. Newton, Michael Jackson, Raymond J. Newton, Becton Dickinson and Company, and C.R. Bard, Inc.

8.    "**Mölnlycke**" means Mölnlycke Health Care US, LLC, and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof.

9.    "**This Lawsuit**" means the following lawsuit filed in the District of Delaware: *PureWick Corporation v. Sage Products, LLC*, D. Del., 22-102-MN. A copy of the Protective Order in this Lawsuit is attached.

10.    "**Communications**" means the transmittal of information in any form, including, but not limited to, transmittals of facts, ideas, inquiries or otherwise.

11.    The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.  Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

12.    "Including" and "include(s)" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include(s)" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

13.    The phrases "relate(s) to" or "relating to" include: relate(s) to or relating to, concern(s) or concerning, constitute(s) or constituting, contain(s) or containing, embod(ies) or embodying, reflect(s) or reflecting, refer(s) to or referring to, identif(ies) or identifying, state(s) or stating, evidence(s) or evidencing, mention(s) or mentioning, discuss(es) or discussing, deal(s) with or dealing with, comment(s) on or commenting on, respond(s) to or responding to, allude(s) to or alluding to, describe(s) or describing, analyze(s) or analyzing, contradict(s) or contradicting, summarize(s) or summarizing, and review(s) or reviewing.

14.    The use of the singular form of any word includes the plural and vice-versa.

15.    With respect to any claim of a privilege regarding any information, document, or communication sought, individually identify each such communication, information, or document withheld on grounds of an alleged privilege, and specifically set forth: (a) the nature of the privilege claimed, (b) the author(s), (c)the addressee(s), (d) the person(s) who received copies, (e) the date of the communication, document, or information, and (f) the subject matter of the communication, document, or information. Any purportedly privileged document containing non-privileged matter must be produced, with the purportedly privileged portion redacted.

## REQUESTS FOR PRODUCTION

1.      All communications with PureWick (including Camille Newton) or any other third party communicating on behalf of PureWick including Deloitte Corporate Finance, Douglas Bolt, Eric Steinberg, Samuel Arnie, or Masan Stankovic.

2.      To the extent not already requested, all documents relating to PureWick or any PureWick asset, including documents relating to a potential, considered, or attempted purchase, sale, acquisition, or exchange of PureWick or any PureWick asset including all agreements, proposals, offers, letters of intent, presentations, reports, summaries, valuations, or projections or documents reflecting communications, meetings, negotiations, presentations, or due diligence with or involving PureWick.

3.      To the extent not already requested, all documents including communications relating to any PureWick Product including documents reflecting the structure, operation, marketing, use, offer for sale, sale, or market of the product or any awards purportedly won by the product or problems with the product.

4.      To the extent not already requested, all documents relating to any PureWick Intellectual Property (including any issued patents, pending or contemplated patent applications, or Related Patents or Applications).

5.      Documents sufficient to show any Mölnlycke product available after 2020 that is in the same market as, or is an alternative to, any PureWick Product or Sage's PrimaFit product.

6.      Documents reflecting the public disclosure, sale, or offer for sale prior to June 1, 2017 of any vacuum-assisted urine collection product or publications prior to June 1, 2017 regarding such a product.

4

# EXHIBIT 14

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Delaware

| | |
|---|---|
| Purewick Corporaion | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   22-102-MN |
| Sage Products, LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:           Lorena Eckert
c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor New York, NY 10010
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Esquire Deposition Solutions<br>402 West Broadway, Suite 750<br>San Diego, CA 92109 | Date and Time:<br>01/10/2023 1:00 pm |
|---|---|

The deposition will be recorded by this method:    stenographically and videotaped

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    12/15/2022

| | | |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | *[signature]* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Sage Products, LLC
_____ , who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  22-102-MN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Lorena Eckert

on *(date)*    12/15/2022          .

☑ I served the subpoena by delivering a copy to the named individual as follows:  served by counsel via email

by agreement: Lorena Eckert, c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor

New York, NY 10010                                                on *(date)*        12/15/2022      ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$                                     .

My fees are $                          for travel and $                          for services, for a total of $        0.00        .

I declare under penalty of perjury that this information is true.

Date:      12/15/2022                          _____
                                                              *Server's signature*

                                                              Christopher Scharff
                                                              *Printed name and title*
                                                              500 W. Madison St., 34th Floor
                                                              Chicago, IL 60661

                                                              _____
                                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 15

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | | |
|---|---|---|
| Purewick Corporaion | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   22-102-MN |
| Sage Products, LLC | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Michael Jackson
c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor New York, NY 10010
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| | |
|---|---|
| Place:  Esquire Deposition Solutions<br>402 West Broadway, Suite 750<br>San Diego, CA 92109 | Date and Time:<br><br>01/11/2023 9:00 am |

The deposition will be recorded by this method:     stenographically and videotaped

❏ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     12/15/2022

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Sage Products, LLC
_____ , who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  22-102-MN

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Michael Jackson

on *(date)*    12/15/2022    .

☑ I served the subpoena by delivering a copy to the named individual as follows:  served by counsel via email

by agreement: Michael Jackson, c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor

New York, NY 10010                                           on *(date)*    12/15/2022    ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $                     for travel and $                     for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date:      12/15/2022

*Server's signature*

Christopher Scharff
*Printed name and title*
500 W. Madison St., 34th Floor
Chicago, IL 60661

*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 16

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PUREWICK CORPORATION, )<br><br>Plaintiff. )<br><br>v. )<br><br>SAGE PRODUCTS, LLC, )<br><br>Defendant. ) | C.A. No. 22-102-MN |

**DEFENDANT SAGE PRODUCTS, LLC'S
NOTICE OF SUBPOENA DUCES TECUM TO MEDLINE INDUSTRIES, LP**

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure,

Defendant Sage Products, LLC shall cause a subpoena for the production of documents,

electronically stored information, or objects to be served on Medline Industries, LP.  A true and

correct copy of the subpoena is attached as Exhibit 1.

Dated: December 15, 2022

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Sage Products, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 15, 2022, a copy of the foregoing

document was served on the persons listed below in the manner indicated:

**<u>BY E-MAIL</u>**

John W. Shaw
Andrew E. Russell
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
arussell@shawkeller.com

Athena Dalton
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
athenadalton@quinnemanuel.com

Steven C. Cherny
Brian P. Biddinger
Matthew A. Traupman
Raymond Nimrod
Jason C. Williams
Nicola R. Felice
Bianca Fox
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
stevencherny@quinnemanuel.com
brianbiddinger@quinnemanuel.com
matthewtraupman@quinnemanuel.com
raynimrod@quinnemanuel.com
jasonwilliams@quinnemanuel.com
nicolafelice@quinnemanuel.com
biancafox@quinnemanuel.com


YOUNG CONAWAY STARGATT
& TAYLOR, LLP


*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Sage Products, LLC*

# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Delaware

| | | |
|---|---|---|
| PureWick Corporation, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  22-102-MN |
| Sage Products, LLC, | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Medline Industries, LP
3 Lakes Drive, Northfield, IL 60093-2753

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Judicial Attorney Services, Inc.<br>27 N. Wacker Drive, Ste 531<br>Chicago, IL 60606 | Date and Time:<br><br>12/29/2022 1:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  12/15/2022

CLERK OF COURT

_____          *Samantha S. Wilson*
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Sage Products, LLC _____ , who issues or requests this subpoena, are:
Samantha Wilson, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street Wilmington DE 19801, 302-571-5018

Email: swilson@ycst.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  22-102-MN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                   *Server's signature*

                                         _____
                                                   *Printed name and title*

                                         _____
                                                   *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

As used herein:

1.      The requests for production contained herein seek all documents available to the subpoenaed party and each of the subpoenaed party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

2.      The term "document" or "documents" includes documents and things as broadly defined by the Federal Rules of Civil Procedure, including Rule 34, and includes papers of all kinds and non-paper information storage means, including, by way of example and without limitation, originals, copies, and any drafts, revisions, or non-identical copies thereof, whether different from the original because of marks, initials, stamped initials, comments, notations, interlineations, receipt stamp, notation of copy sent or received or otherwise, however made, of letters, e-mails, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, transcripts, legal instruments, agreements, leases, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, pictures, photographs, videotapes, compilations, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, journals, balance sheets, accounts, invoices, purchase orders, receipts, billing records, financial data, financial statements, files, analyses, tabulations, maps, diagrams, plans, summaries, working papers, charts, graph indices, data sheets, data processing card, computer printouts, summaries of computer printouts, trip tickets, telexes, teletypes, expense vouchers, instructions, bulletins or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically, or chemically, within the possession, custody or control of the subpoenaed individual or party or each of the subpoenaed individual or party's respective officers, directors, employees, representatives, agents, servants, consultants, investigators, or counsel.

3.      The term "**Patents-in-Suit**" or "**Asserted Patents**" means U.S. Patent Nos. 10,226,376 and 10,390,989.

4.      "**Related Patents or Applications**" means any and all U.S. or foreign patents or patent applications that claim priority to the 376 patent or the 989 patent, or any other patent or patent application to which any Asserted Patent claims priority including, but not limited to, all patents earlier and later in a prosecution chain, all child, parent, and sibling patents, patent applications, continuations, divisionals, continuations-in-part, foreign counterparts, and all patents and applications relying on any of the same priority dates as any of the Asserted Patents. For example, this includes application Nos. 15/260,103, 151171,968, 14/952,591, 14/947,759, and No. 14/625,469.

5.      "**Intellectual Property**" includes patents, patent applications, inventions, invention disclosure statements, trade secrets, trademarks, copyrights, know-how, or proprietary information.

6.      "**PureWick Product**" means any urine collection product or system ever made, tested, demonstrated, used, offered for sale, or sold by PureWick including any PureWick female external catheter.

7.      "**PureWick**" means PureWick Corporation, and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof. PureWick includes Camille R. Newton, Joseph M. Forehand, Michael Jackson, Raymond J. Newton, Becton Dickinson and Company, and C.R. Bard, Inc.

8.      "**Sage**" means Sage Products, LLC and the directors, officers, employees, agents, or attorneys thereof.

9.      "**Medline**" means Medline Industries, LP and any related or foreign or U.S. parent or associated companies, divisions, or subsidiaries, past or present, and each predecessor business entity whether incorporated or not, and the directors, officers, employees, agents, or attorneys thereof.

10.     "**This Lawsuit**" means the following lawsuit filed in the District of Delaware: *PureWick Corporation v. Sage Products, LLC*, D. Del., 22-102-MN. A copy of the Protective Order in this Lawsuit is attached.

11.     "**Communications**" means the transmittal of information in any form, including, but not limited to, transmittals of facts, ideas, inquiries or otherwise.

12.     "**Versette Product**" means each model or iteration of any female external catheter ever made, tested, demonstrated, used, offered for sale, or sold by Medline bearing the name "Versette."

13.     The terms "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the request most inclusive.  Each of the terms "any," "all," and "each" shall be construed as "any, all, and/or each."

14.     "Including" and "include(s)" shall be construed in such a way as to suggest or provide an example or examples. The terms "including" and "include(s)" shall not be construed in such a way as to limit or confine the broader term or concept for which a suggestion or example is being given.

15.     The phrases "relate(s) to" or "relating to" include: relate(s) to or relating to, concern(s) or concerning, constitute(s) or constituting, contain(s) or containing, embod(ies) or embodying, reflect(s) or reflecting, refer(s) to or referring to, identif(ies) or identifying, state(s) or stating, evidence(s) or evidencing, mention(s) or mentioning, discuss(es) or discussing, deal(s) with or dealing with, comment(s) on or commenting on, respond(s) to or responding to, allude(s) to or alluding to, describe(s) or describing, analyze(s) or analyzing, contradict(s) or contradicting, summarize(s) or summarizing, and review(s) or reviewing.

16.     The use of the singular form of any word includes the plural and vice-versa.

17.    With respect to any claim of a privilege regarding any information, document, or communication sought, individually identify each such communication, information, or document withheld on grounds of an alleged privilege, and specifically set forth: (a) the nature of the privilege claimed, (b) the author(s), (c)the addressee(s), (d) the person(s) who received copies, (e) the date of the communication, document, or information, and (f) the subject matter of the communication, document, or information. Any purportedly privileged document containing non-privileged matter must be produced, with the purportedly privileged portion redacted.

18.    Please feel free to contact us if you have questions about this document.

## <u>REQUESTS FOR PRODUCTION</u>

1.      All communications with PureWick (including Camille Newton) or any other third party communicating on behalf of PureWick including Deloitte Corporate Finance, Douglas Bolt, Eric Steinberg, Samuel Arnie, or Masan Stankovic.

2.      To the extent not already requested, all documents relating to PureWick or any PureWick asset, including documents relating to a potential, considered, or attempted purchase, sale, acquisition, or exchange of PureWick or any PureWick asset including all agreements, proposals, offers, letters of intent, presentations, reports, summaries, valuations, or projections or documents reflecting communications, meetings, negotiations, presentations, or due diligence with or involving PureWick.

3.      To the extent not already requested, all documents including communications relating to any PureWick Product including documents reflecting the structure, operation, marketing, use, offer for sale, sale, or market of the product or any awards purportedly won by the product or problems with the product.

4.      To the extent not already requested, all documents relating to any PureWick Intellectual Property (including any issued patents, pending or contemplated patent applications, or Related Patents or Applications).

5.      Documents sufficient to show any Medline product available after 2020 that is in the same market as, or is an alternative to, any PureWick Product or Sage's PrimaFit product.

6.      Documents reflecting the public disclosure, sale, or offer for sale prior to June 1, 2017 of any vacuum-assisted urine collection product or publications prior to June 1, 2017 regarding such a product.

7.      Documents sufficient to describe or show the structure, function, and operation of the Versette Product, including specification drawings, instructions for use, hospital instructions, user manuals, product or service manuals, and patient information.

# EXHIBIT 17

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | | |
|---|---|---|
| Purewick Corporaion | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   22-102-MN |
| Sage Products, LLC | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                    Kate Pawlik
c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor New York, NY 10010
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:  Esquire Deposition Solutions<br>         402 West Broadway, Suite 750<br>         San Diego, CA 92109 | Date and Time:<br><br>          01/09/2023 9:00 am |
|---|---|

The deposition will be recorded by this method:    stenographically and videotaped

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      12/15/2022

              CLERK OF COURT

                                                          OR

_____                    _____
      *Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Sage Products, LLC
_____ , who issues or requests this subpoena, are:

Christopher Scharff, 500 W. Madison St., 34th Fl., Chicago, IL 60661, 312-775-8000, cscharff@mcandrews-ip.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 22-102-MN

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Kate Pawlik

on *(date)*     12/14/2022     .

☑ I served the subpoena by delivering a copy to the named individual as follows: served by counsel via email

by agreement: Kate Pawlik, c/o Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave., 22nd Floor

New York, NY 10010                                            on *(date)*     12/15/2022     ; or

☐ I returned the subpoena unexecuted because:

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date:     12/15/2022

*Server's signature*

Christopher Scharff
*Printed name and title*
500 W. Madison St., 34th Floor
Chicago, IL 60661

*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 18

Message

| | |
|---|---|
| **From**: | Doc Newton [docnewton@att.net] |
| on behalf of | Doc Newton <docnewton@att.net> [docnewton@att.net] |
| **Sent**: | 3/25/2016 11:22:32 PM |
| **To**: | Joe Forehand [jforehand@purewick.com]; Mike Jackson [mjackson@purewick.com] |
| **Subject**: | Fw: Pure Wick |

Joe,

Thanks for listening today. I am forwarding the long email chain with Kate Pawlik, ▮
daughter. As she is taped snugly in place, I think a lot of urine is running out of the side. I think with
some small changes we can get 100%. Not broken, but not quite good enough yet not to try to fix it.

Camille


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged material. Any review, retransmission,
dissemination or other use of or taking of any action in reliance upon this information by persons or
entities other than the intended recipient is prohibited. If you received this e-mail in error, please
contact the sender and delete the material from any computer.


----- Forwarded Message -----
**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>
**Cc:** Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Friday, March 25, 2016 2:44 PM
**Subject:** Re: Pure Wick

Morning of 3/24/16

Wick: 625

Lot: 077-16WM

Jar:  240 cc

Unused brief: 47 g, used: 78 g

88.6%

Morning of 3/25/16

Wick: 625

Lot: 034-16

CONFIDENTIAL

PureWick v. Sage
Sage's Trial Exhibit
19-cv-01508-MN
**DTX-404**



**EXHIBIT**
404

Newton_0006384
**DTX-404-0001**

Jar:  190 cc

Unused brief: 46 g, used: 52 g

96.9%

On Wed, Mar 23, 2016 at 10:43 AM, Doc Newton <docnewton@att.net> wrote:
Thanks Kate,

I'm glad to see more fluid in the jar.

Camille


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.

---

**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>
**Cc:** Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Wednesday, March 23, 2016 10:12 AM
**Subject:** Re: Pure Wick

Wick 625

Lot 077-16WM

Jar:  390 cc

Unused brief: 47 g, used: 98 g

88.4 %

On Tue, Mar 22, 2016 at 12:19 PM, Doc Newton <docnewton@att.net> wrote:
 Great!

Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or

Newton_0006385
DTX-404-0002

entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.

---

**From:** Kate Pawlik <kdtepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>
**Cc:** Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Tuesday, March 22, 2016 10:12 AM
**Subject:** Re: Pure Wick

Wick 625

Lot 077-16WM

Jar:  190 cc

Unused brief: 46 g, used: 55 g

95.5 %

On Mon, Mar 21, 2016 at 6:43 PM, Doc Newton <docnewton@att.net> wrote:
Good,

we'll keep making it better.

Camille


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.

---

**From:** Kate Pawlik <kdtepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>
**Cc:** Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Monday, March 21, 2016 11:46 AM
**Subject:** Re: Pure Wick

Sorry for delay again. Tried new wicks last 2 nights with pretty good results.  After reading your note, Camille, I checked the caps but didn't notice any loosening.

Wick 625

CONFIDENTIAL

Lot 077-16WM

Sat. night

Jar:  110 cc

Unused brief: 46 g, used: 57 g

90.9 %

Sun. night

Jar:  325 cc

Unused brief: 46 g, used: 86 g

89.0 %

On Sat, Mar 19, 2016 at 6:09 PM, Doc Newton <docnewton@att.net> wrote:
Kate,

Thank you for the results.  I just returned from a road trip - and I tried the wick 3 times while stuck in traffic.  The 1st time it worked great, the 2nd time there was some leaking, and the 3rd time it was awful - nonetheless, I had 650 cc in the jar when I got back - but some wet pants.  Fortunately I was sitting in a sciatic cup so my car seat didn't get wet.  Well when I took the wick out when I got home - the cap at the bottom was missing from the wick.  I am thinking that when the cap gets wet it loosens the glue.  Even if it doesn't pop off, perhaps it affects the seal.  I think we need to keep an eye on this.

As always, thank you so much for your continued feedback.

Camille


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.

---

**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>
**Cc:** Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Saturday, March 19, 2016 1:18 PM
**Subject:** Re: Pure Wick

Sorry for delay.  Here are last 2 days.

CONFIDENTIAL

Newton_0006387

DTX-404-0004

Both Wick 625, Lot 034-16

Thurs. night

Jar:  310 cc

Unused brief: 46 g, used: 176 g

70.5 %

Fri. night

Jar:  120 cc

Unused brief: 46 g, used: 52 g

95.2 %

On Thu, Mar 17, 2016 at 2:17 PM, Doc Newton <docnewton@att.net> wrote:
Thanks Kate, your feedback has been very helpful.  Maybe a flattening in the tube or something or an air leak in the tubing at times.

Camille


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.


---

**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>
**Cc:** Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Thursday, March 17, 2016 12:03 PM
**Subject:** Re: Pure Wick

Both Wicks 625, Lot 034-16

Tuesday night

Jar:  200 cc

Unused brief: 44 g, used: 61 g

92.2 %

CONFIDENTIAL

Wednesday night

Jar:  210 cc

Unused brief: 47 g, used: 135 g

70.5 %

Really wondering about the variability with this box.  I'm putting them on the same every night.

On Tue, Mar 15, 2016 at 7:50 PM, Doc Newton <docnewton@att.net> wrote:
Thanks Kate, glad to see it is working well at least sometimes.

Camille


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.

---

**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>
**Cc:** Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Tuesday, March 15, 2016 1:34 PM
**Subject:** Re: Pure Wick

Both days Wick 625, Lot 034-16

Sunday night:

Jar:  180 cc

Unused brief: 46 g, used: 99 g

77.3 %


Monday night:

Jar: 275 cc

Unused brief: 45 g, used: 60 g

94.8 %

On Tue, Mar 15, 2016 at 1:31 PM, Kate Pawlik <katepawlik@gmail.com> wrote:
I'm sorry.  She is doing ok, not great, but you know her.

I've just been really busy with work--I will input the data for yesterday and today in a minute!  I walk out every morning and enter it in a spiral notebook, then transfer it.

On Tue, Mar 15, 2016 at 8:25 AM, Doc Newton <docnewton@att.net> wrote:
Kate, Hope everything is OK.  Haven't heard from you in a few days . . .


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.


**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>
**Cc:** Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Friday, March 11, 2016 4:59 PM
**Subject:** Re: Pure Wick

Wick 625
Lot 034-16

Jar:  220 cc

Unused brief: 42 g, used: 47 g

97.8%!!!!!!

On Thu, Mar 10, 2016 at 1:13 PM, Kate Pawlik <katepawlik@gmail.com> wrote:
Wick 625
Lot 034-16

Jar: 290 cc

Unused brief: 46 g, used 112 g

81.5 %


On Wed, Mar 9, 2016 at 1:51 PM, Doc Newton <docnewton@att.net> wrote:

CONFIDENTIAL

Thanks again Kate, always appreciate your results.


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.

---

**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>
**Cc:** Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Wednesday, March 9, 2016 12:45 PM
**Subject:** Re: Pure Wick

Wick 625

Lot 034-16

Jar:  300 cc

Unused brief: 45 g, used 79 g

89.8%

On Tue, Mar 8, 2016 at 12:08 PM, Doc Newton <docnewton@att.net> wrote:
Thanks Kate,

At least a lot in the jar today.

Camille


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.

---

Newton_0006391
DTX-404-0008

**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>
**Cc:** Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Tuesday, March 8, 2016 11:42 AM
**Subject:** Re: Pure Wick

Yesterday and today
Both Wick 625
Lot 034-16

Morning 3/7
Jar:  410 cc

Unused brief: 46 g, used 78 g

92.8%

Morning 3/8
Jar: 160 cc

Unused brief: 46 g, used 86 g

80.0%

On Sun, Mar 6, 2016 at 1:56 PM, Doc Newton <docnewton@att.net> wrote:
Better, thanks.


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged material. Any review, retransmission,
dissemination or other use of or taking of any action in reliance upon this information by persons or
entities other than the intended recipient is prohibited. If you received this e-mail in error, please
contact the sender and delete the material from any computer.

---

**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>
**Cc:** Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Sunday, March 6, 2016 12:33 PM
**Subject:** Re: Pure Wick

I think I missed sending this yesterday, so here are both days.
Both are Wick 625, Lot 034-16

Morning of 3/5

Jar:  175 cc

CONFIDENTIAL

Unused brief: 52 g, used: 67 g

92.1 %

Morning of 3/6

Jar:  440 cc

Unused brief: 51 g, used: 83 g

93.2 %

On Fri, Mar 4, 2016 at 4:43 PM, Doc Newton <docnewton@att.net> wrote:
Thanks again Kate,


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.

---

**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>; Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Friday, March 4, 2016 3:32 PM
**Subject:** Re: Pure Wick

Wick 625

Lot 034-16

Jar:  300 cc

Unused brief: 50 g, used: 98 g

86.2%

On Thu, Mar 3, 2016 at 2:04 PM, Doc Newton <docnewton@att.net> wrote:
Thanks Kate,


Camille Newton, M.D.
Home Excel Physician's Group


CONFIDENTIAL

Newton_0006393

DTX-404-0010

The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.

---

**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>; Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Thursday, March 3, 2016 2:00 PM
**Subject:** Re: Pure Wick

Wick 625

Lot 034-16

Jar:  170 cc

Unused brief:  51 g, used: 87 g

82.5%

On Wed, Mar 2, 2016 at 2:38 PM, Doc Newton <docnewton@att.net> wrote:
Better, thanks again Kate.


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.

---

**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>; Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Wednesday, March 2, 2016 2:29 PM
**Subject:** Re: Pure Wick

Thanks.  I keep a close watch on her pressure ulcer site, and I wash her thoroughly every morning.  So far so good. :-)  Last night I used one from a previous box.

Wick  625

Lot  034-16

Jar:  300 cc

Unused brief:  53 g, used:  81 g

91.5 %


On Tue, Mar 1, 2016 at 4:34 PM, Doc Newton <docnewton@att.net> wrote:
Kate,

Thanks, I have some concerns about the structure of some of the new wicking materials too.  Please let us know if you have any concerns about skin issues and we will try to get you back on the original wicks right away.


Camille Newton, M.D.
Home Excel Physician's Group


The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.


**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** Doc Newton <docnewton@att.net>; Ray 2 Newton <drnewtonsoffice@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Tuesday, March 1, 2016 10:50 AM
**Subject:** Re: Pure Wick

Wick #4 from Ray's bag

Jar:  210 cc

Unused brief: 52 g, used: 144 g

69.5 %

The wick was kind of flattened on one side, as if the structure didn't hold up as well.

On Tue, Mar 1, 2016 at 7:44 AM, Doc Newton <docnewton@att.net> wrote:
Thanks Kate, not a lot of fluid.


Camille Newton, M.D.
Home Excel Physician's Group


CONFIDENTIAL

Newton_0006395
**DTX-404-0012**

The information transmitted in this e-mail is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this e-mail in error, please contact the sender and delete the material from any computer.

---

**From:** Kate Pawlik <katepawlik@gmail.com>
**To:** R Newton <drnewtonsoffice@att.net>; Doc Newton <docnewton@att.net>; Mike Jackson <mjackson@purewick.com>
**Sent:** Monday, February 29, 2016 5:59 PM
**Subject:** Re: Pure Wick

Wick #3 from Ray's bag

Jar:  80 cc

Unused brief: 52 g        used:   77 g

76.2 %

On Mon, Feb 29, 2016 at 11:38 AM, R Newton <drnewtonsoffice@att.net> wrote:

Thanks Kate. Your observations continue to be helpful.

Ray
---------------------------------------------
On Sun, 2/28/16, Kate Pawlik <katepawlik@gmail.com> wrote:

 Subject: Re: Pure Wick
 To: "Doc Newton" <docnewton@att.net>, "Ray 2 Newton" <drnewtonsoffice@att.net>, "Mike Jackson" <mjackson@purewick.com>
 Date: Sunday, February 28, 2016, 10:26 AM

 Wick #2
 from Ray's bag
 Jar:
  310 cc
 Unused brief:
 53 g, used: 167 g
 73.1
 %
 Good amount of urine
 in the jar, but a lot in the brief.  It did look as if the
 wick may have "twisted" a bit in the night.  When
 I put the wicks on each night, I always adjust for the

CONFIDENTIAL

natural bend or twist of the tube as  a last step.  With
these new tubes and how tight they are when you finally get
them in, it is pretty much impossible to turn them to adjust
for any twist in the tubing.  So you have to take them out
and put them in again, but it's hard to get it exactly
right.  I hope what I'm saying makes sense.

On Sat, Feb 27, 2016 at
1:27 PM, Kate Pawlik <katepawlik@gmail.com>
wrote:
I don't see yesterday's results in my sent
mail, so I will include those again with
today's.
Today's was Wick #1 from
bag Ray gave me last night.  It did not come unplugged in
the night, but I was very afraid it would.  I don't
think for the average person it will be easy to push the
tube in.  I wasn't able to get it in very far.  I
guess I could get used to it, but it just doesn't feel
as secure as the other method.
Jar:  170 cc
Unused brief: 52 g, used  97
g
79.1 %
Yesterday's was 625, Lot
034-15
Jar; 150
cc
Unused brief: 51 g,
used 66 g
90.9
%
On Thu, Feb 25, 2016 at
12:15 PM, Doc Newton <docnewton@att.net>
wrote:
Thanks Kate, Ray is
working with Mike and the team today - we hope the next
batch is more consistently
good.
Camille Newton, M.D.
Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material

CONFIDENTIAL

from any computer.


 From: Kate Pawlik
<katepawlik@gmail.com>
 To: Doc Newton <docnewton@att.net>;
Ray 2 Newton <drnewtonsoffice@att.net>;
Mike Jackson <mjackson@purewick.com>


 Sent: Thursday,
February 25, 2016 10:36 AM
 Subject: Re: Pure
Wick

I thought I sent
yesterday's results but I don't see it, so I'll
do yesterday and today.
Both
wicks were from the first box:  625, 034-15
Yesterday
Jar:  330 cc
Unused brief: 52 g, used 90
g
89.7 %
Today
Jar:  150 cc
Unused brief: 53 g, used 62
g
94.3
%
On Tue, Feb 23,
2016 at 1:48 PM, Doc Newton <docnewton@att.net>
wrote:
Much better,
thanks.
Camille Newton, M.D.
Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material
from any computer.

CONFIDENTIAL

From: Kate Pawlik
<katepawlik@gmail.com>
To: Doc Newton <docnewton@att.net>;
Ray 2 Newton <drnewtonsoffice@att.net>;
Mike Jackson <mjackson@purewick.com>

Sent: Tuesday, February
23, 2016 11:37 AM
Subject: Re: Pure
Wick

Wick 625
Lot 034-16  (back to the big box,
not the second smaller batch)
Jar:  260 cc
Unused brief: 52 g, used: 63
g
95.9
%
On Mon, Feb 22,
2016 at 4:25 PM, Doc Newton <docnewton@att.net>
wrote:
Thanks Kate, looks
like that batch isn't working too well.  Mike, any
ideas?
Camille Newton, M.D.
Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material
from any computer.


From: Kate Pawlik
<katepawlik@gmail.com>
To: Doc Newton <docnewton@att.net>;
Ray 2 Newton <drnewtonsoffice@att.net>;
Mike Jackson <mjackson@purewick.com>

Sent: Monday, February
22, 2016 12:38 PM
Subject: Re: Pure
Wick

CONFIDENTIAL

Wick 625
Lot 047-16NCM
Jar:  200 cc
Unused brief: 51 g, used 123
g
73.5%

On
Sun, Feb 21, 2016 at 10:30 PM, Doc Newton <docnewton@att.net>
wrote:
Thanks Kate, I am
concerned that the inner structural material isn't
holding its shape well
enough.
Camille
Camille Newton, M.D.
Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material
from any computer.


 From: Kate Pawlik
<katepawlik@gmail.com>
 To: Doc Newton <docnewton@att.net>;
Ray 2 Newton <drnewtonsoffice@att.net>;
Mike Jackson <mjackson@purewick.com>

 Sent: Sunday, February
21, 2016 11:34 AM
 Subject: Re: Pure
Wick

Wick 625
Lot  047-16NCM  (second box Mike
sent)
Jar: 680
cc
Unused brief: 51 g,
used: 245 g
77.8%
I was so excited when I saw the jar
this morning, but obviously bummed when I weighed the

CONFIDENTIAL

Newton_0006400

DTX-404-0017

brief.  I noticed the wicks in the small box felt
strange--kind of a soft back.  I will examine the wick
better (before and after) tonight.  Thanks.

On Sat, Feb
20, 2016 at 6:06 PM, Doc Newton <docnewton@att.net>
wrote:
Kate,
I'm not sure about
what material is in which box.  you will have to ask Mike
that one.  We have been experimenting with new wicking
material, new structural material, new tape, new ways of
taping the end cap,
etc.
Camille Newton, M.D.
Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material
from any computer.


 From: Kate Pawlik
<katepawlik@gmail.com>
 To: Doc Newton <docnewton@att.net>


 Sent: Saturday,
February 20, 2016 9:52 AM
 Subject: Re: Pure
Wick

Yes, a lot of urine in
the jar. :-)
This was the
fifth from the new box, so I'm curious to see what's
going on.  Do these wicks have that new material (I think
it was the cheaper material)?
On Sat, Feb 20, 2016 at 9:48 AM, Doc
Newton <docnewton@att.net>
wrote:
At least a
lot of urine in the jar.  Again Kate, thanks so much for
your feedback.
Camille

CONFIDENTIAL

Newton_0006401

DTX-404-0018

Camille Newton, M.D.
Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material
from any computer.


From: Kate Pawlik
<katepawlik@gmail.com>
To: Doc Newton <docnewton@att.net>

Sent: Saturday,
February 20, 2016 9:44 AM
Subject: Re: Pure
Wick

Wick #625
Lot  034-16
Jar:  450 cc
Unused brief:  52 g, used: 94
g
91.5%

On Fri, Feb
19, 2016 at 1:43 PM, Doc Newton <docnewton@att.net>
wrote:
Yikes!
Camille Newton, M.D.
Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material
from any computer.

From: Kate Pawlik
<katepawlik@gmail.com>
To: Doc Newton <docnewton@att.net>;
Ray 2 Newton <drnewtonsoffice@att.net>;
Mike Jackson <mjackson@purewick.com>

Sent: Friday, February
19, 2016 12:12 PM
Subject: Re: Pure
Wick

Wick 625
Lot  034-16
Jar:  130 cc
Unused brief: 52 g, used:  110
g
69.1%
????????


On
Thu, Feb 18, 2016 at 9:36 AM, Doc Newton <docnewton@att.net>
wrote:
Thanks
Kate,
Camille
Camille Newton, M.D.
Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material
from any computer.


From: Kate Pawlik
<katepawlik@gmail.com>
To: Doc Newton <docnewton@att.net>;
Ray 2 Newton <drnewtonsoffice@att.net>;
Mike Jackson <mjackson@purewick.com>

Sent: Thursday,
February 18, 2016 9:18 AM
Subject: Re: Pure
Wick

CONFIDENTIAL

Newton_0006403

DTX-404-0020

Wick #625
Lot 034-16
Jar:  310 cc
Unused brief: 51 g, used 116
g
82.7%
On Wed, Feb 17, 2016 at 11:29 AM, Doc
Newton <docnewton@att.net>
wrote:
Thanks Kate, we
appreciate your continued
feedback.
Camille
Camille Newton, M.D.
Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material
from any computer.


 From: Kate Pawlik
<katepawlik@gmail.com>
 To: Doc Newton <docnewton@att.net>;
Ray 2 Newton <drnewtonsoffice@att.net>;
Mike Jackson <mjackson@purewick.com>

 Sent: Wednesday,
February 17, 2016 11:21 AM
 Subject: Re: Pure
Wick

Wick #625
Lot 034-16
Jar:  180 cc
Unused brief: 52 g, used: 86
g
84.1 %
Hmmmm.  This is the new box of
wicks, and I hoped for consistently great results.  Could
be human error or just an anomaly.  Looking forward to
tomorrow's results.
On Tue, Feb 16, 2016 at 10:12 AM, Doc

CONFIDENTIAL

Newton <docnewton@att.net>
wrote:
Great,
thanks.
Camille Newton, M.D.
Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material
from any computer.


 From: Kate Pawlik
<katepawlik@gmail.com>
 To: Doc Newton <docnewton@att.net>;
Ray 2 Newton <drnewtonsoffice@att.net>;
Mike Jackson <mjackson@purewick.com>

 Sent: Tuesday, February
16, 2016 9:40 AM
 Subject: Re: Pure
Wick

Wick #625
Lot #034-16  (from new box sent by
Mike)
Jar:  450
cc
Unused brief: 52 g,
used: 72 g
95.7%
On Mon, Feb 15, 2016 at 9:41 AM, Doc
Newton <docnewton@att.net>
wrote:
OK, not so great.
Thanks
Camille Newton, M.D.
Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged

CONFIDENTIAL

Newton_0006405

DTX-404-0022

material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material
from any computer.


 From: Kate Pawlik
<katepawlik@gmail.com>
 To: Doc Newton <docnewton@att.net>;
Ray 2 Newton <drnewtonsoffice@att.net>;
Mike Jackson <mjackson@purewick.com>

 Sent: Monday, February
15, 2016 9:38 AM
 Subject: Re: Pure
Wick

I'm not sure if I
sent the one from yesterday, because it said it was a draft,
so I resent it.
This
morning's:
Wick
#8A
Lot
285-15
Jar:  290
cc
Unused brief: 53 g,
used: 97 g
86.8%
On Mon, Feb 15, 2016 at 9:36 AM, Kate
Pawlik <katepawlik@gmail.com>
wrote:
Wick 6B
Lot
295-15
Jar:  150
cc
Unused brief: 52 g,
used: 78 g
85.2%
On Fri, Feb 12, 2016 at 12:16 PM, Doc
Newton <docnewton@att.net>
wrote:
Wow, that was a lot
of urine last night.  I'm not sure why it didn't
work as well though.
Camille
Camille Newton, M.D.

CONFIDENTIAL

Newton_0006406

DTX-404-0023

Home Excel
Physician's Group


The information transmitted in this e-mail is
intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other
use of or taking of any action in reliance upon this
information by persons or entities other than the intended
recipient is prohibited. If you received this e-mail in
error, please contact the sender and delete the material
from any computer.


From: Kate
Pawlik <katepawlik@gmail.com>
 To: Doc Newton <docnewton@att.net>;
Ray 2 Newton <drnewtonsoffice@att.net>;
Mike Jackson <mjackson@purewick.com>


 Sent: Friday, February
12, 2016 10:24 AM
 Subject: Pure Wick

Wick #8 (extra
long)
Jar: 710
cc
Unused brief: 52 g,
used 248 g
78.4%

CONFIDENTIAL

Newton_0006407

**DTX-404-0024**

CONFIDENTIAL

Newton_0006408

**DTX-404-0025**

CONFIDENTIAL