# EXHIBIT 1

```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE


PUREWICK CORPORATION,    )
                         )
         Plaintiff,      )  C.A. No. 22-102-MN
                         )
v.                       )
                         )
SAGE PRODUCTS, LLC,      )
                         )
         Defendant.      )


              Friday, January 6, 2023
              4:00 p.m.


              844 King Street
              Wilmington, Delaware



BEFORE:  THE HONORABLE JENNIFER L. HALL
      United States District Court Judge



APPEARANCES:


      SHAW KELLER, LLP
      BY:  JOHN W. SHAW, ESQ.

             -and-

      QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
      BY:  STEVEN C. CHERNY, ESQ.
      BY:  NICOLA FELICE, ESQ.
      BY:  BRIAN P. BIDDINGER, ESQ.

                      Counsel for the Plaintiff
```

```
 1   APPEARANCES CONTINUED:

 2
            YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
 3          BY:  SAMANTHA WILSON, ESQ.

 4                  -and-

 5          McANDREWS, HELD & MALLOY, LTD
            BY:  CHRISTOPHER SCHARFF, ESQ.
 6          BY:  RYAN PIANETTO, ESQ.
            BY:  SANDRA FRANTZEN, ESQ.
 7
                        Counsel for the Defendant
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1           THE COURT:  Good afternoon,
2    everyone.  This is Jennifer Hall.  We're here on
3    the phone for a discovery dispute
4    teleconference.  This is PureWick Corporation
5    versus Sage Products, LLC, civil action number
6    22-102-MN.  I understand we have a court
7    reporter on the line.  The court reporter is
8    Stacy Ingram.  May I please have appearances for
9    plaintiff starting with Delaware counsel.
10           MR. SHAW:  Good afternoon, Your
11   Honor.  This is John Shaw for PureWick.  Joining
12   me from Quinn Emanuel are Steven Cherny, Brian
13   Biddinger and Nicola Felice.
14           THE COURT:  Good afternoon to all
15   of you.  And may I have appearances, please, for
16   defendants starting with Delaware counsel?
17           MS. WILSON:  Good afternoon, Your
18   Honor.  This is Samantha Wilson from Young
19   Conaway for Sage and with me today is Sandra
20   Frantzen, Christopher Scharff and Ryan Pianetto
21   from McAndrews, Held & Malloy.
22           THE COURT:  Good afternoon to all
23   of you.  Okay.  So we've got two sets of
24   letters.  We've read them.  I think we

1    little bit less blunt in this regard is in their
2    own letter they do point out some of the stuff
3    that they say look, they seem to on the one hand
4    not be willing to constrain theirselves(sic) in
5    any way, but then they say, well, for example,
6    Medline, who is a third party competitor.  If
7    they want to go talk to Medline and obviously
8    talk to them about issues relating to the market
9    and damages, sure.  If they're going to Medline
10   to talk to them about some type of invalidity
11   arguments, our view is invalidity is already
12   done.
13               And so Kate Paulick was a
14   perfectly good example of somebody who has no
15   information about anything other than their
16   alleged prior use.  The Newtons, who testified
17   at trial, Camille and Ray Newton, they testified
18   at length at trial, they literally represented
19   to Judge Noreika that they were going to cross
20   examine them and show that they weren't telling
21   the truth and they never did.  And by the time
22   we got to the end of the trial, they took jmal
23   on this underlying public use assertion.  So
24   from our perspective, we don't think the

| | |
|---|---|
| 1 | Newton's should have to give discovery and be |
| 2 | deposed again or have discovery taken of them, |
| 3 | because there's nothing that they know about |
| 4 | that wasn't the subject.  They don't know |
| 5 | anything about the new product for infringement. |
| 6 | They don't know anything about damages.  The |
| 7 | only information they have relates to the facts |
| 8 | relating to this public use and on sale bar |
| 9 | argument.  So from our perspective -- |
| 10 | THE COURT:  Wait.  Let me just |
| 11 | make sure I understand, though.  They're the |
| 12 | inventors, aren't they? |
| 13 | MR. CHERNY:  Correct.  They're the |
| 14 | inventors -- |
| 15 | THE COURT:  Don't you have new |
| 16 | claims that you're putting at issue in this |
| 17 | litigation? |
| 18 | MR. CHERNY:  There is one new |
| 19 | claim at issue and the new claim has an element |
| 20 | related to a vent and they're not saying that |
| 21 | somehow there's a difference here about the |
| 22 | product that they're alleging was the prior on |
| 23 | sale bar or use.  So it's the exact same product |
| 24 | that they never were able to prove up in front |

1    of the jury was in any way on sale or a public
2    use or met any of the elements.  And so we have
3    one new claim.  I mean, I guess they could argue
4    about the one difference in the claim relating
5    to the additional elements of the vent, but
6    there is no difference relating to that claim
7    and any of the other claims that were
8    adjudicated relating to this alleged prior sale
9    and public use.  And so there's --
10                THE COURT:  Okay.  I understand
11   you're point on that.  Let me ask you this.  You
12   mentioned that this was a burden our client and
13   you're talking about PureWick.  The discovery
14   requests that are at issue in your motion were
15   all third party discovery requests, so it's the
16   burden that you have to look at the documents
17   that are produced by these third parties and
18   potentially show up for whatever depositions?
19                MR. CHERNY:  And we'll be
20   representing them at our client's expense as
21   well, which happened in the first case as well.
22   And so, I mean, it's a burden on the third
23   parties, but it is overall more of a burden on
24   my client because my client covers all these

1    you want to say more about your protective

2    order?

3              MR. CHERNY:  No, Your Honor.  Our

4    main issue basically is is that we're looking

5    for help from the Court to set up some guard

6    rails so we're not redoing everything that was

7    done and adjudicated in the last case.  That's

8    mainly our point.

9              THE COURT:  Okay.  Understood.

10   Thank you very much, Mr. Cherny.  Let's turn it

11   over to the other side.

12             MR. SCHARFF:  Thank you, Your

13   Honor.  This is Christopher Sharff for

14   defendant, Sage Products.  So from the outset

15   I'd like to clarify one thing.  PureWick already

16   raised this exact argument.  It's argument that

17   there shouldn't be discovery on certain defenses

18   because of PureWick's pending motion with Judge

19   Noreika.  So PureWick filed its motion for

20   judgment on the pleadings on this issue, which

21   is still pending.  In the meantime, Judge

22   Noreika specifically ordered that discovery on

23   Sage's defenses, including its invalidity

24   defenses, should proceed.  Specifically when the

1  parties submitted a proposed scheduling order,
2  PureWick had proposed that there should be no
3  discovery on these defenses, but Judge Noreika
4  overruled their proposal and specifically
5  ordered that Sage is entitled to take this
6  discovery.  That's the scheduling order at
7  paragraphs 7B and 7H, for example.  So what
8  PureWick really is trying to do is circumvent
9  Judge Noreika on the basis of three pages of
10 discovery letters.  They really want effectively
11 an earlier ruling on their motion for judgment
12 on the pleadings.  So this isn't really a
13 discovery dispute.  To the extent that the
14 parties do end up having a dispute over the
15 admissibility of a given document that's
16 produced from these third parties, that's for
17 another day.  For example, a document produced
18 from one of these third party may be relevant to
19 multiple issues, but its admissibility for a
20 particular purpose should be addressed later.
21 That's just the first procedural problem with
22 PureWick's motion.
23             In a bit I'll get to PureWick's
24 argument that we should somehow be precluded

|     |     |
| --- | --- |
| 1   | from taking any discovery that we could have |
| 2   | taken in the first lawsuit.  It's not the law |
| 3   | and we don't think there's any case law to |
| 4   | support that argument or any argument that |
| 5   | you're not allowed to redo discovery.  I mean, |
| 6   | they're trying to recraft law of estoppel to be |
| 7   | must broader than it is. |
| 8   | Before I get to that, the second |
| 9   | problem with PureWick's motion is that even if |
| 10  | this is a proper discovery dispute, these |
| 11  | subpoenas to these 10 third parties, PureWick |
| 12  | isn't the one to raise it.  PureWick hasn't |
| 13  | satisfied any of the legal requirements for |
| 14  | PureWick as a party litigant to step in and |
| 15  | prevent us from taking discovery from third |
| 16  | parties.  Even worse, most of these third |
| 17  | parties don't even largely object to producing |
| 18  | these documents.  Mr. Cherny, for example, |
| 19  | incorrectly said that they're representing all |
| 20  | of these third parties.  They're only |
| 21  | representing about half of them.  Several of |
| 22  | them are companies that have, in fact, agreed |
| 23  | and at least one company already has produced |
| 24  | documents.  That's TriCity.  Another one, First |

1       Quality, just before this hearing, produced some
2       documents that we're going to be getting off to
3       the other side.  And then another example, Kate
4       Paulick, that Mr. Cherny talked about for a
5       while, before -- so Kate Pollack had inidbitially
6       indicated that she was willing to produce the
7       documents subject to the subpoena until
8       PureWick's attorneys contacted her, offered to
9       represent her and then changed her answer, all
10      after the return date for her subpoena.
11                    Now, PureWick itself is required,
12      in order to get a protective order, to show that
13      PureWick is specifically and seriously going to
14      be harmed if we're allowed to take this
15      discovery, but the only thing that I've heard
16      from PureWick is that PureWick will have to look
17      through these documents and maybe attend some
18      depositions, but that's just litigation
19      expenses, that's not, you know, any undue harm
20      or prejudice or anything that would entitle them
21      to a protective order.
22                    And then, you know, again, these
23      documents aren't asking PureWick itself to
24      produce anything.  It's also notable that

1  PureWick had indicated that on these exact
2  topics that it was going to be producing
3  documents within these topics.  So I don't know
4  why a different standard should apply to third
5  parties.
6              Then, even if those first and
7  second points don't apply, now, I heard Mr.
8  Cherny say that PureWick doesn't have any
9  problem with discovery that relates to new
10 issues or issues that aren't at issue with their
11 collateral estoppel arguments, but that's not
12 what PureWick's motioned had asked for.  And at
13 the meet and confer we specifically asked
14 PureWick, are you objecting to all of the
15 discovery that we're seeking with these
16 subpoenas, and they said yes, everything.  But
17 these subpoenas seek a great deal of information
18 that has nothing to do with the arguments that
19 PureWick has argued estoppel on, such as
20 information about new non-infringing
21 alternatives that we couldn't have taken
22 discovery on before.  Yet PureWick made no
23 attempts to limit its motion to any specific
24 topics, even though it's PureWick's burden to

1      show specific harm.
2              And, you know, for example, the
3      Medline subpoena asks for documents regarding
4      their new product.  The moment the subpoena asks
5      for documents about new products and information
6      like valuations of PureWick, again, TriCity, I
7      mentioned just produced documents today.  So
8      then -- and then the Pollack subpoena was one
9      that Mr. Cherny had focused on and that, at the
10     very least, relates to invalidity of the new
11     asserted claim.
12             Now, Mr. Cherny had said that
13     there's only one difference with the new claim.
14     There's actually several, including the fact
15     that the new claim doesn't require an interior
16     tube whereas all of the other claims do require
17     one and that obviously opens up different prior
18     art.  We no longer need to look for prior art
19     that has a tube.  And so because of that, we are
20     needing to then redo some discovery on
21     invalidity, because of they're new asserted
22     claim.
23             So then fourth, as we explained in
24     our briefing, aside from all of the rest of

```
 1    this, even if you were to get to the estoppel
 2    issue on the merits, which we don't think is
 3    appropriate here, we don't think that their
 4    estoppel argument has any merit.
 5                    So again, I mentioned the new
 6    claim that's being asserted for purposes of
 7    invalidity.  In addition, our inequitable
 8    conduct argument is something new that was never
 9    previously litigated.  In fact, inequitable
10    conduct was never previously litigated in the
11    prior lawsuit.  And we cited case law --
12                    THE COURT:  Wasn't it an issue to
13    be litigated that was in the pretrial order?
14                    MR. SCHARFF:  It may have been in
15    the pretrial order, but it wasn't actually
16    litigated.
17                    MS. WILSON:  Your Honor,
18    inequitable conduct was not in the pretrial
19    order.  It was never alleged in the prior case.
20                    THE COURT:  Thank you.
21                    MR. SCHARFF:  So Your Honor, for
22    example, we cited the Lucky Brand case, the
23    supreme court says that specifically says if
24    you're sued in a second lawsuit, the test isn't
```

1  oh, you could have raised that defense before so
2  you're barred.  That just isn't how estoppel
3  works, nor discovery and PureWick doesn't cite
4  to any cases to that effect.  Really, if we were
5  talking about estoppel, it would be very narrow
6  as looking at was this identical issue actually
7  litigated, not this broad, sweeping argument of
8  we can't redo discovery or we can't take
9  discovery from parties that we could have
10 deposed before.
11             I'll note, for example, Your Honor
12 too, out of these 10 subpoenas, only two were
13 actually subpoenaed previously and that's the
14 Newtons, who were the former owners of PureWick
15 and inventors and we specifically said in the
16 Newton subpoenas that we're not seeking
17 documents that they produced previously.  So to
18 the extent that there is some overlap, there's
19 no harm, because we specifically said we don't
20 need you to produce documents you produced
21 before.  If it is a document that you found that
22 you didn't find before, well, then it should be
23 produced, but everything else is new discovery.
24             So then lastly, Mr. Cherny didn't

1  bit of discovery from the last case.  He's not
2  saying there's any reason not to and that cannot
3  possibly be the way things go forward.  There is
4  a reason why, when you have a case and things
5  are adjudicated against a party, that then acts
6  to focus the next case going forward on the same
7  issues, in this case, validity and
8  enforceability of the patent in suit.
9           THE COURT:  All right.  Thank you
10 very much, Mr. Cherny.  Let me just take a brief
11 recess.  I'm going to go on mute.  I should be
12 able to give you a ruling on this issue.
13          (Short recess.)
14          THE COURT:  Okay.  So bear with
15 me.  Late in the day on a Friday, so I'll try
16 and articulate the reasons for my ruling.  I
17 want to say at the outset that I do appreciate
18 Mr. Cherny's comments and understand his
19 position, particularly his comment and
20 recognition that I'm in a tough position here
21 because the motion for judgment on the pleadings
22 is not before me.
23          That said, I do have a discovery
24 motion before me that I need to resolve and so

1    I've carefully considered all of the arguments
2    today and I consider that on balance in these
3    particular circumstances that plaintiff has not
4    met its burden for a protective order.  Again,
5    we're dealing with third party subpoenas here.
6              Mr. Cherny's made the comment that
7    litigating these defenses again at trial may be
8    burdensome and I don't doubt that that's the
9    case, but what we need to decide today is
10   whether allowing this third party discovery
11   requested by defendants is unduly burdensome and
12   I find that it's not.
13             We do have some arguments from
14   plaintiff's side that sort of sound like a
15   discovery estoppel theory, so the fact that you
16   could have gotten discovery from a particular
17   source on a particular issue in the first case
18   means you shouldn't be able to get it now.  I
19   understand that point, but I don't find that it
20   weighs in favor of a protective order.  Again,
21   we also have an issue that could be new in this
22   case.  For example, we've got at least a new
23   claim and we have a request for depositions of
24   the inventors, which I do think is appropriate.

```
 1                  One possibility to be considered
 2     is whether we could somehow stay discovery and
 3     wait until we get a ruling from Judge Noreika.
 4     I don't think, given the schedule on here, that
 5     it does make sense to wait.  Of course the
 6     schedule isn't the only things I'm considering,
 7     though, but in light of the fact that we're
 8     talking about third party discovery that I don't
 9     think is particularly burdensome, I definitely
10     don't think it makes sense to wait.
11                  And I also have considered whether
12     we should go through each one of the subpoenas
13     at issue in plaintiff's motion and try to figure
14     out exactly what can and can't be asked at a
15     deposition or document can or can't be produced.
16     I don't think that's appropriate.  I think
17     that's probably more likely to raise more future
18     disputes than resolve them.  And again, while
19     that type of resolution might be appropriate in
20     a different case, I think here, given the fact
21     that I don't think it's that burdensome, that
22     that's the way we ought to proceed.
23                  So the motion for a protective
24     order is going to be denied.
```