13:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


PUREWICK CORPORATION,            )
                                 )
            Plaintiff,           )
                                 ) C.A. No. 22-102(MN)
v.                               )
                                 )
SAGE PRODUCTS, LLC,              )
                                 )
            Defendant.           )


                    Friday, February 17, 2023
                    1:00 p.m.
                    Markman Hearing


                    844 King Street
                    Wilmington, Delaware


BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge


APPEARANCES:


          SHAW KELLER LLP
          BY:  JOHN W. SHAW, ESQ.

          -and-

          QUINN EMANUEL URQUHART & SULLIVAN
          BY:  BRIAN P. BIDDINGER, ESQ.
          BY:  NICOLE FELICE, ESQ.


                    Counsel for the Plaintiff

1    APPEARANCES CONTINUED:

2
                    YOUNG CONAWAY STARGATT & TAYLOR, LLP
3                   BY:  ANNE SHEA GAZA, ESQ.
                    BY:  SAMANTHA G. WILSON, ESQ.
4
                    -and-
5
                    McANDREWS HELD & MALLOY
6                   BY:  CHRISTOPHER M. SCHARFF, ESQ.
                    BY:  RYAN J. PIANETTO, ESQ.
7                   BY:  ROBERT SURRETTE, ESQ.

8                        Counsel for the Defendant

9

10               _ _ _ _ _ _ _ _ _ _ _

11

12:43:18  12

13:01:02  13            THE COURT:  All right.  Good afternoon,

13:01:03  14    everyone, and please be seated.  All right.  Let's start

13:01:07  15    with some introductions.

13:01:11  16            Mr. Shaw.

13:01:12  17            MR. SHAW:  Good afternoon, Your Honor.  John

13:01:14  18    Shaw for Plaintiff, PureWick.  Joining me from Quinn

13:01:18  19    Emanuel, Brian Biddinger and Nicole Felice.  Mr. Cherny also

13:01:22  20    asked me to send his regards.  He's in Europe this week and

13:01:27  21    unable to come.

13:01:28  22            THE COURT:  Ms. Gaza.

13:01:29  23            MS. GAZA:  Good afternoon, Your Honor.  Anne

13:01:31  24    Gaza from Young, Conaway on behalf of Defendant, Sage.  I'm

13:01:34  25    joined today by Christopher Scharff, Robert Surrette, and

13:01:40 1    Ryan Pianetto of McAndrew Held & Malloy, as well as my

13:01:44 2    colleague, Samantha Wilson.

13:01:46 3              THE COURT:  Great.  Okay.  Let's start with the

13:01:51 4    presentations and I'll let Sage go first.

13:01:55 5              MR. SCHARFF:  All right.  Good morning, Your

13:02:07 6    Honor.  Christopher Scharff on behalf of Defendant, Sage

13:02:10 7    Products.  I'll start with the next slide which is slide 1.

13:02:13 8              So as Your Honor knows, there are two patents in

13:02:15 9    this lawsuit, the '376 Patent and the '989 Patent, both of

13:02:19 10   which are directed to an apparatus or a method for receiving

13:02:22 11   discharged urine.

13:02:24 12             Let's turn to the next slide.

13:02:25 13             So the term that we're here to construe is the

13:02:29 14   term "fluid reservoir" which is a term that's found in every

13:02:32 15   claim of these two patents and it's found repeatedly through

13:02:35 16   the claims.  For example --

13:02:36 17             THE COURT:  Can I just ask --

13:02:39 18             MR. SCHARFF:  Yes, Your Honor.

13:02:39 19             THE COURT:  -- is it your position that this

13:02:41 20   term should have its plain and ordinary meaning?

13:02:41 21             MR. SCHARFF:  It is.

13:02:44 22             THE COURT:  And your proposal is what you think

13:02:46 23   is the plain and ordinary meaning?

13:02:48 24             MR. SCHARFF:  That's exactly right, Your Honor.

13:02:50 25             THE COURT:  And the test is the plain and

13:02:51 1   ordinary meaning to the person of ordinary skill in the art?

13:02:54 2            MR. SCHARFF:  It is, yes.

13:02:56 3            THE COURT:  Is everyone who testified at the

13:02:58 4   trial, the first trial, a person of ordinary skill in the

13:03:00 5   art?

13:03:01 6            MR. SCHARFF:  Yes, Your Honor.

13:03:02 7            THE COURT:  All right.

13:03:03 8            MR. SCHARFF:  So this term appears repeatedly

13:03:06 9   throughout the claims.  For example, in claim 1 alone it

13:03:08 10  recites a fluid impermeable casing having a fluid reservoir

13:03:12 11  at the first end, and later it recites that the apparatus

13:03:16 12  has to have a fluid support distinct from that fluid

13:03:19 13  reservoir, a tube disposed in that reservoir and at the end

13:03:23 14  and importantly recites that the apparatus has to be

13:03:26 15  configured so that urine is received into that reservoir.

13:03:29 16            Next slide.

13:03:30 17            So what is the parties' disagreement over this

13:03:32 18  term?  So here we have the parties' two constructions.  So

13:03:36 19  PureWick's construction is that a reservoir is simply

13:03:39 20  anyplace where urine can collect, whereas Sage's

13:03:42 21  construction is a structure that aggregates urine.

13:03:46 22            So before I get into the differences, I can give

13:03:48 23  a brief preview of why we think the intrinsic evidence

13:03:52 24  supports our construction.

13:03:55 25            Go to slide 11.

13:03:55 1        So I'll explain how the claims themselves

13:04:00 2  support our construction.  For example, they repeatedly

13:04:04 3  refer to the reservoir as a structure.  For example, claim

13:04:07 4  3, wherein the reservoir is formed of polymer.  A place

13:04:10 5  can't be formed of polymer.

13:04:13 6        Slide 12.

13:04:14 7        I'll explain how the specification repeatedly

13:04:17 8  refers to the reservoir as doing more than just collecting

13:04:20 9  fluid, it also has to hold fluid.

13:04:23 10       And slide 14.

13:04:24 11       And then we'll also discuss how in the

13:04:26 12 prosecution history, PureWick specifically told the Patent

13:04:29 13 Office and the public what the definition of a reservoir is,

13:04:32 14 and that's a cavity or part that holds some fluid or

13:04:36 15 secretion, not simply is capable of.

13:04:39 16       Let's go back to slide 3, please.

13:04:41 17       All right.  So the parties' disagreement over

13:04:45 18 this term is in three areas.  So first, collect versus

13:04:48 19 aggregate.  Two, whether or not it's enough for something to

13:04:52 20 just hypothetically collect or aggregate urine or whether it

13:04:52 21 must actually be configured for doing that.  And then third,

13:05:00 22 whether a reservoir can simply be some arbitrary place in a

13:05:04 23 device or whether it has to be an identifiable structure.

13:05:08 24       PureWick claims that the differences between

13:05:11 25 these constructions are just semantic.  And then obviously

13:05:10 1    the question is why PureWick didn't agree with our

13:05:14 2    construction.  But as I will explain, these differences are,

13:05:17 3    in fact, significant.

13:05:17 4            So before I get into our construction, it helps

13:05:20 5    to understand the context of why the parties are disputing

13:05:23 6    this claim term.  So first we're disputing this construction

13:05:27 7    because PureWick is taking a different construction or

13:05:31 8    different position versus what it argued in *PureWick* I.  In

13:05:36 9    *PureWick* I, PureWick argued that a space in the Van Den

13:05:40 10   Heuvel reference wasn't a reservoir because it didn't

13:05:42 11   actually aggregate urine in use even though urine was

13:05:47 12   channeled into that space.

13:05:48 13           PureWick II, PureWick is arguing that an alleged

13:05:51 14   space at the end of our device is a reservoir regardless of

13:05:55 15   whether it actually aggregates urine.  PureWick says over

13:05:58 16   and over in its brief that it's not taking inconsistent

13:06:02 17   claim construction positions, but they never provide an

13:06:04 18   answer to this.  This contradiction is irreconcilable.

13:06:09 19           Next slide, please.

13:06:10 20           On top of that, we're also disputing this term

13:06:12 21   because in this current lawsuit, PureWick has not identified

13:06:14 22   any actual structure in our accused product that it believes

13:06:19 23   is a reservoir and that's because PureWick wants a

13:06:22 24   construction that is so vague and arbitrary that it can

13:06:26 25   literally just trace out any portion of anyplace in a urine

13:06:30 1  collection device that can collect urine and call that the

13:06:34 2  reservoir.

13:06:34 3          So under PureWick's construction, a place that

13:06:38 4  can collect urine, that can include the space between the

13:06:42 5  fibers and the stuffing, the space around the tube, the

13:06:44 6  space in the tube, really anywhere in the device can collect

13:06:48 7  urine.  So the issue is that PureWick's construction doesn't

13:06:51 8  do anything to help the jury understand what is and isn't a

13:06:56 9  reservoir and to help third parties, competitors, understand

13:06:59 10 what it is in order to avoid infringement.

13:07:03 11         Next slide, please.

13:07:04 12         THE COURT:  Hold on one second.  I want to find

13:07:08 13 something in the brief.

13:07:13 14         MR. SCHARFF:  All right.

13:07:13 15         THE COURT:  In PureWick's paper from yesterday,

13:07:18 16 it says Sage agrees that structure does not require a

13:07:22 17 separate structure.  Thus, the reservoir can be an

13:07:26 18 integrally formed part of the casing.  Is that correct?

13:07:30 19         MR. SCHARFF:  That's correct, we're not saying

13:07:31 20 it has to be a separate structure.

13:07:33 21         THE COURT:  Accordingly, if structure is used in

13:07:35 22 the construction it would be more accurate to say a

13:07:37 23 structure or part of a structure that provides a place where

13:07:41 24 fluid can collect.  Do you agree that the construction could

13:07:46 25 be a structure or part of a structure?

13:07:49  1        MR. SCHARFF:  I think it's the part of the

13:07:51  2   structure that we would still have the issue with.

13:07:53  3        THE COURT:  But if it's integrated in it, if the

13:07:57  4   reservoir is integrated into the casing, the reservoir is

13:08:01  5   not the entire casing, so why wouldn't it be part of the

13:08:05  6   structure?

13:08:06  7        MR. SCHARFF:  Yeah, so there is still a

13:08:08  8   structure, if that's what you're referring to possibly, but

13:08:10  9   if you're talking about the structure being the end of the

13:08:13 10   casing, that's defining the reservoir.  I think our main

13:08:17 11   issue with our construction is if you just say place, a

13:08:20 12   place is unbounded by any reference to a structure, whereas

13:08:24 13   in -- they know, they had repeatedly referred to in the

13:08:28 14   prosecution history a cavity or void space that holds urine,

13:08:33 15   now -- and they repeatedly did that by reference to

13:08:37 16   structures, so the issue is yeah --

13:08:39 17        THE COURT:  I mean, they did say in the

13:08:40 18   prosecution that it's a void space, so why is a space rather

13:08:48 19   than a structure, why is space wrong?

13:08:51 20        MR. SCHARFF:  So if you can, let's go to slide

13:09:00 21   10.  So the issue is space might be fine, but their

13:09:06 22   construction is place.  And everywhere in the prosecution

13:09:10 23   history, they reference that void, the cavity or void space

13:09:14 24   by referencing the structures that bounded it.

13:09:17 25        Now, we obviously agree that reservoir is a

13:09:21 1    structure and the space inside of that structure, it just

13:09:25 2    can't be an arbitrary place.  You can't just point to say

13:09:29 3    well, I think the reservoir is the first quarter of an inch

13:09:32 4    of it, or I think the reservoir is the bottom and I'm going

13:09:36 5    to trace a jagged line and say that that's the reservoir.

13:09:39 6    There has to be some way for the public and the jury to know

13:09:42 7    what is a reservoir and does this accused structure have

13:09:45 8    one.

13:09:45 9          THE COURT:  Just so we're clear, though, you

13:09:47 10   think space is better than place?

13:09:50 11         MR. SCHARFF:  Yes, Your Honor.

13:09:51 12         THE COURT:  Okay.

13:09:51 13         MR. SCHARFF:  Can we go back to slide 6.

13:09:54 14         Now, here you can see exactly how PureWick is

13:10:05 15   purposefully being vague.  On the left in their claim

13:10:08 16   construction brief they claim that they're expressly saying

13:10:11 17   that the reservoir is just the space at the bottom of the

13:10:14 18   device between the permeable support and the casing, and

13:10:18 19   they say that they are expressly not claiming that the

13:10:20 20   reservoir includes the permeable support.  Then if you look

13:10:23 21   on the right, you can see that PureWick does have an arrow

13:10:27 22   that points to the reservoir is including some arbitrary

13:10:30 23   area in the permeable support.  And, you know, the reason

13:10:33 24   for that has to do with satisfying other claim limitations.

13:10:36 25         Next slide, please.

13:10:39 1          So let's turn to the three differences between

13:10:42 2    our claim construction and theirs.  So first there is this

13:10:45 3    difference between aggregate and collect.  Now, PureWick in

13:10:49 4    its brief now stated that it would be fine with the

13:10:52 5    construction that uses the word "aggregate."  If there is an

13:10:54 6    agreement on that, I think we can adopt the word

13:10:57 7    "aggregate," but PureWick is still trying to read the word

13:11:00 8    "aggregate" to mean the same thing as collect and it

13:11:03 9    doesn't.

13:11:03 10          For example, the specification of the two

13:11:06 11   patents specifically refer to the reservoir collecting and

13:11:10 12   holding urine.  The dictionaries that we cited do the same

13:11:14 13   thing.  Aggregate again was the word that PureWick used to

13:11:19 14   overcome Van Den Heuvel.  If you look in PureWick's brief,

13:11:24 15   they provided some -- they provided the definition of

13:11:27 16   aggregate versus collect and they tried to say oh, look,

13:11:32 17   they're the same thing.  But one of their own definitions

13:11:35 18   specifically said the definition of aggregate is to collect

13:11:37 19   or gather into a mass or hole, so not just collect.

13:11:42 20          THE COURT:  I just looked up on Thesaruis.com

13:11:47 21   synonyms for aggregate.  Amass, accumulate, add, collect,

13:11:52 22   combine, heaped, mixed, piled, total, so collect is listed

13:11:57 23   as a synonym for aggregate.  What am I supposed to do with

13:12:01 24   that?

13:12:02 25          MR. SCHARFF:  That may be, but their own

13:12:03 1   definition specifically says that aggregate is doing more

13:12:07 2   than collecting, it's collecting and gathering into a mass

13:12:09 3   or hole and it's that part of it that the word "collect" is

13:12:13 4   missing.  It's this concept of it's holding, it's collecting

13:12:17 5   and holding urine.

13:12:20 6           THE COURT:  Show me.

13:12:29 7           MR. SCHARFF:  And, Your Honor, also just to back

13:12:31 8   up a bit on the space versus place issue, I wanted to

13:12:34 9   clarify, space alone isn't enough, it has to be a space

13:12:37 10   bounded by something, a structure.

13:13:00 11           THE COURT:  Okay.  In the specification it says

13:13:01 12   reservoir 110 can be any suitable shape and/or size capable

13:13:06 13   of collecting fluid transported through the permeable

13:13:10 14   support.  So where does that say collecting and holding

13:13:14 15   because you are saying they are defining it as collecting

13:13:18 16   and holding.

13:13:19 17           MR. SCHARFF:  No, Your Honor, to be clear, when

13:13:20 18   I was referring to collecting and holding, I was saying that

13:13:24 19   -- so the specification refers to multiple properties of a

13:13:26 20   reservoir.  One of the properties of the reservoir is that

13:13:29 21   it collects, another property is that it holds.  Our

13:13:33 22   construction reads on all of those properties, PureWick's

13:13:35 23   construction only reads on one of them.  So --

13:13:37 24           THE COURT:  How can you hold it if you're not

13:13:39 25   collecting it?

13:13:41  1          MR. SCHARFF:  So collecting is just drawing

13:13:43  2   something in.  And you can collect fluid that just

13:13:45  3   immediately passes through the device, it's never actually

13:13:49  4   held or stored.

13:13:52  5          So then can we go to slide 8.  Now, this is the

13:14:00  6   second dispute that we have is probably a bigger dispute and

13:14:03  7   this is the difference -- a difference that PureWick did not

13:14:06  8   concede and that's the difference between a structure that

13:14:09  9   actually aggregates urine versus just a place that

13:14:12 10   theoretically can do so.  Now, again, the claims require a

13:14:16 11   reservoir, not just a structure that's hypothetically

13:14:19 12   capable of having one property of a reservoir.  Otherwise

13:14:23 13   under their construction, again, a place where urine can

13:14:26 14   collect, that could read on literally anyplace in any of

13:14:29 15   these devices.  Between the fibers.  The space around the

13:14:33 16   tube.

13:14:33 17          Now, the case law that we had cited holds that

13:14:36 18   if a claim recites a specific structure, then to infringe,

13:14:41 19   the accused product must have that actual structure, not

13:14:44 20   just a structure that's capable of being that structure.

13:14:47 21          I'll note that for the *Acco Brands* case in

13:14:52 22   particular, PureWick's only argument to distinguish that is

13:14:55 23   they said well *Acco* involved method claims, so that's

13:14:58 24   inexplicable and that's actually incorrect.  It involved an

13:15:01 25   apparatus claim.  It was an apparatus claim that had a

13:15:05  1    specific pin structure but that pin structure didn't

13:15:08  2    actually lock, so it wasn't a locking pin even though it

13:15:11  3    could, it was theoretically capable of it, it just wasn't

13:15:16  4    configured to do that, and so as a result there is no

13:15:19  5    infringement.

13:15:20  6         As a result there is the *VDO* case, a District of

13:15:23  7    Delaware case that construed the similar term fuel reservoir

13:15:27  8    --

13:15:27  9         THE COURT:  What do we do about your expert's

13:15:29 10    definition when reading his deposition from the prior case,

13:15:35 11    and he says "a casing having a fluid reservoir at the first

13:15:42 12    end and a fluid outlet at the second end, so I used fluid

13:15:46 13    reservoir to mean the same thing that anyone, any ordinary

13:15:49 14    person skilled in the art would understand, it's an area

13:15:52 15    where fluid can collect."

13:15:55 16         MR. SCHARFF:  Yes.  So you have the transcript

13:15:57 17    in front of you, PureWick had not cited the statements

13:16:01 18    before and after that.  And on page 76 --

13:16:04 19         THE COURT:  I read the ones before where they're

13:16:08 20    just saying what is fluid reservoir and he says I used what

13:16:11 21    the court said and they said well, we didn't -- the court

13:16:12 22    didn't construe it, so what's after?

13:16:18 23         MR. SCHARFF:  Before he's saying it's a fluid

13:16:20 24    reservoir on the first end, he's talking about the first end

13:16:22 25    of the casing, so he is talking about it being defined by

13:16:26 1    some boundary support, and then after --

13:16:29 2          THE COURT:  He says, "I used fluid reservoir to

13:16:32 3    mean the same thing that anyone, any person, any ordinary

13:16:38 4    person skilled in the art would understand.  It's an area

13:16:40 5    where fluid can collect."

13:16:41 6          I mean, that's not terribly ambiguous.

13:16:45 7          MR. SCHARFF:  And then the --

13:16:47 8          THE COURT:  And he didn't say it's all

13:16:49 9    structure, whatever.

13:16:50 10         MR. SCHARFF:  Then the sentence after that, he

13:16:52 11   also said it can collect temporarily or collect permanently,

13:16:56 12   it shows he's referring to collect in his reference as

13:16:59 13   storing.  Regardless, so what he said it can't mean

13:17:05 14   PureWick's definition because that would be inconsistent

13:17:07 15   with the spec, it would be inconsistent with the prosecution

13:17:11 16   --

13:17:11 17         THE COURT:  Where did he say that?

13:17:12 18         MR. SCHARFF:  I'm sorry?

13:17:13 19         THE COURT:  You said that he said that it would

13:17:15 20   be inconsistent.

13:17:17 21         MR. SCHARFF:  No, I'm sorry, Your Honor, I am

13:17:19 22   saying that -- I am saying that their characterization of

13:17:22 23   what Mr. Sheldon had said can't mean that he is agreeing

13:17:24 24   with their definition because their definition simply does

13:17:27 25   not work with the intrinsic evidence.  The intrinsic

13:17:32  1    evidence is the most important followed by testimony of

13:17:35  2    experts which would be extrinsic evidence.

13:17:38  3            THE COURT:   Okay.   And since I read from the

13:17:41  4    specification where it said the reservoir 110 can be

13:17:47  5    anyplace where urine collects, any suitable shape or size

13:17:52  6    capable of collecting fluid.

13:17:56  7            MR. SCHARFF:   Uh-huh.   So that's a description

13:17:59  8    of one property.   For example, a car can transport people

13:18:01  9    from point A to point B.   That's not a definition of a car.

13:18:05 10            THE COURT:   Yes.   But that is a reservoir that

13:18:07 11    is covered in the claims of the patent.

13:18:11 12            MR. SCHARFF:   Absolutely.

13:18:12 13            THE COURT:   Reservoir 110.

13:18:14 14            MR. SCHARFF:   Yep.

13:18:14 15            THE COURT:   So they are defining reservoir 110

13:18:17 16    as being something that can collect fluids.   I'm not

13:18:20 17    understanding why you're saying oh, but they're very clear

13:18:23 18    that it must do more.

13:18:25 19            MR. SCHARFF:   Because that statement is not a

13:18:27 20    definition.

13:18:28 21            THE COURT:   I know it's not a definition, but

13:18:29 22    it's consistent with the plain and ordinary meaning

13:18:32 23    according to your expert and you're saying wait, no, they

13:18:35 24    are saying more in the specification.   Tell me what it is

13:18:35 25    that I am supposed to say oh, they're using it in connection

13:18:43 1   with the plain and ordinary meaning as Defendant's expert

13:18:47 2   recognized, but it's not enough.

13:18:48 3        MR. SCHARFF:  Yeah, can we go to slide 12,

13:18:51 4   please.  So these are instances in which the specification

13:18:57 5   refers to collecting and holding --

13:18:59 6        THE COURT:  Okay.  Hold on.  Let me make sure we

13:19:01 7   read those in context.  Let me pull that up.  Exhibit 3 to

13:19:19 8   what?

13:19:20 9        MR. SCHARFF:  Column 7, Exhibit 3 to our brief,

13:19:23 10   so that's the --

13:19:24 11        THE COURT:  Exhibit 3.

13:19:26 12        MR. SCHARFF:  I'm sorry, this should be

13:19:28 13   Exhibit 1.  That should be Exhibit 1, the '376 Patent.

13:19:42 14        THE COURT:  So I guess what I need to understand

13:20:39 15   is as I read from column 7, lines 38 through 52, why is it

13:20:47 16   not that we're starting off with something broad saying the

13:20:51 17   reservoir can be anything, any shape, size, that's capable

13:20:55 18   of collecting fluid, and then they narrow it, some

13:21:00 19   implementations say they can temporarily hold it, in others

13:21:02 20   they can hold large amounts, in some implementations it can

13:21:11 21   collect it and hold it.  You want me to say it must collect

13:21:14 22   and hold, and what I am not understanding is why when you

13:21:18 23   start with something broad and then you say some it does

13:21:21 24   this, some in addition it does this, some in addition it

13:21:24 25   does this, why am I supposed to take the last of those

13:21:29 1    things and ignore what started it?

13:21:31 2              MR. SCHARFF:  So I don't think that what we're

13:21:34 3    saying is that these are alternative embodiments.  It's

13:21:39 4    describing that the reservoir can either temporarily hold it

13:21:44 5    or it can hold it for a long time.  It can hold a large

13:21:47 6    amount.  It can hold a small amount.  But I don't think that

13:21:50 7    there is -- that it's describing that it is enough to be a

13:21:54 8    reservoir to just collect, period, and never --

13:21:58 9              THE COURT:  Isn't that what it says in the first

13:22:00 10   -- I mean, it says in the first -- first it says can be any

13:22:05 11   suitable size or shape capable of collecting fluid.

13:22:09 12             MR. SCHARFF:  Uh-huh.

13:22:10 13             THE COURT:  Any old shape that is capable of

13:22:13 14   collecting.  In some implementations, it can be this, for

13:22:16 15   example, this, for example, it can be sized to collect a

13:22:22 16   little bit of urine, then we have in some implementations it

13:22:27 17   can be sized that it holds a lot of urine.  In some

13:22:32 18   implementations it can be sized so that it can hold a small

13:22:36 19   or a large amount of urine.  In some implementations it's

13:22:42 20   configured to hold -- I mean --

13:22:47 21             MR. SCHARFF:  I think one thing that might help

13:22:50 22   is if we turn to slide 16.  So all of these are just

13:22:53 23   describing properties of a reservoir.  Saying the reservoir

13:22:56 24   just has to be big enough to collect urine, that does not

13:23:00 25   mean that that is the only property required of a reservoir.

13:23:03  1    If you look at the ordinary meaning of the term reservoir in

13:23:06  2    the dictionary definitions, they consistently reflect that

13:23:10  3    it is not enough to just collect liquid, it's collect and

13:23:14  4    store.  For example, collect it and kept in quantity.  So

13:23:21  5    let's go back to slide 12, unless Your Honor would like to

13:23:25  6    look at this more.

13:23:27  7            Actually let's go back to slide 9, please.  So

13:23:37  8    then coming back to this capability versus actuality issue,

13:23:43  9    so again, one of the big things that we're fighting over is

13:23:47 10    whether or not it's enough to just be capable of collecting,

13:23:53 11    aggregating urine or whether it has to actually do so, be

13:23:57 12    configured to do so.  One of the things that's telling here

13:24:00 13    is PureWick several times in its brief said that -- pointed

13:24:03 14    to the claims saying that the apparatus is configured to

13:24:06 15    receive urine.  And the Federal Circuit has several times

13:24:11 16    said if you use that language configured to, configured to

13:24:17 17    does not mean simply capable of, that it has to be actually

13:24:21 18    designed or constructed to be used that way.

13:24:24 19            THE COURT:  No, I get that.  But you're citing a

13:24:29 20    brief and then construing the words they used in the brief.

13:24:33 21    I'm looking at the specification and the specification

13:24:35 22    doesn't say configured to, it says capable of.

13:24:38 23            MR. SCHARFF:  The claim actually does, Your

13:24:40 24    Honor, at the end of claim 1, for example, it says

13:24:42 25    configured to, claim 1 of the '376 Patent.  It is the --

13:24:56 1    that last paragraph or limitation, the apparatus configured

13:25:01 2    to be.

13:25:10 3            THE COURT:  We're talking about the reservoir,

13:25:12 4    not the apparatus that has all these other things.  Your

13:25:16 5    configured to seems awfully distinct from the word

13:25:22 6    reservoir, and in fact in the patent specification when it

13:25:25 7    talks about the reservoir, it says capable of.

13:25:27 8            MR. SCHARFF:  Yeah, but the rest of that

13:25:28 9    limitation says --

13:25:29 10           THE COURT:  Tell me what the -- in *ParkerVision*

13:25:33 11   *v. Qualcomm*, where was the configured to language and what

13:25:38 12   was the -- give me the specifics of that?

13:25:42 13           MR. SCHARFF:  I apologize, I don't have that.

13:25:44 14           THE COURT:  How about *In re Giannelli*?

13:25:47 15           MR. SCHARFF:  I'm sorry, I don't have the

13:25:49 16   specifics of what those claim limitations were.  We're just

13:25:51 17   citing those for that general proposition that configured is

13:25:55 18   not the same as capable of the last limitation in the '376

13:26:00 19   Patent.  Yes, it's saying the apparatus is configured to,

13:26:04 20   but that apparatus has to be configured to have a reservoir

13:26:07 21   that receives urine.  So PureWick is trying to make it sound

13:26:11 22   like we're trying to turn the apparatus claim into a method

13:26:17 23   claim and we're not.  We're saying when you recite an

13:26:21 24   apparatus claim that requires a reservoir, it has to

13:26:24 25   actually be configured as a reservoir, not some structure

13:26:27 1    that hypothetically could act as a reservoir if you change

13:26:32 2    the conditions or configurations or something.

13:26:34 3            THE COURT:  Can I ask you a question, then?

13:26:37 4    Back to column 7, it says the reservoir can function as a

13:26:49 5    sump.  The reservoir can form a portion of a passageway for

13:26:54 6    urine from the permeable membrane.  Isn't that just talking

13:26:57 7    about it as a passageway, not as a place where it holds it?

13:27:02 8            MR. SCHARFF:  No, Your Honor, that reference to

13:27:03 9    the sump, that's what it's referring to, a sump is a holding

13:27:07 10   and storage place for urine.  Like a sump pump in your

13:27:16 11   basement, it's for pumping out the sump, that collection,

13:27:22 12   the aggregation area.

13:27:27 13           Turn to slide 10.

13:27:36 14           And then the third area in which we disagree is,

13:27:40 15   and we had touched on it a little bit already, this

13:27:45 16   distinction between a place versus a structure.  PureWick

13:27:48 17   claims that they don't think that there is any distinction,

13:27:51 18   but there is, it has to do with the fact that a place is

13:27:54 19   just arbitrary, unbounded.  And here the patent

13:27:57 20   specification claims are very clear.  The specification

13:28:00 21   repeatedly refers to the reservoir as a tangible structure,

13:28:04 22   not just an arbitrary place inside the device with no

13:28:08 23   defined boundaries.  And we referenced some figures, but

13:28:12 24   then again, we reference, for example, dependent claim 3

13:28:16 25   wherein the reservoir is formed of polymer.  And so again,

13:28:22  1    just pointing to some arbitrary place inside a device,

13:28:26  2    that's not something that can be formed of polymer.  And the

13:28:30  3    independent claim 1 has to be read consistently with that

13:28:34  4    dependent claim 3.

13:28:36  5               Next slide, please.  Actually let's go to slide

13:28:40  6    13, please.

13:28:44  7               Our construction also is consistent with the

13:28:48  8    prosecution history.  The Patent Office had originally

13:28:52  9    rejected the claims in view of this Kuntz reference.  In

13:28:57 10    particular the Patent Office argued yeah, it has a reservoir

13:29:00 11    because you could just call an arbitrary end of that device

13:29:03 12    a reservoir because it would hold fluid at the end.

13:29:09 13               Now, next slide.

13:29:10 14               PureWick, however, argued that Kuntz did not

13:29:13 15    have a reservoir.  PureWick specifically told the Examiner

13:29:16 16    and the public that the definition of a reservoir is a

13:29:19 17    specific cavity or part that holds some fluid or secretion,

13:29:23 18    and they repeatedly referred to it as something bound by

13:29:26 19    structures, bound by the casing or the end cap, and yes, it

13:29:31 20    includes that spacing inside of it --

13:29:35 21               THE COURT:  What about the -- wasn't there some

13:29:39 22    place that PureWick cited where they said something a little

13:29:42 23    bit broader than that?

13:29:42 24               MR. SCHARFF:  Yeah, so PureWick --

13:29:42 25               THE COURT:  If you're pointing me to the

13:29:49  1    prosecution history, you might as well tell me why I'm

13:29:52  2    supposed to look at that and say oh, they clearly limited it

13:29:56  3    when they also said stuff that's broader.

13:29:59  4           MR. SCHARFF:  Sure.  That's not a problem.  If

13:30:01  5    you have Exhibit 3 in front of you, and if you go to, for

13:30:07  6    example, the page that ends in PureWick 481.  So we had

13:30:16  7    highlighted there where PureWick had cited to the Webster's

13:30:21  8    dictionary.  And then let me see if you go to the top of

13:30:39  9    page 482, the last sentence in that paragraph, PureWick is

13:30:45 10    relying on that sentence where it says, "Accordingly when

13:30:48 11    read in light of the specification, Applicant's term

13:30:51 12    'reservoir' should be read as a cavity or void space."

13:30:54 13           They say okay, that means the same thing as

13:30:56 14    place.  It doesn't because if you look, for example, on

13:31:00 15    page 481, they're talking about it as a cavity or void space

13:31:03 16    defined by some structure.  They're pointing to structures

13:31:08 17    in their figures.  And they're describing that -- so a

13:31:14 18    cavity by definition has to be defined by some structure,

13:31:17 19    you can't just have a cavity in some arbitrary thin air.

13:31:22 20    And so that is consistent with our construction, not

13:31:25 21    consistent with the reservoir just being a place.

13:31:26 22           And then if you can turn to slide 15, please.

13:31:33 23           THE COURT:  So if I were to say a reservoir is a

13:31:38 24    cavity, or a space, you would be fine with that?

13:31:41 25           MR. SCHARFF:  Well, for example --

13:31:44 1       THE COURT:  They say Applicant's term reservoir

13:31:46 2   should be read as a cavity or void space.

13:31:49 3       MR. SCHARFF:  I think the rest of the context of

13:31:51 4   what they had said here, that Webster's dictionary

13:31:55 5   definition that they gave --

13:31:56 6       THE COURT:  You're not okay with where they say

13:31:59 7   that, you want me to go back to a different place where they

13:32:01 8   say it and say it's clear they meant the one and not the

13:32:04 9   other?

13:32:05 10      MR. SCHARFF:  No, no, I'm saying they were

13:32:07 11  saying both things at the same time.  They were saying that

13:32:09 12  -- so in order to overcome Kuntz, they were saying it

13:32:12 13  doesn't have any cavity or void space, but they're also

13:32:16 14  saying for it to be a reservoir, it has to be a cavity or

13:32:19 15  part that holds some fluid or secretion.

13:32:23 16      THE COURT:  Where is the hold?  Where is the

13:32:27 17  hold?

13:32:28 18      MR. SCHARFF:  The top of page 481, where they

13:32:31 19  say --

13:32:31 20      THE COURT:  Hold on.  Webster's dictionary says

13:32:34 21  the cavity or part that holds some fluid or secretion.  I

13:32:39 22  get it, that's Webster's dictionary.  Then when they say

13:32:42 23  what they want it to mean, they say it should be read as a

13:32:42 24  cavity or void space.

13:32:50 25      MR. SCHARFF:  I think those two are read

13:32:51 1    together.  As I said, we would be fine with the Webster's

13:32:56 2    dictionary, when they were talking about the cavity or void

13:32:59 3    space, they were talking about one problem that the Kuntz

13:33:02 4    reference had, they weren't defining it there.  They were

13:33:04 5    defining it when they said the definition of reservoir under

13:33:08 6    Webster's is X.

13:33:11 7              THE COURT:  I mean, so they say consistent with

13:33:16 8    the dictionary meaning, the drawings of applicant's

13:33:19 9    application repeatedly demonstrate that the reservoir

13:33:22 10   disclosed therein is a cavity or void space within the

13:33:25 11   casing.  For example, Figure 32 provides a cross-sectional

13:33:30 12   view of an assembly wherein the reservoir is clearly a void

13:33:35 13   space between the fluid impermeable casing, the fluid

13:33:38 14   permeable support, and the fluid permeable membrane.  Again,

13:33:42 15   not hearing any words about holding.

13:33:44 16             Similarly, figures 1 and 2 show the reservoir

13:33:46 17   does not contain the permeable support or permeable

13:33:50 18   membrane.  The specification states the membrane can be

13:33:54 19   arranged so that the fluid can flow through the permeable

13:33:55 20   membrane, through the permeable support into the reservoir

13:33:57 21   and out of the outlet.  Again, nothing about holding in all

13:34:02 22   of that.

13:34:02 23             MR. SCHARFF:  That's because --

13:34:07 24             THE COURT:  I'm missing where it's like holding,

13:34:09 25   holding, holding, holding, you got to read holding in there,

13:34:13 1    but that's where I'm having a problem.

13:34:15 2              MR. SCHARFF:  Yeah, because the issue with Kuntz

13:34:17 3    is there was no dispute that it held urine, the fight was

13:34:21 4    over whether or not it had a cavity or void space.  They

13:34:24 5    were saying Kuntz could not be a reservoir because there is

13:34:29 6    no -- there is nothing in there that you can characterize as

13:34:32 7    a reservoir, there is no cavity or void space, the stuffing

13:34:37 8    goes all the way to the end.  That's why they were focusing

13:34:40 9    on the cavity or void space, but they made clear when they

13:34:44 10   were referring to the figures, when they were referring to

13:34:45 11   the Webster's dictionary that they were talking about it in

13:34:48 12   the context of a structure and they were talking about it in

13:34:52 13   the context of holding urine.

13:34:54 14             THE COURT:  Are you saying this with respect to

13:34:55 15   the prosecution, are you saying this is a disclaimer or al

13:35:00 16   la *Phillips*?

13:35:01 17             MR. SCHARFF:  No, Your Honor, what we're saying

13:35:03 18   is the prosecution history, the intrinsic evidence informs

13:35:06 19   the claim construction.  The *Vitronics* case that the -- the

13:35:10 20   single best reference for determining the meaning of the

13:35:12 21   claims is the intrinsic evidence which is the patent itself

13:35:12 22   and the prosecution history.  We're not saying that this is

13:35:15 23   a disclaimer, this is just informative of the construction.

13:35:24 24             Can you turn to -- sorry, we have slide 15,

13:35:28 25   then.

So if you also look at what PureWick's expert said in PureWick I, PureWick's expert also testified consistent with our construction.  We had talked before about what our expert had said, so it's also relevant to look at what their expert said.  Mr. Jezzi specifically said a reservoir is something that functions as a sump, is sized to contain a volume of liquid, and so it's not just an arbitrary place.  But again, he plead it had to have this concept of holding liquid and it wasn't just an arbitrary place.

Next slide, please.

We already talked about the dictionary definition.  So the next slide.  So then we already touched a bit on what PureWick then said to overcome the Van Den Heuvel reference.  Now, PureWick in the *PureWick* I case specifically said that you can see there is an orange traced structure in Van Den Heuvel.  And it said that is not a reservoir because that doesn't aggregate urine.  There was no dispute again that urine does channel into that space, so the argument that they made to get over it is urine doesn't aggregate there.

PureWick had pointed to some other instances in this trial where it said here in these other spots we did say things consistent with our construction.  PureWick has never been able to explain or reconcile what it said about

13:37:01 1    Van Den Heuvel and all of those other instances were in

13:37:03 2    connection with their infringement allegations, it just

13:37:06 3    shows that PureWick has consistently tried to take

13:37:10 4    inconsistent positions with respect to invalidity and

13:37:13 5    infringement.

13:37:14 6              THE COURT:  What was the evidence?  You keep

13:37:18 7    giving me -- you keep giving me references to closing

13:37:22 8    argument, which the jury was instructed is not evidence.  So

13:37:27 9    what was the evidence that was put on about Van Den Heuvel?

13:37:33 10             MR. SCHARFF:  So that is actually one of the

13:37:34 11   issues in our post-trial motions.  So our expert on the

13:37:38 12   stand testified that Van Den Heuvel, that area highlighted

13:37:43 13   in orange is a reservoir.  And then PureWick's expert didn't

13:37:47 14   say anything about Van Den Heuvel.  It wasn't until

13:37:51 15   PureWick's counsel got up at closing and that's what he said

13:37:55 16   in closing argument, even though their expert had not

13:37:58 17   touched that.

13:37:59 18             THE COURT:  They also cross-examined your expert

13:38:01 19   and it wasn't just the reservoir that was contested, right?

13:38:02 20             MR. SCHARFF:  Yes.  But this was again what they

13:38:08 21   said is required to be a reservoir in terms of Van Den

13:38:12 22   Heuvel.

13:38:12 23             Next slide, please.

13:38:12 24             And then if you also look at what PureWick has

13:38:12 25   said for purposes of infringement, they had repeatedly

13:38:23 1    argued that the reservoir was a structure, not just a place.

13:38:27 2    They pointed to the flexible cap, for example, they pointed

13:38:31 3    to the flexible cap in figures of the patent, they pointed

13:38:34 4    to a cap in our product, and they said that's the reservoir,

13:38:38 5    not some arbitrary place inside of it.

13:38:42 6            Next slide.

13:38:43 7            In the present lawsuit, however, PureWick has

13:38:48 8    switched positions because our new device doesn't have a cap

13:38:51 9    like that.  There is no tangible structure that they can

13:38:53 10   point to and say that's the reservoir, so instead they say

13:38:57 11   the reservoir is some vague undetermined space that

13:39:00 12   apparently also includes part of the stuffing.

13:39:03 13           Next slide, please.

13:39:04 14           Under the law, however, we had cited the law

13:39:07 15   that PureWick can't take such shifting positions.  This is a

13:39:12 16   classic case of judicial estoppel, a party can't prevail in

13:39:18 17   one case by taking a position in one proceeding and taking a

13:39:21 18   contrary position in the later proceeding to the prejudice

13:39:24 19   of their point.  We have also said collateral estoppel

13:39:28 20   applies.  This issue was decided.  There was a final

13:39:31 21   judgment.  They had an opportunity to be heard and

13:39:33 22   PureWick's only real comeback to this argument is they said

13:39:37 23   we didn't take inconsistent positions.  But again, other

13:39:40 24   than them saying it they never explained how their position

13:39:42 25   on Van Den Heuvel is at all consistent with their current

13:39:47 1    construction.

13:39:47 2                    And that's all I have, Your Honor.

13:39:57 3                    THE COURT:  Thank you.  Just give me a second.

13:40:35 4    Okay.  You also agree that the term reservoir, fluid

13:40:43 5    reservoir should have their plain and ordinary meaning to a

13:40:45 6    POSA?

13:40:46 7                    MR. BIDDINGER:  Yes, Your Honor.

13:40:47 8                    THE COURT:  You also agree that the experts who

13:40:50 9    testified at the first trial were POSAs?

13:40:52 10                   MR. BIDDINGER:  Yes, Your Honor.

13:40:53 11                   THE COURT:  Tell me about the space versus place

13:40:55 12   versus structure.

13:40:56 13                   MR. BIDDINGER:  So I don't think we perceive a

13:41:02 14   difference between space or place, Your Honor.  We didn't

13:41:06 15   intend any difference when we said place.

13:41:09 16                   THE COURT:  How about structure?

13:41:10 17                   MR. BIDDINGER:  As we said in our brief, and I

13:41:13 18   think Your Honor noted, from our perspective, this space or

13:41:18 19   place is defined by a structure.  There is no doubt about

13:41:23 20   that.

13:41:24 21                   THE COURT:  You're saying the reservoir doesn't

13:41:26 22   have to be its own structure, it can be incorporated into

13:41:30 23   some other structure?

13:41:31 24                   MR. BIDDINGER:  Absolutely, Your Honor.  I don't

13:41:35 25   think there should be any dispute about that.  The

13:41:34 1    specification is clear as examples in the claims show that.

13:41:38 2    So our point would simply be that consistent with the way

13:41:43 3    the parties treated the term in the last case, the way the

13:41:47 4    experts treated the term and the way that the reservoir is

13:41:50 5    designed to function, it's the space that matters.  It's

13:41:53 6    provided by a structure, but it's -- you know, so that's why

13:41:58 7    we proposed in our footnote that if you used structure, it

13:42:03 8    should be a structure or part of a structure that provides a

13:42:06 9    place where urine can collect.

13:42:09 10           THE COURT:  Okay.  Now, what do you say about

13:42:12 11   this argument that, you know, you all are changing your

13:42:15 12   position.  This is essentially the prior art and you want

13:42:19 13   collateral estoppel so you can just be free to argue

13:42:24 14   willy-nilly on infringement without having to worry about

13:42:27 15   getting into the prior art?

13:42:29 16           MR. BIDDINGER:  I would first say I don't see

13:42:32 17   any difference in the position we're taking now versus the

13:42:35 18   position we took in the last case.

13:42:37 19           THE COURT:  I understand that.  But he had that

13:42:39 20   slide up there that showed the picture of their device, and

13:42:42 21   he says you've never explained how you're taking a different

13:42:46 22   -- how you're not taking a different position, how what

13:42:49 23   you're saying is consistent with what you said before, so

13:42:52 24   let's hear about it.

13:42:55 25           MR. BIDDINGER:  Sure.  So we've always proceeded

13:42:58 1    under the view that the fluid reservoir is the place where

13:43:03 2    fluid can collect.  We identified the place --

13:43:05 3           THE COURT:  You think aggregate and collect mean

13:43:09 4    the same thing?

13:43:10 5           MR. BIDDINGER:  We do think they mean the same

13:43:12 6    thing.  We cited definitions, Your Honor pointed out their

13:43:16 7    synonyms.  I think our preference would have been to agree

13:43:19 8    to aggregate and to cut through all this.  It seems to us

13:43:22 9    that they are implying something with the term aggregate

13:43:25 10    that goes above and beyond what I think it means and what

13:43:29 11    it's synonymous with in terms of collect and accumulate.

13:43:33 12    And that goes to Your Honor's points about hold.

13:43:36 13          And as a brief aside, I want to explain this and

13:43:39 14    answer Your Honor's question.  But these devices are

13:43:42 15    designed and we can look at the specification.  Your Honor

13:43:45 16    pointed right to where in the specification it talks about

13:43:47 17    it, for urine to be drawn in and go out, they're not

13:43:52 18    supposed to be filled up with a tube with urine, the

13:43:56 19    specification teaches how simultaneous the urine can come

13:44:00 20    into the reservoir and be drawn away from it.  The only

13:44:02 21    concern we had about aggregate is they seem to be suggesting

13:44:02 22    that urine has to fill up in the device and be held there in

13:44:11 23    order to infringe.  And all we're saying --

13:44:14 24           THE COURT:  Show me how your position now is

13:44:17 25    consistent with what the position was on Van Den Heuvel.

13:44:20 1          MR. BIDDINGER:  Sure.  Our position now on their

13:44:22 2   device --

13:44:23 3          THE COURT:  By the way, I recognize this isn't

13:44:25 4   actually relevant to claim construction, but given that I'm

13:44:28 5   trying to figure this all out, I'll ask you to help me out.

13:44:32 6          MR. BIDDINGER:  Understood, Your Honor.

13:44:33 7          Counsel said that, you know, it can be anyplace,

13:44:38 8   it's an arbitrary place, anyplace --

13:44:41 9          THE COURT:  Under PureWick's construction,

13:44:43 10   everything related to urine collection can collect urine.

13:44:47 11   Everything relating to a urine collection device can collect

13:44:50 12   urine including the space between fabric fibers, stuffing of

13:44:54 13   the device, inside the vacuum tube or even inside the

13:44:59 14   surface of the device.  Aren't those all reservoirs?

13:45:03 15          MR. BIDDINGER:  Because the claim doesn't

13:45:04 16   specifically say a fluid reservoir, it says a fluid

13:45:08 17   reservoir is at the first end of the device, it has got to

13:45:10 18   be located in a specific place.  It says that the fluid

13:45:13 19   permeable support is distinct from and proximate from the

13:45:15 20   fluid reservoir so it's --

13:45:16 21          THE COURT:  Those things might be fluid

13:45:19 22   reservoirs, but they are not the fluid reservoir of the

13:45:21 23   claim.

13:45:22 24          MR. BIDDINGER:  Fair enough.  We never said they

13:45:24 25   were fluid reservoirs, but they can't be the fluid

13:45:26  1    reservoirs of the claim.  And it also, by the way, urine, it

13:45:30  2    has to be configured, the apparatus for urine, to go through

13:45:33  3    the opening in the impermeable layer, through the membrane,

13:45:37  4    through the support and into the reservoir, again, tells you

13:45:40  5    where it is, versus these other components, it can't just be

13:45:44  6    anywhere in the device.

13:45:45  7            THE COURT:  All right.  So I interrupted you.

13:45:47  8            MR. BIDDINGER:  Our contention, there is a space

13:45:49  9    at the end, at the first end of their device where urine can

13:45:54 10    collect and where urine comes in through the fabric through

13:45:58 11    the support and into this space and then is drawn out of

13:46:01 12    that space through the tube that extends into it.  And

13:46:06 13    that's our position, that's the exact same position that we

13:46:09 14    took about --

13:46:10 15            THE COURT:  Why are you saying that's not

13:46:12 16    consistent with the position taken on Van Den Heuvel?

13:46:15 17            MR. BIDDINGER:  All that we said about Van Den

13:46:18 18    Heuvel at the last trial, Your Honor pointed out, we did not

13:46:21 19    put an expert on it.  They put an expert on it.  If you look

13:46:24 20    at what their expert said about it, he said almost nothing.

13:46:27 21    He said there is a reservoir on this next element.  And the

13:46:30 22    argument was, it's a failure of proof, number one, first and

13:46:33 23    foremost, that's what it was.  But we didn't also say, I

13:46:37 24    think counsel said --

13:46:39 25            THE COURT:  Nobody said it doesn't hold it in

13:46:42  1    there.

13:46:42  2                MR. BIDDINGER:  Exactly, Your Honor.  Counsel

13:46:44  3    suggested that we had said that -- I just want to get it

13:46:49  4    right, that we had argued that Van Den Heuvel didn't

13:46:53  5    actually aggregate urine.  We didn't say that in closing

13:46:56  6    argument, we said that there is no reservoir where it could

13:47:01  7    aggregate.  It's totally consistent with our construction

13:47:04  8    here.  It has to have a place -- we can't say that no one

13:47:08  9    had proven that there was urine in this space in Van Den

13:47:11 10    Heuvel, it's a device, so the argument was in closing, it

13:47:15 11    was there is no place for fluid to aggregate, and --

13:47:22 12                THE COURT:  Or accumulate in that space.

13:47:25 13                MR. BIDDINGER:  And could accumulate in that

13:47:27 14    space.  He did not testify that urine could accumulate in

13:47:30 15    that space.

13:47:30 16                THE COURT:  Is accumulate the same as collect?

13:47:33 17                MR. BIDDINGER:  Yes, we definitely think so,

13:47:36 18    Your Honor.  And then Your Honor also noted -- the other

13:47:49 19    point and Your Honor already noted this on Van Den Heuvel is

13:47:52 20    there were other grounds for the jury to find, we can't say

13:47:56 21    that Mr. Cherny's closing argument, as stirring as it was,

13:48:01 22    proved anything --

13:48:02 23                THE COURT:  I recognize that with respect to the

13:48:04 24    JMOL motion, but where this issue got my attention was what

13:48:08 25    do I do with respect to collateral estoppel if it's possible

that we're arguing something different, so I wanted to

understand what the plain and ordinary meaning is.

MR. BIDDINGER:  Understood, Your Honor.  I don't

have -- I think Your Honor picked up on a lot of things in

your questions.  Just maybe a couple of points.  This is

what you were looking at before, Your Honor recognized that

it starts out by saying the reservoir --

THE COURT:  What do you say about the argument

that everything that comes after that is talking about

holding it, holding a lot, holding a little, holding it

temporarily, holding it for a long time, it's a sump, it's a

passage, it's whatever.

MR. BIDDINGER:  I think it again goes to how

these devices are used.  And to me the latter half of that

same paragraph in the specification talks about how the

urine is simultaneously removed, so it's configured to

collect and hold a small or large amount while it's

simultaneously removed, a temporary backup may occur.

THE COURT:  You don't necessarily want the urine

to pool in there, but you want to have a place to pool if it

needs to as it's being sucked out.

MR. BIDDINGER:  That's right, Your Honor.  It's

also where the tube extends to, there has to be this space

where the urine flows down through the device into that

space and sucked out with the tube from the end of that tube

13:49:45 1   where the urine comes down to, the spec talked about gravity

13:49:49 2   or all these devices is through a vacuum, the urine flows

13:49:54 3   down the device in the bottom and is drawn out through the

13:49:57 4   tube.  You're right, it may temporarily -- it depends on the

13:50:00 5   flow rate of the urine into the device, but it never

13:50:04 6   accumulate, it may go right through and be drawn out which I

13:50:08 7   think is the more ideal situation because you don't want it

13:50:12 8   to leak out.

13:50:16 9        I think the prosecution history got enough play.

13:50:29 10  But, you know, the point of the prosecution history and the

13:50:32 11  distinction that was made and what the applicants said was

13:50:36 12  that the reservoir has to be this space, there has to be

13:50:40 13  space.  And really what it led to was the addition of that

13:50:43 14  claim limitation that the permeable support is distinct from

13:50:48 15  and at least proximate to the fluid reservoir.  And that

13:50:52 16  came from this point of saying you can't have the permeable

13:50:56 17  support fill up the entire space in the device, which is

13:51:03 18  what the case was.

13:51:06 19        THE COURT:  How about prosecution history?

13:51:08 20        MR. BIDDINGER:  Yeah, that was the point I was

13:51:10 21  just talking about, Your Honor, was that the distinction

13:51:12 22  that was being drawn was there has to be this space, and

13:51:22 23  ultimately led to this limitation where that reservoir is

13:51:25 24  separate and distinct from the permeable support and that

13:51:28 25  was a distinction over Kuntz.  In Kuntz, the core material

13:51:32 1    filled up the entire space.  There was no space where a

13:51:36 2    reservoir could be.  And that's the only distinction that

13:51:39 3    was being made.  So it says, a cavity or void space within

13:51:39 4    the casing, Applicant's term "reservoir" should be read as a

13:51:39 5    cavity or void space.  The point was that there was empty

13:51:53 6    space.

13:51:53 7          THE COURT:  What about the definition that's

13:51:54 8    offered from Webster's and then we kind of keep going back

13:51:57 9    and saying so, oh, you're focusing on one part of that

13:52:02 10   because that was required, but the definition from Webster's

13:52:06 11   you gave included holding?

13:52:08 12         MR. BIDDINGER:  I think the definition was, if

13:52:10 13   you look at that entire context, was talking about the fact

13:52:13 14   that a reservoir is a cavity or void space.  That is the

13:52:17 15   distinction that they were drawing over Kuntz.  There was no

13:52:21 16   discussion anywhere in the prosecution history about holding

13:52:25 17   urine at all, it was all about Kuntz has filling in the

13:52:29 18   entire space within the device whereas in our embodiments

13:52:33 19   the reservoir is a void space, an empty space, it's distinct

13:52:33 20   from the permeable support.

13:52:51 21

13:52:51 22         THE COURT:  So remind me -- so I just want to

13:52:53 23   make sure I understand your position on structure.  Is that

13:53:02 24   what you're getting to now, structure?  You said something

13:53:02 25   like the space or the place or formed by a structure, but it

13:53:11 1   doesn't have -- so remind me again what you said so I can --

13:53:16 2           MR. BIDDINGER:  Yeah.  I think, Your Honor, the

13:53:17 3   point was the reservoir, the space or place provided that

13:53:23 4   the reservoir provides is what matters, the functionality of

13:53:27 5   the reservoir, that's where the urine can collect.  We are

13:53:34 6   not disputing that that is formed by a structure, it doesn't

13:53:38 7   just exist in space, and I don't think -- we never argued

13:53:41 8   that.  I don't know where that suggestion comes from.

13:53:43 9           So all I was saying is like in our footnote, if

13:53:47 10  there is a -- the Court wants to put structure into the

13:53:51 11  construction of this, we would say -- I think the footnote

13:53:53 12  says a structure or a part of a structure that provides a

13:53:57 13  place where urine can collect.  So the structure forms the

13:54:01 14  space or part of a structure because it doesn't have to be a

13:54:05 15  separate structure, we're all in agreement there, provides a

13:54:09 16  place where urine can collect.

13:54:14 17          THE COURT:  Okay.

13:54:24 18          MR. BIDDINGER:  The only other points that I

13:54:27 19  had, I don't know that it's worth belaboring them, but Sage

13:54:31 20  keeps making this argument that right in page 1 of their

13:54:35 21  brief that their construction, a structure that aggregates

13:54:39 22  urine is exactly how PureWick used the term in *PureWick* I to

13:54:44 23  avoid the prior art.  That's just not true.  We never said

13:54:47 24  structure.  And we never said that aggregates.  We said

13:54:50 25  there is no place for fluid to aggregate.  It's consistent

13:54:54 1   with our point that it doesn't have to be actually

13:54:56 2   aggregating to infringe.

13:54:58 3           And the same thing is true at the PTO, they said

13:55:01 4   that we told the PTO it has to be a structure that

13:55:05 5   aggregates urine.  Those terms weren't used in the

13:55:08 6   prosecution history.

13:55:08 7           And then on judicial estoppel, counsel suggested

13:55:13 8   that our only basis for saying there shouldn't be judicial

13:55:19 9   estoppel is our positions weren't consistent and we

13:55:23 10  disagree.  We don't believe we're being inconsistent at all

13:55:27 11  and Your Honor already touched on their expert saying the

13:55:30 12  exact same thing as us, they said the same thing, treated it

13:55:35 13  the same way in their invalidity contentions and in their

13:55:38 14  expert report.  And, you know, again, this is just a

13:55:41 15  collection of our quotes from the prior case where our

13:55:45 16  expert said it's the area, the volume where urine can

13:55:48 17  accumulate, that's for infringement purposes.  Empty space

13:55:53 18  where urine can accumulate, that was in the closing

13:55:56 19  statement, a place where urine could accumulate.

13:56:00 20          The other thing on judicial estoppel, we cited a

13:56:02 21  case which was in the Third Circuit indicating that for

13:56:02 22  there to even be judicial estoppel, the prior position has

13:56:13 23  to have been adopted by the court.  I think here it's

13:56:16 24  questionable whether you can even make that determination of

13:56:21 25  whether or not the jury adopted something that was said in

13:56:25 1    closing statement in reaching its decision on the verdict.

13:56:29 2    I think there is multiple grounds and in that situation,

13:56:33 3    judicial estoppel is not appropriate.

13:56:37 4              Unless Your Honor has questions, I think that's

13:56:41 5    all that I have.

13:56:42 6              THE COURT:  Okay.

13:56:51 7              MR. BIDDINGER:  Thank you, Your Honor.

13:56:53 8              MR. SCHARFF:  May I respond, Your Honor?

13:56:55 9              THE COURT:  You may.

13:56:57 10             MR. SCHARFF:  Thank you.

13:56:57 11             Can I have slide 24, please.

13:57:08 12             Now, Your Honor, I never heard Mr. Biddinger

13:57:14 13   explain if what is on the right is a reservoir, why isn't

13:57:19 14   what is on the left in Van Den Heuvel.  Now, he argued, you

13:57:24 15   know, that when they were saying that Van Den Heuvel doesn't

13:57:29 16   have a reservoir that that was -- that they were somehow

13:57:32 17   arguing a failure to prove.  No, they affirmatively said Van

13:57:37 18   Den Heuvel doesn't have a reservoir and they specifically

13:57:39 19   said because there is nothing about a reservoir where you

13:57:42 20   aggregate urine, they didn't say, you know, that it wasn't

13:57:42 21   because it couldn't aggregate or collect urine, there is

13:57:51 22   nothing about can in there, and they said that there was

13:57:51 23   nothing about a reservoir where you aggregate urine, they

13:58:00 24   were talking about a structure.

13:58:02 25             But again, at the end of the day, I have still

13:58:06 1    not heard any reason why that space on the left is not a

13:58:09 2    reservoir and that space on the right is.  And that is why

13:58:13 3    their claim construction position is just fundamentally

13:58:17 4    irreconcilable and why we have this issue over collateral

13:58:21 5    estoppel, because if they are allowed to argue infringement

13:58:25 6    for the PrimaFit 2.0, they are directly contradicting what

13:58:30 7    they said in the prior art.

13:58:31 8         For example, I heard him say these devices are

13:58:34 9    designed so that urine goes into the device and is pulled

13:58:37 10   immediately out and it doesn't need to actually store, so

13:58:41 11   why doesn't Van Den Heuvel do that?  And they never

13:58:44 12   explained.  Our expert did, our expert testified that Van

13:58:47 13   Den Heuvel does do that and there was no contrary evidence.

13:58:50 14        THE COURT:  Your expert's testimony I got to say

13:58:53 15   was less than compelling.  All he said was yeah, there is

13:58:57 16   gravity in urine pools.  It was pretty conclusory.

13:59:03 17        MR. SCHARFF:  Well, I mean he pointed to the Van

13:59:06 18   Den Heuvel reference says urine is channeled into that end,

13:59:09 19   so why doesn't that make that a reservoir, because that's

13:59:12 20   exactly what they're arguing for purposes of infringement in

13:59:14 21   this second case.

13:59:14 22        And if I can go to slide 15.  And actually go to

13:59:23 23   one slide before, please.  One more before.

13:59:24 24        And then they said Kuntz, you know, really what

13:59:32 25   got over Kuntz was Kuntz didn't have a cavity or void space.

13:59:36 1   In the '989 Patent prosecution, the Examiner specifically

13:59:39 2   said that that space 22a was, in fact, a cavity or void

13:59:44 3   space.

13:59:44 4            And turn to slide 15, please.  Mr. Jezzi,

13:59:49 5   however, says no, that's not a reservoir because it doesn't

13:59:55 6   allow free fluid to collect in there because it would get

14:00:00 7   absorbed into that material around it.  It's not enough to

14:00:03 8   be a reservoir to have a cavity or void space, it has to be

14:00:06 9   able to hold urine.

14:00:07 10           THE COURT:  The problem I have is you keep

14:00:09 11  telling me so he's saying.  I'm not seeing it in the words,

14:00:12 12  it's your interpretation of the words and that's where

14:00:15 13  you're losing me because it's just like oh, and so read

14:00:19 14  between the lines and this is what they're saying and I'm

14:00:22 15  not getting it.

14:00:23 16           MR. SCHARFF:  The third bullet point, Your

14:00:25 17  Honor, this is a quote from Mr. Jezzi's expert report,

14:00:29 18  paragraph 922, the Kuntz pad by nature of its design would

14:00:33 19  not allow free fluid to collect into the alleged space 22a,

14:00:39 20  it would be absorbed into the absorbent core material.  It

14:00:42 21  wasn't the fact that it didn't have a cavity or void space.

14:00:52 22           Unless Your Honor has any other questions,

14:00:52 23  that's all I have.

14:00:58 24           THE COURT:  Let me ask, what about the, i.e., a

14:01:01 25  sump, a space holding?

14:01:09 1          MR. BIDDINGER:  First of all, Mr. Jezzi did not

14:01:11 2   testify about this at trial.

14:01:12 3          THE COURT:  I know, it's irrelevant to the

14:01:15 4   jury's verdict, got it.

14:01:17 5          MR. BIDDINGER:  Secondly, there were sort of

14:01:23 6   multiple reasons why Kuntz did not have a reservoir.  The

14:01:28 7   Patent Office itself allowed the claims over it and it's

14:01:31 8   because there was no space that was separate and distinct

14:01:36 9   from the permeable support.  That's the reason that the

14:01:40 10  claims were allowed over Kuntz.  That's why that limitation

14:01:43 11  is in the claims, it says that permeable support has to be

14:01:48 12  distinct and proximate to the fluid reservoir.  And that's

14:01:51 13  all that Mr. Jezzi was pointing out was that that space is

14:02:00 14  not a reservoir -- I mean, the Patent Office found it was

14:02:04 15  not a reservoir.

14:02:05 16         Part of the problem was that there is -- if we

14:02:10 17  look at the figure from Kuntz, on their slide 13, what they

14:02:22 18  were pointing to is this 22a which is where the tube that

14:02:27 19  pushed into in Kuntz, but it's completely surrounded by this

14:02:32 20  absorbent material, and so what Mr. Jezzi was saying was

14:02:37 21  that when you have this space surrounded by this absorbent

14:02:42 22  material, fluid is not going to collect in the space because

14:02:46 23  the fluid is drawn into the absorbent material that is

14:02:52 24  forming that space.

14:02:54 25         So I don't know what to make beyond that of

14:02:57 1   this, that's what he said, it would be absorbed into the

14:03:03 2   absorbent core material.  It retains fluid in that core

14:03:07 3   material in contrast to the reservoir that has a space for

14:03:11 4   holding free liquid.  I don't think there is anything

14:03:15 5   inconsistent with about that.

14:03:20 6        The other point to Van Den Heuvel, Van Den

14:03:23 7   Heuvel says nothing about a reservoir.  There is no

14:03:25 8   disclosure anywhere in it that there is a reservoir.  The

14:03:29 9   only thing that they've ever pointed to is that drawing

14:03:31 10  which has this little triangle at the bottom that's not

14:03:35 11  described as being a space or empty space or anything.  And

14:03:38 12  so I don't think there is any inconsistency at all to say

14:03:42 13  that Van Den Heuvel does not disclose this limitation or

14:03:46 14  that they failed to prove that it disclosed this limitation

14:03:49 15  in our infringement position in this case.

14:03:51 16       THE COURT:  Okay.  All right.  Let me go back

14:03:55 17  and take a look at these things and come back in about half

14:04:00 18  an hour.

14:04:02 19       (A brief recess was taken.)

14:52:12 20       THE COURT:  Thank you for waiting.  Sorry we're

14:52:14 21  a little late.  Please be seated.

14:52:17 22       All right.  At issue, there is one disputed

14:52:19 23  claim term in two patents.  These patents were previously

14:52:22 24  litigated between these parties and resulted in a jury

14:52:26 25  verdict of infringement and no invalidity of the claims

asserted in that case.  During that litigation, the parties

agreed that the term "fluid reservoir" or "reservoir" should

be given its plain and ordinary meaning.  There was no

dispute or disagreement about the scope of that term.

In connection with this case, Plaintiff filed a

motion for judgment on the pleadings on the grounds that

collateral estoppel barred certain of Defendant's defenses.

As part of its response to that motion, Defendant's brief

asserted that there was a claim construction issue that

precluded my grant of the motion, but did not really

identify what that issue was.  During the argument on the

12(c) motion, Defendant asserted that Plaintiff was

construing "reservoir" or "fluid reservoir" differently than

it had in the prior litigation.  Plaintiff disagreed.  I

agreed to hear this issue in an expedited manner so that I

could understand the arguments and rule on the pending

motion.

I am now prepared to rule on the claim

construction issue.  I will not be issuing a written

opinion, but I will issue an order stating my rulings.  I

want to emphasize before I announce my decision that

although I am not issuing a written opinion, we have

followed a full and thorough process before making the

decision I am about to state.  I have reviewed the patents

in dispute.  I have also reviewed the record from the prior

14:53:44 1    litigation, *PureWick Corporation v. Sage Products, LLC,* C.A.

14:53:52 2    No. 19-1508-MN, which I will call "*PureWick* I".  I have read

14:53:55 3    the parties' letters regarding claim construction and all of

14:53:57 4    the other references submitted in the many pages of

14:54:01 5    exhibits.  There was full briefing on the disputed term and

14:54:04 6    argument today.  All of that has been carefully considered.

14:54:07 7            As to my ruling, I am not going to read into the

14:54:09 8    record my understanding of claim construction law.  I have a

14:54:12 9    legal standard section that I have included in earlier

14:54:15 10   opinions, including my claim construction order in *PureWick*

14:54:18 11   I.  I incorporate that law and adopt it into my ruling today

14:54:22 12   and will also set it out in the order that I issue.

14:54:24 13           The disputed term is "fluid reservoir" or

14:54:27 14   "reservoir" in claims 1, 5 and 10 of the '376 Patent and

14:54:31 15   claims 2, 3, 6 and 7 of the '989 Patent.  Both parties argue

14:54:39 16   that the term has its plain and ordinary meaning.  Plaintiff

14:54:44 17   proposes that meaning is "a place where urine can collect."

14:54:48 18   Defendant proposes that meaning is "a structure that

14:54:51 19   aggregates urine."

14:54:52 20           The dispute centers on whether there is a

14:54:55 21   difference between "aggregate" and "collect," whether the

14:54:57 22   term requires urine to be held in the reservoir rather than

14:55:01 23   be capable of being held there and whether we need to refer

14:55:04 24   to the reservoir as a structure.  Here, I think the

14:55:08 25   Plaintiff's statement of the plain and ordinary meaning is

14:55:10 1  the one supported by the intrinsic and extrinsic evidence

14:55:14 2  and is consistent with how the claim term was used in the

14:55:16 3  prior litigation.  I will adopt that construction.

14:55:19 4        First, I can find no meaningful difference

14:55:28 5  between "aggregate" and "collect" in the parties'

14:55:31 6  constructions.  According to Webster's New World College

14:55:35 7  Dictionary and The Chambers Dictionary, the two generally

14:55:35 8  mean the same thing.  And as I pointed out during the

14:55:38 9  hearing, without objection or disagreement, looking at the

14:55:40 10 online thesaurus, the two words are synonyms.

14:55:44 11       Defendant, however, argues that there is a

14:55:46 12 distinction between "aggregate" and "collect" in that

14:55:48 13 "aggregate" suggests collecting and holding, while "collect"

14:55:51 14 does not require actually holding of fluid.  I do not,

14:55:56 15 however, think that position is supported by the intrinsic

14:55:59 16 evidence cited.  First, the specification states that the

14:56:03 17 "reservoir 110 can be any suitable shape and/or size capable

14:56:07 18 of collecting fluid transported through the permeable

14:56:11 19 support 140."  It then goes on to give implementations and

14:56:15 20 examples where the reservoir collects and holds urine -

14:56:18 21 either a large amount or a small amount or does so

14:56:21 22 temporarily or more permanently.  It also refers to the

14:56:24 23 reservoir forming part of a passageway and a sump.  I do not

14:56:27 24 read those subsequent statements, however, to require the

14:56:30 25 reservoir to hold urine - particularly given the clear

statement that the reservoir can be of any size or shape

capable of collecting fluid at the beginning of the

paragraph before discussing embodiments.  I also can discern

no reason why holding urine would be required given that the

purpose of the inventions appears to be preventing urine

leaking from the devices, *i.e.*, removing it rather than

holding it.  I understand that the device needs to be

capable of holding it when necessary, but that is different

from requiring it to hold fluid when not necessary.

            Second, the prosecution read as a whole does not

support Defendant's position.  Defendant argues that during

prosecution, Plaintiff distinguished the prior art reference

Kuntz from its invention to overcome the Examiner's

rejection.  Plaintiff argued that Kuntz does not have a

reservoir, which Plaintiff defined using Webster's

dictionary as "a cavity or part that holds some fluid

secretion," because "the core material of Kuntz fills the

entire internal space within Kuntz's backing layer 36, so

there is no room for a reservoir within the casing between

the permeable support and the casing."  There is no further

discussion of holding fluid in the subsequent arguments

made.  Indeed, Plaintiff concludes its arguments, stating

that "when read in light of the specification, Applicant's

term 'reservoir' should be read as a cavity or void space."

So I think that the intrinsic evidence supports Plaintiff's

proposed construction.  And the only extrinsic evidence I have from a POSA as to the meaning agrees.  At his deposition in the prior case, Defendant's expert testified that he "used fluid reservoir" to mean "the same thing that anyone, any ordinary person skilled in the art would understand.  It's an area where fluid can collect."

Defendant also asserts that Plaintiff is shifting its construction because in *PureWick* I, Plaintiff argued that the Van Den Heuvel reference did not have a "fluid reservoir" because urine did not aggregate in the area Defendant identified as a reservoir, but is now asserting a broader construction to capture an "indeterminant 'place'" in the PrimaFit 2.0.  I am not making any determination about infringement in this case, but I think that Defendant is overreading what actually happened in *PureWick* I.  During that litigation, Plaintiff's infringement expert referred to the reservoir as "the area... the volume where urine can accumulate."  As I just mentioned, Defendant's invalidity expert testified at his deposition that, to a POSA, a reservoir is "an area where fluid can collect."  At trial, though, he gave rather conclusory testimony that the prior art had a reservoir.  In addition, Plaintiff's counsel argued during his closing in connection with infringement that the accused product had an empty space where urine can accumulate.  And he argued in

connection with validity that Van Den Heuvel did not have a "place for fluid to aggregate."  I think all of this testimony and argument from *PureWick I* is consistent with the plain and ordinary meaning as I understand it.

So I am going to construe "reservoir" and "fluid reservoir" to have the plain and ordinary meaning to a POSA, *i.e.*, a space where fluid can collect.  I am not specifically adding the word "structure" to this definition. Plaintiff agrees that the space has to be formed by something, some structure, but both parties agree that the reservoir is not required to be a separate structure.  And thus, I think adding that the reservoir must be "a structure" may be confusing.

In conclusion, the intrinsic and extrinsic evidence support the plain and ordinary meaning of "reservoir" and "fluid reservoir" as "a space where urine can collect."  And that is how I will construe it.

So with that, I am not going to rule on the collateral estoppel motion orally.  We'll get out an opinion on that one because I think there are some other issues in it rather than just this.

And I did want to tell you all, you know, we keep track of all your discovery disputes and you have too many.  So you can have this one with Judge Hall, and after that, any further requests will not be -- you will not get a

15:01:15 1    discovery hearing until lead counsel meet in person and

15:01:20 2    discuss it and report back on those discussions.

15:01:24 3              All right.  So that's all I had for today.

15:01:28 4    Anything else that we need to talk about while we're here?

15:01:32 5              MR. SCHARFF:  Yes, Your Honor.

15:01:33 6              MR. BIDDINGER:  Nothing from Plaintiff.

15:01:34 7              MR. SCHARFF:  We just wanted to apprize Your

15:01:36 8    Honor of the status of discovery.  We currently have a close

15:01:39 9    of discovery that's set for next week.  We're in discussions

15:01:42 10   with PureWick regarding an extension, partly because there

15:01:46 11   is the discovery dispute being heard on the 27th, and partly

15:01:50 12   because there are some outstanding depositions.  There was a

15:01:52 13   witness that became unavailable.  There are some documents

15:01:55 14   we're still waiting for.  We're hoping to submit something

15:01:59 15   to you that will be either joint or unopposed.

15:02:02 16              THE COURT:  It's not going to move the trial

15:02:05 17   date?

15:02:06 18              MR. SCHARFF:  Yes, we originally had a period

15:02:08 19   for claim construction over the next few months we don't

15:02:11 20   have to do.  We have this nice empty space for the next

15:02:14 21   couple of months.

15:02:16 22              THE COURT:  All right.  Thank you.

15:02:16 23              COURT CLERK:  All rise.

24              (Court adjourned at 3:02 p.m.)

25

1

          I hereby certify the foregoing is a true and
accurate transcript from my stenographic notes in the proceeding.

2

3                              /s/ Dale C. Hawkins
                               Official Court Reporter
4                              U.S. District Court

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'376** [5] - 3:9, 16:13, 18:25, 19:18, 46:14
**'989** [3] - 3:9, 42:1, 46:15
**'place'** [1] - 49:13
**'reservoir'** [2] - 22:12, 48:24

**/**

**/s** [1] - 52:3

**1**

**1** [10] - 3:7, 4:9, 16:13, 18:24, 18:25, 21:3, 24:16, 38:20, 46:14
**10** [3] - 8:21, 20:13, 46:14
**11** [1] - 4:25
**110** [5] - 11:12, 15:4, 15:13, 15:15, 47:17
**12** [3] - 5:6, 16:3, 18:5
**12(c** [1] - 45:12
**13** [2] - 21:6, 43:17
**14** [1] - 5:10
**140** [1] - 47:19
**15** [4] - 22:22, 25:24, 41:22, 42:4
**16** [1] - 17:22
**17** [1] - 1:10
**19-1508-MN** [1] - 46:2
**1:00** [1] - 1:10

**2**

**2** [2] - 24:16, 46:15
**2.0** [2] - 41:6, 49:13
**2023** [1] - 1:10
**22-102(MN** [1] - 1:5
**22a** [3] - 42:2, 42:19, 43:18
**24** [1] - 40:11
**27th** [1] - 51:11

**3**

**3** [9] - 5:4, 5:16, 16:7, 16:9, 16:11, 20:24, 21:4, 22:5, 46:15
**32** [1] - 24:11
**36** [1] - 48:18
**38** [1] - 16:15
**3:02** [1] - 51:24

**4**

**481** [3] - 22:6, 22:15,

23:18
**482** [1] - 22:9

**5**

**5** [1] - 46:14
**52** [1] - 16:15

**6**

**6** [2] - 9:13, 46:15

**7**

**7** [4] - 16:9, 16:15, 20:4, 46:15
**76** [1] - 13:18

**8**

**8** [1] - 12:5
**844** [1] - 1:12

**9**

**9** [1] - 18:7
**922** [1] - 42:18

**A**

**able** [2] - 26:25, 42:9
**absolutely** [2] - 15:12, 29:24
**absorbed** [3] - 42:7, 42:20, 44:1
**absorbent** [5] - 42:20, 43:20, 43:21, 43:23, 44:2
**Acco** - 12:21, 12:23
**according** [2] - 15:23, 47:6
**accordingly** [1] - 7:21
**Accordingly** [1] - 22:10
**accumulate** [12] - 10:21, 31:11, 34:12, 34:13, 34:14, 34:16, 36:6, 39:17, 39:18, 39:19, 49:18, 49:25
**accurate** [2] - 7:22, 52:1
**accused** [4] - 6:22, 9:7, 12:19, 49:24
**act** [1] - 20:1
**actual** [2] - 6:22, 12:19
**actuality** [1] - 18:8
**add** [1] - 10:21
**adding** [2] - 50:8, 50:12

**addition** [4] - 16:24, 36:13, 49:23
**adjourned** [1] - 51:24
**adopt** [3] - 10:6, 46:11, 47:3
**adopted** [2] - 39:23, 39:25
**affirmatively** [1] - 40:17
**afternoon** [3] - 2:13, 2:17, 2:23
**aggregate** [32] - 5:19, 5:20, 6:11, 10:3, 10:5, 10:7, 10:8, 10:13, 10:16, 10:18, 10:21, 10:23, 11:1, 26:18, 26:21, 31:3, 31:8, 31:9, 31:21, 34:5, 34:7, 34:11, 38:25, 40:20, 40:21, 40:23, 46:21, 47:5, 47:12, 47:13, 49:10, 50:2
**aggregates** [7] - 4:21, 6:15, 12:9, 38:21, 38:24, 39:5, 46:19
**aggregating** [2] - 18:11, 39:2
**aggregation** [1] - 20:12
**agree** [7] - 6:1, 7:24, 8:25, 29:4, 29:8, 31:7, 50:10
**agreed** [2] - 45:2, 45:15
**agreeing** [1] - 14:23
**agreement** [2] - 10:6, 38:15
**agrees** [3] - 7:16, 49:2, 50:9
**air** [2] - 22:19
**al** [1] - 25:15
**allegations** [1] - 27:2
**alleged** [2] - 6:13, 42:19
**allow** [2] - 42:6, 42:19
**allowed** [3] - 41:5, 43:7, 43:10
**almost** [1] - 33:20
**alone** [2] - 4:9, 11:9
**alternative** [1] - 17:3
**amass** [1] - 10:21
**ambiguous** [1] - 14:6
**amount** [6] - 17:6, 17:19, 35:17, 47:21
**amounts** [1] - 16:20
**ANNE** [1] - 2:3
**Anne** [1] - 2:23
**announce** [1] - 45:21
**answer** [2] - 6:18,

31:14
**anyplace** [6] - 4:20, 6:25, 12:14, 15:5, 32:7, 32:8
**apologize** [1] - 19:13
**apparatus** [13] - 3:10, 4:11, 4:14, 12:25, 18:14, 19:1, 19:4, 19:19, 19:20, 19:22, 19:24, 33:2
**APPEARANCES** [2] - 1:18, 2:1
**Applicant's** [4] - 22:11, 23:1, 37:4, 48:23
**applicant's** [1] - 24:8
**applicants** [1] - 36:11
**application** [1] - 24:9
**applies** [1] - 28:20
**apprize** [1] - 51:7
**appropriate** [1] - 40:3
**arbitrary** [13] - 5:22, 6:24, 9:2, 9:22, 20:19, 20:22, 21:1, 21:11, 22:19, 26:8, 26:9, 28:5, 32:8
**area** [10] - 9:23, 13:14, 14:4, 20:12, 20:14, 27:12, 39:16, 49:6, 49:11, 49:20
**area..** [1] - 49:18
**areas** [1] - 5:18
**argue** [3] - 30:13, 41:5, 46:15
**argued** [12] - 6:8, 6:9, 21:10, 21:14, 28:1, 34:4, 38:7, 40:14, 48:14, 49:9, 49:23, 49:25
**argues** [2] - 47:11, 48:11
**arguing** [4] - 6:13, 35:1, 40:17, 41:20
**argument** [15] - 12:22, 26:20, 27:8, 27:16, 28:22, 30:11, 33:22, 34:6, 34:10, 34:21, 35:8, 38:20, 45:11, 46:6, 50:3
**arguments** [3] - 45:16, 48:21, 48:22
**arranged** [1] - 24:19
**arrow** [1] - 9:21
**art** [11] - 4:1, 4:5, 13:14, 14:4, 30:12, 30:15, 38:23, 41:7, 48:12, 49:5, 49:22
**aside** [1] - 31:13
**assembly** [1] - 24:12
**asserted** [3] - 45:1,

45:9, 45:12
**asserting** [1] - 49:12
**asserts** [1] - 49:7
**attention** [1] - 34:24
**avoid** [2] - 7:10, 38:23
**awfully** [1] - 19:5

**B**

**backing** [1] - 48:18
**backup** [1] - 35:18
**barred** [1] - 45:7
**basement** [1] - 20:11
**basis** [1] - 39:8
**became** [1] - 51:13
**BEFORE** [1] - 1:15
**beginning** [1] - 48:2
**behalf** [2] - 2:24, 3:6
**belaboring** [1] - 38:19
**believes** [1] - 6:22
**best** [1] - 25:20
**better** [1] - 9:10
**between** [17] - 5:24, 7:4, 9:18, 10:1, 10:3, 12:8, 12:15, 20:16, 24:13, 29:14, 32:12, 42:14, 44:24, 46:21, 47:5, 47:12, 48:19
**beyond** [2] - 31:10, 43:25
**BIDDINGER** [29] - 1:22, 29:7, 29:10, 29:13, 29:17, 29:24, 30:16, 30:25, 31:5, 32:1, 32:6, 32:15, 32:24, 33:8, 33:17, 34:2, 34:13, 34:17, 35:3, 35:13, 35:22, 36:20, 37:12, 38:2, 38:18, 40:7, 43:1, 43:5, 51:6
**Biddinger** [2] - 2:19, 40:12
**big** [2] - 17:24, 18:9
**bigger** [1] - 12:6
**bit** [5] - 11:8, 17:16, 20:15, 21:23, 26:14
**bottom** [4] - 9:4, 9:17, 36:3, 44:10
**bound** [2] - 21:18, 21:19
**boundaries** [1] - 20:23
**boundary** [1] - 14:1
**bounded** [2] - 8:24, 11:10
**Brands** [1] - 12:21
**BRIAN** [1] - 1:22
**Brian** [1] - 2:19
**brief** [15] - 4:23, 6:16, 7:13, 9:16, 10:4,

10:14, 16:9, 18:13, 18:20, 29:17, 31:13, 38:21, 44:19, 45:8
**briefing** [1] - 46:5
**broad** [2] - 16:16, 16:23
**broader** [3] - 21:23, 22:3, 49:12
**bullet** [1] - 42:16
**BY** [6] - 1:20, 1:22, 1:23, 2:6, 2:6, 2:7

# C

**C.A** [2] - 1:5, 46:1
**cap** [5] - 21:19, 28:2, 28:3, 28:4, 28:8
**capability** [1] - 18:8
**capable** [18] - 5:15, 11:12, 12:12, 12:20, 13:3, 15:6, 16:17, 17:11, 17:13, 18:10, 18:17, 18:22, 19:7, 19:18, 46:23, 47:17, 48:2, 48:8
**capture** [1] - 49:12
**car** [2] - 15:8, 15:9
**carefully** [1] - 46:6
**case** [20] - 12:17, 12:21, 13:6, 13:7, 13:10, 25:19, 26:15, 28:16, 28:17, 30:3, 30:18, 36:18, 39:15, 39:21, 41:21, 44:15, 45:1, 45:5, 49:3, 49:14
**casing** [14] - 4:10, 7:18, 8:4, 8:5, 8:10, 9:18, 13:11, 13:25, 21:19, 24:11, 24:13, 37:4, 48:19, 48:20
**cavity** [28] - 5:14, 8:14, 8:23, 21:17, 22:12, 22:15, 22:18, 22:19, 22:24, 23:2, 23:13, 23:14, 23:21, 23:24, 24:2, 24:10, 25:4, 25:7, 25:9, 37:3, 37:5, 37:14, 41:25, 42:2, 42:8, 42:21, 48:16, 48:24
**centers** [1] - 46:20
**certain** [1] - 45:7
**certify** [1] - 52:1
**Chambers** [1] - 47:7
**change** [1] - 20:1
**changing** [1] - 30:11
**channel** [1] - 26:19
**channeled** [2] - 6:12, 41:18

**characterization** [1] - 14:22
**characterize** [1] - 25:6
**Cherny** [1] - 2:19
**Cherny's** [1] - 34:21
**CHRISTOPHER** [1] - 2:6
**Christopher** [2] - 2:25, 3:6
**Circuit** [2] - 18:15, 39:21
**cited** [9] - 10:12, 12:17, 13:17, 21:22, 22:7, 28:14, 31:6, 39:20, 47:16
**citing** [2] - 18:19, 19:17
**claim** [37] - 3:15, 4:9, 5:3, 6:6, 6:17, 9:15, 9:16, 9:24, 10:2, 12:18, 12:25, 18:23, 18:24, 18:25, 19:16, 19:22, 19:23, 19:24, 20:24, 21:3, 21:4, 25:19, 32:4, 32:15, 32:23, 33:1, 36:14, 41:3, 44:23, 45:9, 45:18, 46:3, 46:8, 46:10, 47:2, 51:19
**claiming** [1] - 9:19
**claims** [19] - 3:16, 4:9, 5:1, 5:24, 12:10, 12:23, 15:11, 18:14, 20:17, 20:20, 21:9, 25:21, 30:1, 43:7, 43:10, 43:11, 44:25, 46:14, 46:15
**clarify** [1] - 11:9
**classic** [1] - 28:16
**clear** [8] - 9:9, 11:17, 15:17, 20:20, 23:8, 25:9, 30:1, 47:25
**clearly** [2] - 22:2, 24:12
**CLERK** [1] - 51:23
**close** [1] - 51:8
**closing** [9] - 27:7, 27:15, 27:16, 34:5, 34:10, 34:21, 39:18, 40:1, 49:23
**collateral** [6] - 28:19, 30:13, 34:25, 41:4, 45:7, 50:19
**colleague** [1] - 3:2
**collect** [56] - 4:20, 5:18, 5:20, 7:1, 7:4, 7:6, 7:24, 10:3, 10:8, 10:16, 10:18, 10:19, 10:21, 10:22, 11:3, 12:2, 12:14, 13:15,

14:5, 14:11, 14:12, 15:16, 16:21, 17:8, 17:15, 17:24, 18:3, 18:4, 30:9, 31:2, 31:3, 31:11, 32:10, 32:11, 33:10, 34:16, 35:17, 38:5, 38:13, 38:16, 40:21, 42:6, 42:19, 43:22, 46:17, 46:21, 47:5, 47:12, 47:13, 49:6, 49:21, 50:7, 50:17
**collecting** [20] - 5:8, 10:11, 11:2, 11:4, 11:13, 11:14, 11:15, 11:18, 11:25, 12:1, 15:6, 16:5, 16:18, 17:11, 17:14, 18:10, 47:13, 47:18, 48:2
**collection** [5] - 7:1, 20:11, 32:10, 32:11, 39:15
**collects** [3] - 11:21, 15:5, 47:20
**College** [1] - 47:6
**column** [2] - 16:9, 16:15, 20:4
**combine** [1] - 10:22
**comeback** [1] - 28:22
**coming** [1] - 18:8
**compelling** [1] - 41:15
**competitors** [1] - 7:9
**completely** [1] - 43:19
**components** [1] - 33:5
**Conaway** [1] - 2:24
**CONAWAY** [1] - 2:2
**concede** [1] - 12:8
**concept** [2] - 11:4, 26:9
**concern** [1] - 31:21
**concludes** [1] - 48:22
**conclusion** [1] - 50:14
**conclusory** [2] - 41:16, 49:22
**conditions** [1] - 20:2
**configurations** [1] - 20:2
**configured** [19] - 4:15, 5:21, 13:4, 17:20, 18:12, 18:14, 18:16, 18:22, 18:25, 19:1, 19:5, 19:11, 19:17, 19:19, 19:20, 19:25, 33:2, 35:16
**confusing** [1] - 50:13
**connection** [5] - 15:25, 27:2, 45:5, 49:24, 50:1
**considered** [1] - 46:6
**consistent** [17] -

15:22, 21:7, 22:20, 22:21, 24:7, 26:3, 26:24, 28:25, 30:2, 30:23, 31:25, 33:16, 34:7, 38:25, 39:9, 47:2, 50:3
**consistently** [1] - 18:2, 21:3, 27:3
**constructed** [1] - 18:18
**construction** [45] - 4:19, 4:21, 4:24, 5:2, 6:2, 6:4, 6:6, 6:7, 6:17, 6:24, 7:3, 7:7, 7:22, 7:24, 8:11, 8:22, 9:16, 10:2, 10:5, 11:22, 11:23, 12:13, 21:7, 22:20, 25:19, 25:23, 26:3, 26:24, 29:1, 32:4, 32:9, 34:7, 38:11, 38:21, 41:3, 45:9, 45:19, 46:3, 46:8, 46:10, 47:3, 49:1, 49:8, 49:12, 51:19
**constructions** [3] - 4:18, 5:25, 47:6
**construe** [4] - 3:13, 13:22, 50:5, 50:17
**construed** [1] - 13:7
**construing** [2] - 18:20, 45:13
**contain** [2] - 24:17, 26:7
**contention** [1] - 33:8
**contentions** [1] - 39:13
**contested** [1] - 27:19
**context** [6] - 6:5, 16:7, 23:3, 25:12, 25:13, 37:13
**CONTINUED** [1] - 2:1
**contradicting** [1] - 41:6
**contradiction** [1] - 6:18
**contrary** [2] - 28:18, 41:13
**contrast** [1] - 44:3
**core** [5] - 36:25, 42:20, 44:2, 48:17
**Corporation** [1] - 46:1
**CORPORATION** [1] - 1:4
**correct** [2] - 7:18, 7:19
**Counsel** [2] - 1:24, 2:8
**counsel** [7] - 27:15, 32:7, 33:24, 34:2, 39:7, 49:23, 51:1
**couple** [2] - 35:5,

51:21
**court** [3] - 13:21, 39:23
**COURT** [89] - 1:1, 2:13, 2:22, 3:3, 3:17, 3:19, 3:22, 3:25, 4:3, 4:7, 7:12, 7:15, 7:21, 8:3, 8:17, 9:9, 9:12, 10:20, 11:6, 11:11, 11:24, 13:9, 13:19, 14:2, 14:8, 14:17, 14:19, 15:3, 15:10, 15:13, 15:15, 15:21, 16:6, 16:11, 16:14, 17:9, 17:13, 18:19, 19:3, 19:10, 19:14, 20:3, 21:21, 21:25, 22:23, 23:1, 23:6, 23:16, 23:20, 24:7, 24:24, 25:14, 27:6, 27:18, 29:3, 29:8, 29:11, 29:16, 29:21, 30:10, 30:19, 31:3, 31:24, 32:3, 32:9, 32:21, 33:7, 33:15, 33:25, 34:12, 34:16, 34:23, 35:8, 35:19, 36:19, 37:7, 37:22, 38:17, 40:6, 40:9, 41:14, 42:10, 42:24, 43:3, 44:16, 44:20, 51:16, 51:22, 51:23
**Court** [5] - 1:15, 38:10, 51:24, 52:3, 52:4
**covered** [1] - 15:11
**cross** [2] - 24:11, 27:18
**cross-examined** [1] - 27:18
**cross-sectional** [1] - 24:11
**current** [2] - 6:21, 28:25
**cut** [1] - 31:8

# D

**Dale** [1] - 52:3
**date** [1] - 51:17
**decided** [1] - 28:20
**decision** [2] - 40:1, 45:21, 45:24
**Defendant** [11] - 1:8, 2:8, 2:24, 3:6, 45:12, 46:18, 47:11, 48:11, 49:7, 49:11, 49:15
**Defendant's** [6] - 16:1, 45:7, 45:8, 48:11, 49:3, 49:19

defenses [1] - 45:7
defined [6] - 13:25,
20:23, 22:16, 22:18,
29:19, 48:15
defining [5] - 8:10,
11:15, 15:15, 24:4,
24:5
definitely [1] - 34:17
definition [20] - 5:13,
10:15, 10:18, 11:1,
13:10, 14:14, 14:24,
15:9, 15:20, 15:21,
21:16, 22:18, 23:5,
24:5, 26:13, 37:7,
37:10, 37:12, 50:8
definitions [3] - 10:17,
18:2, 31:6
DELAWARE [1] - 1:2
Delaware [2] - 1:13,
13:7
demonstrate [1] - 24:9
Den [27] - 6:9, 10:14,
26:14, 26:17, 27:1,
27:9, 27:12, 27:14,
27:21, 28:25, 31:25,
33:16, 33:17, 34:4,
34:9, 34:19, 40:14,
40:15, 40:18, 41:11,
41:13, 41:18, 44:6,
44:13, 49:9, 50:1
dependent [2] - 20:24,
21:4
deposition [2] - 13:10,
49:3, 49:20
depositions [1] -
51:12
described [1] - 44:11
describing [4] - 17:4,
17:7, 17:23, 22:17
description [1] - 15:7
design [1] - 42:18
designed [4] - 18:18,
30:5, 31:15, 41:9
determination [2] -
39:24, 49:14
determining [1] -
25:20
device [27] - 5:23,
6:14, 7:1, 7:6, 9:18,
12:3, 20:22, 21:1,
21:11, 28:8, 30:20,
31:22, 32:2, 32:11,
32:13, 32:14, 32:17,
33:6, 33:9, 34:10,
35:24, 36:3, 36:5,
36:17, 37:18, 41:9,
48:7
devices [6] - 12:15,
31:14, 35:14, 36:2,
41:8, 48:6

dictionaries [1] -
10:12
dictionary [10] - 18:2,
22:8, 23:4, 23:20,
23:22, 24:2, 24:8,
25:11, 26:12, 48:16
Dictionary [2] - 47:7
difference [9] - 10:3,
12:7, 12:8, 29:14,
29:15, 30:17, 46:21,
47:4
differences [4] - 4:22,
5:24, 6:2, 10:1
different [7] - 6:7, 6:8,
23:7, 30:21, 30:22,
35:1, 48:8
differently [1] - 45:13
directed [1] - 3:10
directly [1] - 41:6
disagree [2] - 20:14,
39:10
disagreed [1] - 45:14
disagreement [4] -
4:17, 5:17, 45:4,
47:9
discern [1] - 48:3
discharged [1] - 3:11
disclaimer [2] - 25:15,
25:23
disclose [1] - 44:13
disclosed [2] - 24:10,
44:14
disclosure [1] - 44:8
discovery [5] - 50:23,
51:1, 51:8, 51:9,
51:11
discuss [2] - 5:11,
51:2
discussing [1] - 48:3
discussion [2] -
37:16, 48:21
discussions [2] -
51:2, 51:9
disposed [1] - 4:13
dispute [9] - 12:6,
25:3, 26:19, 29:25,
45:4, 45:25, 46:20,
51:11
disputed [3] - 44:22,
46:5, 46:13
disputes [1] - 50:23
disputing [4] - 6:5,
6:6, 6:20, 38:6
distinct [8] - 4:12,
19:5, 32:19, 36:14,
36:24, 37:19, 43:8,
43:12
distinction [8] - 20:16,
20:17, 36:11, 36:21,
36:25, 37:2, 37:15,

47:12
distinguish [1] - 12:22
distinguished [1] -
48:12
DISTRICT [2] - 1:1, 1:2
District [3] - 1:15,
13:6, 52:4
documents [1] - 51:13
doubt [1] - 29:19
down [3] - 35:24, 36:1,
36:3
drawing [3] - 12:1,
37:15, 44:9
drawings [1] - 24:8
drawn [7] - 31:17,
31:20, 33:11, 36:3,
36:6, 36:22, 43:23
during [6] - 45:1,
45:11, 47:8, 48:11,
49:16, 49:23

E

either [3] - 17:4,
47:21, 51:15
element [1] - 33:21
EMANUEL [1] - 1:22
Emanuel [1] - 2:19
embodiments [3] -
17:3, 37:18, 48:3
emphasize [1] - 45:21
empty [6] - 37:5,
37:19, 39:17, 44:11,
49:25, 51:20
end [19] - 4:11, 4:13,
6:14, 8:9, 13:12,
13:24, 18:24, 21:11,
21:12, 21:19, 25:8,
32:17, 33:9, 35:25,
40:25, 41:18
ends [1] - 22:6
entire [6] - 8:5, 36:17,
37:1, 37:13, 37:18,
48:18
ESQ [8] - 1:20, 1:22,
1:23, 2:3, 2:3, 2:6,
2:6, 2:7
essentially [1] - 30:12
estoppel [12] - 28:16,
28:19, 30:13, 34:25,
39:7, 39:9, 39:20,
39:22, 40:3, 41:5,
45:7, 50:19
Europe [1] - 2:10
everywhere [1] - 8:22
evidence [15] - 4:23,
14:25, 15:1, 15:2,
25:18, 25:21, 27:6,
27:8, 27:9, 41:13,
47:1, 47:16, 48:25,

49:1, 50:15
exact [2] - 33:13,
39:12
exactly [5] - 3:24,
9:14, 34:2, 38:22,
41:20
examined [1] - 27:18
Examiner [2] - 21:15,
42:1
Examiner's [1] - 48:13
example [17] - 3:16,
4:9, 5:2, 5:3, 10:10,
15:8, 17:15, 18:4,
18:24, 20:24, 22:6,
22:14, 22:25, 24:11,
28:2, 41:8
examples [2] - 30:1,
47:20
Exhibit [6] - 16:7,
16:9, 16:11, 16:13,
22:5
exhibits [1] - 46:5
exist [1] - 38:7
expedited [1] - 45:15
expert [22] - 15:23,
16:1, 26:1, 26:2,
26:4, 26:5, 27:11,
27:13, 27:16, 27:18,
33:19, 33:20, 39:11,
39:14, 39:16, 41:12,
42:17, 49:3, 49:17,
49:19
expert's [2] - 13:9,
41:14
experts [3] - 15:2,
29:8, 30:4
explain [6] - 5:1, 5:7,
6:2, 26:25, 31:13,
40:13
explained [3] - 28:24,
30:21, 41:12
expressly [2] - 9:16,
9:19
extends [1] - 33:12,
35:23
extension [1] - 51:10
extrinsic [4] - 15:2,
47:1, 49:1, 50:14

F

fabric [2] - 32:12,
33:10
fact [6] - 6:3, 19:6,
20:18, 37:13, 42:2,
42:21
failed [1] - 44:14
failure [2] - 33:22,
40:17
fair [1] - 32:24

February [1] - 1:10
Federal [1] - 18:15
FELICE [1] - 1:23
Felice [1] - 2:19
few [1] - 51:19
fibers [3] - 7:5, 12:15,
32:12
fight [1] - 25:3
fighting [1] - 18:9
figure [2] - 32:5, 43:17
Figure [1] - 24:11
figures [5] - 20:23,
22:17, 24:16, 25:10,
28:3
filed [1] - 45:5
fill [2] - 31:22, 36:17
filled [2] - 31:18, 37:1
filling [1] - 37:17
fills [1] - 48:17
final [1] - 28:20
fine [4] - 8:21, 10:4,
22:24, 24:1
first [21] - 3:4, 4:4,
4:11, 5:18, 6:6, 9:3,
10:2, 13:11, 13:24,
17:9, 17:10, 29:9,
30:16, 32:17, 33:9,
33:22, 43:1, 47:4,
47:16
flexible [2] - 28:2, 28:3
flow [2] - 24:19, 36:5
flows [2] - 35:24, 36:2
fluid [67] - 3:14, 4:10,
4:12, 5:9, 5:14, 7:24,
11:13, 12:2, 13:11,
13:12, 13:15, 13:20,
13:23, 14:2, 14:5,
15:6, 16:18, 17:11,
21:12, 21:17, 23:15,
23:21, 24:13, 24:14,
24:19, 29:4, 31:1,
31:2, 32:16, 32:18,
32:20, 32:21, 32:22,
32:25, 34:11, 36:15,
38:25, 42:6, 42:19,
43:12, 43:22, 43:23,
44:2, 45:2, 45:13,
46:13, 47:14, 47:18,
48:2, 48:9, 48:16,
48:21, 49:4, 49:6,
49:10, 49:21, 50:2,
50:5, 50:7, 50:16
fluids [1] - 15:16
focusing [2] - 25:8,
37:9
followed [2] - 15:1,
45:23
footnote [3] - 30:7,
38:9, 38:11
FOR [1] - 1:2

**foregoing** [1] - 52:1
**foremost** [1] - 33:23
**form** [1] - 20:5
**formed** [8] - 5:4, 5:5,
7:18, 20:25, 21:2,
37:25, 38:6, 50:9
**forming** [2] - 43:24,
47:23
**forms** [1] - 38:13
**free** [4] - 30:13, 42:6,
42:19, 44:4
**Friday** [1] - 1:10
**front** [2] - 13:17, 22:5
**fuel** [1] - 13:7
**full** [2] - 45:23, 46:5
**function** [2] - 20:4,
30:5
**functionality** [1] - 38:4
**functions** [1] - 26:6
**fundamentally** [1] -
41:3

### G

**gather** [1] - 10:19
**gathering** [1] - 11:2
**GAZA** [2] - 2:3, 2:23
**Gaza** [2] - 2:22, 2:24
**general** [1] - 19:17
**generally** [1] - 47:7
**Giannelli** [1] - 19:14
**given** [4] - 32:4, 45:3,
47:25, 48:4
**grant** [1] - 45:10
**gravity** [2] - 36:1,
41:16
**great** [1] - 3:3
**grounds** [4] - 34:20,
40:2, 45:6
**guess** [1] - 16:14

### H

**half** [2] - 35:14, 44:17
**Hall** [1] - 50:24
**Hawkins** [1] - 52:3
**heaped** [1] - 10:22
**hear** [2] - 30:24, 45:15
**heard** [5] - 28:21,
40:12, 41:1, 41:8,
51:11
**hearing** [3] - 24:15,
47:9, 51:1
**Hearing** [1] - 1:11
**held** [5] - 12:4, 25:3,
31:22, 46:22, 46:23
**HELD** [1] - 2:5
**Held** [1] - 3:1
**help** [4] - 7:8, 7:9,
17:21, 32:5

**helps** [1] - 6:4
**hereby** [1] - 52:1
**Heuvel** [27] - 6:10,
10:14, 26:15, 26:17,
27:1, 27:9, 27:12,
27:14, 27:22, 28:25,
31:25, 33:16, 33:18,
34:4, 34:10, 34:19,
40:14, 40:15, 40:18,
41:11, 41:13, 41:18,
44:6, 44:7, 44:13,
49:9, 50:1
**highlighted** [2] - 22:7,
27:12
**history** [12] - 5:12,
8:14, 8:23, 21:8,
22:1, 25:18, 25:22,
36:9, 36:10, 36:19,
37:16, 39:6
**hold** [24] - 5:9, 7:12,
11:24, 16:6, 16:19,
16:20, 16:21, 16:22,
17:17, 17:5, 17:6,
17:18, 17:20, 21:12,
23:16, 23:17, 23:20,
31:12, 33:25, 35:17,
42:9, 47:25, 48:9
**holding** [32] - 10:12,
11:4, 11:5, 11:14,
11:16, 11:18, 16:5,
20:9, 24:15, 24:21,
24:24, 24:25, 25:13,
26:9, 35:10, 35:11,
37:11, 37:16, 42:25,
44:4, 47:13, 47:14,
48:4, 48:7, 48:8,
48:21
**holds** [11] - 5:14, 8:14,
11:21, 12:17, 17:17,
20:7, 21:17, 23:15,
23:21, 47:20, 48:16
**hole** [2] - 10:19, 11:3
**Honor** [44] - 2:17,
2:23, 3:6, 3:8, 3:18,
3:24, 4:6, 9:11, 11:7,
11:17, 14:21, 18:5,
18:24, 20:8, 25:17,
29:2, 29:7, 29:10,
29:14, 29:18, 29:24,
31:6, 31:15, 32:6,
33:18, 34:2, 34:18,
34:19, 35:3, 35:4,
35:6, 35:22, 36:21,
38:2, 39:11, 40:4,
40:7, 40:8, 40:12,
42:17, 42:22, 51:5,
51:8
**Honor's** [2] - 31:12,
31:14
**HONORABLE** [1] -

1:15
**hoping** [1] - 51:14
**hour** [1] - 44:18
**hypothetically** [3] -
5:20, 12:11, 20:1

### I

**I"** [1] - 46:2
**i.e** [3] - 42:24, 48:6,
50:7
**ideal** [1] - 36:7
**identifiable** [1] - 5:23
**identified** [3] - 6:21,
31:2, 49:11
**identify** [1] - 45:11
**ignore** [1] - 17:1
**II** [1] - 6:13
**immediately** [2] -
12:3, 41:10
**impermeable** [3] -
4:10, 24:13, 33:3
**implementations** [7] -
16:19, 16:20, 17:14,
17:16, 17:18, 17:19,
47:19
**implying** [1] - 31:9
**important** [1] - 15:1
**importantly** [1] - 4:14
**IN** [1] - 1:1
**inch** [1] - 9:3
**include** [1] - 7:4
**included** [2] - 37:11,
46:9
**includes** [3] - 9:20,
21:20, 28:12
**including** [3] - 9:22,
32:12, 46:10
**inconsistency** [1] -
44:12
**inconsistent** [8] -
6:16, 14:14, 14:15,
14:20, 27:4, 28:23,
39:10, 44:5
**incorporate** [1] -
46:11
**incorporated** [1] -
29:22
**incorrect** [1] - 12:24
**indeed** [1] - 48:22
**independent** [1] - 21:3
**indeterminant** [1] -
49:13
**indicating** [1] - 39:21
**inexplicable** [1] -
12:24
**informative** [1] - 25:23
**informs** [1] - 25:18
**infringe** [3] - 12:18,
31:23, 39:2

**infringement** [14] -
7:10, 13:5, 27:2,
27:5, 27:25, 30:14,
39:17, 41:5, 41:20,
44:15, 44:25, 49:14,
49:17, 49:24
**inside** [7] - 9:1, 10:22,
21:1, 21:20, 28:5,
32:13
**instances** [3] - 16:4,
26:22, 27:1
**instead** [1] - 28:10
**instructed** [1] - 27:8
**integrally** [1] - 7:18
**integrated** [2] - 8:3,
8:4
**intend** [1] - 29:15
**internal** [1] - 48:18
**interpretation** [1] -
42:12
**interrupted** [1] - 33:7
**intrinsic** [9] - 4:23,
14:25, 25:18, 25:21,
47:1, 47:15, 48:25,
50:14
**introductions** [1] -
2:15
**invalidity** [4] - 27:4,
39:13, 44:25, 49:19
**invention** [1] - 48:13
**inventions** [1] - 48:5
**involved** [2] - 12:23,
12:24
**irreconcilable** [2] -
6:18, 41:4
**irrelevant** [1] - 43:3
**issue** [18] - 7:7, 8:2,
8:11, 8:16, 8:21,
11:8, 18:8, 25:2,
28:20, 34:24, 41:4,
44:22, 45:9, 45:11,
45:15, 45:19, 45:20,
46:12
**issues** [2] - 27:11,
50:20
**issuing** [2] - 45:19,
45:22
**itself** [2] - 25:21, 43:7

### J

**jagged** [1] - 9:5
**Jezzi** [8] - 26:5, 42:4,
43:1, 43:13, 43:20
**Jezzi's** [1] - 42:17
**JMOL** [1] - 34:24
**JOHN** [1] - 1:20
**John** [1] - 2:17
**joined** [1] - 2:25
**joining** [1] - 2:18

**joint** [1] - 51:15
**Judge** [2] - 1:15,
50:24
**judgment** [2] - 28:21,
45:6
**judicial** [6] - 28:16,
39:7, 39:8, 39:20,
39:22, 40:3
**jury** [6] - 7:8, 9:6, 27:8,
34:20, 39:25, 44:24
**jury's** [1] - 43:4

### K

**keep** [5] - 27:6, 27:7,
37:8, 42:10, 50:23
**keeps** [1] - 38:20
**KELLER** [1] - 1:19
**kept** [1] - 18:4
**kind** [1] - 37:8
**King** [1] - 1:12
**knows** [1] - 3:8
**Kuntz** [21] - 21:9,
21:14, 23:12, 24:3,
25:2, 25:5, 36:25,
37:15, 37:17, 41:24,
41:25, 42:18, 43:6,
43:10, 43:17, 43:19,
48:13, 48:14, 48:17
**Kuntz's** [1] - 48:18

### L

**language** [2] - 18:16,
19:11
**large** [5] - 16:20, 17:5,
17:19, 35:17, 47:21
**last** [7] - 16:25, 19:1,
19:18, 22:9, 30:3,
30:18, 33:18
**late** [1] - 44:21
**latter** [1] - 35:14
**law** [5] - 12:17, 28:14,
46:8, 46:11
**lawsuit** [3] - 3:9, 6:21,
28:7
**layer** [2] - 33:3, 48:18
**lead** [1] - 51:1
**leak** [1] - 36:8
**leaking** [1] - 48:6
**least** [1] - 36:15
**led** [2] - 36:13, 36:23
**left** [3] - 9:15, 40:14,
41:1
**legal** [1] - 46:9
**less** [1] - 41:15
**letters** [1] - 46:3
**light** [2] - 22:11, 48:23
**limitation** [8] - 19:1,
19:9, 19:18, 36:14,

36:23, 43:10, 44:13,
44:14
**limitations** [2] - 9:24,
19:16
**limited** [1] - 22:2
**line** [1] - 9:5
**lines** [2] - 16:15, 42:14
**liquid** [4] - 18:3, 26:7,
26:9, 44:4
**listed** [1] - 10:22
**literally** [2] - 6:25,
12:14
**litigated** [1] - 44:22
**litigation** [5] - 45:1,
45:14, 46:1, 47:3,
49:16
**LLC** [2] - 1:7, 46:1
**LLP** [2] - 1:19, 2:2
**located** [1] - 32:18
**lock** [1] - 13:2
**locking** [1] - 13:2
**look** [15] - 9:20, 10:14,
10:16, 18:1, 18:6,
22:2, 22:14, 26:1,
26:5, 27:24, 31:15,
33:19, 37:13, 43:17,
44:17
**looked** [1] - 10:20
**looking** [3] - 18:21,
35:6, 47:9
**losing** [1] - 42:13

## M

**main** [1] - 8:10
**MALLOY** [1] - 2:5
**Malloy** [1] - 3:1
**manner** [1] - 45:15
**Markman** [1] - 1:11
**MARYELLEN** [1] -
1:15
**mass** [2] - 10:19, 11:2
**material** [7] - 36:25,
42:7, 42:20, 43:20,
43:22, 43:23, 44:2,
44:3, 48:17
**matters** [2] - 30:5,
38:4
**McAndrew** [1] - 3:1
**McANDREWS** [1] - 2:5
**mean** [19] - 8:17, 10:8,
13:13, 14:3, 14:6,
14:13, 14:23, 17:10,
17:20, 17:25, 18:17,
23:23, 24:7, 31:3,
31:5, 41:17, 43:14,
47:8, 49:4
**meaning** [19] - 3:20,
3:23, 4:1, 15:22,
16:1, 18:1, 24:8,

25:20, 29:5, 35:2,
45:3, 46:16, 46:17,
46:18, 46:25, 49:2,
50:4, 50:6, 50:15
**meaningful** [1] - 47:4
**means** [2] - 22:13,
31:10
**meant** [1] - 23:8
**meet** [1] - 51:1
**membrane** [6] - 20:6,
24:14, 24:18, 24:20,
33:3
**mentioned** [1] - 49:19
**method** [3] - 3:10,
12:23, 19:22
**might** [4] - 8:21,
17:21, 22:1, 32:21
**missing** [2] - 11:4,
24:24
**mixed** [1] - 10:22
**months** [2] - 51:19,
51:21
**morning** [1] - 3:5
**most** [1] - 15:1
**motion** [7] - 34:24,
45:6, 45:8, 45:10,
45:12, 45:17, 50:19
**motions** [1] - 27:11
**move** [1] - 51:16
**MR** [87] - 2:17, 3:5,
3:18, 3:21, 3:24, 4:2,
4:6, 4:8, 7:14, 7:19,
8:1, 8:7, 8:20, 9:11,
9:13, 10:25, 11:7,
11:17, 12:1, 13:16,
13:23, 14:7, 14:10,
14:18, 14:21, 15:7,
15:12, 15:14, 15:19,
16:3, 16:9, 16:12,
17:2, 17:12, 17:21,
18:23, 19:8, 19:13,
19:15, 20:8, 21:24,
22:4, 22:25, 23:3,
23:10, 23:18, 23:25,
24:23, 25:2, 25:17,
27:10, 27:20, 29:7,
29:10, 29:13, 29:17,
29:24, 30:16, 30:25,
31:5, 32:1, 32:6,
32:15, 32:24, 33:8,
33:17, 34:2, 34:13,
34:17, 35:3, 35:13,
35:22, 36:20, 37:12,
38:2, 38:18, 40:7,
40:8, 40:10, 41:17,
42:16, 43:1, 43:5,
51:5, 51:6, 51:7,
51:18
**MS** [1] - 2:23
**multiple** [3] - 11:19,

40:2, 43:6
**must** [5] - 5:21, 12:19,
15:18, 16:21, 50:12

## N

**narrow** [1] - 16:18
**nature** [1] - 42:18
**necessarily** [1] - 35:19
**necessary** [2] - 48:8,
48:9
**need** [4] - 16:14,
41:10, 46:23, 51:4
**needs** [2] - 35:21, 48:7
**never** [13] - 6:17, 12:3,
17:8, 26:25, 28:24,
30:21, 32:24, 36:5,
38:7, 38:23, 38:24,
40:12, 41:11
**New** [1] - 47:6
**new** [1] - 28:8
**next** [17] - 3:7, 3:12,
4:16, 6:19, 7:11,
9:25, 21:5, 21:13,
26:11, 26:13, 27:23,
28:6, 28:13, 33:21,
51:9, 51:19, 51:20
**nice** [1] - 51:20
**Nicole** [1] - 2:19
**NICOLE** [1] - 1:23
**nilly** [1] - 30:14
**nobody** [1] - 33:25
**NOREIKA** [1] - 1:15
**note** [1] - 12:21
**noted** [3] - 29:18,
34:18, 34:19
**notes** [1] - 52:1
**nothing** [8] - 24:21,
25:6, 33:20, 40:19,
40:22, 40:23, 44:7,
51:6
**number** [1] - 33:22

## O

**objection** [1] - 47:9
**obviously** [2] - 5:25,
8:25
**occur** [1] - 35:18
**OF** [1] - 1:2
**offered** [1] - 37:8
**Office** [5] - 5:13, 21:8,
21:10, 43:7, 43:14
**Official** [1] - 52:3
**old** [1] - 17:13
**one** [24] - 7:12, 9:8,
10:17, 11:20, 11:23,
12:12, 15:8, 17:21,
18:9, 18:12, 23:8,
24:3, 27:10, 28:17,

33:22, 34:8, 37:9,
41:23, 44:22, 47:1,
50:20, 50:24
**ones** [1] - 13:19
**online** [1] - 47:10
**opening** [1] - 33:3
**opinion** [3] - 45:20,
45:22, 50:19
**opinions** [1] - 46:10
**opportunity** [1] -
28:21
**orally** [1] - 50:19
**orange** [2] - 26:16,
27:13
**order** [6] - 7:10, 23:12,
31:23, 45:20, 46:10,
46:12
**ordinary** [19] - 3:20,
3:23, 4:1, 4:4, 13:13,
14:3, 15:22, 16:1,
18:1, 29:5, 45:3,
45:3, 46:16, 46:25,
49:5, 50:4, 50:6,
50:15
**originally** [2] - 21:8,
51:18
**otherwise** [1] - 12:12
**outlet** [2] - 13:12,
24:21
**outstanding** [1] -
51:12
**overcome** [4] - 10:14,
23:12, 26:14, 48:13
**overreading** [1] -
49:15
**own** [3] - 10:17, 10:25,
29:22

## P

**p.m** [2] - 1:10, 51:24
**pad** [1] - 42:18
**page** [6] - 13:18, 22:6,
22:9, 22:15, 23:18,
38:20
**pages** [1] - 46:4
**paper** [1] - 7:15
**paragraph** [5] - 19:1,
22:9, 35:15, 42:18,
48:3
**ParkerVision** [1] -
19:10
**part** [9] - 5:14, 7:18,
7:23, 7:25, 8:1, 8:5,
11:3, 21:17, 23:15,
23:21, 28:12, 30:8,
37:9, 38:12, 38:14,
43:16, 45:8, 47:23,
48:16
**particular** [2] - 12:22,

21:10
**particularly** [1] - 47:25
**parties** [7] - 6:5, 7:9,
30:3, 44:24, 45:1,
46:15, 50:10
**parties'** [5] - 4:17,
4:18, 5:17, 46:3,
47:5
**partly** [2] - 51:10,
51:11
**party** [1] - 28:16
**passage** [1] - 35:12
**passageway** [3] -
20:5, 20:7, 47:23
**passes** [1] - 12:3
**patent** [5] - 15:11,
19:6, 20:19, 25:21,
28:3
**Patent** [7] - 3:9, 5:12,
16:13, 18:25, 19:19,
21:8, 21:10, 42:1,
43:7, 43:14, 46:14,
46:15
**patents** [6] - 3:8, 3:15,
10:11, 44:23, 45:24
**pending** [1] - 45:16
**people** [1] - 15:8
**perceive** [1] - 29:13
**period** [2] - 17:8,
51:18
**permanently** [2] -
14:11, 47:22
**permeable** [20] - 9:18,
9:20, 9:23, 11:13,
20:6, 24:14, 24:17,
24:19, 24:20, 32:19,
36:14, 36:16, 36:24,
37:20, 43:9, 43:11,
47:18, 48:20
**person** [7] - 4:1, 4:4,
13:14, 14:3, 14:4,
49:5, 51:1
**perspective** [1] -
29:18
**Phillips** [1] - 25:16
**PIANETTO** [1] - 2:6
**Pianetto** [1] - 3:1
**picked** [1] - 35:4
**picture** [1] - 30:20
**piled** [1] - 10:22
**pin** [3] - 13:1, 13:2
**place** [46] - 5:4, 5:22,
7:3, 7:23, 8:11, 8:12,
8:22, 9:2, 9:10, 11:8,
12:9, 12:13, 20:7,
20:10, 20:16, 20:18,
20:22, 21:1, 21:22,
22:14, 22:21, 23:7,
26:8, 26:10, 28:1,
28:5, 29:11, 29:14,

29:15, 29:19, 30:9, 31:1, 31:2, 32:8, 32:18, 34:8, 34:11, 35:20, 37:25, 38:3, 38:13, 38:16, 38:25, 39:19, 46:17, 50:2
**plain** [13] - 3:20, 3:23, 3:25, 15:22, 16:1, 29:5, 35:2, 45:3, 46:16, 46:25, 50:4, 50:6, 50:15
**Plaintiff** [15] - 1:5, 1:24, 2:18, 45:5, 45:12, 45:14, 46:16, 48:12, 48:14, 48:15, 48:22, 49:7, 49:8, 50:9, 51:6
**Plaintiff's** [4] - 46:25, 48:25, 49:16, 49:23
**play** [1] - 36:9
**plead** [1] - 26:8
**pleadings** [1] - 45:6
**point** [15] - 9:2, 15:9, 28:10, 28:19, 30:2, 34:19, 36:10, 36:16, 36:20, 37:5, 38:3, 39:1, 42:16, 44:6
**pointed** [11] - 18:13, 26:22, 28:2, 28:3, 31:6, 31:16, 33:18, 41:17, 44:9, 47:8
**pointing** [5] - 21:1, 21:25, 22:16, 43:13, 43:18
**points** [4] - 9:22, 31:12, 35:5, 38:18
**polymer** [4] - 5:4, 5:5, 20:25, 21:2
**pool** [2] - 35:20
**pools** [1] - 41:16
**portion** [2] - 6:25, 20:5
**POSA** [4] - 29:6, 49:2, 49:20, 50:6
**POSAs** [1] - 29:9
**position** [21] - 3:19, 6:8, 28:17, 28:18, 28:24, 30:12, 30:17, 30:18, 30:22, 31:24, 31:25, 32:1, 33:13, 33:16, 37:23, 39:22, 41:3, 44:15, 47:15, 48:11
**positions** [6] - 6:17, 27:4, 28:8, 28:15, 28:23, 39:9
**possible** [1] - 34:25
**possibly** [1] - 8:8
**post** [1] - 27:11
**post-trial** [1] - 27:11
**precluded** [1] - 45:10

**preference** [1] - 31:7
**prejudice** [1] - 28:18
**prepared** [1] - 45:18
**present** [1] - 28:7
**presentations** [1] - 3:4
**pretty** [1] - 41:16
**prevail** [1] - 28:16
**preventing** [1] - 48:5
**preview** [1] - 4:23
**previously** [1] - 44:23
**PrimaFit** [2] - 41:6, 49:13
**problem** [5] - 22:4, 24:3, 25:1, 42:10, 43:16
**proceeded** [1] - 30:25
**proceeding** [3] - 28:17, 28:18, 52:1
**process** [1] - 45:23
**product** [4] - 6:22, 12:19, 28:4, 49:24
**PRODUCTS** [1] - 1:7
**Products** [2] - 3:7, 46:1
**proof** [1] - 33:22
**properties** [4] - 11:19, 11:20, 11:22, 17:23
**property** [4] - 11:21, 12:12, 15:8, 17:25
**proposal** [1] - 3:22
**proposed** [2] - 30:7, 49:1
**proposes** [2] - 46:17, 46:18
**proposition** [1] - 19:17
**prosecution** [18] - 5:12, 8:14, 8:18, 8:22, 14:15, 21:8, 22:1, 25:15, 25:18, 25:22, 36:9, 36:10, 36:19, 37:16, 39:6, 42:1, 48:10, 48:12
**prove** [2] - 40:17, 44:14
**proved** [1] - 34:22
**proven** [1] - 34:9
**provide** [1] - 6:17
**provided** [4] - 10:15, 30:6, 38:3
**provides** [6] - 7:23, 24:11, 30:8, 38:4, 38:12, 38:15
**proximate** [3] - 32:19, 36:15, 43:12
**PTO** [2] - 39:3, 39:4
**public** [3] - 5:13, 9:6, 21:16
**pull** [1] - 16:7

**pulled** [1] - 41:9
**pump** [1] - 20:10
**pumping** [1] - 20:11
**PureWick** [49] - 2:18, 5:12, 5:24, 6:1, 6:7, 6:8, 6:9, 6:13, 6:15, 6:21, 6:23, 9:14, 9:21, 10:3, 10:7, 10:13, 12:7, 13:17, 18:13, 19:21, 20:16, 21:14, 21:15, 21:22, 21:24, 22:6, 22:7, 22:9, 26:2, 26:14, 26:15, 26:22, 26:24, 27:3, 27:24, 28:7, 28:15, 38:22, 46:1, 46:2, 46:10, 49:8, 49:16, 50:3, 51:10
**PUREWICK** [1] - 1:4
**PureWick's** [14] - 4:19, 7:3, 7:7, 7:15, 10:14, 11:22, 12:22, 14:14, 26:1, 26:2, 27:13, 27:15, 28:22, 32:9
**purpose** [1] - 48:5
**purposefully** [1] - 9:15
**purposes** [3] - 27:25, 39:17, 41:20
**pushed** [1] - 43:19
**put** [4] - 27:9, 33:19, 38:10

**Q**

**Qualcomm** [1] - 19:11
**quantity** [1] - 18:4
**quarter** [1] - 9:3
**questionable** [1] - 39:24
**questions** [3] - 35:5, 40:4, 42:22
**QUINN** [1] - 1:22
**Quinn** [1] - 2:18
**quote** [1] - 42:17
**quotes** [1] - 39:15

**R**

**rate** [1] - 36:5
**rather** [5] - 8:18, 46:22, 48:6, 49:21, 50:21
**re** [1] - 19:14
**reaching** [1] - 40:1
**read** [21] - 10:7, 12:14, 13:19, 15:3, 16:7, 16:15, 21:3, 22:11, 22:12, 23:2, 23:23,

23:25, 24:25, 37:4, 42:13, 46:2, 46:7, 47:24, 48:10, 48:23, 48:24
**reading** [1] - 13:10
**reads** [2] - 11:22, 11:23
**real** [1] - 28:22
**really** [4] - 7:6, 36:13, 41:24, 45:10
**reason** [4] - 9:23, 41:1, 43:9, 48:4
**reasons** [1] - 43:6
**receive** [1] - 18:15
**received** [1] - 4:15
**receives** [1] - 19:21
**receiving** [1] - 3:10
**recess** [1] - 44:19
**recite** [1] - 19:23
**recites** [4] - 4:10, 4:11, 4:14, 12:18
**recognize** [2] - 32:3, 34:23
**recognized** [2] - 16:2, 35:6
**reconcile** [1] - 26:25
**record** [2] - 45:25, 46:8
**refer** [3] - 5:3, 10:11, 46:23
**reference** [14] - 6:10, 8:12, 8:15, 8:23, 14:12, 20:8, 20:24, 21:9, 24:4, 25:20, 26:15, 41:18, 48:12, 49:9
**referenced** [1] - 20:23
**references** [2] - 27:7, 46:4
**referencing** [1] - 8:24
**referred** [3] - 8:13, 21:18, 49:17
**referring** [6] - 8:8, 11:18, 14:12, 20:9, 25:10
**refers** [5] - 5:8, 11:19, 16:5, 20:21, 47:22
**reflect** [1] - 18:2
**regarding** [4] - 46:3, 51:10
**regardless** [2] - 6:14, 14:13
**regards** [1] - 2:20
**rejected** [1] - 21:9
**rejection** [1] - 48:14
**related** [1] - 32:10
**relating** [1] - 32:11
**relevant** [2] - 26:4, 32:4
**relying** [1] - 22:10

**remind** [2] - 37:22, 38:1
**removed** [2] - 35:16, 35:18
**removing** [1] - 48:6
**repeatedly** [10] - 3:15, 4:8, 5:2, 5:7, 8:13, 8:15, 20:21, 21:18, 24:9, 27:25
**report** [3] - 39:14, 42:17, 51:2
**Reporter** [1] - 52:3
**requests** [1] - 50:25
**require** [4] - 7:16, 12:10, 47:14, 47:24
**required** [5] - 17:25, 27:21, 37:10, 48:4, 50:11
**requires** [2] - 19:24, 46:22
**requiring** [1] - 48:9
**reservoir** [153] - 3:14, 4:10, 4:13, 4:15, 4:19, 5:3, 5:4, 5:8, 5:13, 5:22, 6:10, 6:14, 6:23, 7:2, 7:9, 7:17, 8:4, 8:10, 8:25, 9:3, 9:4, 9:5, 9:7, 9:17, 9:20, 9:22, 10:11, 11:12, 11:20, 12:11, 12:12, 13:7, 13:11, 13:13, 13:20, 13:24, 14:2, 15:4, 15:10, 15:13, 15:15, 16:17, 17:4, 17:8, 17:23, 17:25, 18:1, 19:3, 19:6, 19:7, 19:20, 19:24, 19:25, 20:1, 20:4, 20:5, 20:21, 20:25, 21:10, 21:12, 21:15, 21:16, 22:21, 22:23, 23:1, 23:14, 24:5, 24:9, 24:12, 24:16, 24:20, 25:5, 25:7, 26:6, 26:18, 27:13, 27:19, 27:21, 28:1, 28:4, 28:10, 28:11, 29:4, 29:5, 29:21, 30:4, 31:1, 31:20, 32:16, 32:17, 32:20, 32:22, 33:4, 33:21, 34:6, 35:7, 36:12, 36:15, 36:23, 37:2, 37:4, 37:14, 37:19, 38:3, 38:4, 38:5, 40:13, 40:16, 40:18, 40:19, 40:23, 41:2, 41:19, 42:5, 42:8, 43:6, 43:12, 43:14, 43:15,

44:3, 44:7, 44:8,
45:2, 45:13, 46:13,
46:14, 46:22, 46:24,
47:17, 47:20, 47:23,
47:25, 48:1, 48:15,
48:19, 49:4, 49:10,
49:11, 49:17, 49:20,
49:22, 50:5, 50:6,
50:11, 50:12, 50:16
**reservoirs** [4] - 32:14,
32:22, 32:25, 33:1
**respect** [4] - 25:14,
27:4, 34:23, 34:25
**respond** [1] - 40:8
**response** [1] - 45:8
**rest** [2] - 19:8, 23:3
**result** [2] - 13:4, 13:6
**resulted** [1] - 44:24
**retains** [1] - 44:2
**reviewed** [2] - 45:24,
45:25
**rise** [1] - 51:23
**ROBERT** [1] - 2:7
**Robert** [1] - 2:25
**room** [1] - 48:19
**rule** [3] - 45:16, 45:18,
50:18
**ruling** [2] - 46:7, 46:11
**rulings** [1] - 45:20
**RYAN** [1] - 2:6
**Ryan** [1] - 3:1

## S

**SAGE** [1] - 1:7
**Sage** [6] - 2:24, 3:4,
3:6, 7:16, 38:19,
46:1
**Sage's** [1] - 4:20
**SAMANTHA** [1] - 2:3
**Samantha** [1] - 3:2
**satisfying** [1] - 9:24
**SCHARFF** [59] - 2:6,
3:5, 3:18, 3:21, 3:24,
4:2, 4:6, 4:8, 7:14,
7:19, 8:1, 8:7, 8:20,
9:11, 9:13, 10:25,
11:7, 11:17, 12:1,
13:16, 13:23, 14:7,
14:10, 14:18, 14:21,
15:7, 15:12, 15:14,
15:19, 16:3, 16:9,
16:12, 17:2, 17:12,
17:21, 18:23, 19:8,
19:13, 19:15, 20:8,
21:24, 22:4, 22:25,
23:3, 23:10, 23:18,
23:25, 24:23, 25:2,
25:17, 27:10, 27:20,
40:8, 40:10, 41:17,

42:16, 51:5, 51:7,
51:18
**Scharff** [2] - 2:25, 3:6
**scope** [1] - 45:4
**seated** [2] - 2:14,
44:21
**second** [6] - 7:12,
12:6, 13:12, 29:3,
41:21, 48:10
**secondly** [1] - 43:5
**secretion** [5] - 5:15,
21:17, 23:15, 23:21,
48:17
**section** [1] - 46:9
**sectional** [1] - 24:11
**see** [5] - 9:14, 9:21,
22:8, 26:16, 30:16
**seeing** [1] - 42:11
**seem** [1] - 31:21
**semantic** [1] - 5:25
**send** [1] - 2:20
**sentence** [3] - 14:10,
22:9, 22:10
**separate** [6] - 7:17,
7:20, 36:24, 38:15,
43:8, 50:11
**set** [2] - 46:12, 51:9
**several** [2] - 18:13,
18:15
**shape** [7] - 11:12,
15:5, 16:17, 17:11,
17:13, 47:17, 48:1
**Shaw** [2] - 2:16, 2:18
**SHAW** [3] - 1:19, 1:20,
2:17
**SHEA** [1] - 2:3
**Sheldon** [1] - 14:23
**shifting** [2] - 28:15,
49:8
**show** [4] - 11:6, 24:16,
30:1, 31:24
**showed** [1] - 30:20
**shows** [2] - 14:12,
27:3
**significant** [1] - 6:3
**similar** [1] - 13:7
**similarly** [1] - 24:16
**simply** [6] - 4:19, 5:15,
5:22, 14:24, 18:17,
30:2
**simultaneous** [1] -
31:19
**simultaneously** [2] -
35:16, 35:18
**single** [1] - 25:20
**situation** [2] - 36:7,
40:2
**size** [6] - 11:12, 15:5,
16:17, 17:11, 47:17,
48:1

**sized** [4] - 17:15,
17:17, 17:18, 26:6
**skill** [2] - 4:1, 4:4
**skilled** [3] - 13:14,
14:4, 49:5
**slide** [35] - 3:7, 3:12,
4:16, 4:25, 5:6, 5:10,
5:16, 6:19, 7:11,
8:20, 9:13, 9:25,
12:5, 16:3, 17:22,
18:5, 18:7, 20:13,
21:5, 21:13, 22:22,
25:24, 26:11, 26:13,
27:23, 28:6, 28:13,
30:20, 40:11, 41:22,
41:23, 42:4, 43:17
**small** [4] - 17:6, 17:18,
35:17, 47:21
**sorry** [6] - 14:18,
14:21, 16:12, 19:15,
25:24, 44:20
**sort** [1] - 43:5
**sound** [1] - 19:21
**space** [89] - 6:9, 6:12,
6:14, 7:4, 7:5, 7:6,
8:14, 8:18, 8:19,
8:21, 8:23, 9:1, 9:10,
9:17, 11:8, 11:9,
12:15, 22:12, 22:15,
22:24, 23:2, 23:13,
23:24, 24:3, 24:10,
24:13, 25:4, 25:7,
25:9, 26:19, 28:11,
29:11, 29:14, 29:18,
30:5, 32:12, 33:8,
33:11, 33:12, 34:9,
34:12, 34:14, 34:15,
35:23, 35:25, 36:12,
36:13, 36:17, 36:22,
37:1, 37:3, 37:5,
37:6, 37:14, 37:18,
37:19, 37:25, 38:3,
38:7, 38:14, 39:17,
41:1, 41:2, 41:25,
42:2, 42:3, 42:8,
42:19, 42:21, 42:25,
43:8, 43:13, 43:21,
43:22, 43:24, 44:3,
44:11, 48:18, 48:24,
49:25, 50:7, 50:9,
50:16, 51:20
**spacing** [1] - 21:20
**spec** [2] - 14:15, 36:1
**specific** [4] - 12:18,
13:1, 21:17, 32:18
**specifically** [11] -
5:12, 10:11, 10:18,
11:1, 21:15, 26:5,
26:16, 32:16, 40:18,
42:1, 50:8

**specification** [21] -
5:7, 10:10, 11:11,
11:19, 15:4, 15:24,
16:4, 18:21, 19:6,
20:20, 22:11, 24:18,
30:1, 31:15, 31:16,
31:19, 35:15, 47:16,
48:23
**specifics** [2] - 19:12,
19:16
**spots** [1] - 26:23
**stand** [1] - 27:12
**standard** [1] - 46:9
**STARGATT** [1] - 2:2
**start** [4] - 2:14, 3:3,
3:7, 16:23
**started** [1] - 17:1
**starting** [1] - 16:16
**starts** [1] - 35:7
**state** [1] - 45:24
**statement** [5] - 15:19,
39:19, 40:1, 46:25,
48:1
**statements** [2] -
13:17, 47:24
**states** [2] - 24:18,
47:16
**STATES** [1] - 1:1
**States** [1] - 1:15
**stating** [2] - 45:20,
48:22
**status** [1] - 51:8
**stenographic** [1] -
52:1
**still** [5] - 8:2, 8:7, 10:7,
40:25, 51:14
**stirring** [1] - 34:21
**storage** [1] - 20:10
**store** [2] - 18:4, 41:10
**stored** [1] - 12:4
**storing** [1] - 14:13
**Street** [1] - 1:12
**structure** [4] - 4:21,
5:3, 5:23, 6:22, 7:16,
7:17, 7:20, 7:21,
7:23, 7:25, 8:2, 8:6,
8:8, 8:9, 8:12, 8:19,
9:1, 9:7, 11:10, 12:8,
12:11, 12:18, 12:19,
12:20, 13:1, 14:9,
19:25, 20:16, 20:21,
22:16, 22:18, 25:12,
26:17, 28:1, 28:9,
29:12, 29:16, 29:19,
29:22, 29:23, 30:6,
30:7, 30:8, 37:23,
37:24, 37:25, 38:6,
38:10, 38:12, 38:13,
38:14, 38:15, 38:21,
38:24, 39:4, 40:24,

46:18, 46:24, 50:8,
50:10, 50:11, 50:13
**structures** [4] - 8:16,
8:24, 21:19, 22:16
**stuff** [1] - 22:3
**stuffing** [4] - 7:5, 25:7,
28:12, 32:12
**submit** [1] - 51:14
**submitted** [1] - 46:4
**subsequent** [2] -
47:24, 48:21
**sucked** [2] - 35:21,
35:25
**suggested** [2] - 34:3,
39:7
**suggesting** [1] - 31:21
**suggestion** [1] - 38:8
**suggests** [1] - 47:13
**suitable** [4] - 11:12,
15:5, 17:11, 47:17
**SULLIVAN** [1] - 1:22
**sump** [9] - 20:5, 20:9,
20:10, 20:11, 26:6,
35:11, 42:25, 47:23
**support** [23] - 4:12,
5:2, 9:18, 9:20, 9:23,
11:14, 14:1, 24:14,
24:17, 24:20, 32:19,
33:4, 33:11, 36:14,
36:17, 36:24, 37:20,
43:9, 43:11, 47:19,
48:11, 48:20, 50:15
**supported** [2] - 47:1,
47:15
**supports** [2] - 4:24,
48:25
**supposed** [5] - 10:23,
15:25, 16:25, 22:2,
31:18
**surface** [1] - 32:14
**SURRETTE** [1] - 2:7
**Surrette** [1] - 2:25
**surrounded** [2] -
43:19, 43:21
**switched** [1] - 28:8
**synonym** [1] - 10:23
**synonymous** [1] -
31:11
**synonyms** [3] - 10:21,
31:7, 47:10

## T

**talks** [3] - 19:7, 31:16,
35:15
**tangible** [2] - 20:21,
28:9
**TAYLOR** [1] - 2:2
**teaches** [1] - 31:19
**temporarily** [6] -

14:11, 16:19, 17:4, 35:11, 36:4, 47:22
**temporary** [1] - 35:18
**term** [28] - 3:13, 3:14, 3:20, 4:8, 4:18, 5:18, 6:6, 6:20, 13:7, 18:1, 22:11, 23:1, 29:4, 30:3, 30:4, 31:9, 37:4, 38:22, 44:23, 45:2, 45:4, 46:5, 46:13, 46:16, 46:22, 47:2, 48:24
**terms** [3] - 27:21, 31:11, 39:5
**terribly** [1] - 14:6
**test** [1] - 3:25
**testified** [7] - 4:3, 26:2, 27:12, 29:9, 41:12, 49:3, 49:19
**testify** [2] - 34:14, 43:2
**testimony** [4] - 15:1, 41:14, 49:22, 50:3
**THE** [90] - 1:1, 1:2, 1:15, 2:13, 2:22, 3:3, 3:17, 3:19, 3:22, 3:25, 4:3, 4:7, 7:12, 7:15, 7:21, 8:3, 8:17, 9:9, 9:12, 10:20, 11:6, 11:11, 11:24, 13:9, 13:19, 14:2, 14:8, 14:17, 14:19, 15:3, 15:10, 15:13, 15:15, 15:21, 16:6, 16:11, 16:14, 17:9, 17:13, 18:19, 19:3, 19:10, 19:14, 20:3, 21:21, 21:25, 22:23, 23:1, 23:6, 23:16, 23:20, 24:7, 24:24, 25:14, 27:6, 27:18, 29:3, 29:8, 29:11, 29:16, 29:21, 30:10, 30:19, 31:3, 31:24, 32:3, 32:9, 32:21, 33:7, 33:15, 33:25, 34:12, 34:16, 34:23, 35:8, 35:19, 36:19, 37:7, 37:22, 38:17, 40:6, 40:9, 41:14, 42:10, 42:24, 43:3, 44:16, 44:20, 51:16, 51:22
**theirs** [1] - 10:2
**themselves** [1] - 5:1
**theoretically** [2] - 12:10, 13:3
**therein** [1] - 24:10
**Thesaruis.com** [1] - 10:20
**thesaurus** [1] - 47:10

**they've** [1] - 44:9
**thin** [1] - 22:19
**Third** [1] - 39:21
**third** [4] - 5:21, 7:9, 20:14, 42:16
**thorough** [1] - 45:23
**three** [2] - 5:18, 10:1
**throughout** [1] - 4:9
**today** [4] - 2:25, 46:6, 46:11, 51:3
**together** [1] - 24:1
**took** [2] - 30:18, 33:14
**top** [3] - 6:20, 22:8, 23:18
**total** [1] - 10:22
**totally** [1] - 34:7
**touched** [4] - 20:15, 26:13, 27:17, 39:11
**trace** [2] - 6:25, 9:5
**traced** [1] - 26:16
**track** [1] - 50:23
**transcript** [2] - 13:16, 52:1
**transport** [1] - 15:8
**transported** [2] - 11:13, 47:18
**treated** [3] - 30:3, 30:4, 39:12
**trial** [9] - 4:4, 26:23, 27:11, 29:9, 33:18, 43:2, 49:21, 51:16
**triangle** [1] - 44:10
**tried** [2] - 10:16, 27:3
**true** [3] - 38:23, 39:3, 52:1
**trying** [4] - 10:7, 19:21, 19:22, 32:5
**tube** [12] - 4:13, 7:5, 7:6, 12:16, 31:18, 32:13, 33:12, 35:23, 35:25, 36:4, 43:18
**turn** [8] - 3:12, 10:1, 17:22, 19:22, 20:13, 22:22, 25:24, 42:4
**two** [9] - 3:8, 3:15, 4:18, 5:19, 10:10, 23:25, 44:23, 47:7, 47:10

## U

**U.S** [1] - 52:4
**ultimately** [1] - 36:23
**unable** [1] - 2:21
**unavailable** [1] - 51:13
**unbounded** [2] - 8:12, 20:19
**under** [6] - 7:3, 12:13, 24:5, 28:14, 31:1,

32:9
**understood** [2] - 32:6, 35:3
**undetermined** [1] - 28:11
**UNITED** [1] - 1:1
**United** [1] - 1:15
**unless** [3] - 18:5, 40:4, 42:22
**unopposed** [1] - 51:15
**up** [10] - 10:20, 11:8, 16:7, 27:15, 30:20, 31:18, 31:22, 35:4, 36:17, 37:1
**urine** [81] - 3:11, 4:15, 4:20, 4:21, 5:20, 6:11, 6:15, 6:25, 7:1, 7:4, 7:7, 8:14, 10:12, 11:5, 12:9, 12:13, 15:5, 17:16, 17:17, 17:19, 17:24, 18:11, 18:15, 19:21, 20:6, 20:10, 25:3, 25:13, 26:18, 26:19, 26:20, 30:9, 31:17, 31:18, 31:19, 31:22, 32:10, 32:11, 32:12, 33:1, 33:2, 33:9, 33:10, 34:5, 34:9, 34:14, 35:16, 35:19, 35:24, 36:1, 36:2, 36:5, 37:17, 38:5, 38:13, 38:16, 38:22, 39:5, 39:16, 39:18, 39:19, 40:20, 40:21, 40:23, 41:9, 41:16, 41:18, 42:9, 46:17, 46:19, 46:22, 47:20, 47:25, 48:4, 48:5, 49:10, 49:18, 49:25, 50:16
**URQUHART** [1] - 1:22
**uses** [1] - 10:5

## V

**vacuum** [2] - 32:13, 36:2
**vague** [3] - 6:24, 9:15, 28:11
**validity** [1] - 50:1
**Van** [27] - 6:9, 10:14, 26:14, 26:17, 27:1, 27:9, 27:12, 27:14, 27:21, 28:25, 31:25, 33:16, 33:17, 34:4, 34:9, 34:19, 40:14, 40:15, 40:17, 41:11, 41:12, 41:17, 44:6, 44:13, 49:9, 50:1
**VDO** [1] - 13:6

**verdict** [3] - 40:1, 43:4, 44:25
**versus** [11] - 5:18, 6:8, 10:16, 11:8, 12:9, 18:8, 20:16, 29:11, 29:12, 30:17, 33:5
**view** [3] - 21:9, 24:12, 31:1
**Vitronics** [1] - 25:19
**void** [24] - 8:14, 8:18, 8:23, 22:12, 22:15, 23:2, 23:13, 23:24, 24:2, 24:10, 24:12, 25:4, 25:7, 25:9, 37:3, 37:5, 37:14, 37:19, 41:25, 42:2, 42:8, 42:21, 48:24
**volume** [3] - 26:7, 39:16, 49:18

## W

**wait** [1] - 15:23
**waiting** [2] - 44:20, 51:14
**wants** [2] - 6:23, 38:10
**Webster's** [11] - 22:7, 23:4, 23:20, 23:22, 24:1, 24:6, 25:11, 37:8, 37:10, 47:6, 48:15
**week** [2] - 2:20, 51:9
**whereas** [3] - 4:20, 8:12, 37:18
**wherein** [3] - 5:4, 20:25, 24:12
**whole** [1] - 48:10
**willy** [1] - 30:14
**willy-nilly** [1] - 30:14
**Wilmington** [1] - 1:13
**WILSON** [1] - 2:3
**Wilson** [1] - 3:2
**witness** [1] - 51:13
**word** [7] - 10:5, 10:6, 10:7, 10:13, 11:3, 19:5, 50:8
**words** [5] - 18:20, 24:15, 42:11, 42:12, 47:10
**World** [1] - 47:6
**worry** [1] - 30:14
**worth** [1] - 38:19
**written** [2] - 45:19, 45:22

## Y

**yesterday** [1] - 7:15
**YOUNG** [1] - 2:2
**Young** [1] - 2:24