**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PUREWICK CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 22-102-MN |
| v. | ) |
| | ) |
| SAGE PRODUCTS, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>**[PROPOSED] FINAL JURY INSTRUCTIONS**</u>

## TABLE OF CONTENTS

**Page**

I.  GENERAL ................................................................................................................1

    A.  INTRODUCTION ........................................................................................1

    B.  JURORS' DUTIES .......................................................................................2

    C.  EVIDENCE DEFINED ................................................................................3

    D.  DIRECT AND CIRCUMSTANTIAL EVIDENCE ....................................4

    E.  CONSIDERATION OF EVIDENCE ..........................................................5

    F.  CREDIBILITY OF WITNESSES ...............................................................6

    G.  EXPERT WITNESSES ...............................................................................7

    H.  DEPOSITION TESTIMONY ......................................................................8

    I.  [SAGE'S PROPOSED INSTRUCTION: SPOLIATION] ...........................9

    J.  USE OF NOTES ........................................................................................12

    K.  BURDENS OF PROOF .............................................................................13

II.  PATENT JURY INSTRUCTIONS ........................................................................14

    A.  GENERAL .................................................................................................14

    B.  THE CLAIMS OF A PATENT ..................................................................16

    C.  INFRINGEMENT – GENERALLY .........................................................18

    D.  DIRECT, [SAGE'S PROPOSAL: LITERAL] INFRINGEMENT .....................19

    E.  INDIRECT INFRINGEMENT: ACTIVE INDUCEMENT ....................22

    F.  [SAGE'S PROPOSED INSTRUCTION:   INDIRECT INFRINGEMENT: SINGLE PARTY MUST PERFORM ALL STEPS] ....................................24

    G.  INDIRECT INFRINGEMENT: CONTRIBUTORY INFRINGEMENT ...........25

    H.  WILLFUL INFRINGEMENT – '376 AND '989 PATENTS ...............27

    I.  INVALIDITY – GENERALLY .................................................................30

    J.  PERSON OF ORDINARY SKILL IN THE ART .....................................31

    K.  [SAGE'S     PROPOSED     INSTRUCTION:     INVALIDITY: INDEFINITENESS] ..................................................................................32

    L.  INVALIDITY:  WRITTEN DESCRIPTION .............................................33

III.  DELIBERATIONS AND VERDICT ......................................................................59

    A.  DELIBERATION AND VERDICT – INTRODUCTION ....................59

    B.  UNANIMOUS VERDICT .........................................................................60

C.      DUTY TO DELIBERATE ........................................................................................61

D.      SOCIAL MEDIA .................................................................................................62

E.      COURT HAS NO OPINION.................................................................................63

# I.  **GENERAL**[1]

## A.  **INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. Then we will hear the closing arguments. After that, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case. We will go over that later.

---

[1] The instructions in this section are from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

1

B.     **JURORS' DUTIES**

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

### C.    <u>**EVIDENCE DEFINED**</u>

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. They are offered solely as an aid to help you in your determination of the facts. The lawyers' questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

**D.**     **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

E.     __CONSIDERATION OF EVIDENCE__

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

F.       **CREDIBILITY OF WITNESSES**

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you. You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

### G.   <u>EXPERT WITNESSES</u>

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

### H.   <u>**DEPOSITION TESTIMONY**</u>

During the trial, certain testimony was presented to you by playing the video excerpts or reading from a deposition. The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the depositions may appear to have been edited. Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

## I.      [SAGE'S PROPOSED INSTRUCTION: SPOLIATION]

Sage contends that PureWick failed to preserve evidence after its duty to preserve arose. This failure to preserve is known as "spoliation of evidence." Spoliation is the destruction or material alteration of evidence or the failure to preserve evidence for another's use in pending or reasonably foreseeable litigation. Spoliation occurs where evidence was in a party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party.

If you find there has been spoliation, you may, but are not required, to presume that the lost evidence would have been relevant and helpful to Sage's case and/or would have been harmful to PureWick's case. Alternatively, you may infer that the evidence not produced would merely have been duplicative of, or similar to, the evidence before you. If you find spoliation, your role is to determine whether PureWick's spoliation tilted the playing field against Sage. If so, the permission given to you to infer that the missing documents would have been relevant and helpful to Sage and/or harmful to PureWick is designed to allow you to balance that playing field, should you feel it is necessary.

It is up to you to decide the extent to which the lost evidence was relevant and helpful to Sage and/or harmful to PureWick. Of course, it is impossible to know exactly what evidence was lost - although the parties have tried - so you must make these determinations to the best of your

ability based on all of the facts and circumstances of this case. You must then decide how much

weight and effect to give to your belief about spoliation in reaching your verdict. [2, 3]

---

[2] **Sage's Position**: Defendant's instruction was adapted from *GN Netcom, Inc. v. Plantronics, Inc,*, C.A. No. 12-1318-LPS, D.I. 532, § 5 (D. Del. Oct. 18, 2017); *see also Bull v. UPS,* 665 F.3d 68, 73 (3d Cir. 2012). An evidentiary instruction regarding spoliation is appropriate here. Late in discovery in *PureWick I*, Sage learned that PureWick failed to preserve a legacy email server from the original PureWick company and lost responsive information from critical time periods. (*See PWI,* D.I. 207, Ex. 18 at pp. 45, 77-78.) Contrary to PureWick's argument, spoliation has long been an issue in this case (*id.*) and there has been various discovery about it including a Rule 30(b)(6) deposition. (*PWI,* D.I. 210, Ex. 28 at ⁋57.) The lost server included legacy PureWick email from custodial witnesses identified by PureWick including named inventors of the patents-in-suit, and contained relevant evidence related to historical communications and information related to the development of the PureWick products (including relevant products never disclosed to the PTO) and the patents-in-suit. (See, e.g., *PWI,* D.I. 207. Ex. 18, at pp. 45, 77-78.) Contrary to PureWick's assertion below, the Court never rejected a spoliation instruction in *PureWick I*. To the contrary, the instruction was no longer necessary based on how the evidence was limited at trial.

"Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull,* 665 F.3d at 73. There is no dispute that PureWick failed to preserve evidence, and PureWick has never provided an explanation. This issue is thus ripe for review and a corollary instruction. *GN Netcom, Inc. v. Plantronics, Inc.,* 930 F.3d 76, 83 (3d Cir. 2019) ("permissive adverse inference instruction" is a "lesser sanction); *West v. Tyson Foods,* 374 F. App'x 624, 635 (6th Cir. 2010) (spoliation instruction is "simply a formalization of what the jurors would be entitled to do even in the absence of a specific instruction."); *Mali v. Fed. Ins. Co.*, 720 F.3d 387, 393 (2d Cir. 2013).

[3] **PureWick's Position:** PureWick objects to this proposed instruction. Sage sought a similar instruction in *PureWick I*, and the Court rejected it. For the same reasons Sage's proposed instruction here should be rejected. Specifically, Sage's assertion of spoliation is premised on an email server that was lost by PureWick in 2020, years before this case was filed. Sage was made aware of this in 2020 during the prior lawsuit and Sage never raised the issue with the Court until it sought a spoliation instruction at trial, which the Court refused to give.

Sage's proposed instruction is considered a sanction under Rule 37(e)(2)(B). The sanctions discussed in Rule 37(e) are within ***the Court's*** inherent power to order. *See Citrix Sys., Inc. v. Workspot, Inc.*, No. CV 18-588-LPS, 2020 WL 5884970, at *6 (D. Del. Sept. 25, 2020). Sage never moved for sanctions under Rule 37(e) (in this case or the prior case), nor has it presented any evidence that it is entitled to such sanctions. *See Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) ("For the [spoliation] rule to apply . . . it must appear that there has been an actual suppression or withholding of the evidence. No unfavorable inference arises when the circumstances indicate that the document or article in question has [merely] been lost or

accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.").
Moreover, the Court may order sanctions under Rule 37(e) only "upon finding prejudice to another
party from loss of the information." Fed. R. Civ. P. 37(e)(1). And a finding of prejudice requires
the non-spoliating party to "come forward with plausible, concrete suggestions as to what the lost
evidence might have been" and a showing that the loss of this evidence "materially affect[ed] the
substantial rights of the adverse party and is prejudicial to the presentation of the case." *Monolithic
Power Sys., Inc. v. Intersil Corp.*, 2018 WL 6075046, at *1 (D. Del. Nov. 19, 2018); *CIGNEX
Datamatics, Inc. v. Lam Rsch. Corp.*, No. CV 17-320 (MN), 2019 WL 1118099, at *5 (D. Del.
Mar. 11, 2019) (finding that "***Lam's suggestion as to the potential contents of the lost emails
appears to be speculation***" and thus "there is insufficient evidence of prejudice and "a curative
measure under Rule 37(e)(1) is inappropriate") (emphasis added). Sage has never done this. Also,
***the adverse inference instruction that Sage proposes is a sanction warranted "only upon finding
that the party acted with the intent to deprive another party of the information's use in the
litigation*** . . . ." Fed. R. Civ. P. 37(e)(2)(B) (emphasis added); *see also Bull*, 665 F.3d at 79 ("[A]
finding of bad faith is pivotal to a spoliation determination."); *CIGNEX*, 2019 WL 1118099 at *4
("Lam fails to point to any facts that support a finding that CIGNEX acted in bad faith . . . as
required by Rule 37(e)(2)."). Sage has never demonstrated, nor can it, that PureWick acted with
the requisite intent to support its proposed instruction.

Finally, Sage has not identified any issue for the jury to decide in this case for which any allegedly
lost information is relevant. Thus, there is no issue to be decided by the jury for which a
presumption based on spoliation would be appropriate.

**J.**      **USE OF NOTES**

You may have taken notes during trial to assist your memory. As I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.

Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

### K.   **BURDENS OF PROOF**

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."

In a patent case such as this, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

PureWick has accused Sage of infringing claims of two patents and contends that the infringement of the two patents was willful. PureWick has the burden of proving its claims for infringement, willfulness, and the amount of monetary damages by a preponderance of the evidence. This means PureWick has to produce evidence which, when considered in light of all the facts, leads you to believe that what PureWick claims is more likely true than not. To put it differently, if you were to put PureWick's and Sage's evidence on the opposite sides of the scale, the evidence supporting PureWick's claims would have to make the scales tip somewhat to its side. If the scale should remain equal or tip in favor of Sage, you must find for Sage.

In addition to denying PureWick's claims that it infringes, Sage asserts that all of the asserted patent claims are invalid. Sage has the burden of proving that the asserted claims are invalid and has to do so by clear and convincing evidence. Clear and convincing evidence is evidence that persuades you that what Sage seeks to prove is highly probable. Proof by clear and convincing evidence is thus a higher burden of proof than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases. That requirement is the highest burden of proof in our judicial system. It applies in criminal cases, but does not apply to civil cases, like this one, and, therefore, you should put it out of your mind.

II.   **PATENT JURY INSTRUCTIONS**

A.   **GENERAL**[4]

PureWick contends that Sage literally infringes claims 1, 5, 9, and 10 of the '376 patent by making, using, offering to sell, and selling the PrimaFit 2.0 device. PureWick also contends that Sage indirectly infringes claims 1, 5 9, and 10 of the '376 patent by inducing or contributing to infringement by others.

PureWick also contends that Sage literally infringes claims 1 through 6 of the '989 patent by Sage using the PrimaFit 2.0 device. Further, PureWick contends that Sage indirectly infringes claims 1 through 6 of the '989 patent by inducing or contributing to infringement by others.

PureWick contends that Sage has willfully infringed the '376 and '989 patents.

Sage denies all of PureWick's infringement and willfulness contentions. Sage also contends that claims 1, 5, 9, and 10 of the '376 patent and claims 1 through 6 of the '989 patent

---

[4] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

are invalid [**Sage's Proposal:** as indefinite][5, 6] and lacking written description.  Your job is to decide whether Sage has infringed each of the asserted claims and whether each asserted claim is invalid.  You will also need to make a finding as to whether any infringement of the '376 and '989 patents was willful and calculate damages if appropriate.

---

[5] **Sage's Position:** Sage proposes an instruction on indefiniteness in section K below adapted from *Agrofresh Inc. v. Essentiv LLC et al.*, No. 16-662-MN, ECF No. 575 (D. Del. December 11, 2019); *ArcherDX, LLC et al. v. Qiagen Sciences, LLC et al.*, No. 18-1019 (MN), D.I. 462 (Aug. 27, 2021); *see also IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). Indefiniteness is a question of law based on underlying fact determinations that are appropriate for the jury. *Green Edge Enters. v. Rubber Mulch Etc.*, 620 F.3d 1287, 1299 (Fed. Cir. 2010). While Sage requested summary judgment on the issue of indefiniteness, PureWick opposed it. Thus, the issue of indefiniteness remains undecided and is appropriate for jury determination. *See id.; see also Pac. Biosciences of CA, Inc. v. Oxford Nanopore Techs., Inc.*, No. CV 17-1353-LPS-CJB, 2020 WL 4699049, at *11 (D. Del. Aug. 13, 2020), aff'd, 996 F.3d 1342 (Fed. Cir. 2021) (appropriate to put indefiniteness before the jury); *Bombardier Recreational Prod. Inc. v. Arctic Cat Inc.*, 785 F. App'x 858, 866 (Fed. Cir. 2019). In this case, Sage asserts that the term "fluid reservoir at a first end," which appears in every asserted claim, is indefinite. Sage's defense requires the jury to resolve underlying fact determinations regarding whether those of skill in the art are informed with reasonable certainty regarding the "fluid reservoir at a first end" including how those of skill in the art have used and applied the limitation.

[6] **PureWick's Position:** PureWick objects to this proposal because indefiniteness is a question of law for the Court to decide. *ESCO Grp. LLC v. Deere & Co.*, No. CV 20-1679-WCB, 2023 WL 4199413, at *10 (D. Del. June 22, 2023) ("[I]ndefiniteness is a question of law that is decided by the court, frequently at the claim construction stage of a case."). Both PureWick and Sage sought leave to file motions for summary judgment on the issue of indefiniteness and both PureWick and Sage contended that there were no issues of fact and that it should be decided by the Court.  D.I. 153 at 4-5 ("there is no genuine dispute of material fact."); D.I. 163 at 5 ("[A]lthough the parties dispute in whose favor the Court should find, they agree that the issue of indefiniteness should be resolved by the Court on summary judgment.").  Notably, in opposing PureWick's request for leave to move for summary judgment of no indefiniteness Sage did not identify any alleged factual disputes. D.I. 164.  Given that Sage represented to the Court that there are no disputed issues of material fact, there is no reason for Sage to request that this issue be decided by the jury.

B.     __THE CLAIMS OF A PATENT__[7]

Before you can decide this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of a patent. The claims describe the invention and describe what the patent owner may prevent others from doing.

Patent claims may exist in two forms, referred to as independent claims or dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. For example, claim 1 of the '376 patent is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claims or claims to which it refers, as well as the additional limitations of the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers. For example, claim 5 of the '376 patent is a dependent claim. To determine what dependent claim 5 of the '376 patent covers, the words of that claim and the words of independent claim 1 of the '376 patent must be read together.

It is my job as a judge to define the terms of the claims and to instruct you about the meaning. You must apply my definitions to the issues that you are asked to decide. I have determined the meaning of the following terms of the asserted claims of the '376 and '989 patents:

- "casing having a fluid reservoir at a first end [and] . . ., a fluid outlet at a second end . . ." means "an outer cover having a fluid reservoir at a first end and a fluid outlet at a second end" ('376 Patent, claim 1; '989 Patent, claim 1);

---

[7] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

- "wicking material" means "an article that moves moisture by capillary action from one surface of the article to the other" ('376 patent, claim 9);

- "Fluid reservoir" / "reservoir" means "a space where urine can collect." ('376 Patent, claims 1, 5, and 10; '989 Patent, claims 1, 2, 3, and 6).

You must accept my definition of these words as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

For any words in the claim for which I have not provided you with a definition, you should apply their ordinary meaning in the field of the patents. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

17

## C.    <u>INFRINGEMENT – GENERALLY</u>[8]

I will now instruct you as to the rules you must follow when deciding whether PureWick has proven that Sage has infringed the patents-in-suit. The United States' patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented product or method in the United States during the term of the patent. Any person or company that has engaged in any of those acts without the patent owner's permission infringes the patent.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement of one claim but no infringement of another. In this case, there are three possible ways that a claim may be infringed. The three types are called: (1) direct infringement; (2) induced infringement; and (3) contributory infringement. Induced infringement and contributory infringement are referred to as indirect infringement. PureWick alleges that Sage has directly and indirectly infringed the asserted claims of the '376 and '989 patents.

---

[8] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

### D.      DIRECT, [SAGE'S PROPOSAL: LITERAL] INFRINGEMENT[9]

[**Sage's Proposal:**  There are two types of "direct infringement": (1) "literal infringement"
and (2) "infringement under the doctrine of equivalents." In this case, only "literal infringement"
is at issue.] [10, 11] You must determine whether PureWick has proven direct[**Sage's Proposal:**,
literal] infringement of the asserted claims of the '376 and '989 patents.

In order to prove direct [**Sage's Proposal:**, literal] infringement of the claims of the '376
patent, PureWick must prove by a preponderance of the evidence, i.e., that it is more likely than not,
that Sage made, used, offered for sale, or sold in the United States, a device that meets all of the
requirements of the asserted claims of that patent. In order to prove direct infringement of the method
claims of the '989 patent, PureWick must prove by a preponderance of the evidence, i.e., that it is
more likely than not, that Sage performed each of the steps of the asserted claims of the '989 patent.

You must determine, separately for each asserted claim of the '376 and '989 patents whether
or not there is direct [**Sage's Proposal:**, literal] infringement. There is one exception to this rule. If

---

[9] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del.
Apr. 1, 2022).

[10] **Sage's Position**: The proposed language in this paragraph and the following paragraph were
included in the Court's instruction on "Direct, Literal Infringement" that was given to the jury in
*PureWick I*.  PureWick has deleted the reference to "literal" infringement. The instruction informs
the jury that it will it decide the issue of literal infringement and not the doctrine of equivalents.
PureWick does not dispute the accuracy of the instruction. The instruction is needed here given
PureWick's improper use of the word "equivalent" including their argument and opinion that the
PrimaFit 1.0 at issue in *PureWick I* is "equivalent" to the accused PrimaFit 2.0, which Sage seeks
to exclude in its *Daubert*/motions to exclude and motions *in limine*. (D.I. 157 at 5-8; D.I. 173 at 2-
5; MIL No. 1 and 2.)

[11]     **PureWick's Position:**  PureWick objects to the discussion of doctrine of equivalents as
irrelevant and confusing since doctrine of equivalents is not at issue in this case.  The jury will not
be instructed on doctrine of equivalents and thus there is no reason to "inform[] the jury that it will
it decide the issue of literal infringement and not the doctrine of equivalents."  Likewise, repeated
reference to "literal" infringement is confusing and unnecessary given that the doctrine of
equivalents is not at issue in this case.

you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that claim. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the accused devices and methods meet additional requirements of any claims that depend from the independent claim to determine whether the dependent claims have also been infringed. Remember, a dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

To determine direct infringement of the device claims of the '376 patent, you must compare the PrimaFit 2.0 device with each asserted claim of the patent to determine whether each and every one of the requirements of a given claim is satisfied.

To determine direct infringement of the method claims of the '989 patent, you must compare any alleged use by Sage of the PrimaFit 2.0 device with each asserted method claim of the '989 patent to determine whether Sage performed each and every one of the requirements of a given method step. The '989 patent's method claims are directly infringed by Sage only if Sage performs in the United States each and every step recited in the claims.

When performing these comparisons, you should not compare the accused Sage PrimaFit 2.0 with any other Sage product, any PureWick product, or the descriptions or figures in the '376 and '989 patents.

[**PureWick's Proposal:** The same element of the accused product may satisfy more than one element of a patent claim.] [12, 13] The presence of additional elements in an accused device or

---

[12]   **PureWick's Position:**  The proposed language in this paragraph and the following paragraph were included in the Court's instruction on Direct Infringement that was given to the jury in *PureWick I.*  Given the facts in this case, they are also appropriate to include in the instruction here.

[13] **Sage's Position**: Sage objects to this instruction as inapplicable here. Unlike the prior case, here PureWick has advanced no theory where a claim element meets more than one claim element, and it cites to none. Thus, this addition is confusing and unnecessary.

method of using a device does not mean that the device or method does not infringe a patent claim. Whether or not Sage's products or use of the products represents an improvement either over the patent claims or over another device is not relevant to whether or not Sage infringes PureWick's asserted patent claims. [**PureWick's Proposal:** As long as the Accused Product includes all of the elements of an asserted patent claim, then that patent claim is infringed by the Accused Product even if that product also has additional elements.][14, 15]

[**PureWick's Proposal:** You may find direct infringement based on one instance of the claimed product being made, used, offered for sale, or sold by Sage. Proof of direct infringement may be based on circumstantial evidence.][16, 17]

---

[14] **PureWick's Position:** This instruction was included in the Direct Infringement instructions given in *PureWick I* and is relevant here because Sage has argued that it does not infringe by pointing to additional features or elements in the accused product.

[15] **Sage's Position:** Sage objects to this instruction as duplicative and redundant of a sentence appearing two sentences earlier in the same paragraph. Sage does not argue that it does not infringe "by pointing to additional features…." In any case, that does not explain the redundancy.

[16] **PureWick's Position:** This instruction was included in the Direct Infringement instructions given in *PureWick I.* Sage's argument about damages is not relevant as this instruction relates to determination of infringement, not determination of damages.

[17] **Sage Position:** Sage objects to the instruction as PureWick seeks damages on all of Sage's PrimaFit 2.0 sales and it is PureWick's burden to prove that the sales are infringing. The first sentence confusingly implies that PureWick does not have to meet its burden to prove the infringing sales. Further, the second sentence is duplicative of Section I.D above directed to direct and circumstantial evidence. It does not make sense to specifically call out "circumstantial evidence" for this instruction only.

E.    **INDIRECT INFRINGEMENT: ACTIVE INDUCEMENT**[18]

PureWick also accuses Sage of actively inducing third parties, such as hospitals and patients, to directly infringe the asserted claims of the '376, and hospitals to directly infringe the asserted claims of the '989 patent. As with direct infringement, you must determine whether there has been inducement on a claim-by-claim basis.

To find that Sage actively induced its customers to infringe, PureWick must prove by a preponderance of the evidence that:

      1.      a third-party directly infringed the asserted claims;

and that Sage actively induced these acts of infringement by third parties, meaning that:

      2.      Sage aided, instructed, or otherwise acted with the intent to cause acts by third parties that would constitute direct infringement of the asserted patents;

      3.      Sage knew of the patent at that time; and

      4.      Sage knew that the actions of third parties would infringe at least one asserted claim.

[**Sage's Proposal:** If you find that Sage was aware of the 376 and 989 patents, but believed that the acts it encouraged did not infringe that patent, Sage cannot be liable for inducement.

In order to establish induced infringement, it is not sufficient that hospitals and patients directly infringe the claim. Nor is it sufficient that Sage was aware of the acts the hospitals and patients that constitute the direct infringement. Rather, in order to find induced infringement, you must find that Sage specifically intended hospitals and patients to infringe. The mere fact, if true,

---

[18] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

that Sage knew or should have known that there was a substantial risk that another party's acts would infringe would not be sufficient for induced infringement.] [19, 20]

---

[19] **Sage's Position**: PureWick's instruction is based on the The Federal Circuit Bar Association Model Patent Jury Instructions § B.3 at 3.2 (2020) and *Bio-Rad Laboratories, Inc. et al. v. 10X Genomics, Inc*., No. 15-152-RGA, D.I. 470 (D. Del. Nov. 13, 2018), however, it omits portions of the instruction that are highly relevant to this case. It is inappropriate to provide only favorable portions of the jury instructions. This portion of the instruction is particularly necessary as PureWick has argued that Sage "should have known" it infringes, which is legally improper and Sage seeks to exclude. (D.I. 157 at 11-12.)

[20] **PureWick's Position:**  PureWick objects to this additional language, which is unnecessary and was not part of this instruction in *PureWick I*.  Sage requested that similar language be included in this instruction in *PureWick I* and the Court rejected it.  There is no reason why a different instruction should be given in this case.

**F.**   **[SAGE'S PROPOSED INSTRUCTION:  INDIRECT INFRINGEMENT: SINGLE PARTY MUST PERFORM ALL STEPS][21]**

As I explained, in order to find indirect infringement by Sage, PureWick must prove that a third party directly infringed the asserted claims. Direct infringement occurs where all steps of a claimed method are performed by or are attributable to a single party.  Sage alleges that PureWick has not shown that only hospitals (and not patients) perform all of the steps of the claims of the 989 patent. For direct infringement to be proven, PureWick must prove by a preponderance of the evidence that hospitals (and not patients) perform each step of the claimed method.

---

[21] **Sage's Position**: Contrary to PureWick's assertion below, this same instruction was not proposed and rejected in *PureWick I*. This instruction is adapted from *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 797 F.3d 1020, 1022- 24 (Fed. Cir. 2015) (en banc) and The Federal Circuit Bar Association Model Patent Jury Instructions § B.3 at 3.7 (2020) to meet the facts of this case and in view of the discussion with Court in *PureWick I*. As seen in the prior section II.E, PureWick now accuses "hospitals and patients" of directly infringing. Thus, PureWick must prove that any infringement is "attributable to a single party" (hospital) as opposed to one or more steps being performed by another entity (patient). If PureWick believes it will show that a single entity performed all of the steps of the asserted method patent then there is no risk of confusion to the jury here.

**PureWick's Position:**  PureWick objects to this instruction because PureWick is not alleging divided infringement, or that infringement is the result of the combined acts of multiple persons or companies.  The model instructions that Sage cites state that "This instruction should ***only*** be given where the patentee alleges direct infringement by the combined acts of multiple persons or companies," which is not the case here.  Indeed, Sage sought a similar instruction in *PureWick I* and the Court refused to give it because PureWick was not alleging divided infringement.  *See PureWick Corp. v. Sage Products LLC*, C.A. No. 19-1508, D.I. 329 at 997-1004.

## G.        INDIRECT INFRINGEMENT: CONTRIBUTORY INFRINGEMENT[22]

PureWick also asserts that Sage has contributed to direct infringement of the '376 patent by hospitals and patients, and the '989 patent by hospitals. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

To establish contributory infringement, PureWick must prove by a preponderance of the evidence that a third party directly infringes the claim. [**Sage's Proposal:**  As I mentioned, to find a direct infringement of a method claim, all steps of a claimed method must be performed by or attributable to a single entity.][23, 24] You must also find that the following are met to establish contributory infringement:

1.    Sage sold or offered for sale a component of a product or an apparatus for use in an infringing method during the time the 376 and 989 patents were in force;

2.    the component or apparatus is not a staple article or commodity of commerce capable of substantial non-infringing use;

---

[22] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

[23] **Sage's Position**: PureWick's instruction omits relevant portions of the instruction from the AIPLA Model Patent Jury Instructions § V at 3.10 (2019). PureWick's instruction also deviates from *ArcherDX* (which it asserted in *PureWick I* this instruction was adapted from) by omitting portions that related to the fact that it needs to prove both direct infringement and Sage's knowledge of the patent. These portions relate to the issue of divided infringement (hospitals and patients). It is wrong as a matter of law to ignore that PureWick must prove that one entity performs each step of the claimed method, particularly since two different entities are referenced in the instruction. PureWick has never proven that a single entity has performed each step of the claimed method.

[24]  **PureWick's Position:**  PureWick objects to this proposed addition, which was not included in the same instruction in *PureWick I* and is unnecessary.  PureWick is not arguing a theory of divided infringement in this case.  Sage made the same arguments about "hospitals and patients" in PureWick I and the Court correctly recognized that this does not mean hospitals do part of the infringement and patients do another part of the infringement.  *See PureWick I* Trial Tr. at 997:2-15 ("I don't see it as reading two different parties. . . . [H]ospitals and patients doesn't mean that they're arguing a nurse does part and a patient does the rest. They're saying like if Dr. Newton if she's using it, she's a user, if she were a patient, she's a patient, she's doing it.").

25

3.     the component or apparatus constitutes a material part of the claimed invention;

4.     Sage was aware of the particular patent at issue (376 patent, 989 patent); and

5.     Sage knew that the component or apparatus was especially made or adapted for use as an infringement of the claim.

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product or in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

### H.   <u>WILLFUL INFRINGEMENT – '376 AND '989 PATENTS</u>[25]

In this case, PureWick contends that Sage infringed the '376 and '989 patents willfully. If you find that Sage infringed a valid claim of the '376 and '989 patents, then you must also determine whether or not Sage's infringement was willful. To show that Sage's infringement was willful, PureWick must prove by a preponderance of the evidence that Sage knew of the asserted patents and deliberately or intentionally infringed them. You may not determine that the infringement was willful just because Sage knew of PureWick's patents without more [**Sage's Proposal:**   and infringed.   Instead, you must also find that Sage deliberately infringed each patent.][26]

In determining whether PureWick has proven that Sage's infringement was willful, you must consider all of the facts and circumstances and assess Sage's knowledge at the time the challenged conduct occurred. Facts that may be considered include, but are not limited to:

      1.    [**PureWick's Proposal:**  whether Sage had knowledge of the '376 and '989 patents;][27]

---

[25] **Sage's Statement:** The parties' incorrectly stated in their joint submission in *PureWick I* that this instruction was adapted from AIPLA Model Patent Jury Instructions § V at 3.10 (2019) (*see* D.I. 285 at 36-37 n25). Sage's proposal here corrects the errors in the parties' submission from *PureWick I* and is adapted from The Federal Circuit Bar Association Model Patent Jury Instructions § B.3 at 3.10 (2020); *see Agrofresh Inc. v. Essentiv LLC et al.*, No. 16-662-MN, ECF No. 575 (D. Del. December 11, 2019); *Cirba Inc. v. VMWare, Inc.*, No. 19-742-GBW, No. 19-742-GBW, ECF No. 1767 at 35 (D. Del. April 28, 2023).

[26]  **Sage's Position:** Sage's addition here adds the remainder of the paragraph from The Federal Circuit Bar Association Model Patent Jury Instructions § B.3 at 3.10 (2020) which was omitted by PureWick.

**PureWick's Position**:  PureWick objects to this proposed addition, which was not included in the same instruction in *PureWick I* and is unnecessary.

[27] **PureWick's Position:**  This was included in the Court's instruction in *PureWick I*.

**Sage's Position**: This statement (factor 1) added by PureWick is duplicative of a sentence that appears earlier in the first paragraph and is <u>not</u> an enumerated factor in the FCBA Model Jury instructions from which this instruction is based. Rather, as the FCBA Models recognize,

2.   whether or not Sage acted consistently with the standards of behavior for its industry;

3.   whether or not Sage intentionally copied a PureWick product that is covered by the asserted patents;

4.   whether or not Sage reasonably believed it did not infringe or that the patents were invalid;

5.   [**PureWick's Proposal:**  whether Sage knew, or should have known, that its conduct involved an unreasonable risk of infringement;][28]

6.   whether or not Sage made a good-faith effort to avoid infringing these patents, for example, whether Sage attempted to design around these patents; and

7.   whether or not Sage tried to cover up its infringement.

---

knowledge of a patent is a prerequisite to willfulness; it is not an enumerated "factor" for assessing whether infringement was deliberate.

[28] **PureWick's Position:**  This was included in the Court's instruction in *PureWick I*. This district has rejected the argument that this instruction is inconsistent with *Halo*. *See, e.g., Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579, 592 (D. Del. 2019), aff'd, 981 F.3d 1030 (Fed. Cir. 2020).(rejecting defendants' proposal "that I instruct the jury using language taken directly from *Halo Elecs., Inc. v. Pulse Elecs., Inc.*" because the plaintiff's proposed instruction that defendants "knew or should have known . . . that its conduct involved an unreasonable risk of infringement," is "a more accurate statement of the law of willful infringement."); *see also Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 491-92 (D. Del. 2019).

**Sage's Position**: This statement (factor 5) added by PureWick is not an enumerated factor in the FCBA Model Jury instructions from which this instruction is based. It ignores the ruling in *Halo* in which the Supreme Court discussed the "should have known" standard and rejected *Seagate's* objective prong. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016); *cf. Roche Diagnostics Corporation v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir. 2022); *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1366 (Fed. Cir. 2013) (jury instruction reciting "knew or should have known" standard was erroneous because it "plainly recit[ed] a negligence standard, which taken literally would allow the jury to find the defendant liable based on mere negligence where knowledge is required."), vacated on other grounds, 135 S. Ct. 1920 (2015). Notably, neither the current FCBA nor the current AIPLA model instructions reference this "should have known" standard any longer.

[**Sage's Proposal:** Copying a product which is not protected by the patent laws is not illegal and is not evidence of willful infringement.][29] If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

---

[29] **Sage's Position**: Sage's instruction clarifies that it is permissible to copy a product that is not patented, contrary to PureWick's statements below. This statement is a direct quote from. *Bioverativ Inc. et al. v. CSL Behring LLC et al*, No 17-914-RGA, 2020 WL 1332921, at *3 (D. Del. Mar. 23, 2020) (granting summary judgment of no willfulness where plaintiff failed to establish product that was "copied" was not patented). Such an instruction is necessary in this case given the numerous unpatented PureWick products in the marketplace. *Sonos, Inc. v. D&M Holdings Inc.*, 2017 WL 5633204, at *3 (D. Del. Nov. 21, 2017); *Milgo Elec. Corp. v. United Bus. Commc'ns, Inc.*, 623 F.2d 645, 665 (10th Cir. 1980).

Contrary to PureWick's off-point argument, this is not a discussion of pre-issuance copying, but an issue of whether a product at issue was ever covered by a patent.

**PureWick's Position:**  PureWick objects to this proposal by Sage, which is not in the model instructions and is also an inaccurate statement of the law.  Under Federal Circuit law, "[a] finding of willful infringement is made after considering a totality of the circumstances" including, among other things "whether the infringer deliberately copied the ideas or design of another." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (citations omitted).

The cases cited by Sage are either inapposite or taken out of context, and actually do support that evidence of copying an unpatented product is relevant as to willfulness. *See, e.g.*, *Sonos, Inc. v. D&M Holdings Inc.*, No. CV 14-1330-WCB, 2017 WL 5633204, at *4 (D. Del. Nov. 21, 2017) ("Based on that reasoning, the Court denies D&M's request for the Court to issue an absolute prohibition on the admission of any evidence of pre-issuance copying. In particular, the Court cannot, at this juncture, conclude whether Sonos's evidence demonstrates the kind of "particularly egregious behavior" that might be probative of willfulness despite occurring before the issuance of the patent. D&M's motion in limine on that issue is therefore denied"); *Milgo Elec. Corp. v. United Bus. Commc'ns, Inc.*, 623 F.2d 645, 666 (10th Cir. 1980) ("It is true that copying a competitor's product which is not protected by the patent laws is not illegal. [. . .] But unlike the cases cited by UBC to support its contention, the issue here is not infringement, but rather willfulness, that is UBC's state of mind. UBC's copying efforts would not have been actionable under the patent laws before 1970; UBC cannot be held liable for patent infringement before that time. Nevertheless, UBC's copying activities evidenced that its conduct in manufacturing and selling infringing modems after 1970 was intentional and deliberate, in willful disregard of Milgo's rights, rather than merely accidental or negligent.")

## I.      <u>INVALIDITY – GENERALLY</u>[30]

I will now instruct you on the rules you must follow in deciding whether or not Sage has proven that any asserted claims of the '376 or '989 patents are invalid.

To prove that a claim of a patent is invalid, Sage must persuade you by clear and convincing evidence.

Sage contends that the asserted claims of the '376 and '989 patents are invalid [**PureWick's Proposal:** as lacking adequate written description.] [**Sage's Proposal:** as indefinite for failing to reasonably inform those skilled in the art of about what the patent claims cover. Sage also contends that the asserted claims are invalid because the patent specification fails to adequately describe the full scope of the claimed invention. I will provide additional instructions on each of those issues.][31]

---

[30] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

[31]   **PureWick's Position:**  PureWick objects to Sage's proposal because indefiniteness is an issue of law for the Court to decide.

**Sage's Position:** Both the issues of indefiniteness and written description remain in the case as discussed above at n.5.

**J.     <u>PERSON OF ORDINARY SKILL IN THE ART</u>[32]**

As I mentioned, aspects of invalidity are determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time of the invention date. You must determine the level of ordinary skill in the field of the invention.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1.     the level of education and experience of persons actively working in the field at the time of invention, including the inventors;

2.     the types of problems encountered in the art at the time of invention;

3.     prior art solutions to those problems;

4.     rapidity with which innovations are made; and

5.     the sophistication of the technology in the art at the time of invention.

---

[32] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

### K.    [SAGE'S PROPOSED INSTRUCTION:  INVALIDITY: INDEFINITENESS][33]

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. If a claim does not meet that requirement, then the claim is said to be indefinite and is invalid.

In this case, Sage contends that the asserted claims of the '376 and '989 patents are invalid because the language "reservoir," which appears in every asserted claim, is indefinite. To prevail on that contention, Sage must show that a person of ordinary skill in the art would not understand what is and is not covered by the claims of the patent.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art, and the written description contained in the patent. Absolute clarity is not necessary. Rather, a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

---

[33] **Sage's Position**: As discussed above in footnote 5, indefiniteness involves question of fact and this issue has not been resolved on summary judgment. This instruction is adapted from *Agrofresh Inc. v. Essentiv LLC et al.*, No. 16-662-MN, ECF No. 575 (D. Del. December 11, 2019).

**PureWick's Position:**  PureWick objects to this instruction because indefiniteness is an issue of law for the Court to decide.

## L.       INVALIDITY:  WRITTEN DESCRIPTION[34]

**[PureWick's Proposal**: Sage contends that the asserted claims of the '376 and '989 patents are invalid for failure to satisfy the written-description requirement. Sage bears the burden of establishing by clear and convincing evidence that the specification fails to satisfy the written-description requirement.

A patent must contain a written description of the inventions claimed in the patent. The written-description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written-description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. When determining whether the specification discloses the invention, the claim must be viewed as a whole.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent. The written-description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims may have been changed or new claims added since that time.

The exact words found in the claim need not be used. It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; but enough must be included in the specification to convince persons of ordinary skill in the art that the inventor

---

[34] Adapted from *ArcherDX v. Qiagen Sciences*, No. 18-cv-1019-MN, ECF No. 462 (D. Del. Aug. 27, 2021).

possessed the full scope of the invention. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1. the nature and scope of the patent claims;

2. the complexity, predictability, and maturity of the technology at issue;

3. the existing knowledge in the relevant field; and

4. the scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.

If you find that Sage has proven by clear and convincing evidence that an asserted claim of the '376 or '989 patents does not contain adequate written description for the inventions recited in claim, then you must find that claim invalid.][35]

**[Sage's Proposal**: The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventors were in possession of the full scope of claimed invention as of the patent's filing date.

In this case, Sage contends that the asserted claims of the '376 and '989 patents are invalid because the specifications of the patents do not contain an adequate written description of the term "reservoir," which appears in every asserted claim. To succeed, Sage must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specifications as of the filing dates would not have recognized that the inventors described the full

---

[35] Adapted from *ArcherDX v. Qiagen Sciences*, No. 18-cv-1019-MN, ECF No. 462 (D. Del. Aug. 27, 2021).  *See also* AIPLA Model Patent Jury Instructions § V at 9 (2024); 35 U.S.C. § 112; *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361–63 (Fed. Cir. 2011); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351–52 (Fed. Cir. 2010) (en banc); *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1365–67 (Fed. Cir. 2006); *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 922–28 (Fed. Cir. 2004); *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1560–65 (Fed. Cir. 1991).

scope of the invention as it is finally claimed in the asserted claims. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patents satisfy this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the filing dates. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. It is not sufficient that the specifications disclose only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specifications. Adequate written description does not require either examples or an actual reduction to practice of the claimed inventions. However, a mere wish or plan for obtaining the claimed inventions is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.][36]

---

[36] Unlike PureWick's mixed-bag jury instruction, Sage's proposal follows the Federal Circuit Bar Association Model Patent Jury Instructions § B.4.2 at 4.2a (2020); *see also Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *Layne Christensen Co. v. Bro-Tech Corp.*, 839 F. Supp. 2d 1203, 1248 (D. Kan. 2011). The only variance is to set forth Sage's contention.

## DAMAGES

### A.     DAMAGES – GENERALLY[37]

I will next instruct you on damages. You must not take these instructions as implying my view about which party is entitled to your verdict in this case. Instructions regarding the measure of damages are given for your guidance in the event you find in favor of PureWick in the case in accordance with the other instructions.

I previously told you which products and methods PureWick accuses of infringing each of the patents. If you find that the PrimaFit 2.0 infringes any of the asserted claims of the '376 patent or that the use of PrimaFit 2.0 infringes any of asserted claims of the '989 patent, you must determine the amount of damages to be awarded to PureWick for the infringement. On the other hand, if you find that each of the asserted patent claims is invalid or is not infringed, then PureWick is not entitled to any damages, and you should not consider damages in your deliberations.

PureWick must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely than not.

If proven by Plaintiff, damages must be in an amount adequate to compensate PureWick for the infringement. The purpose of a damages award is to put PureWick in about the same financial position it would have been in if the infringement had not happened. But the damages award cannot be less than a reasonable royalty. You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

---

[37] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).  PureWick has updated the relevant devices and patent claims.

Damages are awarded on the sales of products that you find infringe or are used in a direct infringement.

While PureWick is not required to prove the amount of their damages with mathematical precision, PureWick must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My instructions about damages are for your guidance only in the event you find in favor of PureWick. You will need to address damages only if you find that one or more of the asserted claims are both not invalid and infringed.

**B.**     **DAMAGES – KINDS OF DAMAGES**[38]

There are several kinds of damages that are available for patent infringement.

One kind of damages is lost profits, that is, the additional profits that the patentee would have made if the defendant had not infringed. You may hear this referred to as the "but for" test—which means, "What profits would the patent owner have made 'but for' the alleged infringement?"

Another kind of patent damages is a reasonable royalty. A reasonable royalty is the amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and that the patent owner would have accepted. A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

In this case, for the '376 and '989 patents, PureWick seeks either (1) lost profits, with a reasonable royalty for PrimaFit 2.0 products on which lost profits are not awarded, or (2) a reasonable royalty for all the alleged infringement of its '376 and '989 patents.

Regardless of the type of damages you may choose to award, you must be careful to ensure that an award is no more and no less than the value of the patented invention.

---

[38] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022). PureWick has updated the relevant devices and patent claims.

### C.   <u>LOST PROFITS – "BUT FOR" TEST</u>[39]

PureWick is seeking lost profits damages in this case in connection with Sage's sales of the PrimaFit 2.0.

To prove lost profits, PureWick must show a causal relationship between the infringement and PureWick's loss of profit. In other words, PureWick must show that, but for the infringement, there is a reasonable probability that PureWick would have earned additional profits for the sale of its product. In this case, PureWick is alleging lost profit damages related to lost sales of its PureWick Female External Catheter product as a result of Sage selling the PrimaFit 2.0 product. PureWick must prove this by a preponderance of the evidence, more likely than not. Part of your job is to determine what the parties who purchased the allegedly infringing product from Sage would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by PureWick, not the profits, if any, made by Sage on the allegedly infringing sales.

PureWick has proven lost profits if you find that PureWick has proven each of the following four factors by the more likely than not standard:

1.    There was a demand for the patented product.

2.    There was no available, acceptable, noninfringing substitute products.

3.    PureWick had the manufacturing and marketing capacity to make any infringing sales actually made by Sage and for which the PureWick seeks an award of lost profits – in other words, that PureWick was capable of satisfying the demand.

4.    The amount of profit that PureWick would have made if it were not for Sage's infringement.

I will explain each of these factors shortly.

---

[39] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).  PureWick has updated the relevant devices and patent claims.

**D.**     **LOST PROFITS – DEMAND**[40]

The first factor asks whether there was demand for the patented product in the relevant market. PureWick can prove demand for the patented product by showing significant sales of PureWick's own patented product. PureWick also can prove demand for the patented product by showing significant sales of Sage's product that is covered by one or more of the asserted claims of the '376 or '989 patents. To use sales of Sage's product as proof of this demand, however, PureWick's and Sage's products must be sufficiently similar to compete against each other in the same market or market segment.

---

[40] This instruction is from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

E.   **LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTE PRODUCTS[41]**

The second factor asks whether non-infringing, acceptable substitutes for PureWick's

product [**PureWick's Proposal:** competed with Sage's infringing product in the marketplace;

**Sage's Proposal:** exist][42, 43] and the impact of such substitutes on the marketplace absent the sale

of Sage's products. If you find that competitors other than PureWick (including Sage) would likely

---

[41] This instruction is from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

[42]   **PureWick's Position:**  PureWick's proposed language is the language used by the Court in this same instruction in *PureWick I*. PureWick's proposed language is also consistent with the 2024 AIPLA Model Patent Jury Instructions, 10.2.1.4. Sage's reliance on *Presidio* and *Grain Processing* is misplaced.  In *Presidio*, an acceptable non-infringing alternative was actually on the market and competing. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017) ("[H]ere, the alternative was on the market. The undisputed evidence shows ATC sold 88,000 [units of a non-infringing alternative].") Similarly, in *Grain Processing* the court expressly stated that "[w]hen an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time." *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). To overcome that inference, an infringer must provide "proper economic proof of availability," which proof existed in that case, including, among other things, that the infringer had previously offered and sold a non-infringing alternative product. *Id.* at 1355-1356 (Fed. Cir. 1999).  By contrast, the purported acceptable non-infringing alternatives that Sage asserts "exist" in its arsenal, have never been offered by Sage. Sage's proposal thus risks misleading the jury into believing that a product that speculatively could exist is an actual non-infringing alternative. *C.f Id.* at 1353 ("Mere speculation or conclusory assertions will not suffice to overcome the inference. After all, the infringer chose to produce the infringing, rather than noninfringing, product. Thus, the trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement.")

[43] **Sage's Position:** The requirement that a non-infringing alternative "competed with Sage's infringing product in the marketplace" is legally inaccurate. *Presidio* expressly states that the "correct inquiry . . . is whether a non-infringing alternative would be acceptable compared to the patent owner's product, not whether it is a substitute for the infringing product." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017).  PureWick's discussion of *Presidio* is off-point. Moreover, an acceptable non-infringing alternative does not have to be on the market to be available, contrary to PureWick's proposed instruction. *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1356 (Fed. Cir. 1999) ("an acceptable substitute not on the market during the infringement may nonetheless become part of the lost profits calculus and therefore limit or preclude those damages").

have captured some or all of the sales of the allegedly infringing products, even despite a difference in the products, then PureWick is not entitled to lost profits on those sales.

To be an acceptable, noninfringing substitute, a product must not infringe the patent and must have had one or more of the advantages of the patented invention that were important to people who purchased the infringing products. The acceptable substitute may be a product that involved a modification of the infringing product to avoid infringement or the removal of at least one feature of the invention from the product. The acceptable substitute must have been available during the damages period. The acceptable substitute may be available despite not actually having been sold at that time. But, if the acceptable substitute was not sold during the damages period, then Sage must show by a preponderance of the evidence that, during the damages period, a competitor or Sage had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute. If you determine that some of Sage's customers would just as likely have purchased an acceptable non-infringing substitute, then PureWick has not shown it lost those sales but for Sage's infringing sales.

If purchasers of Sage's products were motivated to buy that product because of features only available from that product and PureWick's patented product, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with PureWick's and Sage's products. On the other hand, if the realities of the marketplace are that competitors other than PureWick would likely have captured the sales made by Sage, despite a difference in the products, then PureWick is not entitled to lost profits on those sales.

Even if you find that PureWick's and Sage's products were the only ones with the advantages of the patented invention, PureWick is nonetheless required to prove to you that PureWick, in fact, would have made Sage's infringing sales.

42

Factors suggesting an acceptable substitute was not available include whether the material was of such high cost as to render the acceptable substitute unavailable and whether an alleged infringer had to design or invent around the patented technology to develop an alleged substitute.

### F.   <u>LOST PROFITS – CAPACITY</u>[44]

The third lost profits factor asks whether PureWick had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Sage's infringement. PureWick must prove that it could have supplied the additional products needed to make the sales it said it lost, or that someone working with PureWick could have supplied the additional products. PureWick also must prove that it more likely than not had the ability to market and sell these additional products.

---

[44] This instruction is from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

### G.    <u>LOST PROFITS – AMOUNT OF PROFIT</u>[45]

PureWick may calculate the amount of its lost profits by calculating its lost sales and subtracting from that amount any additional costs or expenses that PureWick would have had to pay to make the lost sales. The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty.

---

[45] This instruction is from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

### H.    LOST PROFITS – MARKET SHARE

If you find that PureWick would have made some, but not all, of Sage's sales but for Sage's infringement, the amount of sales that PureWick lost may be shown by proving PureWick's share of the relevant market, excluding infringing products.

[**PureWick's Proposal**: PureWick may be awarded a share of profits equal to its market share even if there were noninfringing substitutes available. It is not necessary for PureWick to prove that PureWick and Sage were the only two suppliers in the market for PureWick to demonstrate entitlement to lost profits.  In determining PureWick's market share, the market must be established, which requires determining which products are in that market.   Products are considered in the same market if they are considered "sufficiently similar" to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.[46]]

---

[46] **PureWick's Position:**  This instruction is consistent with Federal Circuit Bar Model Patent Jury Instructions, B.5.2 Lost Profits – Market Share, and with Final Jury Instruction VIII.D.7 given by the Court in *Agrofresh, Inc. v. Essentiv LLC et al.*, C.A. No. 16-662-MN, D.I. 575 (D. Del. Oct. 11, 2019); *see also NCR Corp. v. Documotion Research, Inc.* No. 14-395-GMS, D.I. 131-1 (D. Del. Jun. 8, 2016). Sage's proposed instruction purports to improperly place the burden of proof on Purewick to demonstrate not only what products are in the relevant market, but which products are excluded from the market, even where Sage has yet to meet its burden that an alleged alternative that was not on the market is nonetheless an acceptable noninfringing substitute. Indeed, Sage's characterization of *Grain Processing* turns the holding of that case on its head. Under *Grain Processing*, "[w]hen"—as here—"an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute. . . . The *accused infringer then has the burden to overcome this inference*. . . .  Mere speculation or conclusory assertions will not suffice to overcome the inference." *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) (emphasis added). Thus, the burden is on Sage to demonstrate that its purported non-infringing acceptable alternatives belong in the analysis, not on Purewick to demonstrate that they do not, or to demonstrate hypothetically what market share those hypothetical products would have garnered.  Sage's reliance on the *Fuji Film* case is likewise misplaced, as there the court, applied *Grain Processing* and determined that the infringer had satisfied its burden of proof regarding non-infringing acceptable alternatives under "the unique circumstances of this case." *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455 (D.N.J. 2003).

[**Sage's Proposal:** The burden is on PureWick to prove that it is more likely than not that its product competed in the same market as Sage's PrimaFit 2.0, and that PureWick would have made a portion of the allegedly infringing sales equal to at least PureWick's share of that market but for Sage's infringement. It is not necessary for PureWick to prove that PureWick and Sage were the only two suppliers in the market for PureWick to demonstrate entitlement to lost profits.][47]

---

[47] **Sage's Position:** Sage's proposed instruction is consistent with the language of the 2019 AIPLA Model Patent Jury Instructions, 10.2.1.5. The AIPLA Model Instruction more clearly presents the burden for proving market share. Moreover, PureWick has omitted relevant language from the FCBA instruction B.5.2 that relates to the burden being on PureWick to prove market share (e.g., "*If a patent holder establishes* …."). PureWick states that Sage "improperly place[s] the burden of proof on PureWick to demonstrate not only what products are in the relevant market, but which products are excluded from the market." The burden is on PureWick to prove its alleged market share and the AIPLA instructions make this clear. *BIC Leisure Prods. V. Windsurfing Int'l*, 1F.3d 1214, 1219 (Fed. Cir. 1993) ("[A] patent owner may satisfy the second Panduit element by substituting proof of its market share for proof of the absence of acceptable substitutes."); *Fuji Photo*, 249 F. Supp. 2d at 454 (Patentees may "substitute proof of the patentee's market share for the second Panduit factor."); *Sonos v. D and M Holdings, Inc.*, 297 F. Supp. 3d 501, 518 (D.Del. 2017) ("The market share approach allows a patentee to 'satisfy the second Panduit element").

 Additionally, the language in PureWick's instruction is not appropriate for this case. PureWick's instruction states that "[i]n determining PureWick's market share, the market must be established, which requires determining *which products are in that market.*" In this case, Sage asserts that it had acceptable noninfringing design alternatives available that it could have implemented. The Federal Circuit has held that "the availability of substitutes invariably will influence the market forces defining [the] 'but for' marketplace"…[and] a substitute need not be openly on sale to exert this influence." *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1356 (Fed. Cir. 1999); *Fuji Photo Film Co. Ltd. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434 (D.N.J. 2003)(where an accused infringer could have sold a non-infringing alternative," the patentee's "proof of its own market share, without more, is insufficient as a matter of law to support a reasonable probability of 'but for' causation of lost profits."). The AIPLA language which focuses on PureWick's burden to prove whether it "would have made a portion of the allegedly infringing sales equal to at least PureWick's share of that market but for Sage's infringement" is more appropriate where, like in this case, the accused infringer has acceptable noninfringing alternatives that it could have implemented.

## I.    <u>REASONABLE ROYALTY – ENTITLEMENT</u>[48]

If you find that a patent claim is infringed and not invalid, PureWick is entitled to at least a reasonable royalty to compensate it for that infringement.

For the PrimaFit 2.0 product, if you find that PureWick has not proven its claim for lost profits or has proven its claim for lost profits for only a portion of the infringing sales, then you must award PureWick a reasonable royalty for all infringing sales for which PureWick has not been awarded lost profit damages.

---

[48] Adapted from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

## J.     <u>REASONABLE ROYALTY - DEFINITION</u>[49]

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the royalty payment that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in their negotiations. In determining this, you must assume that both parties to the hypothetical negotiation believed the patent was valid and infringed and that both parties were willing to enter into an agreement. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. No one fact is dispositive, and you

---

[49] This instruction is from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

should consider the evidence that has been presented to you in this case. You may also consider any other factors that in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

### K.    REASONABLE ROYALTY: RELEVANT FACTORS TO THE HYPOTHETICAL NEGOTIATION[50]

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.    Any royalties received by the licensor for the licensing of the Asserted Patents, proving or tending to prove an established royalty.

2.    The rates paid by Sage to license other patents comparable to the Asserted Patents.

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.    The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.    The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.    The duration of the Asserted Patents and the term of the license.

8.    The established profitability of the product made under the Asserted Patents; its commercial success; and its popularity.

9.    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

---

[50] This instruction is from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11. The extent to which Sage has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as PureWick) and a licensee (such as Sage) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of the factors. You may also consider any other factors that in your mind would have increased or decreased the royalty the infringer would have been willing to pay, and the patent holder would have been willing to accept, acting as normally prudent business people.

**L.     REASONABLE ROYALTY – MULTIPLE PATENTS[51]**

If you find that Sage infringed multiple patents, even by a single infringing act, and if you award a reasonable royalty for infringement, then you may award separate royalties to PureWick for each patent that was infringed. You also may consider evidence of the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

---

[51] This instruction is from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

M.      **REASONABLE ROYALTY: TIMING**[52]

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

---

[52] This instruction is from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

**N.**    **REASONABLE ROYALTY: AVAILABILITY OF NON-INFRINGING SUBSTITUTES**[53]

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product that does not infringe the patent.

---

[53] This instruction is from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

## O.     <u>DAMAGES – APPORTIONMENT</u>[54]

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, PureWick's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

---

[54] This instruction is from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

### P.      DATE OF COMMENCEMENT OF DAMAGES[55]

In determining the amount of damages, you must consider when the damages began. Damages commence on the date that Sage has both infringed and been notified of the alleged infringement of an asserted patent.

If you find that PureWick has proven that Sage has infringed a valid claim of the '376 and '989 Patents and is entitled to damages for those patents, the date that PureWick first notified Sage of its claim for patent infringement is the date for the start of damages. The parties do not agree on that date, and it is up to you to determine what that date is. PureWick must prove that it is more likely than not that Sage was put on notice of the claim for patent infringement as of the date alleged by PureWick.

PureWick can give notice in either of two ways. The first way is to give notice to the public in general. PureWick can do this by marking substantially all products it sold which included the '376 and '989 patented inventions, or by including on the labeling of substantially all products the word "patent" or the abbreviation "PAT" with the number of the '376 and '989 patents. PureWick also may give notice by marking substantially all covered PureWick products with "Patent" or "Pat" and a freely accessible Internet address where there is a posting that connects the products with the '376 and '989 patent numbers. This type of notice to the public in general starts from the date PureWick began to mark substantially all products that use the inventions with the '376 and '989 patent numbers. If PureWick did not mark substantially all of those products with the patent numbers, then PureWick did not provide notice in this way. Notice to the public via marking is effective even if the defendant did not see or was not aware of the notice to the public.

---

[55] *Adapted from* 2024 AIPLA Model Patent Jury Instructions, 10.1.2 Alternate B – When the Date of the Start of the Damages Period Is Disputed.

A second way PureWick can give notice of its patents is to directly notify Sage with a specific claim that the PrimaFit 2.0 infringed the '376 and '989 patents. This type of notice starts from the date Sage received the notice.

If you find that PureWick, before filing this lawsuit, did not provide an effective public notice by properly marking its products, and did not properly provide direct notice to Sage with a specific charge that the allegedly infringing product infringed, then PureWick can only recover damages for infringement that occurred after it sued Sage on January 26, 2022. [**PureWick Proposal**: If you find that Purewick did provide effective notice prior to when Sage began selling the PrimaFit 2.0, then the date damages would begin is December 2021.][56]

Now we will have closing arguments and I will read the rest of the instructions to you after that.

\*      \*      \*

---

[56] **Sage's Position**: This sentence is not in the model jury instructions and does not accurately reflect the law. PureWick must show continuous marking through all relevant time periods. Moreover, PureWick's statement about providing notice of infringement prior to the date of first alleged infringement makes no sense.

**PureWick's Position**: This sentence merely confirms that, if Purewick provided notice of its patents at the time when Sage started selling the PrimaFit 2.0, then Sage is liable for all infringing sells, commencing in December 2021 when Sage undisputedly started selling the PrimaFit 2.0.

III.   **DELIBERATIONS AND VERDICT**[57]

A.   **DELIBERATION AND VERDICT – INTRODUCTION**

Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

---

[57] The instructions in this section are from *PureWick Corp. v. Sage Products, LLC*, No. 19-01508-MN, ECF No. 314 (D. Del. Apr. 1, 2022).

### B.    <u>UNANIMOUS VERDICT</u>

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you. I will review it with you in a minute. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict.

And I will remind you that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

C.     <u>**DUTY TO DELIBERATE**</u>

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

### D.   <u>**SOCIAL MEDIA**</u>

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### E.  **COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.